Appendix A
To
ADMINISTRATIVE SETTLEMENT AGREEMENT
AND
ORDER ON CONSENT FOR REMOVAL ACTION
Vasquez Boulevard/Interstate 70 site – Portion of
Operable Unit 2

Action Memorandum

Ref:  8EPR-SR

**ACTION MEMORANDUM**

**SUBJECT:**    Approval for a Time-Critical Removal Action at a portion of the Vasquez
Boulevard/Interstate 70 site - Operable Unit 2, City and County of Denver,
Colorado
Site ID# 089R

**FROM:**    Kerry Guy, Federal On-Scene Coordinator
Emergency Response Program

Dania Zinner, Remedial Project Manager
Superfund Remedial Response Program

**THRU:**    Steve Wharton, Unit Chief
Superfund Remedial Response Program

Laura Williams, Unit Chief
Emergency Response Unit

**TO:**    David A. Ostrander, Director
Emergency Response and Preparedness Program

**I. PURPOSE**

The purpose of this Action Memorandum is to request and document approval of the removal
action described herein for a portion of Operable Unit 2 (OU2) of the Vasquez
Boulevard/Interstate 70 site, City and County of Denver, Colorado. This time-critical removal
action will be conducted by the City and County of Denver (CCoD) pursuant to an
administrative settlement agreement with EPA entered under the authority of Section 122 of the
Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) of 1980,
as amended, 42 U.S.C. § 9622. CCoD plans to construct a stormwater drainage feature through a
portion of OU2 (see map showing potential area of disturbance in Attachment A).  The
stormwater drainage feature is a part of a larger project that is intended to reduce flooding in the
Montclair Drainage Basin area and address stormwater management needs associated with
projects being developed by the Regional Transportation District (RTD), the Colorado
Department of Transportation (CDOT), and CCoD. It is estimated that construction of this
stormwater drainage feature will require the excavation and handling of substantial volumes of
potentially metal impacted (lead and arsenic) soils in OU2. Once excavated, the soils, if
contaminated, will be disposed off-site.  Conditions existing at OU2 present a threat to public
health and the environment and meet the criteria for initiating a removal action under 40 CFR
300.415(b)(2) of the National Contingency Plan (NCP).

1

This removal action involves no nationally-significant or precedent-setting issues. This time-critical removal action will not establish any precedent for how future response actions will be taken, and will not commit the US Environmental Protection Agency (EPA) to a course of action that could have a significant impact on future responses or resources.

## II. SITE CONDITIONS AND BACKGROUND

| | |
|---|---|
| Site Name: | Vasquez Boulevard/Interstate 70 site - OU2 |
| Superfund Site ID (SSID): | 089R |
| NRC Case Number: | |
| CERCLIS Number: | CO0002259588 |
| Site Location: | Denver County, Denver, CO |
| Lat/Long: | |
| Potentially Responsible Party (PRP): | City and County of Denver |
| NPL Status: | Final July 22, 1999 |
| Removal Start Date: | TBD: FY/Qtr |
| Incident Category: | Time-Critical Removal Action |
| Response Authority: | CERCLA |

### A.  SITE DESCRIPTION

### 1.  Removal Site Evaluation

The Vasquez Boulevard/Interstate 70 site was listed on the National Priorities List (NPL) on July 22, 1999. Three operable units were identified. OU2 covers the area of the Vasquez Boulevard/Interstate 70 site where the former Omaha & Grant Smelter operated. The Omaha & Grant Smelter facility operated from 1882 until 1903. A lead smelting process was employed at the facility to produce gold, silver, copper, and lead. The process involved the fusing of ore, fuel, and lime to form a melted product. As a result of this process, lead and silver would sink to the bottom of an iron chamber and the slag would float on the surface of the liquid metals. Although detailed information about the wastes from the smelting operations is not well documented, it is known that blast furnace slag was produced from the smelting operations. Ores, fuel, and flux were delivered by rail car directly to the furnace charging doors on the upper levels of the smelter. As the smelting operations proceeded, the intermediate products flowed downhill to a lower level. Smelter workers would run slag onto a dump and load bullion onto rail cars.

After closure in 1903, the smelter buildings were subsequently demolished. Sometime later, all of the slag, with the exception of any residual that could be buried under modern parking lots, was removed. Based on historic aerial photographs, all of the visible slag was removed by 1949. Prior to constructing the Denver Coliseum and associated parking lot in the early 1950s, portions of the site were used as a landfill for disposal of construction debris and municipal solid wastes. The presence of the landfill materials beneath the Coliseum parking lot area is evidenced by the undulating nature of the parking lot pavement owing to differential compaction and decomposition of the underlying solid waste materials.

The CCoD performed a remedial investigation (RI) for OU2 in 2009 and a feasibility study (FS) in 2010. Development of a proposed plan and record of decision for OU2 has been postponed until EPA completes an additional investigation of groundwater at OU2. This removal action is necessary to address potential releases of and potential worker exposure to hazardous substances that could occur at or near OU2 as the result of CCoD's planned construction of a stormwater feature through a portion of OU2 as shown in Attachment A. This construction will be conducted in areas of OU2 known to contain elevated levels of lead and arsenic in surface and subsurface soils.

Investigations at OU2 have identified the presence of levels of arsenic and lead in soil at concentrations above human health screening levels.

The Preliminary and Final Baseline Human Health Risk assessments for OU2 identified surface and subsurface soil as the potential media of concern and arsenic and lead as the chemicals of potential concern.

## 2. Physical Location

OU2 is in an historic industrial area of Denver.  OU2 encompasses the approximately 50 acres of the original Omaha & Grant Smelter facility and includes a portion of the Globeville Landing Park. OU2 is generally bounded by I-70 on the north, the South Platte River on the west, Brighton Boulevard on the east, and the southern boundaries of the Globeville Landing Park and the Pepsi Bottling Company property on the south.

Other than the South Platte River, there are no major surface water bodies within OU2. Drainage in OU2 is largely controlled by man-made features, such as ditches, roads and storm sewers, as the majority of OU2 is paved or covered by buildings. Surface water runoff is directed to the South Platte River.

## 3. Site Characteristics

OU2 consists of the southern portion of the Denver Coliseum property (that portion of the Coliseum property located south of Interstate 70), which is owned by the CCoD, the Forney Transportation Museum property along Brighton Boulevard, the Pepsi Bottling Company property along Brighton Boulevard, and various other commercial properties located along Brighton Boulevard. None of the current facilities or businesses within OU2 are known to be contributing to the release at OU2.

The historical land use at OU2 was industrial and included smelting (1883 - 1903), and municipal waste incineration and landfilling of construction and municipal waste (1933-1945).

The current land use at OU2 is primarily commercial/industrial, with recreational use at a small portion of the OU located in the western corner immediately adjacent to the South Platte River at the Globeville Landing Park. The ground is largely covered by highways, building structures,

and paved parking lots. Grassy or unpaved areas are rare and are mainly restricted to the western most portion of the OU at the Globeville Landing Park and some small areas at some of the commercial properties along Brighton Boulevard and 39th Avenue on the eastern and southern portions of the OU. The potential future land use of OU2 is multi-family residential, with the approximate size of the multi-family units ranging from 5 to 20 acres.

The land use surrounding OU2 is mainly commercial/industrial, interspersed with private residences, and with recreational land use along the South Platte River.

Other than assessments and investigations, no other removal actions have been conducted at OU2.

### 4. Release or Threatened Release into the Environment of a Hazardous Substance, or Pollutant or Contaminant

Investigations in OU2 found many areas where surface and subsurface soils contained levels of arsenic and lead above what was considered background levels: 15 mg/kg for arsenic and 400 mg/kg for lead. (See OU2 RI.) In particular, limited sampling of soils along the route of the proposed stormwater feature found arsenic levels up to 48 mg/kg and lead levels up to 1400 mg/kg, and sampling on property adjacent to the proposed route showed arsenic levels up to 1400 mg/kg and lead levels up to 100,000 mg/kg. Levels of arsenic and lead well above background levels show a release of a hazardous substance to the environment at OU2. Excavation of these metal contaminated soils pose the threat of additional releases of these hazardous substances to the environment.

Lead and arsenic are "hazardous substances" as defined by Section 101(14) of CERCLA, as amended, 42 U.S.C. § 9601(14) and in the NCP at 40 CFR Section 302.4. Adverse human health effects of these metals may include the following:

Arsenic

Large doses of arsenic may be acutely fatal to humans. Symptoms include fever, loss of appetite, enlarged liver and heart rhythm abnormalities. Sensory loss in the peripheral nervous system may also occur. Chronic exposure to arsenic generally results in skin lesions, liver injury and peripheral vascular disease. The peripheral vascular disease may progress to endarteritis obliterans and gangrene of the lower extremities (blackfoot disease). Arsenic is a human carcinogen based on observation of increased lung cancer mortality due to inhalation exposure and increased skin cancer in individuals exposed to arsenic via drinking water.

Lead

Lead is classified as a B2 carcinogen by the EPA. This classification is the result of sufficient animal studies determining that lead compounds are probable human carcinogens. Lead can enter the body via ingestion and inhalation. Children appear to be the segment of the

population at greatest risk from toxic effects of lead. Initially, lead travels in the blood to the soft tissues (heart, liver, kidney, brain, etc.), then gradually redistributes to the bones and teeth where it tends to remain. The most serious effects associated with markedly elevated blood lead levels include neurotoxic effects, such as irreversible brain damage. Children have exhibited nerve damage, permanent mental retardation, colic, anemia, brain damage, and death.

### 5.  NPL Status

The Vasquez Boulevard/Interstate 70 site was listed on the National Priorities List (NPL) on July 22, 1999. A feasibility study focused on soils at OU2 was completed in 2010 by CCoD. Groundwater investigations are ongoing and are expected to be completed in 2015, with an OU2 proposed plan and record of decision to follow soon thereafter.

### 6.  Maps, Pictures, Other Geographic Representations

A map of OU2 within the Vasquez Boulevard/Interstate 70 site is shown in Attachment B.

### B.  Other Actions to Date

### 1.  Previous actions

No previous actions other than described above have been conducted at OU2.

### 2.  Current actions

No current actions other than described above are on-going at OU2.

### C.  State and Local Authorities' Roles

### 1.  State and Local Actions to Date

CCoD conducted a remedial investigation and feasibility study for OU2, which was completed in 2010. CCoD has also conducted additional sampling in OU2 in the last year in anticipation of the construction of the stormwater feature. The State is the support agency for OU2 and has assisted EPA in oversight of the response actions at OU2.

### 2.  Potential for Continued State/Local Response

The CCoD will perform and fund the proposed removal action. The State will continue to be the support agency for response actions at OU2.

## III. THREATS TO PUBLIC HEALTH OR WELFARE OR THE ENVIRONMENT, AND STATUTORY AND REGULATORY AUTHORITIES

The conditions at OU2 present a threat to public health and welfare and meet the criteria for initiating a removal action under Section 300.415(b)(2) of the NCP.

EPA has considered all the factors described in 40 CFR 300.415(b)(2) of the NCP and determined that the following factors apply at OU2:

> *Actual or potential exposure to nearby human populations, animals, or the food chain from hazardous substances or pollutants or contaminants.*

The proposed stormwater feature construction in OU2 will result in the excavation of substantial volumes of potentially metal impacted soils. If not excavated, handled, and disposed properly, the workers and other nearby human populations could be exposed to unsafe levels of arsenic and lead in these soils.

## IV. ENDANGERMENT DETERMINATION

Actual or threatened releases of hazardous substances from OU2, if not addressed by implementing the response action described in this Action Memorandum, may present an imminent and substantial endangerment to public health, or welfare, or the environment.

## V. PROPOSED ACTIONS AND ESTIMATED COSTS

### A. Proposed Actions

### 1. Proposed Action Description

Develop and implement a materials management plan and workplan in accordance with the statement of work (SOW) attached to the Administrative Settlement Agreement and Order on Consent for Removal Action for the screening, excavation, handling, and disposal of waste materials1 encountered during the planned construction of a stormwater feature within a portion of OU2 as shown in Figure 1.

### 2. Contribution to Remedial Performance

The proposed actions will contribute to and not interfere with potential remedial actions for OU2.

### 3. Engineering Evaluation/Cost Analysis (EE/CA)

This is a time-critical removal action; thus, an EE/CA is not required.

---

1 "Waste materials" is a defined term in the Administrative Settlement Agreement and Order on Consent for Removal Action that is being signed concurrently with this Action Memorandum. Even though investigations to date have determined that lead and arsenic in soils are the contaminants of potential concern for OU2, the planned excavations for the stormwater project will be in areas of known landfilling of municipal wastes and other hazardous substances or pollutants and contaminants may be discovered above safe levels and will require proper handling and disposal.

### 4. Applicable or Relevant and Appropriate Requirements (ARARs)

Removal actions conducted under CERCLA are required, to the extent practicable considering the exigencies of the situation, to attain ARARs. In determining whether compliance with an ARAR is practicable, the lead agency may consider appropriate factors, including the urgency of the situation and the scope of the removal action to be conducted.  A table containing potential ARARs is included in Attachment C.

### 5. Project Schedule

Anticipated start date is July 2015.

### B. Estimated Costs

See below.

## TOTAL REMOVAL PROJECT CEILING

This removal action will be conducted by CCoD pursuant to an administrative settlement agreement with EPA that will be signed concurrently with this Action Memorandum.  Barring unforeseen events, EPA's costs for this removal action will be limited to project oversight, which will be subject to reimbursement.

## VI. EXPECTED CHANGE IN THE SITUATION SHOULD ACTION BE DELAYED OR NOT TAKEN

A delay in action or no action will increase the public health risks to the local population and workers posed by the excavation and handling of waste materials encountered during the construction of a stormwater feature within a portion of OU2.

## VII. OUTSTANDING POLICY ISSUES

This removal does not set a precedent or constitute a nationally significant issue.

## VIII. ENFORCEMENT

Since CCoD will be performing this removal action and reimbursing EPA's oversight costs for this removal action a separate enforcement addendum has not been prepared.

## X. RECOMMENDATION

This decision document represents a selected removal action for a portion of OU2 of the Vasquez Boulevard/Interstate 70 site, in the City and County of Denver, Colorado, developed in accordance with CERCLA as amended, and is not inconsistent with the NCP.  This decision is based on the Administrative Record for this removal action.

Conditions at OU2 meet the NCP Section 300.415(b)(2) criteria for a removal, and I recommend your approval of the proposed removal action. This time-critical removal action will be funded by the City and County of Denver (CCoD) pursuant to an administrative settlement agreement with EPA. EPA's costs for this PRP-led removal action will be limited to project oversight, which will be subject to reimbursement.

**Approve:** _____   Date: 7 | 1 | 2015

David A. Ostrander, Director
Emergency Response and Preparedness Program

**Disapprove:** _____   Date: _____

David A. Ostrander, Director
Emergency Response and Preparedness Program

**Attachments:**

## REFERENCES

### SUPPLEMENTAL DOCUMENTS

Support/reference documents that may be helpful to the reader and/or have been cited in the report are located in the Administrative Record Files for this removal action at the Superfund Records Center for Region 8 EPA, 1595 Wynkoop Street, Denver, Colorado 80202, and are available for review by appointment.

Attachment A

Potential Area of Disturbance for Stormwater Drainage Feature

EARLY ACTION MONTCLAIR CREEK DRAINAGE PROJECT

JUNE 24, 2015

POTENTIAL AREA
OF DISTURBANCE

S. PLATTE RIVER

FUTURE RTD NORTH METRO FASTRACKS

BNSF RAILROAD

INTERSTATE 70

MCFARLAND DRIVE

MERRICK
& COMPANY
McLaughlin Water Engineers

2450 Mott St.
Denver, CO 80211
T303.264.3333
F303.964.3355

Attachment B


A map of OU2 within the Vasquez Boulevard/Interstate 70 site



Vasquez Blvd. and I-70
Operable Units
*Denver County, Colorado*

Attachment C

Applicable or Relevant and Appropriate Requirements

Attachment C
Applicable or Relevant and Appropriate Regulations (ARARs)

This table contains a listing of potential ARARs for the Removal Action at a Portion of OU2 – VB/I70 site

| Standard, Requirement, Criteria, or Limitation | Citation | Description | Applicable or Relevant and Appropriate | Comments |
|---|---|---|---|---|
| Colorado Solid Waste Disposal Sites and Facilities Act | 6 CCR 1007-2, pursuant to CRS § 30-20-100.5, et.seq. | Establishes standards for the licensing, locating, constructing, and operating solid waste disposal facilities. | Relevant and Appropriate | This regulation is specifically for non-hazardous solid waste. Certain provisions of these regulations may be considered in implementing this action, such as in capping solid waste in place. |
| Colorado Water Quality Control Act. Storm Water Discharge Regulations | 5 CCR 1002-61 | Regulates discharge of storm water during construction activities. | Applicable | Best Management Practices will be implemented to control storm water discharges or run-off during Removal activities. |
| Colorado Air Pollution Prevention and Control Act | 5 CCR 1001-3, pursuant to CRS §§ 25-7-101 et. seq. | Regulates fugitive emissions during construction. | Applicable | Superfund actions do not require permits; however, fugitive emissions will be controlled by implementing dust control during any dirt moving or construction activities. |
| Colorado Noise Abatement Statute | CRS §§ 25-12-1010, et. seq. | Regulates permissible noise levels. | Applicable | Noise controls will be implemented throughout the Removal Action. |

| Standard, Requirement, Criteria, or Limitation | Citation | Description | Applicable or Relevant and Appropriate | Comments |
|---|---|---|---|---|
| Colorado Discharge Permit System Regulations | 5 CCR 1002-61, pursuant to CRS §§ 25-8-503, et. seq. | Regulates discharges to State waters | Applicable | If removal activities will impact surface water (i.e., activities will result in a discharge to State waters), substantive provisions will be applicable. |

Appendix B
To
ADMINISTRATIVE SETTLEMENT AGREEMENT
AND
ORDER ON CONSENT FOR REMOVAL ACTION
Vasquez Boulevard/Interstate 70 site – Portion of
Operable Unit 2

Map of Site

EARLY ACTION MONTCLAIR CREEK DRAINAGE PROJECT

JUNE 24, 2015

# Appendix C
## To
# ADMINISTRATIVE SETTLEMENT AGREEMENT
## AND
# ORDER ON CONSENT FOR REMOVAL ACTION
## Vasquez Boulevard/Interstate 70 site – Portion of Operable Unit 2

## Statement of Work

# STATEMENT OF WORK

I.    Purpose

The purpose of this Statement of Work ("SOW") is to describe the general content of the Work the City and County of Denver ("Respondent") has agreed to perform pursuant to the Administrative Settlement Agreement and Order on Consent for Removal Action ("Agreement").

The Work entails design and implementation of the "environmental components" of a stormwater drainage feature to be constructed through a portion of Operable Unit 2 of the VB/I70 Superfund site.  The stormwater drainage feature is part of a larger project that is intended to reduce flooding in the Montclair Drainage Basin area and address stormwater management needs associated with projects being developed by Regional Transportation District (RTD), Colorado Department of Transportation (CDOT), and Respondent.

The "environmental components" to be addressed by this Removal Action consist of: 1) management and handling of waste material encountered during construction of the stormwater drainage feature; 2) management and, if necessary treatment and/or disposal, of dewatering liquid during construction; and 3) design and construction of an impermeable barrier system to prevent any contaminants remaining within the boundaries of the stormwater drainage feature from adversely impacting stormwater retained within and conveyed by the stormwater drainage feature, as well as prevent stormwater infiltration into contaminated media remaining beneath or surrounding the feature.

The Respondent shall also define and implement environmental protection measures needed to protect human health, groundwater, surface water, air, and soils from potential impairment caused by construction of the stormwater drainage feature.  This shall include: 1) preparation and implementation of a Removal Action Work Plan (RAWP) containing a Sampling and Analysis Plan (SAP), a Quality Assurance Project Plan (QAPP), a Materials Management Plan (MMP), a Health and Safety Plan (HASP), and Progress Reporting procedures; 2) a pre-Final inspection; and 3) preparation of a Construction Closeout Report.  In addition, if requested by EPA, Respondent shall assist EPA with community relations.  Details of these activities are discussed below.

II.    Work to Be Performed

This SOW describes the activities that shall be completed to reduce risk to human health and the environment at the Site.  The Work to be performed consists of:

   1. Management of Waste Material

   Construction of the stormwater drainage feature will require the excavation and handling of a substantial volume of soil and solid waste material.  Investigations have identified lead and arsenic in soils and subsurface soil as contaminants of concern for OU2. Additionally, municipal wastes were landfilled in this area and investigations have identified volatile organic compounds (VOCs), polynuclear aromatic hydrocarbons

(PAHs), and potentially friable asbestos associated with those materials. Together, these contaminated soils and solid waste are the "waste material" that will need to be removed. It is expected that concentrations of most contaminants of concern in the waste material will be sufficiently low such that most of the material may be managed as a RCRA non-hazardous solid waste. Respondent is planning to dispose all RCRA non-hazardous material, including material containing friable asbestos, at the Denver Arapahoe Disposal Site (DADS) under disposal certificates issued by landfill operator. Respondent will manage RCRA hazardous material as hazardous waste and will treat and/or dispose of such material at a RCRA-licensed Subtitle C treatment, storage, or disposal facility (TSDF). Criteria and protocols for management and disposal of all material shall be incorporated into the Materials Management Plan.

2.  Management of Contaminated Groundwater

Historic groundwater sampling has detected VOCs and metals above Colorado Basic Standards for Groundwater and Surface Water. As necessary, groundwater collected during construction dewatering will be treated prior to release to a receiving stream or transported offsite for treatment and disposal. Criteria and protocols for collection, treatment, and disposition of these liquids, as well as any other liquid that comes in contact with the waste material, including washout and decontamination liquids, shall be incorporated into the Materials Management Plan.

3. Barrier System Beneath the Stormwater Channel

Under all portion(s) of the stormwater drainage feature to be constructed as an open channel, Respondent shall design and construct a barrier system, including an impermeable liner, to prevent contact between the remaining contaminated media (i.e., waste material and contaminated groundwater left in place), and stormwater conveyed by the stormwater drainage feature . As appropriate, the barrier system shall also include foundation material beneath the liner and protective material above the liner to ensure liner stability and protection. Respondent shall also design the system to account for historical groundwater flow patterns beneath and adjacent to the liner.

Respondent shall submit the following design documents related to the barrier system for EPA and CDPHE review:

a.     **Draft (50 percent) Design.** This submittal shall include the following:

- Design Criteria
- Results of additional field sampling and pre-design work
- Draft plans, drawings, and sketches
- Draft specifications
- Project delivery strategy
- Draft construction schedule

SOW, VB/I70 Removal Action

- Draft construction cost estimate

b.   **Pre-Final (95 percent) Design.**  This submittal shall refine and detail the Draft Design, with revisions addressing comments from EPA and CDPHE. Respondent shall include value engineering assessments.  The submittal shall represent the best efforts at a complete design and include drawings, specifications, general conditions, a Basis of Design memorandum, an updated schedule, and an updated cost estimate.

c.   **Final Design.**  This submittal shall include the complete and final barrier system design.  All of the items required for the Draft design submittal, as well as modifications resulting from review of the Draft and Pre-Final design shall be included.  Drawings, specifications, and general conditions shall be ready for procurement and implementation.

Respondent shall submit two copies of each design package to EPA and CDPHE for review and comment, and respond to comments in a letter format.

4. Removal Action Work Plan (RAWP)

a.   The RAWP shall describe the removal activities to be performed. The RAWP shall discuss:

- Site background;
- Project organization;
- Site characterization;
- Scope of removal action activities to include discussion of:
  - Staging area,
  - Mobilization plan,
  - Site preparation,
  - Excavation of waste material,
  - Treatment of waste material, if necessary, prior to disposal,
  - Disposal procedures,
  - Management of groundwater during removal activities,
  - Stormwater management during removal activities,
  - Dust control measures,
  - Personnel and equipment monitoring and decontamination procedures, and
  - Other activities required to implement the removal action;
- Institutional controls;
- Anticipated community relations activities;
- Schedule of project deliverables with associated submittal dates and proposed construction schedule.

    b.      Supporting deliverables to the RAWP shall include the following:

- Sampling and Analysis Plan (SAP) - The SAP shall be submitted in accordance with the National Contingency Plan (NCP), Section 300.415(b)(4)(ii) for removal actions.  The SAP shall consist of two parts:

    o A Field Sampling Plan (FSP), which describes the number, type, and location of samples and the type of analyses; and

    o A Quality Assurance Project Plan (QAPP), which describes policy, organization, and functional activities and the data quality objectives and measures necessary to achieve adequate quality for use in planning and documenting the removal action.

- Materials Management Plan (MMP) -- Respondent shall submit an MMP describing: 1) the testing, management and disposal requirements for waste material; 2) requirements for management and treatment of and groundwater captured during construction dewatering operations; and 3) management of liquids and solids from design investigations, groundwater sampling, and equipment decontamination.

- Site Health and Safety Plan (HASP) -A Site HASP shall be developed in accordance with OSHA Standard 29 CFR Part 1910 and Part 1926.

    c.      Monthly Project Reporting.  Monthly reports required pursuant to Section V of the Agreement shall contain  pertinent new information specified in Superfund Removal Procedures, Removal Response Reporting: POLREP and OSC Reports (EPA, 1994).  The monthly report shall include the following sections: Section I - Heading, Section II - Response Information, and Section III – Issues, Resolutions, and Planned Activities . Section I shall include date of report, site name, author of report, recipient of report, and number of report. Section II shall include a description of contaminated media  removed pursuant to the Removal Action Work Plan and Materials Management Plan, such as actions completed, sampling results, volume and disposition of waste material removed during the reporting period and total to date, and volume and disposition of dewatering water removed during the reporting period and total to date. . Finally, Section III  shall include a description of problems encountered during the reporting period, how they were resolved and if not resolved, recommendations for resolution, and activities planned for the next reporting period.

5. Implementation of the RAWP

    Respondent shall implement the RAWP in accordance with the removal action

SOW, VB/I70 Removal Action

activities and work schedule presented in the RAWP.  Responsibilities for implementing the supporting documents shall be as follows:

    a.      SAP and QAPP:  Respondent shall implement these Plans directly.

    b.      MPP and HASP:  Respondent shall inspect the site activities for compliance with these Plans.

    c.      Monthly Project Reporting:  Respondent shall prepare the reports directly.

6. Pre-Final Inspection

Upon or near completion of key components of the removal action, and before the submittal of the Construction Completion Report, one or more pre-final inspection(s) by EPA and CDPHE shall be arranged by the Respondent.  A list of check-points that may be inspected by EPA and CDPHE during removal action implementation shall be developed during design.  Possible check points may consist of completion of waste material removal, completion of dewatering, completion of barrier system installation, among others.  Respondent shall document any "punch-list" items resulting from these inspections and work to address the punch-list items to the satisfaction of EPA, in consultation with CDPHE.  Documention of these partial completion inspections and resolution of punch-list items shall be incorporated into the Construction Completion Report, discussed below.

7. Construction Completion Report

Respondent shall prepare a Construction Completion Report that shall include the following chapters:

Section 1.      Introduction:  Include a brief description of the location, size, environmental setting, and operational history of the site.  Describe the operations and waste management practices that contributed to contamination of the site.  Describe the major findings and results of site investigation activities.

Section 2.      Operable Unit Background: Summarize requirements specified in the ROD, ESD, and TCRA Memorandum for OU2.  Include information on the cleanup goals, institutional controls, monitoring requirements, and other parameters applicable to the design, construction, operation, and performance of the removal action.

Section 3.      Construction Activities:  Provide a step-by-step summary description of the activities undertaken to construct the remedy (e.g., mobilization and site preparatory work; excavation, screening, handling, and disposition of waste material; construction, operation, and monitoring of the dewatering and water treatment system; construction of the barrier system; and site reclamation).

Record drawings shall be appended to the Report and any minor changes to the original design shall be discussed.  .

Section 4.     Chronology of Events: Include significant milestones and dates, such as, design submittal and approval; ROD amendments or ESDs; mobilization and construction of the remedy; significant operational events such as treatment system/application start-up, monitoring and sampling events, system modifications, operational down time, variances or non-compliance situations, and final shut-down or cessation of operations; final sampling and confirmation-of- performance results; required inspections; demobilization; and completion or startup of post- construction operation & maintenance activities. To the extent that any significant changes to the removal action required or were caused by an ESD, these changes and their impacts to the project schedule will be addressed in this section.

Section 5.     Performance Standards and Construction Quality Control: Describe the overall performance of the technology in terms of comparison to cleanup goals.  For non-hazardous waste material removed, include a summary of visual/ACM/or hazardous characteristics screening results, volumes, and shipping manifests.  For hazardous wastes, include profiling results, volumes, and completed uniform hazardous waste manifests.  For water treated and discharged under the substantial requirements of a Colorado Discharge Permit, include a comparison of effluent quality results to discharge limits.  For waters shipped off-site to a RCRA TSDF, include water quality results, profiles, volumes, and shipping manifests.

Section 6.     Final Inspection and Certifications: Report the results of the various inspections to include the pre-Final inspection(s), and identify noted deficiencies.  If implemented, summarize details of the institutional controls (e.g., the type of institutional control, who will maintain the control, who will enforce the control).

Section 7.     Summary of Project Costs: Provide the actual final costs and applicable year for the project.  If actual costs are not available, provide estimated costs.

Section 8.     Observations and Lessons Learned: Provide site-specific observations and lessons learned from the project, highlighting successes and problems encountered and how resolved.

Section 9.     Operable Unit Contact Information: Provide contact information (names, addresses, phone numbers, and contract/reference data) for the major design and remediation contractors, EPA oversight contractors, and the respective RPM and project managers for EPA, the State, and the PRPs, as

SOW, VB/I70 Removal Action

applicable.

Appendix A. Record Drawings
Appendix B. Cost and Performance Summary
Appendix C. Waste Manifests

Supplemental Appendices.  Place for maps, schematics, references.


8.  Community Relations

Respondent shall assist EPA, if requested, in performing the community relations
activities specified in Section 300.415(n) of the NCP.

<u>References</u>

EPA, 1994 (June).  Superfund Removal Procedures, Removal Response Reporting: POL.REP and OSC Reports.  Office of Solid Waste and Emergency Response (OSWER) Directive 9360-3-03, United States Environmental Protection Agency, Washington, D.C. 20460