IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

KYLE ZEPPELIN, BRAD EVANS, CHRISTINE O'CONNOR,
KIMBERLY MORSE, and JACQUELINE LANSING

      Plaintiffs,

v.

FEDERAL HIGHWAY ADMINISTRATION, an administrative agency of the
United States Department of Transportation,

      Defendant.

---

**DECLARATION OF JACQUELINE LANSING**

---

I, JACQUELINE LANSING, hereby declare:

1. The facts set forth in this Declaration are based upon my personal knowledge. If called as a witness, I could and would testify competently to these facts. As to those matters that reflect an opinion, they reflect my personal opinion and judgment on the matter.

2. I am a citizen of the United States and resident of Denver, Colorado. I live in the Park Hill neighborhood.

3. I use each of these areas regularly for recreation.

4. On January 14, 2016, I attended a Unite North Metro Denver meeting at Garden Place Elementary concerning the I-70 Partial Cover Lowered ("PCL") Alternative and other alternatives proposed for the Central 70 Project. At this meeting, a proposal was made and video

1

shown by a member of the American Institute of Architects. The proposal was to build a Parkway along 46th Avenue, similar to what had been designed by the Olmsted Firm in the early 1900's. The proposal was two pronged: build a parkway to accommodate local traffic from Central Park Boulevard to Wadsworth Boulevard; and reroute truck and through traffic to the mountains on an expanded 1-270/I-76 at a cost far less than the I-70 below-grade proposal.

5.  I was added to the Unite North Metro Denver mailing list and attended several subsequent meetings of this group. In addition, I read and commented on the Final Environmental Impact Statement ("FEIS") for the Central 70 Project, attended the public hearing on the FEIS in February 2016 at the Bruce Randolph School, examined poster boards produced by CDOT, asked questions of Tony DeVito (the I-70 Project Manager) and others, and listened to public comments, most of which were passionately opposed to expanding and lowering of I-70 as proposed in the FEIS.

6.  I care about the I-70 expansion project because I live approximately three miles from I-70. I feel personally impacted by the noise, air pollution, and unseen health impacts this interstate imposes. Denver is the sixth smoggiest city in the United States.

7.  On January 12, 2016, I attended a neighborhood meeting in Bogey's Clubhouse located on City Park Golf Course regarding the Platte to Park Hill ("P2PH") Stormwater Project. The meeting was hosted by the North Denver Cornerstone Collaborative. At this meeting, the City of Denver ("the City") explained that the purpose of the project was to provide 100-year flood protection in the Montclair and Park Hill Basins for the safety of residents there. Attendees were asked to select one of two options for a detention facility: one along 40th Avenue, which would require taking 50 homes in the Cole neighborhood; or one that would take City

2

Park Golf Course. There was no mention at this meeting of the Central 70 Project, the benefits the P2PH Project will provide to the lowered portion of I-70, or the funding partnership that was already in place for P2PH per an Intergovernmental Agreement ("IGA") between the City, the Colorado Department of Transportation ("CDOT"), and the Colorado High Performance Transportation Enterprise ("HPTE").

8. At this January 12th meeting, the public was lead to believe the sole purpose of the P2PH Project was to protect their homes. But the two options presented did not make sense in terms of the purpose described. The Cole option was contrary to the stated purpose of protecting Cole homes from flooding, as the proposed detention facility would be located north (downstream) from the Cole neighborhood. And the Park option was contrary to everything I know about green infrastructure – namely, the stormwater benefits provided by trees and undisturbed soils. I voiced my opinion, crossed out both options, and wrote over them (no space was provided to write in alternatives) that other options needed to be examined and presented to the public. The minutes of the meeting did not reflect my request, but that the consensus in the community favored losing portions of City Park over losing homes.

9. Since that meeting, I have attended many meetings on the subject of P2PH. These include meetings put on by the Greater Park Hill Community, City Park Friends and Neighbors, the City Park Alliance, the Clayton Community, the City Park Golf Board, and the Inter-Neighborhood Cooperation. I have also participated in the North Denver Cornerstone Collaborative 39th Avenue Channel Tour, the Upper Montclair Basin Workshop, the poster board session at St. Charles Recreation Center, and others.

10. I am a member of the Park Hill Golf Course Citizens' Advisory Committee, an alternate member of the VB/I-70 Citizens' Advisory Group, a member of the City Park Master Plan Stakeholders Working Group, a board member of City Park Friends and Neighbors, and a board member of City Park Racquet Club. Among the litany of people and organizations I have contacted regarding P2PH are the U.S. Army Corps of Engineers, the U.S. Environmental Protection Agency ("EPA"), the U.S. Fish and Wildlife Service, the National Park Service, the Colorado Division of Wildlife, Denver Parks and Recreation, the Cultural Landscape Foundation, the Colorado Natural Heritage Program, the Audubon Society, the Audubon International Cooperative Golf Course Sanctuary Program, the National Association of Olmsted Parks, Avid Golfer, Happy Haynes, the Denver City Council, and the Colorado Historic Preservation Office.

11. I reached out to these people and entities because P2PH is a massive stormwater diversion project, which has huge environmental impacts that have not been considered or addressed. I believe these impacts should have been analyzed in the FEIS for the Central 70 Project and disclosed for public comments under the National Environmental Policy Act ("NEPA"). Contrary to the representations made by the City and CDOT, the P2PH Project is related to the I-70 PCL Alternative and therefore must be analyzed under NEPA.

12. I am a strong proponent of historic preservation and natural resource preservation. Divorcing the P2PH Project from the Central 70 Project and NEPA process has egregious consequences. I believe these include, but are not limited to, the following:

4

    a. dismissal of the impacts to City Park Golf Course, which is a nationally significant cultural landscape listed on the National Register of Historic Places and designed by two notable landscape designers (Olmsted Brothers and Tom Bendelow);

    b. dismissal of the impacts to the Park Hill Golf Course; dismissal of the impacts to other historic properties over 50 years old in the path of P2PH;

    c. dismissal of the impacts to flora and fauna in the P2PH Project area;

    d. dismissal of migratory birds and raptors that could be impacted by P2PH;

    e. dismissal of the aquatic life in the South Platte River that might be impacted by P2PH;

    f. dismissal of the South Platte River itself, as well as its floodplain, wetlands, and groundwater, all of which will be impacted by P2PH;

    g. dismissal of the need for large undisturbed expanses of open space to protect biodiversity corridors;

    h. dismissal of the benefits of trees for cooling, flood control, reducing air pollution, offering beauty and land value, and providing food, shelter, and nesting for birds and other animals;

    i. forcing wastewater fee payers to inappropriately foot the bill for a transportation project, which is a misappropriation of funds;

    j. leaving the public out of the conversation and providing sanitized, inaccurate information with no opportunity for public comment;

    k. decreasing the land values around the P2PH Project, which essentially constitutes a taking without recourse; and

l. changing the character of the P2PH Project area in negative ways that make them less attractive and odor ridden, invite mosquitos, present safety hazards, and impose costly maintenance burdens.

13. I believe the P2PH and Central 70 Projects are related because there was no expressed need or intent for 100-year storm protection prior to CDOT's introduction of the PCL Alternative. The 2014 Denver Storm Water Master Plan calls for building neighborhood storm sewer systems for a two-year flood event. No where does this document say Denver needs protection against the type of flood event that would bring 2.67 inches of rain in one hour or 3.67 inches of rain in six hours (a flood event with a 1 in 100 chance of happening). To date, there has been no 100 year-flood event in Denver, and the "urgency" of putting in place 100-year protection has been caused only by CDOT's plan to lower the highway.

14. It is worth noting that George Delaney with Denver Public Works testified to the following at a 2016 Wastewater Fee increase hearing:

a. the Wastewater Enterprise is doing an exemplary job of meeting stormwater protection needs in the City of Denver on $26 million per year;

b. there were only six complaints in 2015 (a wet year for Denver) related to storm water issues; and

c. $26 million would be sufficient to address the hotspots identified as triangles in the 2014 Stormwater Master Plan.

15. Denver's Storm Drainage Technical Criteria Manual states that regional facilities must be called for in the Storm Water Master Plan. The fact that the 2014 Stormwater Master

6

Plan does not call for detention ponds or drainage channels in the Montclair and Park Hill Basins suggests that the purpose and need for the stormwater project did not come from the City.

16.     I know that the four locations identified for drainage work under P2PH (Globeville Landing Park, the 39th Avenue Channel, the City Park Golf Course, and the Park Hill Golf Course) are neither in floodplains or special hazard areas designated by the Federal Emergency Management Agency ("FEMA").  I also know that CDOT and the City have signed an IGA to provide stormwater detention, and that CDOT must review and approve the design of that stormwater project.  I further know from the Request for Proposals ("RFP") on P2PH that contractors must follow CDOT design standards to construct the detention facilities.  But for CDOT being a direct beneficiary of the P2PH Project, there is no reason for CDOT to pay for Denver's stormwater system or oversee its design.

17.     I understand that FHWA and CDOT have represented in the FEIS and ROD that P2PH and the Central 70 Project are not connected actions.  But it makes no sense for CDOT to be involved on any level in a local public works project – much less commit to pay 40% of the cost of that project – if CDOT receives no benefit.  The IGA clearly sets forth a cost sharing agreement between these parties for construction of P2PH, requires CDOT oversight of "the City's" drainage design, and imposes liquidated damages on the City of $5,000.00 per day if the City does not meet CDOT's construction schedule.

18.     The Central 70 Project and P2PH are connected actions and should have been analyzed together.  At a minimum, FHWA had an obligation under NEPA to examine the cumulative impacts from P2PH in the Central 70 project area.

19. As I stated in my comments to FHWA, I am also concerned that the FEIS and ROD do not adequately address the issue of hazardous materials or the expected cost overruns for the highway expansion project and who will pay for them. The construction area for the I-70 PCL Alternative is located in the Vasquez Boulevard / I-70 Superfund site, a site put on the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") National Priorities List in 1999 for its high level of smelting contaminants, including, among others, arsenic, cadmium, lead, and volatile organic compounds ("VOCs"). While prior soils remediation work has been done here, it was only the residential soils that were partly remediated. There has been no prior work to clean up the soils in the industrial areas of the Vasquez Boulevard / I-70 Superfund site that were simply paved over many years ago.

20. FHWA and CDOT acknowledge in the FEIS and ROD that excavation of these industrial soils will spread contaminants and expose workers and the public to toxic materials. But these same documents do not disclose the environmental or human health risks of digging in this Superfund site and make no attempt to tell the public what (if anything) will be done to protect human health and the environment during the four to five years of construction for the Central 70 Project. The FEIS and ROD are furthermore deficient for a failure to disclose the fact that P2PH also runs through the Vasquez Boulevard / I-70 Superfund site and that a Time Critical Removal Action ("TCRA"), which was approved by Consent Agreement with EPA was required in order to build the drainage feature through the Coliseum and Globeville Landing Park to meet the IGA deadline.

21. To my knowledge, there has been no risk assessment under CERCLA as to how the disturbance of hazardous materials in the soils and groundwater of the Vasquez Boulevard /

8

I-70 Superfund site – which will be necessitated by the Central 70 Project and P2PH – might negatively impact human health and the environment.  To my knowledge, there have been no feasibility studies, engineering evaluations, or cost analyses related to the remediation efforts this massive disturbance of hazardous materials will require.  This total dearth of study into the human health implications of excavating such a large area of the Vasquez Boulevard / I-70 Superfund site makes FHWA's and CDOT's analytical failure under NEPA all the more devastating.

22. I go to City Park regularly for the purpose of exercise and recreation. Specifically, my children, grandchildren, and I use City Park and the City Park Golf Course extensively for walking, running, golfing, viewing nature and vistas, patio dining, picnics, barbecues, tennis, soccer, flag football, kickball, tee ball, playing on playgrounds, attending concerts and fairs, bike riding, race watching, smelling the roses, visiting the Denver Zoo and Denver Museum of Nature and Science, and generally enjoying the fountains, statues, and inspirational quotes.

23. I choose to play the City Park Golf Course because of its beauty, location, and historical significance.  I am enchanted by thoughts of the historical construction of City Park Golf Course by hand, horse, and mule, and men in knickers using hickory stick golf clubs to play the course in the early 1900's.  The Golf Course is magnificent in its views, the variety and size of trees, its wildlife (166 species of birds recorded), its pond, its clubhouse, and its challenges.  I personally have seen deer, fox, coyotes, owls, hawks, eagles, geese, ducks, Cormorants, sparrows, butterflies, and bees in the City Park Golf Course. I derive value from being in close

9

proximity to the natural world and will be harmed if the golf course is closed for construction and forever changed.

24.     I have been enjoying City Park Golf Course for approximately 36 years.  But for the P2PH Project, I would continue to regularly use and enjoy City Park Golf Course.  This project will destroy the habitat (food, shelter, and nesting) for the present wild inhabitants of the Golf Course and surrounding Park.  Migratory patterns take thousands of years to develop.  Birds that fly away will come back to the same nest when they return.  Taking them or their homes is unconscionable to me in a Park that is supposed to protect them.

25.     I also go to the Park Hill Golf Course for the purpose of exercise and recreation.  I play golf at the Park Hill Golf Course and also enjoy the driving range and clubhouse.  I choose to play golf here because it is a true treasure of open space in the Park Hill neighborhood.  That open space provides benefits to wildlife, enhances the beauty of the area, and naturally cools the air with it's large, majestic trees.  I would be harmed by the temporary or permanent loss of the Park Hill Golf Course.  Construction there would create noise, dust, and general disturbance.  The loss of trees and other changes to the course would destroy crucial wildlife habitat and hamper my enjoyment of this area and my neighborhood permanently.

26.     I currently serve as a member of the Park Hill Golf Course Stakeholder Group.  The purpose of this group is to discuss and guide the future of the Park Hill Golf Course.  I believe the character of the Golf Course should be preserved, and I am very concerned that the P2PH poses a real risk of harm to the integrity of this valued area.

27.     My primary personal interest in these issues is to protect nature.  I have spent most of my adult personal and career life advocating for the preservation of natural (biological)

diversity and for the creation of parks and natural areas to protect that diversity. An undisturbed natural world is of paramount importance to me. P2PH flies in the face of my values and harms me psychologically. It is a moral affront for agencies to renege on their promises to protect for future generations the natural and cultural values deemed significant to the fabric of the community both by experts and the public.

28. Within the context of this lawsuit, I am asking the Court to enjoin implementation of the PCL Alternative, which includes further construction of P2PH, until FHWA complies with NEPA and Section 4(f) of the Transportation Act. Requiring FHWA to rectify the current inadequacies with its analysis will redress the injuries I have complained of here.

29. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States, that to the best of my knowledge, the foregoing is true and correct.

DATED:    July 9, 2017.

_____
Jacqueline Lansing

# ATTACHMENT TO DECLARATION:
## Comments on FEIS as Shown in Attachment E to ROD

| | |
|---|---|
| From: | "Jacqueline Lansing" <jacquilansing@live.com> |
| Subject: | Re: I-70 EAST EIS FEEDBACK FORM |
| Date: | Wed, March 2, 2016 12:13 am |
| To: | webmastercc@i-70east.com,contactus@i-70east.com |

email: jacquilansing@live.com

name: Jacqueline Lansing
address: 2205 Ivanhoe Street
city: Denver
state: CO
zip_code: 80207
phone: 303-901-2971
comment_on_feis: YES
add_to_mailing_list: YES
add_to_online_list: YES
primary_interest_in_project: Neighborhood/Area Resident
interest_in_project: I live nearby and do not like the noise or smell of the highway
and am opposed to the massive storm water detention projects proposed for City Park
Golf Course, the Cole neighborhood, and Park Hill Golf Course. I am opposed to
building a highway that requires such extraordinary protection to work; it does not
make economic or environmental sense. I am opposed to agencies and so called "public
servants" and "stewards" of our natural and historic resources that have total
disregard for the preservation and protection of existing neighborhoods, people, and
resources in the name of "progress" and "redevelopment." I believe in balancing
preservation and development.
how_often_travel_corridor: Frequently
primary_reason_to_travel_corridor: Running errands
how_transportation_can_be_improved_in_corridor: A reroute away from the city
connecting to 270 for through traffic to the West with a local parkway or boulevard
along 46th into the city for business and city traffic or a canal along 46th with
adjacent roadway. This solution will mitigate noise, air pollution, heat island
effect, ozone pollution, greenhouse gas pollution, social justice issues and
environmental damage related to off site drainage issues and soil contamination and
improve connectivity of long separated neighborhoods and wildlife corridors, bring
trees and natural storm water mitigation to downtown, reintroduce the floodplain and
natural water courses their beauty and cleansing processes.
how_receiving_info: Other
rate_website: Need more info
comments_questions: Divide and Conquer is not okay Comments from Jacqueline Lansing,
Denver Resident, March 1, 2016 I 70 is an interstate highway It is okay if Federal,
state and local entities collaborate to get a job done. No problem. But as Tom Hanks
says in "Bridge of Spies" it is one job. One, one, one (one purpose, one
insurance claim, one rule of law) As such all affected and impacted parts whether
they are federal, state or local must be reviewed under one rule, in this case NEPA
standards, as they relate to direct, indirect or cumulative impacts. For the sake of
the whole impacts cannot be segregated out as Federal, State, or local just because

one or another entity pays for them or contracts for the work. I 70 East between Brighton Boulevard and Colorado Boulevard was built as a bridge for a reason: to protect the highway, the water table and the S. Platte River floodplain. To build this segment of highway as anything other than a bridge in this location is pure insanity from a short term and long term cost standpoint, from an environmental standpoint, and from a public policy standpoint. The drainage needs alone of a depressed highway built below the water table are massive and the risks to lives and property enormous. For the highway to protect against 100 year floods in a water prone area the impacts to upstream neighborhoods are massive and unaccounted for in the FEIS. Highway officials argue that Denver City officials have always been planning 100 year flood protection for the area when in fact no such plan is in Denver's 2014 Storm Water Plan. There is no reason for older historic neighborhoods and park lands to bear the brunt of mitigating floods for an unwanted, ecologically unsound, and socially unjust highway. There is no reason for parks and neighborhoods recognized as nationally significant historically to be decimated for an unwanted, ecologically unsound, and socially unjust highway. There is no reason to violate federal, state and local public policy with respect to protection of floodplains and water tables for an unwanted, ecologically unsound, and socially unjust highway. For CDOT to circumvent NEPA, FEMA, Urban Drainage, Clean Water, and Section 106 by alleging these responsibilities are being taken care of by local governments and to divorce them from the highway plan and Federal regulatory requirements is a fraudulent and manipulative legal ruse. CDOT states that the highway has nothing to do with the City's drainage project. If the drainage project has nothing to do with the highway why would CDOT be involved at all in a local public works project, pay for 40% of the flood mitigation project, require oversight of its design, and impose liquidated damages on the city of $5000.00 per day if not completed by September 1, 2019? It is clear that the Intergovernmental Agreement between CDOT, Bridge Enterprise and the City and County of Denver (IGA) are related and therefore it and all of its implications must be reviewed under NEPA. In addition to  its drainage impacts there are implications with respect to permit waivers, dirt, and highway funding that need to be reviewed under NEPA as well. 1.  The IGA calls for the City to waive permit fees. If the City waives permit fees will reviews and regulations also be dispensed with? If not, will city employees work for free? How will their review be accounted for? 2.  The IGA calls for the City to take dirt. Where the City puts the "clean" dirt has impacts to neighborhoods. 3.  The IGA calls for funding the highway with Bridge Enterprise Funds. Funding with vehicle registration fees appears to violate fee accounting rules, principles and practice. In addition the following direct, indirect and cumulative impacts have not been addressed in the FEIS for I 70 East. 1.  Long term maintenance costs of the highway over and above P3 DFBOM contracts and who will pay for them 2.  Contingencies and who will pay for them 3.  Cost overruns and who will pay for them 4.  Financial and environmental costs and impacts of pumping and French drain cleaning 5.  Cost and impact of changing natural drainage channels 6.  Impacts to farmers of floodplain and water table changes 7.  Contamination of the water table and effects on users of the groundwater aquifer 8.  Implication of depleting/pumping out the ground water aquifer 9.  Impacts of using $850 Million of the Bridge Enterprise Fund for viaduct "reconstruction" on maintenance of other bridges. 10.  Ethics of using Bridge Enterprise Fund to build a highway that is not a bridge 11.  Ethics of

prioritizing a bridge which was just given a 15 year repair in 2011 and is not deemed in "poor" condition, when other bridges deemed in poor condition do not get repaired. 12.  Ethics of ignoring citizen comments and misrepresenting facts about drainage and air pollution mitigation. 13.  The FEIS is silent as to what will be done with contaminated dredge material. 14.  The FEIS does not measure the impacts of losing trees in all impacted neighborhoods and parks/golf courses; significant impacts include loss of natural storm water mitigation, increased heat, loss of infiltration, loss of evapo-transpiration, loss of wildlife feeding, nesting, and cover habitat. 15.  The FEIS does not measure the impacts to migratory and feeding corridors for wildlife of a ten lane highway lowered 40 feet below ground level. Current corridors which exist under the viaduct will disappear and affect wildlife access to the S. Platte for drinking and other populations of wildlife across the divide so as to mitigate interbreeding. 16.  The FEIS does not measure the impact of adding additional pervious surface in terms of heat island effect. 17.  The FEIS does not address public opinion as to the loss of the viaduct to stock show attendees; many have reported loving hanging out under the viaduct before and after the stock show to appreciate the industrial history of Denver. Many voted for keeping the Stock Show in Denver because of the viaduct. Viaducts can be embraced; a viaduct in Baltimore hosts one of the best farmers' markets in the country. 18.  The ethics of paying for a highway with vehicle surcharge fees to individuals who will not be using I 70 East at all as well as the ethics of charging and increasing those fees for projects not related to the charges. 19.  The ethics of not taking the highway project to a vote and not rescheduling hearings for those cancelled due to snow. 20.  The ethics of building a cap a foot shorter than the legal limit to avoid hazmat and air filtration requirements. 21.  The ethics of building a highway to current ozone standards knowing that standards are being tightened and a wider highway will exceed them. 22.  The ethics of not conforming to the Mayors' Global Greenhouse Gas Protocol 23.  The ethics of not embracing progressive technologies, sustainable principles, and green infrastructure to protect all the people of Denver from environmental damage.

=================================

REMOTE_HOST=
REMOTE_ADDR=174.29.242.220
HTTP_USER_AGENT=Mozilla/5.0 (Windows NT 5.1; rv:44.0) Gecko/20100101 Firefox/44.0
REMOTE_USER=
HTTP_REFERER=http://www.i-70east.com/feedback-form.html

From: "Jacqueline Lansing" <jacqui.lansing@live.com>
Subject: Final EIS I-70 East comments
Date: Wed, March 2, 2016 12:49 am
To: "contactus@i-70east.com" <contactus@i-70east.com>

To whom it may concern,

The following are my comments regarding the PCL highway proposed to replace the I-70 East viaduct:

> Divide and Conquer is not okay.
> I 70 is an interstate highway.

It is okay if Federal, state and local entities collaborate to get a job done.  No problem.  But as Tom Hanks says in "Bridge of Spies" it is one job.  One, one, one (one purpose, one insurance claim, one rule of law)  As such all affected and impacted parts whether they are federal, state or local must be reviewed under one rule, in this case NEPA standards,  as they relate to direct, indirect or cumulative impacts. For the sake of the whole impacts cannot be segregated out as Federal, State, or local just because one or another entity pays for them or contracts for the work.
I 70 East between Brighton Boulevard and Colorado Boulevard was built as a bridge for a reason:  to protect the highway, the water table and the S. Platte River floodplain.  To build this segment of highway as anything other than a bridge in this location is pure insanity from a short term and long term cost standpoint, from an environmental standpoint, and from a public policy standpoint.
The drainage needs alone of a depressed highway built below the water table are massive and the risks to lives and property enormous.  For the highway to protect against 100 year floods in a water prone area the impacts to upstream neighborhoods are massive and unaccounted for in the FEIS.   Highway officials argue that Denver City officials have always been planning 100 year flood protection for the area when in fact no such plan is in Denver's 2014 Storm Water Plan.
There is no reason for older historic neighborhoods and park lands to bear the brunt of mitigating floods for an unwanted, ecologically unsound, and socially unjust highway.
There is no reason for parks and neighborhoods recognized as nationally significant historically to be decimated for an unwanted, ecologically unsound, and socially unjust highway.
There is no reason to violate federal, state and local public policy with respect to protection of floodplains and water tables for an unwanted, ecologically unsound, and socially unjust highway.
For CDOT to circumvent NEPA, FEMA, Urban Drainage, Clean Water, and Section 106 by alleging these responsibilities are being taken care of by local governments and to divorce them from the highway plan and Federal regulatory requirements is a fraudulent and manipulative legal ruse.  CDOT states that the highway has nothing to do with the City's drainage project.

If the drainage project has nothing to do with the highway why would CDOT be involved at all in a local public works project, pay for 40% of the flood mitigation project, require oversight of its design, and impose liquidated damages on the city of $5000.00 per day if not completed by September 1, 2019?
It is clear that the Intergovernmental Agreement between CDOT, Bridge Enterprise and the City and County of Denver (IGA) are related and therefore it and all of its implications must be reviewed under NEPA. In addition to its drainage impacts there are implications with respect to permit waivers, dirt, and highway funding that need to be reviewed under NEPA as well.

1.  The IGA calls for the City to waive permit fees.  If the City waives permit fees will reviews and regulations also be dispensed with? If not, will city employees work for free?  How will their review be accounted for?

2.  The IGA calls for the City to take dirt.  Where the City puts the "clean" dirt has impacts to neighborhoods.

3.  The IGA calls for funding the highway with Bridge Enterprise Funds. Funding with vehicle registration fees appears to violate fee accounting rules, principles and practice.

In addition the following direct, indirect and cumulative impacts have not been addressed in the FEIS for I 70 East.

1.  Long term maintenance costs of the highway over and above P3 DFBOM contracts and who will pay for them

2.  Contingencies and who will pay for them

3.  Cost overruns and who will pay for them

4.  Financial and environmental costs and impacts of pumping and French drain cleaning

5.  Cost and impact of changing natural drainage channels

6.  Impacts to farmers of floodplain and water table changes

7.  Contamination of the water table and effects on users of the groundwater aquifer

8.  Implication of depleting/pumping out the ground water aquifer

9.  Impacts of using $850 Million of the Bridge Enterprise Fund for viaduct "reconstruction" on maintenance of other bridges.

10.  Ethics of using Bridge Enterprise Fund to build a highway that is not a bridge

11.  Ethics of prioritizing a bridge which was just given a 15 year repair in 2011 and is not deemed in "poor" condition, when other bridges deemed in poor condition do not get repaired.

12.  Ethics of ignoring citizen comments and misrepresenting facts about drainage and air pollution mitigation.

13.  The FEIS is silent as to what will be done with contaminated dredge material.

14.  The FEIS does not measure the impacts of losing trees in all impacted neighborhoods and parks/golf courses; significant impacts include loss of natural storm water mitigation, increased heat, loss of infiltration, loss of evapo-transpiration, loss of wildlife feeding, nesting, and cover habitat.

15.  The FEIS does not measure the impacts to migratory and feeding corridors for wildlife of a ten lane highway lowered 40 feet below ground level.  Current corridors which exist under the viaduct will disappear and affect wildlife access to the S. Platte for drinking and other populations of wildlife across the divide so as to mitigate interbreeding.

16.  The FEIS does not measure the impact of adding additional pervious surface in terms of heat island effect.

17.  The FEIS does not address public opinion as to the loss of the viaduct to stock show attendees; many have reported loving hanging out under the viaduct before and after the stock show to appreciate the industrial history of Denver.  Many voted for keeping the Stock Show in Denver because of the viaduct.  Viaducts can be embraced; a viaduct in Baltimore hosts one of the best farmers' markets in the country.

18.  The ethics of paying for a highway with vehicle surcharge fees to individuals who will not be using I 70 East at all as well as the ethics of charging and increasing those fees for projects not related to the charges.

19.  The ethics of not taking the highway project to a vote and not rescheduling hearings for those cancelled due to snow.

20.  The ethics of building a cap a foot shorter than the legal limit to avoid hazmat and air filtration requirements.

21.  The ethics of building a highway to current ozone standards knowing that standards are being tightened and a wider highway will exceed them.

22.  The ethics of not conforming to the Mayors' Global Greenhouse Gas Protocol.

23.  The ethics of not embracing progressive technologies, sustainable principles, and green infrastructure to protect all the people of Denver from environmental damage.

I hope that you will take a harder look at your proposed alternative and consider rerouting the highway out of the city for through traffic and building a beautiful Gateway entrance to Denver for local traffic in the Olmsted tradition.  There is a reason the Frederic Law Olmsted Park and Parkway System is deemed Nationally Significant and is admired by all those who visit Denver.  Tree lined streets mitigate floods, reduce heat, absorb carbon, and are beautiful.  The City Park Golf Course, listed on the National Register of Historic Places, and old Denver neighborhoods with mature trees serve the same function.  To decimate them for industrial detention projects would be a crime. To build a below ground highway in the water table and floodplain that requires extraordinary mitigation and ongoing maintenance would also be a crime.

Respectfully submitted,

Jacqueline Lansing

Denver resident

March 1, 2016