# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.17-cv-01661-WYD

KYLE ZEPPELIN, BRAD EVANS, CHRISTINE O'CONNOR,
KIMBERLY MORSE, JACQUELINE LANSING, and JANET FEDER,

      Plaintiffs,

v.

FEDERAL HIGHWAY ADMINISTRATION, an administrative agency of the
United States Department of Transportation,

      Defendants,

v.

COLORADO DEPARTMENT OF TRANSPORTATION, and SHAILEN P. BHATT,
in his official capacity as Executive Director of the Colorado Department of Transportation,

      Defendant-Intervenors.

---

## DECLARATION OF JANET FEDER

---

I, JANET FEDER, hereby declare:

1.      The facts set forth in this Declaration are based upon my personal knowledge.  If called as a witness, I could and would testify competently to these facts.  As to those matters that reflect an opinion, they reflect my personal opinion and judgment on the matter.

2.      I am a citizen of the United States and resident of Denver, Colorado.  I live in the Cole neighborhood.  My home is directly adjacent to the forthcoming construction of the 39th

1

Avenue Greenway and Open Channel, which is part of the Platte to Park Hill stormwater project ("P2PH").

3.        My home is a traditional brick bungalow built in 1896.  I purchased my home for $52,000 in 2006 with the intention of fully renovating it.  I have since invested approximately $130,000 into this property and own my home outright.  My home has all new drywall, flooring, insulation, windows, ceilings, fixtures, electrical, heating, and plumbing.  Since purchasing the home, I have constructed a two-car garage on the property, landscaped the front and back yards, and tuck-pointed and painted the exterior.  Everything in the home is new within the last 12 years, including a new custom kitchen and bathroom.  While I maintained the original exterior walls of the house to preserve its historic character and charm, the home is otherwise modernized.  I love my home.  I invested this substantial amount of time, money, and energy into this property with the intention of living here for the foreseeable future.

4.        My home is situated on the west side of Gilpin just south of 39th Avenue.  There is only one lot on the west side of that block to the north of mine.  That lot, which sits between my property and 39th Avenue, contains no structures.  It is an otherwise paved, vacant lot owned by a neighborhood businessman and has been used since at least 2006 to store steel building materials.  The property line bisecting my residential property from my neighbor's lot is approximately two feet from the north wall of my home.  My two bedrooms and one bathroom are situated along that same north wall.  I have attached to this declaration a photograph showing the proximity of my property line (depicted by the chain link fence) to the north wall of my home.

2

5.       When I purchased my home in 2006, I had no knowledge that the City of Denver ("the City") was planning to construct a major stormwater project literally right outside my bedroom window.  In fact, I have seen nothing to suggest that P2PH or any other stormwater project consisting of an open channel along 39th Avenue was ever contemplated by the City prior to 2013 or before the Colorado Department of Transportation ("CDOT") first proposed the Partial Cover Lowered ("PCL") Alternative to the Central 70 Project.  I am aware that Denver's most recent Storm Drainage Master Plan – a public document released in 2014 – does *not* call for 100-year flood protection in any part of the City.

6.       I have viewed the Intergovernmental Agreement ("IGA") entered into by CDOT and the City.  It is clear on the face of that document that the Two Basins Drainage Project, which is currently known as P2PH, is being undertaken for the purpose of providing 100-year flood protection for the lowered portion of I-70 as proposed by CDOT and approved by the Federal Highway Administration ("FHWA").  It is also clear on the face of the IGA that the first phase of P2PH must be accomplished by December 1, 2017.  This first phase is known as the Early Action Drainage Project ("EADP").  The EADP includes the construction of Globeville Landing Outfall ("GLO") and the acquisition of all private property rights needed to complete the entirety of P2PH.

7.       I have been approached by H.C. Peck & Associates, a company hired by the City to make property acquisitions for P2PH.  The City wants a two-year construction easement across my property, and I have learned from Sam Stevens, the project manager, that construction of the 39th Avenue Greenway and Open Channel will begin in early 2018.  I have also learned that within the context of this construction, all of 39th Avenue to the north of my home, plus the

3

lot to the north of my home, will be entirely destroyed.  The City has already cleared the lot to the north and is currently clearing out adjacent lots in preparation of the open channel construction.

8.      Although (somewhat perplexingly) the design for the 39th Avenue Greenway and Open Channel has not been finalized, it is clear that 39th Avenue will be removed and replaced with an open channel approximately 100 feet wide and ten feet deep.  I understand this channel will capture all stormwater in the Montclair Basin flowing north to 39th Avenue and convey that water west to a detention pond approximately one block from my home.  From that detention pond, the stormwater will be released into an underground pipe, flow underneath the railroad tracks, and finally discharge into the South Platte River via GLO.  The City intends to construct a service road on the south side of the open channel for service vehicle access.  That service road will be within feet of my north wall.

9.      During the minimum of two years of construction of the 39th Avenue Greenway and Open Channel, I will be disturbed daily by inescapable noise and dust.  This will be especially unbearable in the summertime.  My home does not have central air conditioning and it will be impossible for me to open my windows or get any ventilation or respite from the heat.

10.     The easement the City is attempting to extract from me contemplates construction activities from 7:00 a.m. until 9:00 p.m.  These construction activities will disturb every aspect of my daily home life.

11.     I am a professional composer, performer, collaborator, and educator.  I serve on the boards of Creative Music Works and Supporters of Children.  I am an artistic associate of Square Product Theatre.  I am an advisory board member of the Alzheimer's Association

4

Colorado Chapter.  I am adjunct faculty at the University of Colorado in Colorado Springs and

Naropa University in Boulder.  I perform, collaborate, record, and teach internationally.  I also

teach private students one day a week in Denver and regularly use my home as a

recording/rehearsal studio and my office.

12.     It will be completely impossible for me to continue my professional activities in

my home during the two-year construction period.  Beyond this, I have genuine concerns for my

safety and property during the construction period.  I do not want workers on my property every

day and/or directly outside of my bedroom and bathroom windows.  I do not know how it will be

safe for me to move musical instruments and sound equipment from my house to my car in plain

sight of construction crews.  I would be advertising the contents of my home every time I come

and go with the tools of my work.  For these reasons, I have asked the City to relocate me during

the construction period.  The City has not responded to any of my concerns and has thus far

made no offer to help me relocate during construction.

13.     The temporary easement the City wants across my property is for a two-year term

with a unilateral option to extend if needed by the City.  The value of the proposed easement as

originally proposed was a mere $65 per square foot.  This price is unconscionable.  I am aware,

for example, that a home across the street (3834 Gilpin) sold in March of 2017 for $507,000.

That purchase price reflects a value of approximately $341 per square foot.  That home is 200

square feet larger than my own, but its amenities (garage, plumbing, heating, electric) are not as

upgraded.  I do not believe that any piece of land within the vicinity of my neighborhood is

valued as low as the City has attempted to value my own.  This low value, coupled with the fact

that the City refuses to take seriously any of my concerns about the impacts to me and my

property from the protracted construction period, have kept me from signing the temporary easement proposed by the City.

14.     Such concerns include fear for the structural integrity of my home.  As previously mentioned, the north wall of my home is 120 years old and situated less than three feet from the impending removal of all pavement from, and excavation of, the lot to the north and 39th Avenue.  I am concerned that the vibration of jackhammering and/or surface/subsurface shifts may cause physical damage to my property.  I have recently doubled the amount of insurance on my home to ensure that my limits encompass the need for a total rebuild.  The City has been unwilling to speak to me about whether it would indemnify me for any losses to my home caused by the construction of the 39th Avenue Greenway and Open Channel.

15.     Such concerns also include fear for my health due to the removal of pavement and excavation directly next to my property.  The proposed construction area of the 39th Avenue Greenway and Open Channel is located within the Vasquez Boulevard/I-70 Superfund site ("VB/70 Site").  The north lot and 39th Avenue were paved decades ago and I have been given zero assurances that the dirt that lies below does not contain toxins that will be harmful to my health.  I know that because this area is included in the VB/70 Site, its soils likely contain heightened levels of arsenic and lead.  I find it appalling that construction in this Superfund site is proceeding without any environmental review and without formal public comment.  The City's prevailing sentiment that it will deal with toxic materials if and when it encounters them is unacceptable.  By the time the City knows it is disturbing and spreading toxic dust, that dust will already be in my house and my health will have already been compromised.

16.     Such concerns furthermore include fear for the long-term value of my home.  The pending open channel will be designed to carry ten feet of unclean and potentially contaminated stormwater directly beside my house in flood events.  I believe the proximity of my home to an open channel designed to convey dirty stormwater will diminish the long-term value of my home.  Beyond this, the placement of the open channel directly adjacent to my home puts my property at a real risk of flooding.  The City has provided no assurances that my property is not now susceptible to flooding, yet has been unwilling to discuss with me the diminishment of my home's value or the increased costs to me of obtaining flood insurance.  From the time I was first approached by H.C. Peck & Associates with the City's easement proposal, the City has offered nothing but unsatisfying answers to my questions and has flatly refused to entertain what it calls "what if scenarios."

17.     I have been deeply concerned about the ramifications of P2PH since I first became aware of this project in 2016.  Since that time, I have been to dozens of community meetings and done everything I can to educate myself about the future of my neighborhood.  I know that both CDOT and the City have repeatedly denied that P2PH is part of the Central 70 Project.  I believe this assertion is patently false.

18.     I believe that all components of P2PH should have been included in the Final Environmental Impact Statement ("FEIS") for the Central 70 Project.  That is because I believe, based on my reading of the Record of Decision ("ROD") and the IGA, that all components of P2PH – including the 39th Avenue Open Channel and GLO – are necessary to protect the lowered portion of the highway from a 100-year flood event.

7

19.     In the ROD, FHWA admits that the offsite drainage components of the Central 70

Project will physically connect to GLO.  The GLO is the outfall for all of the stormwater flowing

through the Montclair Basin.  This water flows north towards I-70.  It is my understanding that

the purpose of the open channel is to capture the water that would otherwise flow north and

intercept I-70.  CDOT should not be allowed to start its construction of the open channel or

continue its construction at GLO without a proper analysis that complies with the National

Environmental Policy Act ("NEPA").

20.     In the IGA, CDOT commits to funding 40% of P2PH and states that P2PH will

provide 100-year flood protection for I-70.  Although CDOT now refutes that P2PH is somehow

connected to the Central 70 Project, it makes no sense for this state agency to help fund P2PH if

it receives no benefit.  To the extent that CDOT and FHWA depend on the functionality of any

part of P2PH for the Central 70 Project, P2PH should have been evaluated under NEPA.  And

even if P2PH were not essential to protect the lowered portion of the highway from flooding,

P2PH and Central 70 are huge projects happening in Denver at the same time.  These projects

work together to impact our community, and the public deserves both a transparent process and a

chance to submit formal comments (and opposition) to P2PH.

21.     I decided to join this lawsuit because I believe the impacts of P2PH should have

been analyzed under NEPA and that construction of P2PH should not proceed until a NEPA

review has been completed.  The NEPA process is not administrative busy work.  Rather, this is

the process by which the government is supposed to inform the public and protect human health

and the environment.  Including P2PH in the Central 70 NEPA process will ensure the public

knows the true scope of the Central 70 Project, the final design for P2PH, the environmental and

human health impacts of P2PH, and what mitigation measures – if any – will be put in place for area residents like myself who will truly be impacted by this enormous construction endeavor.

22.     I have not signed the City's proposed construction easement over my property due to the lack of information and assurances from the City.  I feel that I have been pushed into a proverbial corner and have no idea how to adequately protect myself.  I do not want to sell and permanently move out of my home, yet I do not know how to live here comfortably over the next two years while sitting in the middle of a construction zone.  I am concerned for my health, my safety, my peace and quiet, and my ability to continue my professional activities.  I think the construction should be halted until this project is properly analyzed and the public informed.

23.     Within the context of this lawsuit, I am asking the Court to enjoin further construction of the Central 70 Project and P2PH until FHWA and CDOT comply with NEPA. Requiring FHWA and CDOT to rectify the current inadequacies with the NEPA analysis will redress the injuries I have complained of here.

24.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States, that to the best of my knowledge, the foregoing is true and correct.

DATED:        August 29, 2017.


Janet Feder

ATTACHMENT 1:
Photograph of Property

