**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Actions Nos.    17-cv-01661-WYD
                      17-cv-01679-WYD


KYLE ZEPPELIN; BRAD EVANS; CHRISTINE O'CONNOR; KIMBERLY MORSE;
JACQUELINE LANSING; SIERRA CLUB; ELYRIA AND SWANSEA NEIGHBORHOOD
ASSOCIATION; CHAFEE PARK NEIGHBORHOOD ASSOCIATION; and COLORADO
LATINO FORUM,

             Plaintiffs,

    v.

FEDERAL HIGHWAY ADMINISTRATION, ELAINE CHAO, in her official capacity as
Secretary of Transportation; and JOHN M. CARTER; in his official capacity as Division
Administration,

             Defendants,

    v.

COLORADO DEPARTMENT OF TRANSPORTATION, et al.,

             Defendant-Intervenors.

———————————————

**COLORADO DEPARTMENT OF TRANSPORTATION'S ANSWER TO
ZEPPELIN PLAINTIFFS' FIRST AMENDED PETITION**

———————————————

       Defendant-Intervenors (collectively, "CDOT") answer the Zeppelin Plaintiffs' First

Amended Petition as follows:

**PRELIMINARY STATEMENT**

    1.      Contains a characterization of Plaintiffs' case, to which no response is required.

    2.      Admitted as to first sentence.  Admitted that a Record of Decision ("ROD")

generally constitutes a final agency action for purposes of Administrative Procedure Act

("APA") review, but denied that the ROD at issue here constitutes a final agency action for purposes of APA review of some or all of the claims in the Petition.

3.      Contains a characterization of a federal statute, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

4.      Contains a characterization of federal statutory and regulatory provisions, which speak for themselves and are the best evidence of their own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

5.      Contains a characterization of federal statutory and regulatory provisions, which speak for themselves and are the best evidence of their own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

6.      Contains a characterization of federal statutory and regulatory provisions, which speak for themselves and are the best evidence of their own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

7.      Contains a characterization of federal statutory and regulatory provisions, which speak for themselves and are the best evidence of their own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

8.      Purports to describe the preferred alternative selected in the ROD, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

9.      Admitted that the total approximate cost of the Central 70 Project (the "Project") approved in the ROD is approximately $1.1 billion and that, although FHWA and the City are

contributing some funds to the Project, CDOT will bear the vast majority of the Project's cost. Otherwise denied.

10. Admitted to the extent consistent with the Hazardous Materials analysis and Technical Report Addendum to the Final EIS and ROD. Otherwise denied.

11. Denied that the Project will spread contamination and expose workers or the public to hazardous substances, and denied that hazardous materials will throw the project off budget or off schedule. The Final EIS and ROD thoroughly considered the Project's potential impacts from possible exposure of hazardous materials and adopted reasonable mitigation measures to avoid or minimize those impacts. The Final EIS and ROD also ensure that any contamination encountered will be cleaned up in compliance with applicable state and federal regulations.

12. Denied. The Final EIS and ROD thoroughly considered the Project's potential impacts from possible exposure of hazardous materials and mitigation measures to avoid or minimize those impacts.

13. Denied. The Final EIS and ROD thoroughly considered the Project's potential impacts from possible exposure of hazardous materials and mitigation measures to avoid or minimize those impacts.

14. Denied. As shown in the Drainage and Hydrology analysis and Hydraulics and Hydrology Technical Report Addendum to the Final EIS and ROD, the project contains independent provisions to protect against 100-year floods.

15.     Admitted that the City is planning to implement a drainage project designed to protect its northern neighborhoods from 100-year stormwater flows, but denied that the City's drainage project is in response to the Central 70 Project.

16.     Admitted that CDOT has agreed to provide some CDOT funds for the City's drainage project, which could reduce stormwater flows to both the existing I-70 alignment and the proposed lowered portion of I-70.  Admitted that the City is constructing its drainage project on a phased schedule.  Denied that the City is constructing its drainage project to meet the needs of the PCL Alternative.

17.     Denied.  The City's drainage project requires no federal approval, utilizes no federal funds, and has independent utility.

18.     Denied.  The Final EIS and ROD considered the impacts of the City's work on Globeville Landing Outfall ("GLO"), which includes the Brighton Box Culvert, and the cumulative impacts of the City's drainage project.

19.     Denied.  The Final EIS and ROD complied with all statutory and regulatory requirements.

20.     CDOT lacks sufficient knowledge or information to form a belief as to the truth of the total cost of the City's drainage project.

21.      Admitted that the cost estimate for the Project in the Final EIS does not include the City's cost to build its drainage project.  Otherwise denied.  The cost estimate for the Project in the Final EIS and ROD is accurate.

22.      Denied.  The Final EIS and ROD complied with all statutory and regulatory requirements.

4

23.     Denied.  This paragraph contains a vague characterization of the scope of the City's drainage project.

24.     Admitted that some of the improvements fall within the VB/70 site.  CDOT lacks sufficient knowledge or information to form a belief as to the truth of Plaintiffs' assertion that all of the improvements fall within that site.

25.     Admitted that the City has begun construction of GLO and has acquired some additional properties.  CDOT lacks sufficient knowledge or information to form a belief as to the truth of the current status of the City's acquisition of property rights.

26.     Denied.  The Final EIS and ROD considered the impacts of the City's work on GLO, as well as the cumulative impacts of the Project together with the City's drainage project.

27.     Denied.  The Final EIS and ROD complied with all statutory and regulatory requirements.

28.     Admitted that the golf course is within a public park.

29.     Admitted.

30.     Admitted.  The City drainage project at City Park is not part of the Central 70 Project nor is it subject to any FHWA action.

31.     Admitted.  The City drainage project at City Park is not part of the Central 70 Project nor is it subject to any FHWA action.

32.     Denied.  FHWA had no duty to consider the City's activities at City Park Golf Course under Section 4(f).

33.     Contains a characterization of Plaintiffs' case, to which no response is required. Denied that the Final EIS and ROD violate NEPA.

34.     Contains a characterization of Plaintiffs' case, to which no response is required. Denied that the Final EIS and ROD violate NEPA.

35.     Contains a characterization of Plaintiffs' case, to which no response is required. Denied that the Final EIS and ROD violate NEPA.

36.     Contains a characterization of Plaintiffs' case, to which no response is required. Denied that the Final EIS and ROD violate Section 4(f).

37.     Denied that Plaintiffs are entitled to any relief.

38.     Denied that Plaintiffs are entitled to any relief.

## JURISDICTION AND VENUE

39.     CDOT reserves all jurisdictional defenses and therefore denies the assertions in this paragraph.

40.     CDOT reserves all jurisdictional defenses and therefore denies the assertions in this paragraph.

41.     CDOT reserves all jurisdictional defenses and therefore denies the assertions in this paragraph.

42.     Admitted that, if the Court has jurisdiction, venue is proper in the District of Colorado.

## PARTIES

43-72.  CDOT lacks knowledge or information sufficient to form a belief as to the truth of Plaintiffs' standing allegations.

73.     Admitted that FHWA is a federal agency with authority to approve federally funded highway projects.  Otherwise denied.

6

74.     Admitted that FHWA is the federal lead agency that issued the ROD for the Project and reviewed and approved all NEPA documentation.  CDOT lacks knowledge or information sufficient to form a belief as to the truth of the precise timing that FHWA will "commit federal funds," which is an undefined and vague phrase.  FHWA and CDOT intend to sign a Project Agreement addressing the commitment and use of federal funds as soon as October 2017.  Otherwise denied.

75.     Admitted that CDOT is a state agency whose mission includes, but is not limited to, ensuring that the State of Colorado has a safe and efficient highway system.

76.     Admitted that CDOT acted as the state lead agency and led the effort to prepare the NEPA documentation for the Project.  Admitted that CDOT will bear the vast majority of the cost to build the Project.  Otherwise denied.

77.     Admitted that CDOT is a signatory to the IGA.  Otherwise, the document speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

78.     Admitted.

79.     Admitted.

## LEGAL BACKGROUND
## NEPA, SECTION 4(f), and APA

80-103.  Characterize various federal statutes, regulations, and cases, all of which speak for themselves and are the best evidence of their own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

## FACTUAL ALLEGATIONS

104.    Characterizes a Federal Register notice that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

105.    Characterizes a Federal Register notice that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

106.    Characterizes a Federal Register notice that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

107.    Characterizes a Federal Register notice that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

108.    Admitted that portions of the Project and portions of the City's drainage project lie within the VB/70 site.  This paragraph otherwise refers to EPA's designations of the Operable Units of the VB/70 site, which are contained in EPA decision documents that are the best evidence of their own contents.  Denied to the extent there is any discrepancy between Plaintiff's characterization and the source material.  Denied to the extent inconsistent with the Hazardous Materials analysis and Technical Report Addendum in the Final EIS and ROD.

109.    Characterizes EPA findings and actions, which are contained in EPA decision documents that are the best evidence of their own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.  Denied that any

excavation in OU1 will disturb and spread contaminants or pose a risk to human health and the environment.  Denied to the extent inconsistent with the Hazardous Materials analysis and Technical Report Addendum in the Final EIS and ROD.

110.    Characterizes unspecified EPA findings and actions, which presumably are contained in EPA decision documents that are the best evidence of their own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material. Denied that any excavation in OU2 will disturb and spread contaminants or pose a risk to human health and the environment.  Denied to the extent inconsistent with the Hazardous Materials analysis and Technical Report Addendum in the Final EIS and ROD.

111.    Purports to display the boundaries of EPA Operable Units, which are contained in an EPA decision document that is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

112.    Characterizes unspecified EPA findings and actions, which presumably are contained in EPA decision documents that are the best evidence of their own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

113.    Characterizes unspecified EPA findings and actions, which presumably are contained in EPA decision documents that are the best evidence of their own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

114.    Characterizes unspecified studies, which are the best evidence of their own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.  Allegations regarding "one of the highest" are vague.

115.    Characterizes the Draft EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

116.    Characterizes the Draft EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

117.    Characterizes the Draft EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

118.    Characterizes the Draft EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

119.    Purports to characterize comments on the Draft EIS, which speak for themselves and are the best evidence of their own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

120.    The allegations in this paragraph are drawn from the Supplemental Draft EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

121.    The allegations in this paragraph are drawn from the Supplemental Draft EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

122.    Admitted that the PCL Alternative was included in the Supplemental Draft EIS. Otherwise denied.

123.    Characterizes a document that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

124.    Characterizes a document that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

125.    Characterizes a document that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

126.    Characterizes a document that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

127.    Characterizes a document that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

128.    Characterizes a document that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

129-146.  Purport to characterize the Supplemental Draft EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

147.    Denied.  The Final EIS and ROD thoroughly considered the potential that the Project will encounter hazardous materials and the potential that encountering such materials could under some circumstances affect Project costs.

148.    Denied.  The Final EIS and ROD thoroughly considered the potential that the Project will encounter hazardous materials and the potential that encountering such materials could under some circumstances affect the construction schedule.

149.    Denied.  The Final EIS and ROD considered the impacts of the City's work on GLO and the cumulative impacts of the Project.  This paragraph characterizes the Hazardous Materials Technical Report Addendum to the Supplemental Draft EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent that Plaintiffs' characterization departs from the source material.

150.    Characterizes a document that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

151.    Characterizes a document that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

152.    Characterizes a document that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

153.    Characterizes a document that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

154.    Characterizes a document that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

155.    Characterizes a document that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

156.    Characterizes a document that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

157.    Characterizes a document that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.  Plaintiffs' characterization of the various components of the drainage system for the Project and the City's drainage project is inaccurate and incomplete and therefore is denied.

158.    Characterizes a document that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

159.    Characterizes a document that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

160.    Admitted.

161.    Characterizes a document that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

162.    Admitted that the State Controller approved the IGA on September 14, 2015.

163.    Characterizes a document that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

164.    Characterizes a document that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

165-175.  Characterize the Final EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

176.    Admitted that the cost estimate for the Project in the Final EIS does not include the City's cost to build its drainage project.

177-183.   Characterize the Final EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

184.    Characterizes a document that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

185.     Characterizes a document that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

186.    Characterizes a document that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

187.    Characterizes a document that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

188.    Characterizes a document that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

189.    Characterizes a document that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

190.    Characterizes a document that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

191-202.  Characterize the ROD, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

203.    Denied.  The Final EIS and ROD sufficiently considered the Project's potential impacts from and mitigation for possible exposure of hazardous materials.

204.    Denied.  The Final EIS and ROD sufficiently disclosed and considered the cost of the Project.

205.    Denied.  The Final EIS and ROD sufficiently considered the need to remediate hazardous materials that may be encountered during construction and the potential that encountering such materials could under some circumstances affect the construction schedule.

206.    Characterizes the ROD, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

207.    Characterizes the ROD, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Plaintiffs' characterization and the source material.

208.    CDOT lacks sufficient knowledge or information to form a belief as to the truth of the total cost of the City's drainage project.

209.    Denied.  The Final EIS and ROD considered the impacts of the City's work on GLO and the cumulative impacts of the Project together with the City's drainage project.

210.    Denied.  The Final EIS and ROD sufficiently considered the cumulative impacts of the Project together with the City's drainage project.

211.    Admitted that the cost estimate for the Project in the Final EIS does not include the City's cost to build its drainage project.  Otherwise denied.  The cost estimate for the Project in the Final EIS and ROD is accurate.

212.    Admitted.  FHWA had no duty to consider the City's activities at City Park Golf Course under Section 4(f).

213.    Admitted.  FHWA had no duty to consider the City's activities at City Park Golf Course under Section 4(f).

**FIRST CLAIM FOR DECLARATORY RELIEF**

214-231.  CDOT incorporates its previous responses and otherwise denies the allegations in paragraphs 214 to 232 in their entirety.  The Final EIS and ROD sufficiently considered the Project's potential impacts from possible exposure of hazardous materials.

**SECOND CLAIM FOR DECLARATORY RELIEF**

231-243.  CDOT incorporates its previous responses and otherwise denies the allegations in paragraphs 212 to 243 in their entirety.  The Final EIS and ROD sufficiently considered mitigation for possible exposure of hazardous materials.

## THIRD CLAIM FOR DECLARATORY RELIEF

244-257.  CDOT incorporates its previous responses and otherwise denies the allegations in paragraphs 244 to 257 in their entirety.  The cost estimate for the Project in the Final EIS and ROD is accurate.

## FOURTH CLAIM FOR DECLARATORY RELIEF

258-285.  CDOT incorporates its previous responses and otherwise denies the allegations in paragraphs 258 to 285 in their entirety.  For the reasons stated in the ROD, the Project and the City's drainage project are not connected actions.

## FIFTH CLAIM FOR DECLARATORY RELIEF

286-295.  CDOT incorporates its previous responses and otherwise denies the allegations in paragraphs 286 to 295 in their entirety.  The Project and the City's drainage project are not similar actions, and FHWA had no duty to analyze them as such in the Final EIS or ROD.

## SIXTH CLAIM FOR DECLARATORY RELIEF

296-306.  CDOT incorporates its previous responses and otherwise denies the allegations in paragraphs 296 to 306 in their entirety.  The Final EIS and ROD sufficiently considered the cumulative impacts of the Project together with the City's drainage project.

## SEVENTH CLAIM FOR DECLARATORY RELIEF

307-318.  CDOT incorporates its previous responses and otherwise denies the allegations in paragraphs 307 to 318 in their entirety.  FHWA had no duty to consider the City's activities at City Park Golf Course under Section 4(f).

## PRAYER FOR RELIEF

CDOT denies that Plaintiffs are entitled to any of the relief requested.

**GENERAL DENIALS**

1.      CDOT further denies each and every allegation not specifically admitted above.

2.      FHWA has not yet produced the administrative record for its decision.  The Petition relies on or incorporates documents that are not in the administrative record for FHWA's decision and therefore should not be considered by the Court.  Notwithstanding any of the above responses to the individual paragraphs of the Petition, CDOT denies all of Petitioners' allegations that depend for their support on documents outside of the administrative record for FHWA's decision.

**AFFIRMATIVE DEFENSES**

1.       The Court lacks subject matter jurisdiction over some or all of the claims in the Petition because Plaintiffs lack standing, having failed to demonstrate an injury-in-fact caused by the federal agency action at issue or redressible by an order setting aside that federal agency action.

2.      The Court lacks subject matter jurisdiction over some or all of the claims in the Petition because there has been no final agency action or the action is committed to agency discretion by law and thus APA review is unavailable.

3.      Plaintiffs failed to exhaust their administrative remedies and/or waived the right to assert some or all of the claims and arguments in the Petition.

Respectfully submitted,


JOHN E. PUTNAM
NICHOLAS A. DIMASCIO
KAPLAN KIRSCH & ROCKWELL LLP
1675 Broadway, Suite 2300
Denver, CO  80202
(303) 825-7000
jputnam@kaplankirsch.com
ndimascio@kaplankirsch.com

BRENT E. BUTZIN
Assistant Attorney General
1300 Broadway, 10th Floor
Denver, CO 80203
(720) 508-6638
Brent.Butzin@coag.gov


SEPT. 12, 2017                           *s/ Nicholas A. DiMascio*
                                         NICHOLAS A. DIMASCIO

## CERTIFICATE OF SERVICE

I hereby certify that on this twelfth day of September, 2017, I electronically filed the

foregoing document with the Clerk of the Court using the CM/ECF system which will send

notification of such filing to the following email addresses:

Melissa A. Hailey
Aaron D. Goldhamer
Keating Wagner Polidori Free, P.C.
1290 Broadway, Suite 600
Denver, CO 80203
(303) 534-0401
(303) 534-8333
mah@keatingwagner.com
agoldhamer@keatingwagner.com

James Jay Tutchton
Tuchton Law Office
6439 East Maplewood Avenue
Centennial, CO 80111
(720) 301-3843
jtuchtonlo@gmail.com

Robert E. Yuhnke
4050 Se Hosner Terrace
Gresham, OR  97080
Yuhnke@prodigy.net
303-499-0425

Andrea S. Gelfuso
Andrea Gelfuso, Attorney at Law
2402 South Holland Street
Lakewood , CO  80227
303-955-1910
Email:Agelfuso6@gmail.com

Carter F. Thurman
Mayte Santacruz
U.S. Department of Justice
Env't & Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
(202) 305-0465 (phone)
(202) 305-0506 (fax)
carter.thurman@usdoj.gov
mayte.santacruz@usdoj.gov

David A. Carson
United States Department of Justice
Env'l Natural Resources Division
Environmental Defense Section
Denver Place Building
999 18th Street
South Terrace, Suite 370
Denver, CO 80202
(303) 844-1349
david.a.carson@usdoj.gov

Gregory Nicholas Corbin
Milligan Rona Duran & King, LLC
1627 Vine Street
Denver , CO  80206
720-414-2000
Fax: 855-395-5525
Email:Gnc@mrdklaw.com

s/ Nicholas A. DiMascio
NICHOLAS A. DIMASCIO