IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action Nos.     17-cv-01661-MJW
                      17-cv-01679-MJW

KYLE ZEPPELIN; BRAD EVANS; CHRISTINE O'CONNOR; KIMBERLY MORSE; JACQUELINE LANSING; JANET FEDER

SIERRA CLUB; ELYRIA AND SWANSEA NEIGHBORHOOD ASSOCIATION; CHAFEE PARK NEIGHBORHOOD ASSOCIATION; AND COLORADO LATINO FORUM,

   Plaintiffs,

 v.

FEDERAL HIGHWAY ADMINISTRATION, ELAINE CHAO, in her official capacity as Secretary of Transportation; and JOHN M. CARTER, in his official capacity as Division Administrator,

   Defendants,

 v.

COLORADO DEPARTMENT OF TRANSPORTATION, and SHAILEN P. BHATT, in his official capacity as Executive Director of the Colorado Department of Transportation,

   Defendant-Intervenors.

---

**FEDERAL HIGHWAY ADMINISTRATION'S MOTION TO DISMISS CLAIMS 4, 5, AND 7 OF PLAINTIFFS' AMENDED PETITION IN *ZEPPELIN V. FHWA, ET AL.* (17-CV-01661) FOR LACK OF SUBJECT MATER JURISDICTION**

— AND —

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

---

Defendant Federal Highway Administration ("FHWA") hereby moves to dismiss Claims 4, 5, and 7 of the Amended Petition filed by Kyle Zeppelin and other named plaintiffs in Case No. 17-cv-01661 ("Plaintiffs"), ECF No. 25, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3) for lack of subject matter jurisdiction. For the reasons explained in the following memorandum of law, FHWA respectfully requests that the Court dismiss Claims 4, 5, and 7 of Plaintiffs' Amended Petition with prejudice.

1

## INTRODUCTION

Claims 4, 5, and 7 of Plaintiffs' Amended Petition represent a failed attempt to federalize what is purely a city-state project. The Federal Highway Administration ("FHWA") has played no role in the city's flood-control project challenged in these claims, and lacks any authority over it. Plaintiffs nevertheless seek review of FHWA's Record of Decision ("ROD") authorizing a highway project that will replace a deteriorating section of I-70 in Denver ("Central 70"), alleging that the city's project and Central 70 are "connected" and "similar" actions for purposes of the National Environmental Policy Act ("NEPA") that should have been analyzed as one project and are subject to review under Section 4(f) of the Department of Transportation Act.

These claims must be dismissed for lack of subject matter jurisdiction. Plaintiffs' reliance on the Administrative Procedure Act ("APA") to invoke the Court's jurisdiction for these NEPA and Section 4(f) claims fails because the APA waiver to the United States' sovereign immunity applies only to *federal* agency action. Plaintiffs did not allege, and cannot allege, any FHWA action with respect to the city's flood-control project because there is none. FHWA has never approved, funded, or taken any action granting it control over this purely local project. Without this key component—FHWA's control over the city's flood-control project— the Court has no authority to review these APA-based claims.

Alternatively, these claims should be dismissed because Plaintiffs lack standing. The allegations in Plaintiffs' Amended Petition make it clear that the cause of their alleged injuries is not FHWA's ROD, which remains entirely outside FHWA's control, but the city's flood-control project. Moreover, the city has testified that it will complete its flood-control project whether or not Central 70 moves forward. Thus, an order setting aside FHWA's ROD for Central 70 will not redress Plaintiffs' alleged injuries.

2

## STATUTORY BACKGROUND

### A.     The National Environmental Policy Act

NEPA "requires federal agencies to examine and disclose the environmental impacts of their proposed actions." *San Juan Citizens All. v. Stiles*, 654 F.3d 1038, 1042 (10th Cir. 2011). Compliance with NEPA, however, is required only if the federal government's involvement in a project is sufficient to constitute a "major Federal action." *Ross v. Fed. Highway Admin.*, 162 F.3d 1046, 1051 (10th Cir. 1998).

NEPA regulations define "major Federal actions" as actions "with effects that may be major and which are potentially subject to Federal control and responsibility." 40 C.F.R. §1508.18(b)(4). They can "include new and continuing activities, including projects and programs entirely or partly financed, assisted, conducted, regulated, or approved by federal agencies." 40 C.F.R. § 1508.18(a). Nonfederal activity does not constitute a "major Federal action" unless "the federal government has 'actual power' to control the project." *Ross*, 162 F.3d at 1051; *Sierra Club v. Hodel*, 848 F.2d 1068, 1089 (10th Cir. 1988) ("[T]he federal agency 'must possess actual power to control the nonfederal activity.'"), *overruled on other grounds by Vill. of Los Ranchos de Albuquerque v. Marsh*, 956 F.2d 970 (10th Cir. 1992).

### B.     Section 4(f) of the Department of Transportation Act

Section 4(f) authorizes the Secretary of Transportation to fund programs or projects requiring the use of a public park only if there is "no prudent and feasible alternative to using that land" and the program or project includes "all possible planning to minimize harm to the park." 49 U.S.C. § 303(c).

Section 4(f) applies only to federal projects. *See Vill. of Los Ranchos de Albuquerque v. Barnhart*, 906 F.2d 1477, 1484 (10th Cir.).

3

### C. The Administrative Procedure Act

Where, as here, the relevant statutory provisions do not provide a private right of action, judicial review of agency decisions is available only through the APA. *See Utah Envtl. Cong. v. Russell*, 518 F.3d 817, 823 (10th Cir. 2008) (because NEPA does not provide a private right of action, NEPA claims are reviewed under the APA); *Valley Comy. Pres. Comm'n v. Mineta*, 373 F.3d 1078 (10th Cir. 2004) ("As Section 4(f) does not provide an independent cause of action, judicial review is available only through the [APA]"). The scope of judicial review under the APA is limited only to "final agency actions." 5 U.S.C. § 704; *McKeen v. U.S. Forest Serv.*, 615 F.3d 1244, 1253 (10th Cir. 2010) ("Pursuant to the APA, we have jurisdiction to review only 'final agency actions.'" (quoting 5 U.S.C. § 704)).

The APA defines "agency" as "each authority of the Government of the United States," and "agency action" as "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. §§ 701(b)(1), 551(13). Plaintiffs bear the burden of identifying the specific federal agency conduct and explaining how that conduct is "final agency action" within the meaning of 5 U.S.C. Section 551(3). *Colo. Farm Bureau v. U.S. Forest Serv.*, 220 F.3d 1171, 1173 (10th Cir. 2000). Failure to meet this statutory requirement warrants dismissal of the APA-based claims. *See id.* at 1074.

## FACTUAL BACKGROUND

### A. The Flood-Control Project

The project challenged in Claims 4, 5, and 7 of Plaintiffs' Amended Petition is a municipal flood-control project undertaken by the City and County of Denver ("City"), not a party to this action, to mitigate the flood risk posed by significant storm runoff in its northern

4

neighborhoods south of I-70 ("City's project" or "flood-control project"). (ROD 132.)[1] It includes four components: (1) an upgrade to the City's outfall system at Globeville Landing Park; (2) the 39th Avenue Open Channel and Greenway; (3) a detention basin in City Park Golf Course; and (4) a detention basin in Park Hill Golf Course. (Pls.' Amended Pet. ("Pet.") ¶ 23, ECF No. 25.) The project was planned, designed, and approved by the City, and is being financed with municipal and state funds. (ROD 132; Connected Action Finding 18-19.)[2] FHWA has not approved, funded, or exercised any authority over this project. (*Id.*)

### B.   The Central 70 Project

Central 70 is a state-sponsored highway project in Denver designed to improve safety, mobility, and congestion on an approximately ten-mile stretch of I-70 between I-25 and Chambers Road. (ROD 132; Pet. ¶ 8.) Defendant-Intervenor Colorado Department of Transportation ("CDOT") is the lead agency responsible for designing and implementing the project for the state. (ROD 85; Pet. ¶ 76.) FHWA's involvement is limited to providing financial assistance and certain approvals under the Federal-aid Highway Program. (ROD 132; Connected Action Finding 19.) FHWA signed the ROD authorizing federal assistance for the project on January 19, 2017. (ROD i; Pet. ¶ 191.)

Central 70 involves widening the existing highway from 6 to 10 lanes, demolishing the structurally-deficient viaduct between Brighton and Colorado Boulevards, placing the highway

---

[1] The ROD is publicly available on the official Project website at: https://www.codot.gov/projects/i70east/projects/i70east/ record-of-decision (last visited on September 27, 2017), and Plaintiffs filed it, without attachments, in connection with its Motion for Stay (ECF No. 32-1.) FHWA can also provide the Court a hard copy or a USB drive with the ROD immediately upon request. Additionally, as is appropriate for a motion to dismiss for lack of jurisdiction, the motion cites evidence outside the pleadings only to establish jurisdictional facts concerning Plaintiffs' Claims 4, 5, and 7.

[2] The Connected Action Finding, which is part of FHWA's Administrative Record for the Central 70 Project, is attached hereto as Exhibit 1. This document refers to the Central 70 as "I-70 East Project" and the City's flood-control project as "Two Basins Drainage Project (TBDP)."

below-grade, and partially covering the lowered section with a 4-acre and community open space.  (ROD 85.)  In order to protect the below-grade section from flooding, the highway's design includes a fully functional integrated drainage system that both collects stormwater from the highway (onsite system) and intercepts it just before it reaches the highway (offsite system) and discharges it to the South Platte River, near Globeville Landing Park.  (ROD 21.)

In 2015, CDOT and the City entered into an intergovernmental agreement to guide coordination between the two governments on a number of items relevant to Central 70 including drainage.  (ROD 132; Connected Action Finding 18; Pet. ¶¶ 200(b)-(c).)  CDOT agreed to contribute financially to certain elements of the City's flood-control improvements that would be beneficial to Central 70 if constructed.  (Connected Action Finding 18; Pet. ¶ 163(k).)  FHWA did not participate in the drafting of the agreement nor is it signatory to it, and no federal funds will be used to satisfy CDOTs obligations in the agreement.  (Connected Action Finding 18.)

In comments to the FHWA's Final Environmental Impact Statement ("Final EIS"), the City informed FHWA and CDOT that there was a conflict between part of the highway's drainage system and part of the City's flood-control system.  (ROD 133, 135.)  Specifically, CDOT's plan to install a pipe outfall for the highway's drainage system at Globeville Landing Park conflicted with the City's plan to install an open-channel outfall for its flood-control system at that same location.  (ROD 135.)  To avoid the conflict, CDOT redesigned Central 70's drainage system to utilize the City's outfall system at Globeville Landing Park to convey storm water to the river, creating a "combined outfall" that was analyzed and disclosed in the ROD.  (ROD 133.)  This is the only point where the highway's system intersects and physically connects with the City's flood-control infrastructure.  FHWA's decision to analyze the impacts of this shared component does not confer any authority on the agency to control the City's

actions with respect City's outfall channel or its broader flood-control system. The analysis only accounts for changes the highway's design needed to accommodate and co-locate with the City's flood-control infrastructure that would be built in that place regardless. (ROD 133.)

Subsequently, CDOT further modified the Central 70 drainage system in response to the anticipated reduction in the volume of stormwater flows to be intercepted by the offsite system due to the approvals of the City's flood-control improvements to the south of the highway. On September 18, 2017, FHWA issued a reevaluation pursuant to 23 CFR 771.129(c) to disclose and analyze these additional alterations.[3] As explained in the reevaluation, this adjustment to the highway drainage system is in response to the recent progress of the City's flood-control project. (Reevaluation 5.) None of the changes to Central 70's drainage system affect FHWA's involvement in the City's project, which remains entirely outside the authority of FHWA.

In summary, FHWA has no power to control any of the activities related to the City's efforts to improve its flood-control system, and the City has testified that it will complete its flood-control project even if Central 70 does not move forward. (*Id.*)[4]

## STANDARD OF REVIEW

A motion to dismiss for lack of subject matter jurisdiction may be made by any party, at any stage of the litigation. *See* Fed. R. Civ. P. 12(b)(1), 12(h)(3); *see also Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) ("A court lacking jurisdiction cannot render judgment but must dismiss the cause *at any stage* of the proceedings in which it becomes

---

[3] FHWA's Reevaluation is publicly available on the official Project website at: https://codot.gov/projects/i70east/re-evaluation-i-70-from-i-25-to-chambers-road; due to the voluminous size of the document, FHWA is not filing it through the Court's ECF system, but can provide a hard copy or a USB drive with the Reevaluation to the Court immediately upon request.

[4] *See* Testimony Transcript of Leslie Thomas, at 45:8-25 (Ex. 15, ECF No. 47); *see also* Declaration of Leslie Thomas ¶ 22 (Ex. 11, ECF No. 47).

apparent that jurisdiction is lacking." (emphasis added)).  Plaintiffs challenging federal agency decisions under the APA must identify the specific federal conduct that waives the United States' sovereign immunity and explain how that conduct is "final agency action" within the meaning of 5 U.S.C. Section 551(3).  *See Colo. Farm Bureau*, 220 F.3d at 1173.  Failure to do so warrants dismissal of the APA-based claims for lack of subject matter jurisdiction.  *See American Airlines, Inc. v. Herman*, 176 F.3d 283, 287 (10th Cir. 2000).

A district court has wide discretion to allow affidavits and other relevant evidence to resolve factual disputes regarding the court's jurisdiction.  *See Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).  Reliance on "evidence outside the pleadings" to make findings concerning jurisdictional facts does not convert a motion to dismiss for lack of subject matter jurisdiction into a motion for summary judgment.  *Id.*

## **ARGUMENT**

The Court lacks jurisdiction over Plaintiffs' Claims 4, 5, and 7 for two reasons: (1) the APA's limited waiver of sovereign immunity does not grant judicial review of these claims because FHWA has taken no action with respect to the City's flood-control project and cannot exercise any authority or control over it; and (2) Plaintiffs lack standing to assert these claims because the cause of their alleged injuries is the City's flood-control project, which remains entirely outside of FHWA's authority, and *not* FHWA's ROD; thus, an order setting aside FHWA's ROD for Central 70 will not redress their alleged injuries.  Additionally, an order enjoining FHWA from taking any action with respect to the City's flood-control project, which remains outside of FHWA's authority, would be meaningless and not redress Plaintiffs' alleged injuries because the City, which is not a party here, would be free to continue with its project notwithstanding an injunction against FHWA.

### A. FHWA Has Taken No Action with Respect to the City's Flood-Control Project to Invoke the APA's Waiver of Sovereign Immunity.

Plaintiffs' flood-control-related claims against FHWA are predicated on the APA's waiver of sovereign immunity under Section 5 U.S.C. § 704. (Pet. ¶ 1.) That waiver must be strictly construed, *United States v. Nordic Vill. Inc*., 503 U.S. 30, 34 (1992), and applies only where there is "final agency action." 5 U.S.C. § 704. Yet, Plaintiffs have failed to identify any FHWA action, let alone a final action, with respect to the City's flood-control project. None of Plaintiffs' allegations identify any action taken by FHWA in the design, review, approval, or funding of the City's project. At most, Plaintiffs' allegations suggest that CDOT's coordination with the City regarding the shared outfall federalizes the City's flood-control project. (Pet. ¶¶ 160-164.) Such coordination between two non-federal entities, however, is insufficient to federalize a local project—instead, the applicable regulations require a federal action granting the agency authority to control the nonfederal activity. *See Ross*, 162 F.3d at 1051. Plaintiffs cannot make such a showing here because the City's project is, and has been, entirely outside of FHWA's authority. Moreover, the mere coordination between the City and CDOT did not constrain FHWA's decisions regarding the drainage system for I-70, which was independently capable of handling a 100-year storm, further confirming that FHWA's authority was unaffected by the City's and CDOT's coordination. *See Sw. Williamson Cty. Cmty. Ass'n v. Slater,* 243 F.3d 270, 281 (6th Cir. 2001). Put simply, there is no basis for Plaintiffs' attempt to fabricate a federal action, and thereby federal jurisdiction, where none exists.

In an effort to circumvent the APA's federal action requirement and "federalize" the City's project, Plaintiffs unsuccessfully attempt to invoke the Court's jurisdiction by relying on the NEPA and Section 4(f) statutes and regulations, even though these statutes provide no private

9

right of action. But even if these statutes allowed for judicial review, they still would not grant jurisdiction to the Court because they still apply to federal activity only.

1. NEPA and Its Compliance Regulations Apply Only to a "Major Federal Action," Which is Lacking Here With Respect to the City's Flood-Control Project, which Remains Entirely Outside of FHWA's Authority

Plaintiffs' attempt to invoke jurisdiction for Claims 4 and 5 by relying on NEPA compliance regulations fails. First and foremost, Plaintiffs appear to ignore the statutory definition of "major Federal action"—that is, activities that are "entirely or partly financed, assisted, conducted, regulated, or approved by federal agencies." 40 C.F.R. § 1508.18(a). Nonfederal activity can rise to the level of "major Federal action," but only if "the federal government has 'actual power' to control the project." *Ross*, 162 F.3d at 1051. Here, FHWA has never had any authority to influence or control the City's flood-control Project. *See id.*; *see also Save Barton Creek Ass'n v. Fed. Highway Admin.*, 950 F.2d 1129, 1135 (5th Cir. 1992) ("[T]he touchstone of 'major Federal action' constitutes a federal agency's authority to influence nonfederal activity."); *Vill. of Los Ranchos de Albuquerque*, 906 F.2d at 1482 ("[T]he distinguishing feature of 'federal' involvement is the ability to influence or control the outcome in material respects. The EIS process is supposed to inform the decision-maker. This presupposes he has judgment to exercise. . . . [T]he federal agency must possess actual power to control the nonfederal activity." (citation omitted)).

Absent major Federal action, NEPA and its compliance regulations do not apply to nonfederal projects. *See Save Barton Creek Ass'n*, 950 F.2d at 1140 ("The requirements of NEPA . . . apply only when the government's involvement in a project is sufficient to constitute "'major Federal action.'"). Nevertheless, for Claim 4, Plaintiffs allege that Central 70 and the City's flood-control project are connected actions for purposes of NEPA and should have been

analyzed as one project. (Pet. ¶¶ 258-285.) This argument is fundamentally flawed. As explained above, Plaintiffs ignore the fact that NEPA's connected-actions regulation applies only to "major Federal actions." *See Sierra Club v. U.S. Army Corps of Eng'rs*, 803 F.3d 31, 49 (D.C. Cir. 2015) ("The connected actions regulation . . . does not dictate that NEPA review encompass *private* activity outside the scope of the sum of the geographically limited *federal* actions.") citing 40 C.F.R. § 1508.25(a)(1) (emphasis added)).

As the D.C. Circuit recently explained, the "point of the connected actions doctrine is to prevent the government from segmenting its *own* federal actions into separate projects." *Id.* (emphasis added; internal quotation marks and alterations omitted). Thus, Plaintiffs cannot use NEPA's connected-actions regulation to invoke jurisdiction and force FHWA to consider nonfederal actions over which it has no control. To conclude otherwise would add wholly "*private* pieces to the puzzle," *Sierra Club*, 803 F.3d at 49 (emphasis added), and could potentially subject all local and private projects to NEPA compliance. The Court should reject such an expansive interpretation of the NEPA regulations, as the D.C. Circuit did in *Sierra Club*.

Plaintiffs' argument for Claim 5 should be rejected for the same reason. Plaintiffs allege that the City's flood-control project is a "similar action" that must be considered together with Central 70. (Pet. ¶¶ 286-295.) However, NEPA's similar-actions regulation makes it clear that it applies only to "agency actions"; thus, for the same reasons stated in *Sierra Club*, the similar-action regulation does not apply to nonfederal activity involving purely local projects. 40 C.F.R. 1508.25(a)(3). Plaintiffs cannot use the similar-actions regulation to force FHWA to incorporate into an EIS nonfederal actions that remain entirely outside FHWA's authority.[5]

---

[5] In reaching its conclusion, the *Sierra Club* court correctly concluded that the cumulative-impacts regulation requires federal agencies to consider impacts from some nonfederal and private activities. 803 F.3d at 50 (*comparing* 40 C.F.R. § 1508.25(a)(1), *with id.* § 1508.7). Here, the EIS for Central 70 did consider the City's flood-control project for its cumulative impacts. (Final EIS 6-9 to 6-32, ECF No. 32-6.)

With respect to Claim 4, Plaintiffs also attempt to invoke this Court's jurisdiction by relying on the theory of improper segmentation. Specifically, Plaintiffs allege that FHWA improperly segmented the City's project from Central 70 and failed to analyze its impacts and alternatives in the ROD. (Pet. ¶¶ 88-89, 261.) However, Plaintiffs, once again, ignore the fact that segmentation applies only to projects involving a major Federal action. *See Save Barton Creek Ass'n*, 950 F.2d at 1140. This requirement makes sense given that segmentation is defined as an attempt by an agency to "divide artificially a 'major federal action' into smaller components to escape application of NEPA to some of its segments." *Id.* at 1140.

Plaintiffs here cannot meet the "major Federal action" prerequisite for segmentation because, as explained above, FHWA has never approved, funded, or controlled the City's project. *See Ross*, 152 F.3d at 1051. But even if they could meet this threshold requirement, Plaintiffs cannot show that the subsequent division of the alleged major federal action was improper because, as fully analyzed in Defendant-Intervenors' Opposition to Plaintiffs' Motion for Preliminary Injunction,[6] Central 70 and the City's flood-control project each have independent utility and are therefore not connected actions. *See Citizens' Comm. to Save our Canyons v. U.S. Forest Serv.*, 297 F.3d 1012, 1029 (10th Cir. 2002)) ("Put simply, projects that have independent utility are not connected actions under 40 C.F.R. § 1508.25(a)(1)(iii).").

### 2. Section 4(f) Applies Only to Federally-Funded Projects

Plaintiffs' attempt to invoke jurisdiction for Claim 7 by relying on Section 4(f) fails because the City and the state are funding the City's project, *not* FHWA. *See Vill. of Los Ranchos de Albuquerque*, 906 F.2d at 1477; *Adler v. Lewis*, 675 F.2d 1085, 1091 (9th Cir. 1982)

---

[6] Defendant-Intervenors' Opposition to Plaintiffs' Motion for Stay ("Plaintiffs' Motion") was filed concurrently with this Motion on September 27, 2017 (ECF No. 47). Also on September 27, 2017, FHWA filed an Opposition to Plaintiffs' Motion (ECF No. 49), which incorporated by reference Defendants-Intervenors' Opposition, including the Independent Utility analysis in Section I.A.

("Section 4(f) is triggered only when the Secretary of Transportation is asked to approve a transportation program or project seeking to employ federal funds."). Because the City's flood-control project is not federally-funded, Section 4(f) does not apply.

In sum, FHWA has never played a role in the City's flood-control project and has no authority over it. Thus, the Court lacks jurisdiction over Plaintiffs' flood-control-related claims, and the appropriate remedy is dismissal.

### B.  Plaintiffs Lack Standing to Assert Claims 4, 5, and 7 Because Setting Aside FHWA's ROD and Enjoining FHWA from Taking Any Action on the City's Project Would Not Redress Their Alleged Injuries.

To establish the constitutional minimum for standing under Article III, a plaintiff must show an "injury-in-fact, that the injury is fairly traceable to the defendant's conduct, and that the injury is likely to be redressed by the relief sought." *City of Hugo v. Nichols*, 656 F.3d 1251, 1263 (10th Cir. 2011). The second and third elements—causation and redressability—are lacking where a plaintiff's injury "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Thus, to establish causation, a plaintiff must show that its injury is "not the result of the independent action of some third party not before the court." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005). When redressibility depends on a third party and there is no evidence suggesting a likelihood that the third party will take the action necessary to afford the plaintiff relief, the plaintiff lacks standing. *See City of Hugo*, 656 F.3d at 1264 (holding plaintiff lacked standing because redressability depended upon actions of third party not before the court); *Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 892 (10th Cir. 2011) (same).

13

Under those standards, Plaintiffs lack standing to assert Claims 4, 5, and 7. With respect to Claims 4 and 5, Plaintiffs allege that the City's flood-control project's four components, including the City Park Golf Course, Park Hill Golf Course, and the 39th Avenue Open Channel, are "connected" and "similar" actions under NEPA that should have been analyzed in FHWA's ROD.[7] (Pet. ¶¶ 245-82.) And Claim 7 asserts that FHWA must consider the impacts to the City Park Golf Course under Section 4(f). (Pet. ¶¶ 294-305.) As relief for these claims, Plaintiffs ask this Court to order FHWA to issue a supplemental EIS that "includes all four components" of the City's flood-control project, and enjoin FHWA from taking any further action, direct or indirect, on Central 70 and/or the City's flood-control project until they can demonstrate compliance with NEPA and Section 4(f). (Pet. Prayer for Relief ¶¶ (D)(v), (E)(i).)

Such an order would not redress Plaintiffs' injuries because a party not before this Court—the City of Denver—is the one responsible for the improvements to its flood-control system and any impacts associated with that project. As repeatedly explained in this Motion, FHWA played no role in this local project and cannot be forced to analyze impacts of a project that is not subject to federal regulations. And even if this Court were to vacate FHWA's ROD and order FHWA to undertake additional environmental analysis, the City still could move forward with its flood-control project. Indeed, the City has testified that it will do just that. Thus, because Plaintiffs' injuries are caused by the "unfettered choices" of an independent actor not before this Court and will not be redressed by setting aside FHWA's ROD, Plaintiffs lack standing to assert their flood-control-related claims. *See Lujan*, 504 U.S. at 560. Moreover, an

---

[7] FHWA's ROD analyzed the direct, indirect, and cumulative impacts of the outfall system that the City is constructing at Globeville Landing Outfall because stormwater from the highway's drainage system will pass through that outfall. (ROD 133, 135-87.) Claims 4 and 5 do not challenge that analysis; instead, they allege only that FHWA must consider the *additional* three components of the City's project.

14

order enjoining FHWA from taking any action on the City's flood-control project would be meaningless and not redress Plaintiffs' alleged injuries because FHWA has no jurisdiction nor control over this local project.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Claims 4, 5, and 7 of Plaintiffs' Amended Petition for lack of subject matter jurisdiction.

Respectfully submitted this 27th day of September, 2017.

>
> JEFFREY H. WOOD
> Acting Assistant Attorney General
> Environment and Natural Resources Division
>
> */s/ Mayte Santacruz*
> Mayte Santacruz
> Carter F. Thurman
> United States Department of Justice
> Environment and Natural Resources Division
> Natural Resources Section
> 601 D Street, NW
> Washington, D.C. 20004
> (202) 305-0465 (Santacruz)
> (202) 305-0444 (Thurman)
> (202) 305-0506 (fax)
> mayte.santacruz@usdoj.gov
>
> *Attorneys for Federal Highway Administration*

Of Counsel:
Brent Allen
Federal Highway Administration
Office of the Chief Counsel
Lakewood, Colorado
(720) 963-3692
brent.allen@dot.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of September, 2017, I electronically filed Federal Highway Administration's Motion to Dismiss Claims 4, 5, and 7 of Zeppelin Plaintiffs' Amended Petition and supporting Memorandum with the Clerk of the United States District Court for the District of Colorado using the CM/ECF System, which will send notification of such filing to the attorneys of record in these consolidated cases.

BY:  /s/ Mayte Santacruz
MAYTE SANTACRUZ