**Exhibit 15**

**Testimony of Lesley Thomas, August 21, 2017,**

*MacFarlane v. City and County of Denver*

**(Denver Dist. Ct. No. 16-cv-32126)**

*John D. MacFarlane, et al. vs.*

*The City and County of Denver, et al.*

*Transcript of Proceedings - Testimony of Leslie Thomas*

*August 21, 2017*



700 17th Street, Suite 1750
Denver, CO  80202
303-988-8470 (Office)   303-988-8478 (Fax)
SKReporting.com

Stevens-Koenig
Reporting

```
 1   DISTRICT COURT, COUNTY OF DENVER
     STATE OF COLORADO
 2
     Court Address:
 3   1437 Bannock Street
     Denver, Colorado  80202              ^ COURT USE ONLY ^
 4   _____

 5   JOHN D. MACFARLANE, et al.,          Case No. 16CV32126
                                          Courtroom: 269
 6              Plaintiffs,
     vs.
 7
     THE CITY AND COUNTY OF DENVER,
 8   et al.,

 9              Defendants.
     _____

10              TRANSCRIPT OF PROCEEDINGS

11              TESTIMONY OF LESLIE THOMAS

12                   August 21, 2017

13
     _____

14

15        The following testimony taken in the above matter

16   commenced on Monday, August 21, 2017, before The Honorable

17   David H. Goldberg, Judge of the District Court, at Denver

18   District Court, 1437 Bannock Street, Courtroom 269, Denver,

19   80202.  Deanna Baysinger, a Registered Professional Reporter

20   and Notary Public in and for the State of Colorado, in

21   attendance.

22

23

24

25
```

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 2

```
 1    APPEARANCES:

 2    ON BEHALF OF THE PLAINTIFFS:
              AARON D. GOLDHAMER, ESQ.
 3            Keating Wagner Polidori Free, P.C.
              1290 Broadway, Suite 600
 4            Denver, Colorado 80203
              Phone:  303-534-0401
 5            Email:  agoldhamer@keatingwagner.com

 6            and

 7            M. ANTHONY VAIDA, ESQ.
              M. Anthony Vaida, P.C.
 8            899 Logan Street, Suite 208
              Denver, Colorado  80203
 9            Phone:  303-832-2100
              Email:  manthonyvaidapc@vaida.net
10

11    ON BEHALF OF THE DEFENDANTS:
              RENEÉ A. CARMODY, ESQ.
12            TRACY A. DAVIS, ESQ.
              JESSICA R. BRODY, ESQ.
13            Denver City Attorney's Office
              Municipal Operations Section
14            201 West Colfax Avenue, Department 1207
              Denver, Colorado 80202
15            Phone:  720-913-3275
              Email:  renee.carmody@denvergov.org
16            Email:  tracy.davis@denvergov.org
              Email:  jessica.brody@denvergov.org
17

18

19

20

21

22

23

24

25
```

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 3

```
 1    EXAMINATION:                                      PAGE

 2    WITNESS:  LESLIE THOMAS

 3    Direct by Mr. Goldhamer                           4
      Cross by Ms. Brody                                34
 4    Redirect by Mr. Goldhamer                         49

 5


 6
      EXHIBITS                        REFERENCED        ADMITTED
 7
      3                               22                //
 8    8                               12                13
      68                              50                //
 9    73                              29                30

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 4

```
 1                    P R O C E E D I N G S
 2            THE COURT:  Good afternoon.  Have you raise your
 3    right hand.
 4                       LESLIE THOMAS,
 5    having been first duly sworn, was examined and testified as
 6    follows:
 7            THE WITNESS:  I do.
 8            THE COURT:  Please be seated.
 9            Counsel.
10                    DIRECT EXAMINATION
11    BY MR. GOLDHAMER:
12        Q.    Good afternoon, Ms. Thomas.
13        A.    Good afternoon.
14        Q.    Are you the City engineer?
15        A.    Yes.
16        Q.    How long have you been the City engineer?
17        A.    A long time.  Since approximately 2002.
18        Q.    Do you need a cup of water or anything?
19        A.    Yeah, that would be great.
20        Q.    It sounds like you hustled over here.
21        A.    Yeah, I ran over.  I apologize.  I was scheduled
22    to be here at 2:30, so you guys are moving quickly.
23            THE WITNESS:  Thank you.
24        Q.    (By Mr. Goldhamer)  In your capacity as the City
25    engineer, do you lead the City's capital projects process?
```

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 5

```
 1      A.   Yes.

 2      Q.   Are you familiar with the City's master planning

 3   processes?

 4      A.   Yes.

 5      Q.   Does the public have the right to rely on the

 6   City's master planning processes?

 7      A.   Yes, for the purpose that they are created.

 8      Q.   And what's that?

 9      A.   It is to reflect the knowledge of the City at the

10   time for the purpose stated in the plan.

11      Q.   Okay.  Does the master planning process help form

12   the basis for the capital improvements project list?

13      A.   Yes.

14      Q.   Can you describe what that list is?

15      A.   Are you -- which -- which capital planning are you

16   referring to?

17      Q.   Well, any of the capital planning lists that

18   you've been involved in.

19      A.   Okay.  Well, there are many different pieces of

20   infrastructure that the City funds through capital planning.

21   So the City would take the indications of what priorities

22   were, city-wide needs out of each plan, and then

23   collaboratively, across organizations and pieces of

24   infrastructure, make recommendations to fund on an annual

25   basis.
```

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 6

1    Q.   And is the decision whether to put a project on

2  the capital improvements projects list based on the City's

3  perceived need for the project?

4    A.   Yes.

5    Q.   And isn't it true that the golf course project at

6  the center of this case hasn't been on any capital

7  improvements projects list?

8    A.   Yes.

9    Q.   That is true.

10   A.   Yes.

11   Q.   Did you work on the 2014 stormwater master plan?

12   A.   My team did, yes.

13   Q.   Were you the ultimate supervising authority for

14  that planning process?

15   A.   Yes.  I'm the City engineer, so my team prepared

16  it and recommended it to the executive management team of

17  public works and then it went through City Council as a

18  resolution per the ordinance.

19   Q.   But you oversaw that process.

20   A.   Yes.

21   Q.   Did the 2014 stormwater master plan reflect the

22  City's policy statements at the time of its adoption?

23   A.   Yes, I believe so.

24   Q.   Is the project in City Park Golf Course on the

25  2014 stormwater management plan?

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 7

```
 1        A.   Not that exact project, no.
 2        Q.   Okay.  Let's talk about City projects in parks.
 3   Are you familiar with the City's past stormwater management
 4   projects in parks?
 5        A.   Yes.
 6        Q.   Are you familiar with the concept of park
 7   designation by the City?
 8        A.   Yes.
 9        Q.   And is it true that Globeville Landing Outfall is
10   not a designated park?
11        A.   Well, I don't carry that around in my head as to
12   what is designated or not.  You asked me whether I
13   understood the difference, and I do.
14        Q.   Okay.  So you're not sure whether Globeville
15   Landing Outfall is a designated park.
16        A.   Well, I believe it is but I -- I'm sorry, that's
17   not my area of expertise.
18        Q.   Okay.  Okay.  Are you familiar with the project
19   that's planned for the City Park Golf Course that's at issue
20   in this case?
21        A.   Yes.
22        Q.   Do you know if the City has ever closed a
23   designated park in its entirety to install a stormwater
24   feature?
25        A.   No, I don't know that.
```

Page 8

1      Q.    You're not aware of any example of that happening

2   in the past?

3      A.    Well, we do a lot of work in parks.  That would be

4   up to the manager of parks whether it was -- how the use is

5   affected based on what construction is going on.

6      Q.    But the closure of the park in its entirety, a

7   designated park for the installation of a stormwater

8   management feature, you're not aware of any time that that

9   has occurred in Denver history, are you?

10     A.    Not that I'm aware of.

11     Q.    Are you familiar with any stormwater improvements

12   that were made in Ferril Lake in City Park?

13     A.    Yes.

14     Q.    Did those improvements expand the footprint of

15   Ferril Lake?

16     A.    If they did, not much.

17     Q.    Okay.  Did those improvements require the closure

18   of City Park?

19     A.    Well, City Park is quite a bit bigger than just

20   Ferril Lake, so a portion of it, we would always have

21   appropriate control for safety and for our contractor's use

22   of the area so they could build things in a timely manner.

23     Q.    So was the answer, no, it did not require the

24   closure of City Park?

25     A.    Not full closure, no, sir.

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 9

```
 1        Q.    Okay.  A few questions on this project in this
 2   park.  Does the project in the golf course contemplate above
 3   ground stormwater detention?
 4        A.    Yes.
 5        Q.    Is it intended to provide some stormwater
 6   management benefit to areas north of the golf course?
 7        A.    Yes.
 8        Q.    All the way up to 39th Street?
 9        A.    Yes.
10        Q.    Okay.  Will the detention area cover more than an
11   acre?
12        A.    Yes.
13        Q.    Is an acre more than 10,000 feet, square feet?
14        A.    Well, an acre is 43,250 square feet.
15        Q.    Okay.  So an acre is more than 10,000 square feet.
16        A.    No.  Yes.  Yes.  Yes, sir.
17        Q.    Okay.  Stepping back a little more broadly, is the
18   project in City Park Golf Course an important part of the
19   Platte to Park Hill project?
20        A.    Yes.
21        Q.    And the Platte to Park Hill project requires some
22   stormwater detention in it to make it work?
23        A.    Yes.
24        Q.    And that detention is occurring in the golf
25   course.
```

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Page 10

```
 1        A.    Some of it, yes.
 2        Q.    Okay.  And then the rest of it is occurring where?
 3        A.    39th channel and other areas within the basin.
 4        Q.    Okay.  And is the amount of detention called for
 5   by this project approximately 215 acre feet?
 6        A.    Yes.
 7        Q.    Can you describe what an acre foot is?
 8        A.    It is 1 foot deep of water storage, 1 acre wide,
 9   if you will.
10        Q.    Okay.
11        A.    A footprint would be 1 acre.  The water would be
12   1 foot deep in that acre.
13        Q.    Okay.  And make sure that you get close enough to
14   the microphone.
15        A.    Can I move this?
16        Q.    Sure, I think so.
17        A.    Are you okay?  I got a lot of books here.  Okay.
18   How about if -- all right.  Is that better?  I will just
19   lean.
20        Q.    I think so.
21              So the amount of stormwater detention called for
22   by this project would cover 215 acres at 1 foot of depth?
23        A.    Yes, generally that's a way to describe it.
24        Q.    Okay.  And do you know what the acreage is of City
25   Park Golf Course?
```

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 11

```
 1        A.    I don't.
 2        Q.    Okay.  Is the amount of detention that's needed in
 3   the project at the golf course driven by the size of a
 4   stormwater pipe that runs under Brighton Boulevard further
 5   down in the Platte to Park Hill process -- project?
 6        A.    Yes.
 7        Q.    Okay.  And did the Department of Public Works
 8   determine how much detention would be called for in the
 9   project in the golf course?
10        A.    Yes.
11        Q.    That determination was not made by parks and
12   recreation.
13        A.    No.
14        Q.    So that's correct, it was not?
15        A.    That's correct, it was not.
16        Q.    Okay.  Just want the record to be clear.
17        A.    I'm not sure whether that was a yes or a no.
18        Q.    Were there other locations that the City
19   contemplated for putting this detention?
20        A.    Yes.
21        Q.    Did some of those locations require the City to
22   purchase property?
23        A.    Yes.
24        Q.    Does the golf course option require the City to
25   purchase property?
```

John D. MacFarlane, et al. vs.    Transcript of Proceedings - Testimony of Leslie Thomas
The City and County of Denver, et al.         August 21, 2017

Page 12

```
 1      A.   No.

 2      Q.   So that saves the City money on property

 3  acquisition costs?

 4      A.   Yes.

 5      Q.   And that was an important part of the decision to

 6  put the project in the golf course; right?

 7      A.   Well, budget is always an important part, yes.

 8      Q.   But property acquisition costs were particularly

 9  important, weren't they?

10      A.   Yes, they always are.

11      Q.   Okay.  Can you turn to Exhibit 8.

12      A.   How do I find that?

13      Q.   So sorry.  There should be a white binder that

14  says Plaintiffs' exhibits but not Plaintiffs' stipulated

15  exhibits.

16      A.   Okay.  I have Plaintiffs' exhibits.

17      Q.   And go to Exhibit 8.

18      A.   I have it here.

19      Q.   Okay.  Is this an email that you sent?

20      A.   Yes.

21      Q.   And it includes a PowerPoint attachment --

22      A.   Yes.

23      Q.   -- is that correct?

24      A.   Yes.

25      Q.   And it pertains to the Platte to Park Hill project
```

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 13

```
 1    which at that time was called the Two Basin Drainage

 2    Project?

 3         A.   Yes.

 4              MR. GOLDHAMER:  Move for the admission of

 5    Exhibit 8, Your Honor.

 6              THE COURT:  Any objection?

 7              MS. BRODY:  Yes, Your Honor, we object on several

 8    grounds.

 9              First of all, it's hearsay.

10              Second of all, I believe this was a draft document

11    that is subject to deliberative process and also relevance.

12              THE COURT:  It is relevant and material, it is not

13    hearsay, and it was -- well, the objection is overruled.

14    You can examine as to whether or not it was a draft or the

15    final document.  It's admitted.

16              MR. GOLDHAMER:  Your Honor, this repeated

17    assertion of the deliberative process for documents that

18    have already been disclosed is a little puzzling so...

19              THE COURT:  It's important that they make their

20    record as you make your record.

21              MR. GOLDHAMER:  I understand, Your Honor.

22         Q.   (By Mr. Goldhamer)  Ms. Thomas, did you draft this

23    PowerPoint?

24         A.   I don't remember.

25         Q.   Okay.  Do you see on the email that you drafted,
```

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 14

 1   you sent it to Alba and you asked her to spiff this up for

 2   me?  Do you see that?

 3        A.   Yes.

 4        Q.   Would that suggest to you that you did draft it

 5   and you needed someone else to spiff it up?

 6        A.   Well, it could have meant a lot of things, but I

 7   have a lot of folks that support me so anybody could have

 8   made this and sent me a draft and said, is this good to go

 9   and I could have forwarded it.  So whether I actually did it

10   or not, I don't recall.

11        Q.   Okay.  But it's something that was reliable enough

12   for you to forward to somebody else to put into final form;

13   is that right?

14        A.   Yes.

15        Q.   Can you turn to page 7 of Exhibit 8.  Do you see

16   that it starts with costs updates?

17        A.   Yes.

18        Q.   And the main bullet point is real estate.  Do you

19   see that?

20        A.   Yes.

21        Q.   And the third bullet point says, rising real

22   estate values in this continue to be a risk.  Do you see

23   that?

24        A.   Yes.

25        Q.   Was that your experience in connection with the

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 15

1    project, that rising real estate values in connection with

2    the Platte to Park Hill project were a risk to the City?

3         A.   At this time -- the time we wrote it and

4    currently, real estate prices are risks to every project so,

5    yes, it is a risk.

6         Q.   Okay.  And there was a recommendation to increase

7    the real estate budget.  Do you see that?

8         A.   Yes.

9         Q.   Do you know what the real estate budget was?

10        A.   No, not off the top of my head.

11        Q.   Do you know how much money the City saved by not

12   having to purchase property for the detention?

13        A.   No.

14        Q.   And you see that the next page refers to more cost

15   updates --

16        A.   Yes.

17        Q.   -- with reference to the project scope.

18        A.   Yes.

19        Q.   And those seem to be the two cost update issues

20   that are in this presentation; is that right?

21        A.   Yes.

22        Q.   Okay.  So City Park Golf Course is located in

23   northeast Denver; is that right?

24        A.   Yes.

25        Q.   And northeast Denver and that part of town around

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 16

1    the City Park Golf Course is short on open space; is that

2    right?

3         A.    Yes.

4         Q.    And this project will make it even shorter on open

5    space for the people during construction; isn't that right?

6         A.    During construction, yeah, you would want people

7    to be safe and not involved with construction equipment.

8    So, yes, we would protect the site for the construction and

9    the workers and the neighbors.

10        Q.    And when the City Park Golf Course fills up with

11   water, as the project is designed to make it do, it will be

12   shorter in the future on open space for the people in this

13   part of town; is that right?

14        A.    Well, the way the design is laid out, it does

15   minimize the effect on the golf course.  And if it were

16   flooding now, you would still have a similar circumstance.

17   Until the design is finalized, it really won't be -- you

18   really won't be able to compare apples to apples, but the

19   specifications for that design are to minimize impacts to

20   the golf course.

21        Q.    Well, there was actually a bypass option that was

22   contemplated in connection with this project that would have

23   minimized impacts to the golf course even further; is that

24   right?

25        A.    There were a lot of alternatives that were

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 17

1  studied, yes.

2      Q.   So this design doesn't necessarily minimize the

3  impact to the golf course between all the alternatives; is

4  that right?

5      A.   Well, each alternative would have needed to

6  address the most capital intensive part of a golf course,

7  greens and tee boxes, other facilities.  So each design

8  would have needed to keep those safe in a hundred year storm

9  event was the strategy that we had worked out with our parks

10 partners.

11     Q.   But there was a design in this process that was

12 contemplated that would have piped a five and ten-year storm

13 around the golf course; isn't that right?

14     A.   Again, there were a lot of alternatives that were

15 looked at.

16     Q.   So if there was that design alternative, that

17 would have minimized more of the impact on the golf course,

18 isn't that right, because the stormwater would be piped

19 around?

20     A.   Well, potentially, but actually the biggest part

21 is how big of a pipe we could fit down in Brighton Boulevard

22 through the Globeville Landing Park, how big of an outfall

23 that would be.

24          And also the other consideration is to make sure

25 that as much of the city could have as much protection as

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 18

 1   possible.  So that area you mentioned north of City Park

 2   Golf Course is also part of the city that we want to provide

 3   as much protection for.  So there were multiple objectives

 4   in the selected methodology moving forward.

 5       Q.   Okay.  Let's talk about the Platte to Park Hill

 6   project.

 7            Does the Platte to Park Hill project address

 8   stormwater issues in the Montclair and Park Hill drainage

 9   basins?

10       A.   Yes.

11       Q.   And were components that are now in the Platte to

12   Park Hill project originally contemplated to provide

13   five-year storm protection?

14       A.   Yes.

15       Q.   How big is the Platte to Park Hill project as

16   compared to other drainage projects you've worked on?

17       A.   It's a lot bigger.

18       Q.   Would you characterize the Platte to Park Hill

19   project as huge?

20       A.   Yes.

21       Q.   Would you say it's approximately three times the

22   cost of any project you've worked on?

23       A.   Yes, I think that's what we talked about before.

24       Q.   Okay.

25       A.   It was an estimate.

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 19

 1         Q.    Okay.  And does it cover approximately three times

 2    the area of any project that you've worked on?

 3         A.    Yes.

 4         Q.    Okay.  Is it fair to say that Platte to Park Hill

 5    is a fairly unique drainage project in your experience for

 6    Denver?

 7         A.    Yes, sir.

 8         Q.    Despite its size and uniqueness, are there parts

 9    of the Montclair and Park Hill drainage basins that will not

10    see any benefit from the Platte to Park Hill project?

11         A.    Yes.  The Montclair Basin is 10 square miles

12    without an outfall.  That's a huge area.  So having this

13    outfall constructed is a building block for serving that

14    whole area.

15         Q.    And is it reasonably foreseeable that this is

16    sort of a backbone for a system?

17         A.    Yes.

18         Q.    And that backbones are often places where you can

19    build more water pipe piping to, to direct additional water

20    there for future drainage?

21         A.    Well, it is a backbone but the amount of water

22    that it's sized for is what's expected to run off of the 10

23    square miles.  So it would not be more water.  It would be

24    water that was planned for, unless, of course, the City

25    development patterns change significantly and you would see

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 20

1  more runoff or less runoff depending on how new development

2  patterns occur.

3      Q.   Uh-hmm.  Is the golf course project a design, bid,

4  build project?

5      A.   No.

6      Q.   Are most of the City's projects design, bid,

7  build?

8      A.   No.

9      Q.   They're not?

10     A.   Okay.  Could you ask that again?  Of which types

11  of projects would you like me to say -- answer that question

12  on?

13     Q.   Well, let's start with, what is a design, bid,

14  build procurement process?

15     A.   When you design it and then you bid it, you get a

16  contractor, and then the contractor builds it.

17     Q.   Okay.  And do you have some problem answering the

18  question of whether or not most of public works projects are

19  design, bid, build?

20     A.   Well, the larger projects are typically -- have

21  more creative procurements, if you will, but on the whole,

22  most of ours would be design, bid, build because they would

23  be a smaller dollar value.

24     Q.   Would you say the vast majority of the City's

25  projects are design, bid, build?

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 21

 1     A.   Many.

 2     Q.   So you wouldn't say vast majority.

 3     A.   No.

 4     Q.   Do you remember estimating it to be 97 percent of

 5  the City's projects at your deposition?

 6     A.   Well, yes.  Now that you remind me of that, yes,

 7  I'm looking forward to a whole other program.  I apologize

 8  if I'm on a difference place today.

 9     Q.   There was some surreal celestial goings on so...

10     A.   Thank you, yes.  I have some really cool pictures

11  of crescent shadows made by trees.  I had no idea.

12     Q.   I understand.

13          Are you familiar with plans to redevelop the

14  National Western Center?

15     A.   Yes.

16     Q.   Is it your understanding that Platte to Park Hill

17  will benefit the stormwater management needs for the

18  development of the National Western Center?

19     A.   Yes.

20     Q.   Okay.  Let's talk about the intergovernmental

21  agreement between the City and the Colorado Department of

22  Transportation.  Are you familiar with that

23  intergovernmental agreement or the IGA?

24     A.   Yes.

25     Q.   Did you help draft and negotiate that agreement?

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 22

 1      A.   Yes.

 2      Q.   And it relates to the Platte to Park Hill project?

 3      A.   Yes.

 4      Q.   And under the IGA, the City committed to the

 5   Colorado Department of Transportation that it would be

 6   building the Platte to Park Hill project?

 7      A.   Yes.

 8      Q.   Okay.  Can you turn to Exhibit 3 in the white

 9   notebook that says stipulated exhibits.

10      A.   Did you say 3?

11      Q.   3.  Is this the IGA that we were just discussing?

12      A.   Yes.

13           MR. GOLDHAMER:  Your Honor, I'd move the admission

14   of Exhibit 3.

15           THE COURT:  As I understand it, everything in this

16   book is stipulated to be not only authentic but admitted;

17   correct?

18           MR. GOLDHAMER:  That's my understanding, Your

19   Honor.

20           THE COURT:  They are all admitted.

21           Just for the record that includes 3, 6, 9, 12, 19,

22   24, 31, 40, 42, 48, 49, 52, 53, 65, 68, 77, 79, and 112,

23   which the Court will review.  They are all admitted.

24           MR. GOLDHAMER:  Thank you, Your Honor.  And that's

25   what I had as well.

John D. MacFarlane, et al. vs.                    Transcript of Proceedings - Testimony of Leslie Thomas
The City and County of Denver, et al.                                          August 21, 2017

Page 23

1          THE COURT:  Thank you.

2          Q.   (By Mr. Goldhamer)  Do you see on the second page

3    of Exhibit 3 in the middle where it says that CDOT must

4    provide hundred year storm protection for the entire I-70

5    east project?

6          A.   Yes.

7          Q.   And then two paragraphs down it states, The City

8    has separately and independently created a drainage plan to

9    provide hundred year storm protection for areas that could

10   be inundated by water from the Montclair and Park Hill

11   Basins including the I-70 east project alignment?

12         A.   Yes.

13         Q.   At the time the IGA was signed, was there any

14   indication in the IGA that the project would proceed in City

15   Park Golf Course?

16         A.   Not that I was aware of.

17         Q.   Okay.  Was there any public input or review

18   process with the IGA?

19         A.   No.

20         Q.   Why not?

21         A.   Well, it was a conversation between the two

22   entities so that the City could have some more input, better

23   cover, better transportation improvements to fit better into

24   the City, and that we could also get some funding for a

25   drainage project that we wanted to do and it was more of a

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 24

1   funding and arrangement between two entities.  It wasn't

2   about exactly how it was going to get done.  So it came

3   afterwards.

4        Q.   Okay.  And this IGA was entered into in early July

5   of 2015; is that right?  I believe at page 24 there's some

6   dates for --

7        A.   Oh, thank you.

8        Q.   -- signature, at least from the State controller.

9        A.   Yes.

10       Q.   So that's July 14, 2015?

11       A.   Yes.

12       Q.   And a day earlier, by July 13, 2015, the golf

13   course was being explored as an option for the project;

14   isn't that right?

15       A.   The information that I had from my team was after

16   we had finished the negotiations with CDOT, I don't really

17   remember if it was all the way through City Council or not,

18   but that was when some more alternatives came out on where

19   we could put the detention so...

20       Q.   But it was never disclosed to City Council that

21   the golf course was an option.

22       A.   Not that I'm aware of, no.

23       Q.   Okay.  Because if you look at Exhibit A to the

24   IGA, it describes the detention in a very different

25   location; isn't that right?

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 25

1        A.    Yes, it does.

2        Q.    In the Cole neighborhood; isn't that right?

3        A.    Yes.  They are near 39th.  Uh-hmm.

4        Q.    Okay.  And so I don't know if I got an answer to

5    my question.

6              By July 13, 2015, you understood that the golf

7    course was being explored as an option for the project?

8        A.    You know, I don't have a date as to when the golf

9    course was being explored being an option.  My team member

10   came to let me know that after the City Council process was

11   done.  So I -- I don't have a specific date.

12             MR. GOLDHAMER:  Okay.  Can I open this transcript,

13   Your Honor?

14             THE COURT:  Yes.

15       Q.    (By Mr. Goldhamer)  Can you turn to page 189.

16       A.    Okay.

17       Q.    And at line 25 I started asking you a question,

18   does this indicate to you that the -- and then the next page

19   it states the -- with reference to the decision, the

20   decision to possibly use City Park Golf Course in connection

21   with the project was being explored as early as July 13,

22   2015, and your answer was, it looks like the teams were

23   talking about it, yes.

24             Does that refresh your recollection as to whether

25   or not the teams were talking about it on July --

Page 26

```
 1        A.   Yes.  You had showed me a document.  I thought you

 2   were asking if they had talked to me about it, so I

 3   apologize.

 4        Q.   Okay.

 5        A.   It was not me, but you shared a document that

 6   showed that when we talked before.

 7        Q.   Okay.  Is it fair to say that the IGA generally

 8   provides that CDOT will repay the City for some of its

 9   expenditures occurred in building the Platte to Park Hill?

10        A.   Yes.

11        Q.   Under the IGA, the City, in turn, made certain

12   commitments back to CDOT?

13        A.   Yes.

14        Q.   And CDOT actually gets to review all of the

15   project and all the project plans including the project on

16   the golf course; right?

17        A.   Yes.

18        Q.   And they get to provide feedback and have a chance

19   to approve them or not approve them; is that right?

20        A.   Yes, as we do with their project.

21        Q.   Okay.  So under the IGA, the City actually pays

22   some money back to CDOT as well?

23        A.   Yes.

24        Q.   Do you know if CDOT had a budget shortfall in

25   connection with the I-70 project?
```

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 27

1      A.    Yes.

2      Q.    **They did?**

3      A.    Yes.

4      Q.    **And did the IGA help fulfill that shortfall?**

5      A.    Yes.

6      Q.    **Is it your understanding that the execution of the**

7   **IGA would result in lower contractor bids to CDOT for their**

8   **I-70 project?**

9      A.    Yes, we agreed to work carefully with them to

10  mitigate some risks that we had identified that we hope will

11  turn into savings for them.  No way to actually quantify

12  that or commit to that.

13     Q.    **Because if there's less drainage or less**

14  **stormwater heading to I-70, those contractors have less to**

15  **deal with while they're building their system?**

16           MS. BRODY:  Objection, Your Honor.  Foundation.

17     Q.    **(By Mr. Goldhamer)  Well, what was the basis of**

18  **your understanding that this would result in lower**

19  **contractor bids to CDOT for I-70 like you just testified?**

20     A.    It was more on the transportation side of the

21  equation where we agreed to take some dirt from their

22  excavation and use it more locally, which would reduce their

23  cost to haul and move that around.  Also would help our

24  neighbors not to have the material driving around the City.

25           We also agreed to some pricing on the real estate

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 28

1  that would give them access to that property more quickly,

2  which will reduce that risk to their contractor.

3         We also included some key relationships for plan

4  review and permitting of their project so that their

5  contractor developer team could rely on certain turnaround

6  times from the City staff for their project reviews.

7         Those are the ones that I can recall off the top

8  of my head that would expect to really relate to a reduction

9  in costs from them for their project.

10  Q.   Okay.  You mentioned taking some of the CDOT dirt.

11  Is any of that dirt ending up in the City Park Golf Course,

12  do you know?

13  A.   No.

14  Q.   Okay.  Do you know where that dirt is ending up?

15  A.   It -- some maybe the National Western, some

16  development -- some developers have talked to us about using

17  it.  Actually more interesting dirt than I had imagined

18  but...

19  Q.   Because it's a Superfund site; right?

20         MS. BRODY:  Objection, Your Honor.

21         THE COURT:  Sustained.

22  Q.   (By Mr. Goldhamer)  Can you tell me why it was

23  interesting dirt?

24  A.   Why they were interested in it?

25  Q.   Yeah.

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 29

 1       A.   Well, as areas of town develop, it's a commodity.

 2   And if your site is low and you need to raise it up, you

 3   need to find dirt from somewhere.  So the material that we

 4   would take through the IGA was environmentally suitable and

 5   engineering suitable for whatever use and that --

 6       Q.   I thought you said it was interesting dirt so --

 7   that's all right.  I didn't mean to cut you off.  It wasn't

 8   particularly important.  It was prurient interest.

 9            I want to talk about what preceded the IGA.  In

10   the other document -- or the other binder that's not

11   stipulated, can you turn to Exhibit 73.  This document is

12   dated June 30, 2014.

13       A.   Yes.

14       Q.   Was it prepared by the Denver Department of Public

15   Works?

16       A.   Yes, I think so.

17       Q.   Okay.  And, I mean, it has Denver Department of

18   Public Works on the front?

19       A.   Well, that doesn't necessarily mean we prepared

20   it, but I believe this one was prepared by our team.

21       Q.   Okay.  Does it pertain to the Montclair Drainage

22   Basin?

23       A.   Yes, it does.

24       Q.   And the City Park Golf Course project is in the

25   Montclair Drainage Basin; right?

John D. MacFarlane, et al. vs.                    Transcript of Proceedings - Testimony of Leslie Thomas
The City and County of Denver, et al.                                           August 21, 2017

Page 30

 1      A.   Yes, it is.

 2      Q.   And does this document represent the City's plan

 3   for hundred year storm protection that was supposedly

 4   separately and independently developed as discussed in the

 5   IGA?

 6      A.   Yes.  At the time this was the feasibility

 7   analysis to determine whether or not there was an

 8   opportunity to provide that level of protection in this

 9   basin.

10           MR. GOLDHAMER:  Okay.  Your Honor, I would move

11   the admission of Exhibit 73.

12           THE COURT:  Any objection?

13           MS. BRODY:  We do object, Your Honor, based on

14   relevance.  There's really very little, if any, connection

15   in here to the City Park Golf Course project that's at issue

16   today.

17           THE COURT:  All right.  The basin is -- the City

18   Park Golf Course is actually included in the Montclair Creek

19   Drainage Basin.  The Court will decide what, if any, weight

20   to accord this.  It's admitted.

21           You may proceed.

22           MR. GOLDHAMER:  Thank you, Your Honor.

23      Q.   (By Mr. Goldhamer)  Can you turn to page 15 of 82,

24   and it says -- it has a little 14 in the green dot for the

25   page number.  Do you see that?

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 31

 1    A.   Well, hold on.  What, 15 of 82?

 2    Q.   It's 15 of 82, but the page number also has 14 for

 3  the page number that's in the green dot.

 4    A.   I have it here.

 5    Q.   Okay.  And do you see that it's a description of

 6  critical issues?

 7    A.   Yes.

 8    Q.   And can you describe to me what this first

 9  critical issue was about?

10         MS. BRODY:  Objection, Your Honor, this is hearsay

11  within hearsay.

12         THE COURT:  Well, it's admitted.

13         Why don't you make an offer as to what it is you

14  are expecting to get out of this.  It's redundant to the

15  extent it's admitted and you can argue it.

16         MR. GOLDHAMER:  Your Honor, I think it obviously

17  is already admitted with -- I anticipate, and the deposition

18  testimony shows, that the issues described here are

19  consistent with Ms. Thomas's understanding of her

20  conversations with the other people that are mentioned here.

21         The critical issues described in this document

22  make it clear that the I-70 environmental study process

23  would be simply facilitated and moved along by the City

24  taking care of the drainage issues and that the Plaintiffs

25  separately have admitted that facilitating a highway

Page 32

 1  construction project schedule is not a park purpose.

 2          THE COURT:  All right.  It's admitted to the

 3  extent that it's not an impeachment or refreshing

 4  recollection, you are welcome to argue that, but as far as

 5  questioning her with respect to this, I think it goes more

 6  to argument.

 7          MR. GOLDHAMER:  Thank you, Your Honor.

 8      Q.   (By Mr. Goldhamer)  And so just so we're clear,

 9  Ms. Thomas, does the discussions with Keith Stefanik

10  referenced in -- let's -- let me back up.

11          Did you speak with Keith Stefanik concerning the

12  issues described in paragraph 1 of page 15 of Exhibit 73?

13      A.   Yes, those conversations occurred.

14      Q.   Okay.  And is this paragraph consistent with your

15  understanding of those conversations?

16      A.   Yes.

17      Q.   As far as paragraph 2 is concerned, did you speak

18  with Kirk Webb with respect to the issues discussed in

19  paragraph 2?

20      A.   Yes.

21      Q.   And does paragraph 2 accurately represent your

22  understanding of those discussions with Kirk Webb?

23      A.   Yes.

24      Q.   Okay.  Is it fair to say that both paragraphs 1

25  and 2 deem the construction timeline for I-70 a critical

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.                    Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 33

1    issue in connection with this document?

2        A.   Yes.  Having an understanding of what's going on

3    in the area where you're potentially planning a project is

4    important to understand, whether it's a City project, a

5    developer project, a CDOT project, a DPS project.  It's

6    important to understand what those issues might be on our

7    partner agencies or others in the community spending a lot

8    of money.

9        Q.   And it's important to understand what law applies

10   to which project; is that right?

11       A.   We would -- from an engineering perspective, it

12   would be important to understand the criteria.

13       Q.   Okay.  Can you turn back to page 4 of 82.  Do you

14   see under the heading 1.1, goals and risks.  Our

15   cross-departmental teams identified the following goals and

16   risks to evaluate our options to protect the I-70 PCL

17   project.  Do you see that?

18       A.   Yes.

19       Q.   Is that your understanding of what this document

20   represented, the evaluation of your options to protect the

21   I-70 PCL project?

22       A.   Well, that is what was shown here, but it is for

23   the entire basin.

24       Q.   Okay.  So that's not written here.

25       A.   No, but it is on the front page.

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 34

1   Q.   Okay.  Just not in this goals and risks section.

2   A.   Correct.  You would assume that it was for the

3   entire Montclair Basin.

4   Q.   Okay.

5        MR. GOLDHAMER:  Court's indulgence briefly?

6        THE COURT:  Sure.

7        MR. GOLDHAMER:  Nothing further, Your Honor.

8        THE COURT:  All right.  We've been going for about

9   two hours.  It's about 3:00.  We will take a recess and

10  reconvene about 3:15.  Thank you.

11       (Recess from 2:55 p.m. to 3:15 p.m.)

12       THE COURT:  All right.  We're back on the record

13  in 2016CV32126.

14       Cross-examination.  You are still under oath.

15  Please proceed.

16                    CROSS-EXAMINATION

17  BY MS. BRODY:

18  Q.   Good afternoon, Ms. Thomas.

19  A.   Good afternoon.

20  Q.   So I believe Mr. Goldhamer established earlier

21  that you are the present City engineer.  Could you describe

22  what education you have related to your position.

23  A.   Yes.

24       MR. GOLDHAMER:  Relevance.

25       THE COURT:  Overruled.  You can respond.

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 35

1      A.   I have a bachelor's degree in civil engineering, I

2  worked as a consultant for nearly 10 years, and I have been

3  with the City for going on 27 years in various roles and

4  responsibilities in the Department of Public Works and other

5  departments.

6      **Q.   (By Ms. Brody)  Could you just elaborate a little**

7  **bit on your various roles at the City and what you've done**

8  **here at the City.**

9      A.   I began doing project management for street

10  reconstruction projects in the -- first in 1989, almost

11  embarrassed to say, geobond, and then have had roles ever

12  since working with the building department.  I was a City

13  traffic engineer for a short time, have operated and led the

14  development engineering review, capital projects management,

15  parking management, and other departments within the City.

16      **Q.   Have you worked on wastewater capital projects**

17  **previously?**

18      A.   Yes, I have.

19      **Q.   Could you describe generally the nature of those**

20  **projects?**

21      A.   Well, they range anywhere from extending curb and

22  gutter, building inlets, building giant pipes,

23  reconstructing the river to reduce floodplains, detention

24  ponds, water quality ponds, anything basically to do with

25  water conveyance and water quality.

John D. MacFarlane, et al. vs.             Transcript of Proceedings - Testimony of Leslie Thomas
The City and County of Denver, et al.                               August 21, 2017

Page 36

1      Q.   And have you ever worked on or overseen stormwater

2   projects in parks before?

3      A.   Yes, I have.

4      Q.   Okay.  And can you just provide some highlights

5   just generally what some of those projects are?

6      A.   Yes.  We mentioned one before, Ferril Lake, was

7   done in 2008, and it was done to add detention volume to the

8   existing pond there to provide an outfall for the upper

9   Montclair portion of the 10 square mile Montclair Basin.

10       The GLO project, which is currently underway in

11   Globeville Landing Park, we'll put stormwater conveyance,

12   water quality, and pretty much completely rebuild the park

13   per community outreach and parks planning.

14       We worked on the Lakewood Gulch, which is on the

15   west side of town, it's a gulch that used to have a fill at

16   the end of it where our street fleet and solid maintenance

17   facilities were right at the confluence with the South

18   Platte River.

19       And when the RTD W line, the west corridor came

20   through, we were able to relocate our facilities and

21   reconstruct that gulch so that it went into the river,

22   reduced the floodplain, created park-like areas,

23   complimented the Rude Rec Center and also provided flood

24   protection for the City as well as RTD's W line.

25       Barnum Lake, that is right there on the southwest

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 37

1    quadrant of 6th Avenue and Federal Boulevard, actually has a
2    lake that you really can't see when you are on the highway,
3    but we expanded that to add more capacity as well as water
4    quality with the 6th Avenue bridges project that we did in
5    partnership with CDOT.
6             And one of my favorites is Hampden Heights.  It is
7    where DPS built the Joe Shoemaker School.  It was an open
8    space area near Cherry Creek.
9             We solved a hundred year flood issue there for the
10   neighbors, put in some pretty cool water quality and
11   learning type labs for the kids as well as extended the bike
12   path and access to the water for the public.
13        Q.    And, Ms. Thomas, I'm going to need you to speak
14   just based on your knowledge today.  I'm not sure if you're
15   looking at notes or a document that you were referred to
16   earlier.
17        A.    Okay.
18        Q.    But if you need your recollection refreshed, we
19   can show you documents.
20        A.    Okay.  Thank you.
21        Q.    Okay.  Have you been involved in the City Park
22   Golf Course project?
23        A.    Yes.
24        Q.    And can you describe your role with that project.
25        A.    Well, as a City engineer, it's my responsibility

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 38

1    to make sure that the staff has the resources they need, we

2    have hired experts, we have key staff, we've cooperated and

3    coordinated with parks, hired experts in groundwater and

4    experts in drainage and golf to lay out what we need to put

5    this project out to bid.

6         Q.   Okay.  And in your role, have you been involved in

7    or overseen the process to develop the project requirements,

8    the RFP?

9         A.   Yes.

10        Q.   Okay.  And were you also involved in selecting the

11   winning contracting team?

12        A.   Yes.

13        Q.   Okay.  You were asked some questions earlier about

14   the IGA between CDOT and the City, and I'm going to ask you

15   some follow-up questions.

16             Ms. Thomas, is the City doing this project to

17   benefit CDOT?

18        A.   No, not solely.

19        Q.   So from your perspective, why is the City doing

20   the City Park Golf Course project?

21        A.   Well, first and foremost, the City is doing this

22   to provide an outfall for the Montclair Basin.

23             Just to clarify, the CDOT project is well within

24   the Montclair Basin but is it solely done for them, no.  The

25   main objective is to provide that outfall for that 10 square

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 39

1    miles.

2        Q.    And why this basin?  Why the Montclair Basin?

3        A.    Well, the Montclair Basin is the only basin within

4    the City and County of Denver that does not have a creek or

5    a river or a storm-type outfall for stormwater that

6    collects, and it is one of the largest basins within the

7    city, so it's important for public safety and health to --

8    transportation, a lot of reasons, to have that water have a

9    path to the river that it can get to safely.

10       Q.    Has public works undertaken studies of this basin?

11       A.    Yes, we have.

12       Q.    Can you describe generally those studies and what

13   they show about this basin?

14       A.    We had started stormwater planning in earnest

15   around 2001 or 2002.  As we took on that effort, we noticed

16   that this basin was pretty deficient.

17           When I first came to the City and became involved

18   in the wastewater part of it, the stormwater part of it, I

19   got called every afternoon in the summer when it rained for

20   this part of town.

21           So both anecdotally and calls from our citizens as

22   well as studies, we determined that this is a pretty severe

23   issue that we needed to deal with.

24           That was what led to the upper Montclair/Ferril

25   Lake project that was completed in 2008.  After 2008 and we

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 40

1   were able to provide that storage there, we began to look in

2   the lower part of the basin, which is down by the river,

3   that was also the time that RTD started working on the

4   A-Line, which runs right along the railroad tracks and out

5   to DIA, so it was between that 10 square miles and the

6   river.

7            So we looked at that time in trying to figure out

8   how to put that storm drain through before everything got

9   rebuilt and there would be no place.

10           So we actually started a five-year system in about

11  2010 in response to that RTD challenge to try to meet that.

12       Q.   Okay.  And we will get to that system in a minute

13  but before we do, you mentioned RTD.  In your role as City

14  engineer, is it common for you to look for opportunities to

15  partner with other agencies, other projects, other

16  happenings in an area?

17       A.   Yes, it is.  Infrastructure is really expensive

18  and disruptive to the citizens and people doing business in

19  the city.  So any way that we can partner with the --

20  Hampden Heights, for instance, was a partnership with Denver

21  Public Schools, we've partnered with RTD, we look for

22  partnerships with developers, any way we can build

23  multifaceted projects with partners is a best practice.

24       Q.   Okay.  And is the IGA with CDOT an example of

25  that?

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 41

1      A.    Yes, it is.

2      Q.    So getting back to that five-year system, is that

3    the project known as the High Street project?

4      A.    Yes it is.

5      Q.    Okay.  And can you describe what that project

6    consisted of?

7      A.    It consisted of a pipe that would come from the

8    river up to about 40th Avenue and was intended to have a lot

9    of inlets or places where water can get into a pipe near

10   Coca-Cola, which is about 40th, 39th, 38th and High Street,

11   generally.

12     Q.    Okay.  And do you remember, just generally, what

13   the time frame was that the City was developing that

14   project?

15     A.    It was probably around 2010.

16     Q.    Did that project get built?

17     A.    It did not.

18     Q.    Why is that?

19     A.    Well, as RTD built the A-Line, there were portions

20   of what is called the Market Lead, which is a railroad

21   linear piece of property, that because of the way the A-Line

22   was designed and constructed, it left some parcels as

23   remnant parcels.

24          And so with that opportunity, we learned that we

25   could use some of that space as what I would call an inlet

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 42

1    or a large area where instead of having a constructed

2    concrete inlet like you see at the edge of streets, it could

3    be an open channel area where water could flow off of the

4    city and be captured reliably and safely and put into a

5    pipe.

6              So that gave us an opportunity to really provide

7    that higher level of protection that there was really no way

8    to provide before because there was no way to get the

9    water -- or a reliable way to get the water within the pipe.

10        Q.   We heard testimony earlier about a project known

11   as the 39th Avenue project.  Can you explain how that

12   relates to Market Lead.

13        A.   Yes.  The 39th Avenue project is in part within

14   the Market Lead so it goes from approximately Franklin

15   Street over to Jackson, which is partially or a large part

16   of that is the Market Lead property.

17        Q.   So before that property became available, were

18   there other opportunities to address the long-standing

19   problems in the Montclair Basin?

20        A.   At a five-year level.

21        Q.   Okay.  But not the higher level of protection?

22        A.   Not the higher level of protection.

23        Q.   You've been asked about the stormwater master plan

24   and why the City is doing the project when it wasn't

25   identified in the master plan.  Can you explain why the City

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 43

```
 1   decided to do the project and do it now?
 2        A.   Well, with the opportunities to put the Market
 3   Lead to use as this inlet and also connections to a bike
 4   path perspective, it wasn't -- the timing didn't work out
 5   with the master plan.
 6             Could you ask me the question again?  I'm sorry.
 7        Q.   Sure.
 8             MS. BRODY:  Do you want to read it back?
 9             (The pending question was read back by the
10   reporter.)
11        A.   So the opportunity came up for the Market Lead and
12   we could actually make it better, and we made the decision
13   to work and we did partner with CDOT because that would make
14   it available.  The timing, the outlet, everything was all in
15   the same place.  We needed to protect the A-Line and also
16   protect the city.  So having that real ability to make
17   that -- make use of that Market Lead area made all the
18   difference.
19        Q.   (By Ms. Brody)  Again, as it relates to the IGA
20   between CDOT and the City, why did the City want to do this
21   agreement?
22             MR. GOLDHAMER:  Objection.  Form.  Foundation.
23             THE COURT:  Counsel.
24             MS. BRODY:  I can rephrase if Your Honor would
25   prefer.
```

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 44

```
 1              THE COURT:  I think at this point it's --
 2    foundation is sustained.
 3              MS. BRODY:  Okay.
 4         Q.  (By Ms. Brody)  You were -- you testified earlier
 5    that you were part of the negotiations of the IGA?
 6         A.  Yes.
 7         Q.  Do you have an understanding as to why the City
 8    entered into this agreement?
 9         A.  Yes.
10         Q.  Okay.  What is your understanding?
11         A.  My understanding is that the City desired to get
12    some more transportation improvements as a part of the CDOT
13    project, including the cover, some better access to the
14    highway in the form of slip ramps and some neighborhood
15    urban design landscape type elements and the City in return
16    got some dollars to help pay for our drainage project.
17              So it was -- and it -- I guess as you work
18    together with two large agencies, the City and CDOT, it is
19    very helpful to have the outline of an agreement in the form
20    of an IGA for staff to move forward in understanding the
21    rules of engagement or the outline of how we want to work
22    together to make these big dollar investments.
23              The better we can pull together, the more
24    economical and easier, if you will, it is to work together
25    and make these big, big infrastructure improvements.
```

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 45

1    Q.   Did the City enter into the IGA solely for CDOT's

2    benefit?

3    A.   No.

4    Q.   Okay.  Again, from the City's perspective, what

5    were we getting out of this deal?

6    A.   We were getting transportation improvements and

7    help with our drainage project that we were doing anyway.

8    Q.   Okay.  So to clarify, is this a drainage project

9    that the City wanted to do?

10   A.   Yes.

11   Q.   Okay.  Are we doing it just to help CDOT?

12   A.   No.

13   Q.   Okay.  Why are we doing it?

14   A.   We're doing this to provide an outfall and provide

15   a hundred year protection for the city.

16   Q.   If for some reason CDOT does not go forward with

17   its Central 70 project, would the City still build the City

18   Park Golf Course project and other components of the Platte

19   to Park Hill project?

20        MR. GOLDHAMER:  Calls for speculation.

21        THE COURT:  Overruled.  You can respond.

22   A.   Yes.

23   Q.   (By Ms. Brody)  And, again, why is that?

24   A.   Because it solves a drainage problem for this part

25   of the city.

John D. MacFarlane, et al. vs.                    Transcript of Proceedings - Testimony of Leslie Thomas
The City and County of Denver, et al.                                    August 21, 2017

Page 46

1    Q.   Let's take the reverse scenario.  If the City does

2  not build City Park Golf Course or the rest of the Platte to

3  Park Hill project, to your knowledge, would that stop the

4  Central 70 project from proceeding?

5         MR. GOLDHAMER:  Foundation and speculation.

6         THE COURT:  Based on the witness's testimony of

7  her involvement, not only with respect to the IGA but in her

8  position in the various projects in the City, she has the

9  requisite knowledge and can respond to the extent she can.

10         Overruled.

11    A.   Well, that would be up to CDOT but they can --

12  they have everything they need in their documents to move

13  forward without our project.

14    Q.   (By Ms. Brody)  By documents are you referring to

15  their record of decision?

16    A.   I was referring -- yes, and their RFP.

17    Q.   Okay.  I want to go back and just clarify some of

18  the issues that came up in your direct examination.

19         With regard to master plans, are these static

20  documents?

21    A.   Well, the document stays the same but the city

22  changes.

23    Q.   Can you explain what you mean by that?

24    A.   Well, with any study, you study conditions as they

25  exist or as they are projected to be based on current plans.

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 47

1            But as we know, our city develops every day and
2    policies change, zoning changes, things happen in this very
3    building every Monday night that changes how our city looks.
4    So it's a snapshot in time of how the city is and what the
5    city is looking to be.
6            So as it progresses, that's why you update a plan,
7    that's why by ordinance we update every five years to
8    collect any changes, changes in direction, changes in how
9    the city is -- is -- actually is.
10        Q.    Is it unheard of for projects to be done that
11   aren't specifically called out in the master plan?
12        A.    No, it is not unheard of.
13        Q.    You were also asked about the capital improvement
14   list or lists.
15        A.    Uh-hmm.
16        Q.    Are there times that projects that are undertaken
17   that aren't specifically identified on such lists?
18        A.    Yes.
19        Q.    Okay.  In deciding where to build the various
20   components of the Platte to Park Hill project, you were
21   asked specifically about budget and costs of real estate.
22   Do you recall that?
23        A.    Yes.
24        Q.    Was that the only factor in your decision-making
25   process?

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 48

```
 1         A.    Well, budget and costs are always an important
 2   part, but we also have the aesthetics, how it fits
 3   contextually into the community, that's very important to
 4   what we do.  Time is important as well, but we want to be
 5   sure that it fits within the whole context of the city to
 6   the point where we have had, in this case, a very extensive
 7   public outreach process to really determine what that would
 8   look like for these projects.
 9         Q.    Do you have a recollection of why City Park was
10   chosen for this detention as opposed to some of the other
11   alternatives that were studied?
12         A.    Well, from a technical perspective, it's a better
13   place in the basin to place detention because of the
14   location, of just how the drainage and the shape of this
15   basin would work.
16         Q.    Did it also provide an opportunity to update the
17   golf course and some of its facilities?
18         A.    Absolutely.
19         Q.    You were also asked about whether there was public
20   input before approval of the IGA.  Do you recall that?
21         A.    Yes.
22         Q.    Public works enters into a lot of contracts every
23   year, I would imagine.
24         A.    Yes.
25         Q.    Do you typically have a public input process
```

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 49

1   before entering into a contract?

2        A.   No.

3        Q.   So in this case, was it in keeping with standard

4   practice to not have a public input process before entering

5   into this IGA?

6        A.   Yes.

7             MS. BRODY:  One moment, Your Honor.  I just want

8   to see if we've addressed these other issues.

9             THE COURT:  Take your time.

10            MS. BRODY:  That's all I have, Your Honor.  Thank

11   you.

12            THE COURT:  Redirect.

13                    REDIRECT EXAMINATION

14   BY MR. GOLDHAMER:

15        Q.   You mentioned on cross-examination the Hampden

16   Heights project; is that right?

17        A.   Yes.

18        Q.   And is that located on the site where the Joe

19   Shoemaker School was just located or created?

20        A.   Yes.

21        Q.   Is this a public park?

22        A.   Again, I apologize, I don't have that in my head.

23   I do not believe so.

24        Q.   Are you familiar with the controversy concerning

25   the swap of park land or what people thought was park land

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 50

1   around there to Denver Public Schools?

2         A.   Yes.

3         Q.   So is that the area where that Hampden Heights/Joe

4   Shoemaker project occurred?

5         A.   Yes.

6         Q.   Okay.  So you were aware that there can be a fair

7   amount of public controversy concerning the use of public

8   park land; right?

9         A.   Yes.

10        Q.   So you were aware of that before the City Park

11  Golf Course option was rolled out to the public?

12        A.   Yes.

13        Q.   Okay.  You mentioned the GLO or the Globeville

14  Landing Outfall on cross-examination; right?

15        A.   Yes.

16        Q.   Does that outfall also provide outfall for water

17  that's literally coming from the CDOT I-70 project?

18        A.   Yes.

19        Q.   So the CDOT project plugs in to the GLO or the

20  Globeville Landing Outfall?

21        A.   Well, yeah.  It's right in that same basin, yes.

22        Q.   Okay.  Can you turn to Exhibit 68 that's in the

23  stipulated book.

24             MR. GOLDHAMER:  I believe it's already in.  Is

25  that Your Honor's ruling?

John D. MacFarlane, et al. vs.                    Transcript of Proceedings - Testimony of Leslie Thomas
The City and County of Denver, et al.                                            August 21, 2017

```
 1                    THE COURT:  It is.

 2                    MR. GOLDHAMER:  Thank you.

 3          Q.   (By Mr. Goldhamer)  Do you know who Scott Gillmore

 4    is?

 5          A.   Yes.

 6          Q.   Was Scott Gillmore the director of parks and

 7    recreation prior to Happy Haynes taking that position?

 8          A.   Yes.  Scott is with the parks' department, yes.

 9          Q.   He was the interim director before she was

10    appointed.  Do you know?

11          A.   Yes, that's probably right.

12          Q.   And you see that Exhibit 68 is an email from

13    Mr. Gillmore to Tim O'Brien at the auditor's office?

14          A.   Yes.

15          Q.   And on the second page it says, I have attached

16    the most recent DPR inventory.

17                    MS. BRODY:  Your Honor, I'm going to object.

18    First of all, I believe this is beyond the scope of cross.

19    Second of all, I don't believe that Ms. Thomas is even on

20    this email.

21                    THE COURT:  I noted the same things.

22                    Counsel, what is your position?

23                    MR. GOLDHAMER:  Your Honor, the only purpose of

24    this line of questioning is to direct the witness to page 10

25    that indicates that Globeville Landing Park is not a
```

John D. MacFarlane, et al. vs.                         Transcript of Proceedings - Testimony of Leslie Thomas
The City and County of Denver, et al.                                                      August 21, 2017

 1    designated park.

 2              THE COURT:  Oh.  If this is within this witness's

 3    knowledge, but the document you're asking her to look at is

 4    hearsay and beyond the scope so --

 5              MR. GOLDHAMER:  I understand, Your Honor.

 6              THE COURT:  -- the objection is sustained --

 7              MR. GOLDHAMER:  I'm sorry, Your Honor.

 8              THE COURT:  The objection is sustained relative to

 9    Exhibit 68.  Again, I think you asked her earlier regarding

10    the Globeville Landing Outfall as to whether or not it was a

11    park.  Again, the witness is free to respond to the extent

12    she knows.

13              MR. GOLDHAMER:  Okay.

**14         Q.   (By Mr. Goldhamer)  So does any of this refresh**

**15    any of your recollection about whether or not Globeville**

**16    Landing Park -- or Globeville Landing Outfall is a park?**

17              THE COURT:  Again, it would be inappropriate to

18    refresh recollection when it wasn't something that she

19    recollected.  You can ask her relative to her -- to the best

20    of her knowledge.

21              MR. GOLDHAMER:  Okay.

22              MS. BRODY:  And, Your Honor, I believe that's been

23    asked and answered.

24              THE COURT:  I will overrule it to the extent that

25    there's -- you can ask it again.

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 53

1      Q.   (By Mr. Goldhamer)  Do you have any additional

2    testimony to add on whether or not you believe the

3    Globeville Landing is a designated park?

4      A.   No, I don't.  It would be up to parks' records,

5    whatever they would have.  If this is their records, that

6    would be correct.

7      Q.   Okay.  You mentioned that the High Street Outfall

8    project was planned for five year stormwater protection; is

9    that right?

10     A.   Originally, yes.

11     Q.   And the project that replaced it was scoped for a

12    hundred year stormwater protection because of the IGA; is

13    that correct?

14          MS. BRODY:  Objection, Your Honor.

15          THE COURT:  What's the objection?

16          MS. BRODY:  Scope.  It's -- I will withdraw the

17    objection.

18          THE COURT:  Thank you.

19     A.   Could you ask that one more time?  I got lost.

20          MR. GOLDHAMER:  Could you repeat the question.

21          (The pending question was read back by the

22    reporter.)

23     A.   It's correct that it was scoped for a hundred year

24    protection.

25     Q.   (By Mr. Goldhamer)  Because of the IGA.

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 54

```
 1        A.    No.  It was scoped for the hundred year protection

 2   because we were able to get the Market Lead and we had a way

 3   to get the water into the pipe.  That's -- and that was our

 4   objective for that basin.

 5        Q.    Okay.

 6             MR. GOLDHAMER:  The Court's indulgence briefly.

 7             THE COURT:  Take your time.

 8             MR. GOLDHAMER:  Well, I've got the wrong depo.

 9        Q.    (By Mr. Goldhamer)  Do you recall testifying on

10   cross-examination that it would not be within the common

11   practices of the Department of Public Works to get public

12   input on contracts before they were executed?

13        A.    On a funding contract, yes.

14        Q.    So a funding contract is what you wouldn't

15   necessarily get public input on?

16        A.    Well, as a course of business, the department and

17   the City does business with CDOT for funding back and forth

18   many courses of business, and the question was asked do we

19   typically get -- have a public outreach on those and we do

20   not.

21        Q.    Okay.  Can you describe what sort of projects or

22   contracts you do get public input on as a matter of more

23   regular habit?

24        A.    Actually not very much.  When we hire a contractor

25   or a designer, we have interview processes that occasionally
```

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 55

 1   citizens will be involved in.

 2       Q.   So is it important to public works or not to get

 3   the public's input on projects where the physical

 4   infrastructure around them is going to be changed in their

 5   community?

 6       A.   Well, that's a little different question than a

 7   contract.

 8            So the public involvement process is important to

 9   the public works department and the City.  That typically

10   happens after the contract is in place either for funding or

11   for design or for construction.

12       Q.   Okay.  So it's the major issues that public works

13   makes its own decision on and the public gets to sort of

14   provide some input for the details or -- is that fair?

15       A.   Can you -- could you say that one more -- could

16   you ask that again, please?

17       Q.   So you make a decision about a contract and that

18   doesn't necessarily need public input.  Is that what your

19   testimony is?

20       A.   Well, typically when we have a contract, there is

21   an appropriation that is made and that appropriation is done

22   through the City budgeting process which has a public

23   process to it.

24            So the policy direction on whether you're doing a

25   project or not doing a project has been made by those

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 56

1   policymakers and so the department would implement that

2   policy decision that was made through the budget process.

3       Q.   Sorry.  We're just really digging through this

4   deposition here.

5               MR. GOLDHAMER:  No more questions.  Thank you.

6               THE COURT:  May this witness be excused?

7               MR. GOLDHAMER:  Yes, with reservation of right for

8   recall for rebuttal.

9               THE COURT:  That's fine.  You are excused.  Thank

10  you very much for your testimony.

11              Next witness.

12              (End of requested testimony.)

13

14

15

16

17

18

19

20

21

22

23

24

25

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

Page 57

```
 1                    CERTIFICATE OF COURT REPORTER

 2

 3            I, DEANNA BAYSINGER, a Registered Professional

 4   Reporter and Notary Public within and for the State of

 5   Colorado, commissioned to administer oaths, do hereby

 6   certify that the proceedings were taken in stenotype by me

 7   at the time and place aforesaid and was thereafter reduced

 8   to typewritten form by me; and that the foregoing is a true

 9   and correct transcript of my stenotype notes thereof.

10            That I am not an attorney nor counsel nor in

11   any way connected with any attorney or counsel for any of

12   the parties to said action nor otherwise interested in the

13   outcome of this action.

14            My commission expires:  November 8, 2018.

15

16

17            _____
              DEANNA BAYSINGER
              Registered Professional Reporter
18            Notary Public, State of Colorado

19

20

21

22

23

24

25
```

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

**1**

**1** 10:8,11,12,22
32:12,24

**1.1** 33:14

**10** 19:11,22 35:2 36:9
38:25 40:5 51:24

**10,000** 9:13,15

**112** 22:22

**12** 22:21

**13** 24:12 25:6,21

**14** 24:10 30:24 31:2

**15** 10:23 31:1,2 32:12

**189** 25:15

**19** 22:21

**1989** 35:10

**2**

**2** 32:17,19,21,25

**2001** 39:15

**2002** 4:17 39:15

**2008** 36:7 39:25

**2010** 40:11 41:15

**2014** 6:11,21,25
29:12

**2015** 24:5,10,12
25:6,22

**2016CV32126** 34:13

**215** 10:5,22

**24** 22:22 24:5

**25** 25:17

**27** 35:3

**2:30** 4:22

**2:55** 34:11

**3**

**3** 22:8,10,11,14,21
23:3

**30** 29:12

**31** 22:22

**38th** 41:10

**39th** 9:8 10:3 25:3
41:10 42:11,13

**3:00** 34:9

**3:15** 34:10,11

**4**

**4** 33:13

**40** 22:22

**40th** 41:8,10

**42** 22:22

**43,250** 9:14

**48** 22:22

**49** 22:22

**5**

**52** 22:22

**53** 22:22

**6**

**6** 22:21

**65** 22:22

**68** 22:22 50:22 51:12
52:9

**6th** 37:1,4

**7**

**7** 14:15

**70** 45:17 46:4

**73** 29:11 30:11 32:12

**77** 22:22

**79** 22:22

**8**

**8** 12:11,17 13:5 14:15

**82** 30:23 31:1,2 33:13

**9**

**9** 22:21

**97** 21:4

**A**

**A-line** 40:4 41:19,21
43:15

**ability** 43:16

**Absolutely** 48:18

**access** 28:1 37:12
44:13

**accord** 30:20

**accurately** 32:21

**acquisition** 12:3,8

**acre** 9:11,13,14,15
10:5,7,8,11,12

**acreage** 10:24

**acres** 10:22

**add** 36:7 37:3 53:2

**additional** 19:19
53:1

**address** 17:6 18:7
42:18

**addressed** 49:8

**admission** 13:4
22:13 30:11

**admitted** 13:15
22:16,20,23 30:20
31:12,15,17,25 32:2

**adoption** 6:22

**aesthetics** 48:2

**affected** 8:5

**afternoon** 4:2,12,13
34:18,19 39:19

**agencies** 33:7 40:15
44:18

**agreed** 27:9,21,25

**agreement** 21:21,

23,25 43:21 44:8,19

**Alba** 14:1

**alignment** 23:11

**alternative** 17:5,16

**alternatives** 16:25
17:3,14 24:18 48:11

**amount** 10:4,21 11:2
19:21 50:7

**analysis** 30:7

**anecdotally** 39:21

**annual** 5:24

**answering** 20:17

**anticipate** 31:17

**apologize** 4:21 21:7
26:3 49:22

**apples** 16:18

**applies** 33:9

**appointed** 51:10

**appropriation**
55:21

**approval** 48:20

**approve** 26:19

**approximately** 4:17
10:5 18:21 19:1
42:14

**area** 7:17 8:22 9:10
18:1 19:2,12,14 33:3
37:8 40:16 42:1,3
43:17 50:3

**areas** 9:6 10:3 23:9
29:1 36:22

**argue** 31:15 32:4

**argument** 32:6

**arrangement** 24:1

**assertion** 13:17

**assume** 34:2

**attached** 51:15

**attachment** 12:21

**auditor's** 51:13

**authentic** 22:16

**authority** 6:13

**Avenue** 37:1,4 41:8
42:11,13

**aware** 8:1,8,10 23:16
24:22 50:6,10

**B**

**bachelor's** 35:1

**back** 9:17 26:12,22
32:10 33:13 34:12
41:2 43:8,9 46:17
53:21 54:17

**backbone** 19:16,21

**backbones** 19:18

**Barnum** 36:25

**based** 6:2 8:5 30:13
37:14 46:6,25

**basically** 35:24

**basin** 10:3 13:1
19:11 29:22,25 30:9,
17,19 33:23 34:3
36:9 38:22,24 39:2,3,
10,13,16 40:2 42:19
48:13,15 50:21 54:4

**basins** 18:9 19:9
23:11 39:6

**basis** 5:12,25 27:17

**began** 35:9 40:1

**benefit** 9:6 19:10
21:17 38:17 45:2

**bid** 20:3,6,13,15,19,
22,25 38:5

**bids** 27:7,19

**big** 17:21,22 18:15
44:22,25

**bigger** 8:19 18:17

**biggest** 17:20

**bike** 37:11 43:3

**binder** 12:13 29:10

**bit** 8:19 35:7

**block** 19:13

**book** 22:16 50:23

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

books 10:17

Boulevard 11:4 17:21 37:1

boxes 17:7

bridges 37:4

briefly 34:5 54:6

Brighton 11:4 17:21

broadly 9:17

Brody 13:7 27:16 28:20 30:13 31:10 34:17 35:6 43:8,19, 24 44:3,4 45:23 46:14 49:7,10 51:17 52:22 53:14,16

budget 12:7 15:7,9 26:24 47:21 48:1 56:2

budgeting 55:22

build 8:22 19:19 20:4,7,14,19,22,25 40:22 45:17 46:2 47:19

building 19:13 22:6 26:9 27:15 35:12,22 47:3

builds 20:16

built 37:7 41:16,19

bullet 14:18,21

business 40:18 54:16,17,18

bypass 16:21

_____

**C**

call 41:25

called 10:4,21 11:8 13:1 39:19 41:20 47:11

calls 39:21 45:20

capacity 4:24 37:3

capital 4:25 5:12,15, 17,20 6:2,6 17:6 35:14,16 47:13

captured 42:4

care 31:24

carefully 27:9

carry 7:11

case 6:6 7:20 48:6 49:3

CDOT 23:3 24:16 26:8,12,14,22,24 27:7,19 28:10 33:5 37:5 38:14,17,23 40:24 43:13,20 44:12,18 45:11,16 46:11 50:17,19 54:17

CDOT'S 45:1

celestial 21:9

center 6:6 21:14,18 36:23

Central 45:17 46:4

challenge 40:11

chance 26:18

change 19:25 47:2

changed 55:4

channel 10:3 42:3

characterize 18:18

Cherry 37:8

chosen 48:10

circumstance 16:16

citizens 39:21 40:18 55:1

city 4:14,16,24 5:9, 20,21 6:15,17,24 7:2, 7,19,22 8:12,18,19, 24 9:18 10:24 11:18, 21,24 12:2 15:2,11, 22 16:1,10 17:25 18:1,2 19:24 21:21 22:4 23:7,14,22,24 24:17,20 25:10,20 26:8,11,21 27:24 28:6,11 29:24 30:15, 17 31:23 33:4 34:21 35:3,7,8,12,15 36:24 37:21,25 38:14,16, 19,20,21 39:4,7,17 40:13,19 41:13 42:4, 24,25 43:16,20 44:7,

11,15,18 45:1,9,15, 17,25 46:1,2,8,21 47:1,3,4,5,9 48:5,9 50:10 54:17 55:9,22

City's 4:25 5:2,6 6:2, 22 7:3 20:6,24 21:5 30:2 45:4

city-wide 5:22

civil 35:1

clarify 38:23 45:8 46:17

clear 11:16 31:22 32:8

close 10:13

closed 7:22

closure 8:6,17,24,25

Coca-cola 41:10

Cole 25:2

collaboratively 5:23

collect 47:8

collects 39:6

Colorado 21:21 22:5

commit 27:12

commitments 26:12

committed 22:4

commodity 29:1

common 40:14 54:10

community 33:7 36:13 48:3 55:5

compare 16:18

compared 18:16

completed 39:25

completely 36:12

complimented 36:23

components 18:11 45:18 47:20

concept 7:6

concerned 32:17

concrete 42:2

conditions 46:24

confluence 36:17

connection 14:25 15:1 16:22 25:20 26:25 30:14 33:1

connections 43:3

consideration 17:24

consisted 41:6,7

consistent 31:19 32:14

constructed 19:13 41:22 42:1

construction 8:5 16:5,6,7,8 32:1,25 55:11

consultant 35:2

contemplate 9:2

contemplated 11:19 16:22 17:12 18:12

context 48:5

contextually 48:3

continue 14:22

contract 49:1 54:13, 14 55:7,10,17,20

contracting 38:11

contractor 20:16 27:7,19 28:2,5 54:24

contractor's 8:21

contractors 27:14

contracts 48:22 54:12,22

control 8:21

controller 24:8

controversy 49:24 50:7

conversation 23:21

conversations 31:20 32:13,15

conveyance 35:25 36:11

cool 21:10 37:10

cooperated 38:2

coordinated 38:3

correct 11:14,15 12:23 22:17 34:2 53:6,13,23

corridor 36:19

cost 15:14,19 18:22 27:23

costs 12:3,8 14:16 28:9 47:21 48:1

Council 6:17 24:17, 20 25:10

Counsel 4:9 43:23 51:22

County 39:4

courses 54:18

Court 4:2,8 13:6,12, 19 22:15,20,23 23:1 25:14 28:21 30:12, 17,19 31:12 32:2 34:6,8,12,25 43:23 44:1 45:21 46:6 49:9, 12 51:1,21 52:2,6,8, 17,24 53:15,18 54:7 56:6,9

Court's 34:5 54:6

cover 9:10 10:22 19:1 23:23 44:13

created 5:7 23:8 36:22 49:19

creative 20:21

creek 30:18 37:8 39:4

crescent 21:11

criteria 33:12

critical 31:6,9,21 32:25

cross 51:18

cross-departmental 33:15

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

cross-examination 34:14,16 49:15 50:14 54:10

cup 4:18

curb 35:21

current 46:25

cut 29:7

**D**

date 25:8,11

dated 29:12

dates 24:6

day 24:12 47:1

deal 27:15 39:23 45:5

decide 30:19

decided 43:1

deciding 47:19

decision 6:1 12:5 25:19,20 43:12 46:15 55:13,17 56:2

decision-making 47:24

deem 32:25

deep 10:8,12

deficient 39:16

degree 35:1

deliberative 13:11, 17

Denver 8:9 15:23,25 19:6 29:14,17 39:4 40:20 50:1

department 11:7 21:21 22:5 29:14,17 35:4,12 51:8 54:11, 16 55:9 56:1

departments 35:5, 15

depending 20:1

depo 54:8

deposition 21:5 31:17 56:4

depth 10:22

describe 5:14 10:7, 23 31:8 34:21 35:19 37:24 39:12 41:5 54:21

describes 24:24

description 31:5

design 16:14,17,19 17:2,7,11,16 20:3,6, 13,15,19,22,25 44:15 55:11

designated 7:10,12, 15,23 8:7 52:1 53:3

designation 7:7

designed 16:11 41:22

designer 54:25

desired 44:11

details 55:14

detention 9:3,10,22, 24 10:4,21 11:2,8,19 15:12 24:19,24 35:23 36:7 48:10,13

determination 11:11

determine 11:8 30:7 48:7

determined 39:22

develop 29:1 38:7

developed 30:4

developer 28:5 33:5

developers 28:16 40:22

developing 41:13

development 19:25 20:1 21:18 28:16 35:14

develops 47:1

DIA 40:5

difference 7:13 21:8 43:18

digging 56:3

direct 4:10 19:19 46:18 51:24

direction 47:8 55:24

director 51:6,9

dirt 27:21 28:10,11, 14,17,23 29:3,6

disclosed 13:18 24:20

discussed 30:4 32:18

discussing 22:11

discussions 32:9, 22

disruptive 40:18

document 13:10,15 26:1,5 29:10,11 30:2 31:21 33:1,19 37:15 46:21 52:3

documents 13:17 37:19 46:12,14,20

dollar 20:23 44:22

dollars 44:16

dot 30:24 31:3

DPR 51:16

DPS 33:5 37:7

draft 13:10,14,22 14:4,8 21:25

drafted 13:25

drain 40:8

drainage 13:1 18:8, 16 19:5,9,20 23:8,25 27:13 29:21,25 30:19 31:24 38:4 44:16 45:7,8,24 48:14

driven 11:3

driving 27:24

duly 4:5

**E**

earlier 24:12 34:20 37:16 38:13 42:10 44:4 52:9

early 24:4 25:21

earnest 39:14

easier 44:24

east 23:5,11

economical 44:24

edge 42:2

education 34:22

effect 16:15

effort 39:15

elaborate 35:6

elements 44:15

email 12:19 13:25 51:12,20

embarrassed 35:11

end 36:16 56:12

ending 28:11,14

engagement 44:21

engineer 4:14,16,25 6:15 34:21 35:13 37:25 40:14

engineering 29:5 33:11 35:1,14

enter 45:1

entered 24:4 44:8

entering 49:1,4

enters 48:22

entire 23:4 33:23 34:3

entirety 7:23 8:6

entities 23:22 24:1

environmental 31:22

environmentally 29:4

equation 27:21

equipment 16:7

established 34:20

estate 14:18,22 15:1, 4,7,9 27:25 47:21

estimate 18:25

estimating 21:4

evaluate 33:16

evaluation 33:20

event 17:9

exact 7:1

examination 4:10 46:18 49:13

examine 13:14

examined 4:5

excavation 27:22

excused 56:6,9

executed 54:12

execution 27:6

executive 6:16

Exhibit 12:11,17 13:5 14:15 22:8,14 23:3 24:23 29:11 30:11 32:12 50:22 51:12 52:9

exhibits 12:14,15,16 22:9

exist 46:25

existing 36:8

expand 8:14

expanded 37:3

expect 28:8

expected 19:22

expecting 31:14

expenditures 26:9

expensive 40:17

experience 14:25 19:5

expertise 7:17

experts 38:2,3,4

explain 42:11,25 46:23

explored 24:13 25:7, 9,21

extended 37:11

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

**extending** 35:21

**extensive** 48:6

**extent** 31:15 32:3 46:9 52:11,24

**F**

**facilitated** 31:23

**facilitating** 31:25

**facilities** 17:7 36:17, 20 48:17

**factor** 47:24

**fair** 19:4 26:7 32:24 50:6 55:14

**fairly** 19:5

**familiar** 5:2 7:3,6,18 8:11 21:13,22 49:24

**favorites** 37:6

**feasibility** 30:6

**feature** 7:24 8:8

**Federal** 37:1

**feedback** 26:18

**feet** 9:13,14,15 10:5

**Ferril** 8:12,15,20 36:6

**figure** 40:7

**fill** 36:15

**fills** 16:10

**final** 13:15 14:12

**finalized** 16:17

**find** 12:12 29:3

**fine** 56:9

**finished** 24:16

**fit** 17:21 23:23

**fits** 48:2,5

**five-year** 18:13 40:10 41:2 42:20

**fleet** 36:16

**flood** 36:23 37:9

**flooding** 16:16

**floodplain** 36:22

**floodplains** 35:23

**flow** 42:3

**folks** 14:7

**follow-up** 38:15

**foot** 10:7,8,12,22

**footprint** 8:14 10:11

**foremost** 38:21

**foreseeable** 19:15

**form** 5:11 14:12 43:22 44:14,19

**forward** 14:12 18:4 21:7 44:20 45:16 46:13

**forwarded** 14:9

**foundation** 27:16 43:22 44:2 46:5

**frame** 41:13

**Franklin** 42:14

**free** 52:11

**front** 29:18 33:25

**fulfill** 27:4

**full** 8:25

**fund** 5:24

**funding** 23:24 24:1 54:13,14,17 55:10

**funds** 5:20

**future** 16:12 19:20

**G**

**gave** 42:6

**generally** 10:23 26:7 35:19 36:5 39:12 41:11,12

**geobond** 35:11

**giant** 35:22

**Gillmore** 51:3,6,13

**give** 28:1

**GLO** 36:10 50:13,19

**Globeville** 7:9,14 17:22 36:11 50:13,20 51:25 52:10,15,16 53:3

**goals** 33:14,15 34:1

**goings** 21:9

**Goldhamer** 4:11,24 13:4,16,21,22 22:13, 18,24 23:2 25:12,15 27:17 28:22 30:10, 22,23 31:16 32:7,8 34:5,7,20,24 43:22 45:20 46:5 49:14 50:24 51:2,3,23 52:5, 7,13,14,21 53:1,20, 25 54:6,8,9 56:5,7

**golf** 6:5,24 7:19 9:2, 6,18,24 10:25 11:3,9, 24 12:6 15:22 16:1, 10,15,20,23 17:3,6, 13,17 18:2 20:3 23:15 24:12,21 25:6, 8,20 26:16 28:11 29:24 30:15,18 37:22 38:4,20 45:18 46:2 48:17 50:11

**good** 4:2,12,13 14:8 34:18,19

**great** 4:19

**green** 30:24 31:3

**greens** 17:7

**ground** 9:3

**grounds** 13:8

**groundwater** 38:3

**guess** 44:17

**gulch** 36:14,15,21

**gutter** 35:22

**guys** 4:22

**H**

**habit** 54:23

**Hampden** 37:6 40:20 49:15 50:3

**hand** 4:3

**happen** 47:2

**happening** 8:1

**happenings** 40:16

**Happy** 51:7

**haul** 27:23

**Haynes** 51:7

**head** 7:11 15:10 28:8 49:22

**heading** 27:14 33:14

**health** 39:7

**heard** 42:10

**hearsay** 13:9,13 31:10,11 52:4

**Heights** 37:6 40:20 49:16

**Heights/joe** 50:3

**helpful** 44:19

**High** 41:3,10 53:7

**higher** 42:7,21,22

**highlights** 36:4

**highway** 31:25 37:2 44:14

**Hill** 9:19,21 11:5 12:25 15:2 18:5,7,8, 12,15,18 19:4,9,10 21:16 22:2,6 23:10 26:9 45:19 46:3 47:20

**hire** 54:24

**hired** 38:2,3

**history** 8:9

**hold** 31:1

**Honor** 13:5,7,16,21 22:13,19,24 25:13 27:16 28:20 30:10, 13,22 31:10,16 32:7 34:7 43:24 49:7,10 51:17,23 52:5,7,22 53:14

**Honor's** 50:25

**hope** 27:10

**hours** 34:9

**huge** 18:19 19:12

**hundred** 17:8 23:4,9 30:3 37:9 45:15 53:12,23 54:1

**hustled** 4:20

**I**

**I-70** 23:4,11 26:25 27:8,14,19 31:22 32:25 33:16,21 50:17

**idea** 21:11

**identified** 27:10 33:15 42:25 47:17

**IGA** 21:23 22:4,11 23:13,14,18 24:4,24 26:7,11,21 27:4,7 29:4,9 30:5 38:14 40:24 43:19 44:5,20 45:1 46:7 48:20 49:5 53:12,25

**imagine** 48:23

**imagined** 28:17

**impact** 17:3,17

**impacts** 16:19,23

**impeachment** 32:3

**implement** 56:1

**important** 9:18 12:5, 7,9 13:19 29:8 33:4, 6,9,12 39:7 48:1,3,4 55:2,8

**improvement** 47:13

**improvements** 5:12 6:2,7 8:11,14,17 23:23 44:12,25 45:6

**inappropriate** 52:17

**included** 28:3 30:18

**includes** 12:21 22:21

**including** 23:11 26:15 44:13

**increase** 15:6

**independently** 23:8 30:4

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

indication 23:14

indications 5:21

indulgence 34:5 54:6

information 24:15

infrastructure 5:20, 24 40:17 44:25 55:4

inlet 41:25 42:2 43:3

inlets 35:22 41:9

input 23:17,22 48:20,25 49:4 54:12, 15,22 55:3,14,18

install 7:23

installation 8:7

instance 40:20

intended 9:5 41:8

intensive 17:6

interest 29:8

interested 28:24

interesting 28:17,23 29:6

intergovernmental 21:20,23

interim 51:9

interview 54:25

inundated 23:10

inventory 51:16

investments 44:22

involved 5:18 16:7 37:21 38:6,10 39:17 55:1

involvement 46:7 55:8

issue 7:19 30:15 31:9 33:1 37:9 39:23

issues 15:19 18:8 31:6,18,21,24 32:12, 18 33:6 46:18 49:8 55:12

**J**

Jackson 42:15

Joe 37:7 49:18

July 24:4,10,12 25:6, 21,25

June 29:12

**K**

keeping 49:3

Keith 32:9,11

key 28:3 38:2

kids 37:11

Kirk 32:18,22

knowledge 5:9 37:14 46:3,9 52:3,20

**L**

labs 37:11

laid 16:14

lake 8:12,15,20 36:6, 25 37:2 39:25

Lakewood 36:14

land 49:25 50:8

Landing 7:9,15 17:22 36:11 50:14,20 51:25 52:10,16 53:3

landscape 44:15

large 42:1,15 44:18

larger 20:20

largest 39:6

law 33:9

lay 38:4

lead 4:25 41:20 42:12,14,16 43:3,11, 17 54:2

lean 10:19

learned 41:24

learning 37:11

led 35:13 39:24

left 41:22

LESLIE 4:4

level 30:8 42:7,20, 21,22

linear 41:21

list 5:12,14 6:2,7 47:14

lists 5:17 47:14,17

literally 50:17

locally 27:22

located 15:22 49:18, 19

location 24:25 48:14

locations 11:18,21

long 4:16,17

long-standing 42:18

looked 17:15 40:7

lost 53:19

lot 8:3 10:17 14:6,7 16:25 17:14 18:17 33:7 39:8 41:8 48:22

low 29:2

lower 27:7,18 40:2

**M**

made 8:12 11:11 14:8 21:11 26:11 43:12,17 55:21,25 56:2

main 14:18 38:25

maintenance 36:16

major 55:12

majority 20:24 21:2

make 5:24 9:22 10:13 13:19,20 16:4, 11 17:24 31:13,22 38:1 43:12,13,16,17 44:22,25 55:17

makes 55:13

management 6:16, 25 7:3 8:8 9:6 21:17 35:9,14,15

manager 8:4

manner 8:22

Market 41:20 42:12, 14,16 43:2,11,17 54:2

master 5:2,6,11 6:11,21 42:23,25 43:5 46:19 47:11

material 13:12 27:24 29:3

matter 54:22

meant 14:6

meet 40:11

member 25:9

mentioned 18:1 28:10 31:20 36:6 40:13 49:15 50:13 53:7

methodology 18:4

microphone 10:14

middle 23:3

mile 36:9

miles 19:11,23 39:1 40:5

minimize 16:15,19 17:2

minimized 16:23 17:17

minute 40:12

mitigate 27:10

moment 49:7

Monday 47:3

money 12:2 15:11 26:22 33:8

Montclair 18:8 19:9, 11 23:10 29:21,25 30:18 34:3 36:9 38:22,24 39:2,3 42:19

Montclair/ferril

39:24

move 10:15 13:4 22:13 27:23 30:10 44:20 46:12

moved 31:23

moving 4:22 18:4

multifaceted 40:23

multiple 18:3

**N**

National 21:14,18 28:15

nature 35:19

necessarily 17:2 29:19 54:15 55:18

needed 11:2 14:5 17:5,8 39:23 43:15

negotiate 21:25

negotiations 24:16 44:5

neighborhood 25:2 44:14

neighbors 16:9 27:24 37:10

night 47:3

north 9:6 18:1

northeast 15:23,25

notebook 22:9

noted 51:21

notes 37:15

noticed 39:15

number 30:25 31:2,3

**O**

O'brien 51:13

oath 34:14

object 13:7 30:13 51:17

objection 13:6,13 27:16 28:20 30:12

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

31:10 43:22 52:6,8
53:14,15,17

**objective** 38:25 54:4

**objectives** 18:3

**occasionally** 54:25

**occur** 20:2

**occurred** 8:9 26:9
32:13 50:4

**occurring** 9:24 10:2

**offer** 31:13

**office** 51:13

**open** 16:1,4,12 25:12
37:7 42:3

**operated** 35:13

**opportunities** 40:14
42:18 43:2

**opportunity** 30:8
41:24 42:6 43:11
48:16

**opposed** 48:10

**option** 11:24 16:21
24:13,21 25:7,9
50:11

**options** 33:16,20

**ordinance** 6:18 47:7

**organizations** 5:23

**originally** 18:12
53:10

**outfall** 7:9,15 17:22
19:12,13 36:8 38:22,
25 39:5 45:14 50:14,
16,20 52:10,16 53:7

**outlet** 43:14

**outline** 44:19,21

**outreach** 36:13 48:7
54:19

**overrule** 52:24

**overruled** 13:13
34:25 45:21 46:10

**oversaw** 6:19

**overseen** 36:1 38:7

**P**

**p.m.** 34:11

**paragraph** 32:12,14,
17,19,21

**paragraphs** 23:7
32:24

**parcels** 41:22,23

**park** 6:24 7:6,10,15,
19,23 8:6,7,12,18,19,
24 9:2,18,19,21
10:25 11:5 12:25
15:2,22 16:1,10
17:22 18:1,5,7,8,12,
15,18 19:4,9,10
21:16 22:2,6 23:10,
15 25:20 26:9 28:11
29:24 30:15,18 32:1
36:11,12 37:21 38:20
45:18,19 46:2,3
47:20 48:9 49:21,25
50:8,10 51:25 52:1,
11,16 53:3

**park-like** 36:22

**parking** 35:15

**parks** 7:2,4 8:3,4
11:11 17:9 36:2,13
38:3 51:6

**parks'** 51:8 53:4

**part** 9:18 12:5,7
15:25 16:13 17:6,20
18:2 39:18,20 40:2
42:13,15 44:5,12
45:24 48:2

**partially** 42:15

**partner** 33:7 40:15,
19 43:13

**partnered** 40:21

**partners** 17:10
40:23

**partnership** 37:5
40:20

**partnerships** 40:22

**parts** 19:8

**past** 7:3 8:2

**path** 37:12 39:9 43:4

**patterns** 19:25 20:2

**pay** 44:16

**pays** 26:21

**PCL** 33:16,21

**pending** 43:9 53:21

**people** 16:5,6,12
31:20 40:18 49:25

**perceived** 6:3

**percent** 21:4

**permitting** 28:4

**perspective** 33:11
38:19 43:4 45:4
48:12

**pertain** 29:21

**pertains** 12:25

**physical** 55:3

**pictures** 21:10

**piece** 41:21

**pieces** 5:19,23

**pipe** 11:4 17:21
19:19 41:7,9 42:5,9
54:3

**piped** 17:12,18

**pipes** 35:22

**piping** 19:19

**place** 21:8 40:9
43:15 48:13 55:10

**places** 19:18 41:9

**Plaintiffs** 31:24

**Plaintiffs'** 12:14,16

**plan** 5:10,22 6:11,21,
25 23:8 28:3 30:2
42:23,25 43:5 47:6,
11

**planned** 7:19 19:24
53:8

**planning** 5:2,6,11,
15,17,20 6:14 33:3
36:13 39:14

**plans** 21:13 26:15

46:19,25

**Platte** 9:19,21 11:5
12:25 15:2 18:5,7,11,
15,18 19:4,10 21:16
22:2,6 26:9 36:18
45:18 46:2 47:20

**plugs** 50:19

**point** 14:18,21 44:1
48:6

**policies** 47:2

**policy** 6:22 55:24
56:2

**policymakers** 56:1

**pond** 36:8

**ponds** 35:24

**portion** 8:20 36:9

**portions** 41:19

**position** 34:22 46:8
51:7,22

**possibly** 25:20

**potentially** 17:20
33:3

**Powerpoint** 12:21
13:23

**practice** 40:23 49:4

**practices** 54:11

**preceded** 29:9

**prefer** 43:25

**prepared** 6:15
29:14,19,20

**present** 34:21

**presentation** 15:20

**pretty** 36:12 37:10
39:16,22

**previously** 35:17

**prices** 15:4

**pricing** 27:25

**prior** 51:7

**priorities** 5:21

**problem** 20:17
45:24

**problems** 42:19

**proceed** 23:14 30:21
34:15

**proceeding** 46:4

**process** 4:25 5:11
6:14,19 11:5 13:11,
17 17:11 20:14 23:18
25:10 31:22 38:7
47:25 48:7,25 49:4
55:8,22,23 56:2

**processes** 5:3,6
54:25

**procurement** 20:14

**procurements**
20:21

**program** 21:7

**progresses** 47:6

**project** 5:12 6:1,3,5,
24 7:1,18 9:1,2,18,
19,21 10:5,22 11:3,5,
9 12:6,25 13:2 15:1,
2,4,17 16:4,11,22
18:6,7,12,15,19,22
19:2,5,10 20:3,4
22:2,6 23:5,11,14,25
24:13 25:7,21 26:15,
20,25 27:8 28:4,6,9
29:24 30:15 32:1
33:3,4,5,10,17,21
35:9 36:10 37:4,22,
24 38:5,7,16,20,23
39:25 41:3,5,14,16
42:10,11,13,24 43:1
44:13,16 45:7,8,17,
18,19 46:3,4,13
47:20 49:16 50:4,17,
19 53:8,11 55:25

**projected** 46:25

**projects** 4:25 6:2,7
7:2,4 18:16 20:6,11,
18,20,25 21:5 35:10,
14,16,20 36:2,5
40:15,23 46:8 47:10,
16 48:8 54:21 55:3

**property** 11:22,25
12:2,8 15:12 28:1
41:21 42:16,17

**protect** 16:8 33:16,
20 43:15,16

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

protection 17:25
18:3,13 23:4,9 30:3,8
36:24 42:7,21,22
45:15 53:8,12,24
54:1

provide 9:5 18:2,12
23:4,9 26:18 30:8
36:4,8 38:22,25 40:1
42:6,8 45:14 48:16
50:16 55:14

provided 36:23

prurient 29:8

public 5:5 6:17 11:7
20:18 23:17 29:14,18
35:4 37:12 39:7,10
40:21 48:7,19,22,25
49:4,21 50:1,7,11
54:11,15,19,22 55:2,
8,9,12,13,18,22

public's 55:3

pull 44:23

purchase 11:22,25
15:12

purpose 5:7,10 32:1
51:23

put 6:1 12:6 14:12
24:19 36:11 37:10
38:4 40:8 42:4 43:2

putting 11:19

puzzling 13:18

**Q**

quadrant 37:1

quality 35:24,25
36:12 37:4,10

quantify 27:11

question 20:11,18
25:5,17 43:6,9 53:20,
21 54:18 55:6

questioning 32:5
51:24

questions 9:1
38:13,15 56:5

quickly 4:22 28:1

**R**

railroad 40:4 41:20

rained 39:19

raise 4:2 29:2

ramps 44:14

ran 4:21

range 35:21

read 43:8,9 53:21

real 14:18,21 15:1,4,
7,9 27:25 43:16
47:21

reason 45:16

reasons 39:8

rebuild 36:12

rebuilt 40:9

rebuttal 56:8

Rec 36:23

recall 14:10 28:7
47:22 48:20 54:9
56:8

recent 51:16

recess 34:9,11

recollected 52:19

recollection 25:24
32:4 37:18 48:9
52:15,18

recommendation
15:6

recommendations
5:24

recommended 6:16

reconstruct 36:21

reconstructing
35:23

reconstruction
35:10

reconvene 34:10

record 11:16 13:20
22:21 34:12 46:15

records 53:4,5

recreation 11:12
51:7

redevelop 21:13

Redirect 49:12,13

reduce 27:22 28:2
35:23

reduced 36:22

reduction 28:8

redundant 31:14

reference 15:17
25:19

referenced 32:10

referred 37:15

referring 5:16 46:14,
16

refers 15:14

reflect 5:9 6:21

refresh 25:24 52:14,
18

refreshed 37:18

refreshing 32:3

regard 46:19

regular 54:23

relate 28:8

related 34:22

relates 22:2 42:12
43:19

relationships 28:3

relative 52:8,19

relevance 13:11
30:14 34:24

relevant 13:12

reliable 14:11 42:9

reliably 42:4

relocate 36:20

rely 5:5 28:5

remember 13:24
21:4 24:17 41:12

remind 21:6

remnant 41:23

repay 26:8

repeat 53:20

repeated 13:16

rephrase 43:24

replaced 53:11

reporter 43:10 53:22

represent 30:2
32:21

represented 33:20

requested 56:12

require 8:17,23
11:21,24

requirements 38:7

requires 9:21

requisite 46:9

reservation 56:7

resolution 6:18

resources 38:1

respect 32:5,18 46:7

respond 34:25
45:21 46:9 52:11

response 40:11

responsibilities
35:4

responsibility
37:25

rest 10:2 46:2

result 27:7,18

return 44:15

reverse 46:1

review 22:23 23:17
26:14 28:4 35:14

reviews 28:6

RFP 38:8 46:16

rising 14:21 15:1

risk 14:22 15:2,5
28:2

risks 15:4 27:10
33:14,16 34:1

river 35:23 36:18,21
39:5,9 40:2,6 41:8

role 37:24 38:6 40:13

roles 35:3,7,11

rolled 50:11

RTD 36:19 40:3,11,
13,21 41:19

RTD'S 36:24

Rude 36:23

rules 44:21

ruling 50:25

run 19:22

runoff 20:1

runs 11:4 40:4

**S**

safe 16:7 17:8

safely 39:9 42:4

safety 8:21 39:7

saved 15:11

saves 12:2

savings 27:11

scenario 46:1

schedule 32:1

scheduled 4:21

School 37:7 49:19

Schools 40:21 50:1

scope 15:17 51:18
52:4 53:16

scoped 53:11,23
54:1

Scott 51:3,6,8

seated 4:8

section 34:1

selected 18:4

selecting 38:10

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

**separately** 23:8
30:4 31:25

**serving** 19:13

**severe** 39:22

**shadows** 21:11

**shape** 48:14

**shared** 26:5

**Shoemaker** 37:7
49:19 50:4

**short** 16:1 35:13

**shorter** 16:4,12

**shortfall** 26:24 27:4

**show** 37:19 39:13

**showed** 26:1,6

**shown** 33:22

**shows** 31:18

**side** 27:20 36:15

**signature** 24:8

**signed** 23:13

**significantly** 19:25

**similar** 16:16

**simply** 31:23

**sir** 8:25 9:16 19:7

**site** 16:8 28:19 29:2
49:18

**size** 11:3 19:8

**sized** 19:22

**slip** 44:14

**smaller** 20:23

**snapshot** 47:4

**solely** 38:18,24 45:1

**solid** 36:16

**solved** 37:9

**solves** 45:24

**sort** 19:16 54:21
55:13

**sounds** 4:20

**South** 36:17

**southwest** 36:25

**space** 16:1,5,12 37:8
41:25

**speak** 32:11,17
37:13

**specific** 25:11

**specifically** 47:11,
17,21

**specifications**
16:19

**speculation** 45:20
46:5

**spending** 33:7

**spiff** 14:1,5

**square** 9:13,14,15
19:11,23 36:9 38:25
40:5

**staff** 28:6 38:1,2
44:20

**standard** 49:3

**start** 20:13

**started** 25:17 39:14
40:3,10

**starts** 14:16

**State** 24:8

**stated** 5:10

**statements** 6:22

**states** 23:7 25:19

**static** 46:19

**stays** 46:21

**Stefanik** 32:9,11

**Stepping** 9:17

**stipulated** 12:14
22:9,16 29:11 50:23

**stop** 46:3

**storage** 10:8 40:1

**storm** 17:8,12 18:13
23:4,9 30:3 40:8

**storm-type** 39:5

**stormwater** 6:11,21,
25 7:3,23 8:7,11 9:3,

5,22 10:21 11:4
17:18 18:8 21:17
27:14 36:1,11 39:5,
14,18 42:23 53:8,12

**strategy** 17:9

**street** 9:8 35:9 36:16
41:3,10 42:15 53:7

**streets** 42:2

**studied** 17:1 48:11

**studies** 39:10,12,22

**study** 31:22 46:24

**subject** 13:11

**suggest** 14:4

**suitable** 29:4,5

**summer** 39:19

**Superfund** 28:19

**supervising** 6:13

**support** 14:7

**supposedly** 30:3

**surreal** 21:9

**sustained** 28:21
44:2 52:6,8

**swap** 49:25

**sworn** 4:5

**system** 19:16 27:15
40:10,12 41:2

---

**T**

**taking** 28:10 31:24
51:7

**talk** 7:2 18:5 21:20
29:9

**talked** 18:23 26:2,6
28:16

**talking** 25:23,25

**team** 6:12,15,16
24:15 25:9 28:5
29:20 38:11

**teams** 25:22,25
33:15

**technical** 48:12

**tee** 17:7

**ten-year** 17:12

**testified** 4:5 27:19
44:4

**testifying** 54:9

**testimony** 31:18
42:10 46:6 53:2
55:19 56:10,12

**things** 8:22 14:6
47:2 51:21

**Thomas** 4:4,12
13:22 32:9 34:18
37:13 38:16 51:19

**Thomas's** 31:19

**thought** 26:1 29:6
49:25

**Tim** 51:13

**time** 4:17 5:10 6:22
8:8 13:1 15:3 23:13
30:6 35:13 40:3,7
41:13 47:4 48:4 49:9
53:19 54:7

**timeline** 32:25

**timely** 8:22

**times** 18:21 19:1
28:6 47:16

**timing** 43:4,14

**today** 21:8 30:16
37:14

**top** 15:10 28:7

**town** 15:25 16:13
29:1 36:15 39:20

**tracks** 40:4

**traffic** 35:13

**transcript** 25:12

**transportation**
21:22 22:5 23:23
27:20 39:8 44:12
45:6

**trees** 21:11

**true** 6:5,9 7:9

**turn** 12:11 14:15
22:8 25:15 26:11

27:11 29:11 30:23
33:13 50:22

**turnaround** 28:5

**type** 37:11 44:15

**types** 20:10

**typically** 20:20
48:25 54:19 55:9,20

---

**U**

**Uh-hmm** 20:3 25:3
47:15

**ultimate** 6:13

**understand** 13:21
21:12 22:15 33:4,6,9,
12 52:5

**understanding**
21:16 22:18 27:6,18
31:19 32:15,22 33:2,
19 44:7,10,11,20

**understood** 7:13
25:6

**undertaken** 39:10
47:16

**underway** 36:10

**unheard** 47:10,12

**unique** 19:5

**uniqueness** 19:8

**update** 15:19 47:6,7
48:16

**updates** 14:16 15:15

**upper** 36:8 39:24

**urban** 44:15

---

**V**

**values** 14:22 15:1

**vast** 20:24 21:2

**volume** 36:7

---

**W**

**wanted** 23:25 45:9

John D. MacFarlane, et al. vs.
The City and County of Denver, et al.

Transcript of Proceedings - Testimony of Leslie Thomas
August 21, 2017

**wastewater** 35:16
39:18

**water** 4:18 10:8,11
16:11 19:19,21,23,24
23:10 35:24,25 36:12
37:3,10,12 39:8 41:9
42:3,9 50:16 54:3

**Webb** 32:18,22

**weight** 30:19

**west** 36:15,19

**Western** 21:14,18
28:15

**white** 12:13 22:8

**wide** 10:8

**winning** 38:11

**withdraw** 53:16

**witness's** 46:6 52:2

**work** 6:11 8:3 9:22
27:9 43:4,13 44:17,
21,24 48:15

**worked** 17:9 18:16,
22 19:2 35:2,16 36:1,
14

**workers** 16:9

**working** 35:12 40:3

**works** 6:17 11:7
20:18 29:15,18 35:4
39:10 48:22 54:11
55:2,9,12

**written** 33:24

**wrong** 54:8

**wrote** 15:3

---

**Y**

**year** 17:8 23:4,9 30:3
37:9 45:15 48:23
53:8,12,23 54:1

**years** 35:2,3 47:7

---

**Z**

**zoning** 47:2