# EXHIBIT 5

| | |
|---|---|
| **DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO**<br>1437 Bannock Street, Rm. 256<br>Denver, CO 80202 | DATE FILED: May 22, 2017 6:03 PM<br>FILING ID: 8F75248253491<br>CASE NUMBER: 2016CV32126 |
| **Plaintiff:** J.D. MACFARLANE, *et al.*<br><br>v.<br><br>**Defendants:** THE CITY AND COUNTY OF DENVER; *et. al* | ▲ COURT USE ONLY ▲ |
| *Attorneys for the City Defendants:*<br>KRISTIN M. BRONSON, Denver City Attorney<br>Reneé A. Carmody, Atty. No. 40202*<br>Tracy A. Davis, Atty. No. 35058*<br>Jessica Brody. Atty. No. 35234*<br>Assistant City Attorneys<br>Municipal Operations Section<br>201 W. Colfax Ave., Dept. 1207<br>Denver, CO 80202-5332<br>Telephone: 720.913.3275; Facsimile: 720.913.3180<br>Email: renee.carmody@denvergov.org<br>Email: tracy.davis@denvergov.org<br>Email: jessica.brody@denvergov.org<br>*Counsel of record | Case No.: 2016CV32126<br><br>Courtroom: 409 |
| **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** | |

**Introduction**

Defendants are entitled to summary judgment[1] because the undisputed material facts show that the City's contemplated City Park Golf Course ("CPGC") Redesign Project ("Project") violates neither Denver's Charter nor its Zoning Code. Plaintiffs' have not produced any evidence that the City has leased, or will lease, the CPGC in violation of the Charter. Additionally, Plaintiffs' own admissions show that the CPGC serves a park purpose, and that it will continue to serve a park purpose

---

[1] *C.R.C.P. 121 § 1-15 Certification*: Counsel for Defendants has conferred with Plaintiffs' counsel about this Motion for Summary Judgment and is authorized to state that Plaintiffs oppose the relief requested.

upon completion of the Project, as required by the Zoning Code. Finally, contrary to Plaintiffs' speculation that the Project will flood CPGC and make it unplayable, the Project design criteria will improve the course, including by reducing the time it takes for stormwater to drain. Simply put, Plaintiffs' case is based on speculation and opposition to other projects, specifically, the I-70 reconstruction planned by the Colorado Department of Transportation ("CDOT"). Plaintiffs ignore that stormwater detention features have been integrated into new and existing parks across Denver and around the country in a manner that not only protects communities, but also enhances recreation and wildlife habitat. Nothing about the Project prevents the CPGC from serving a park purpose.

First, Plaintiffs allege that the City plans to sell or lease CPGC as part of the Project. Plaintiffs have produced no conveyance document or lease because none exists. The City has not sold or leased CPGC to anyone, nor does it have any intention to do so. To try to salvage their claim, Plaintiffs nonetheless speculate that there must be a "de-facto" lease to CDOT. While a novel theory, a "de facto" lease is a legal impossibility here. The only means by which Denver may sell or lease an interest in land it owns is through a contract signed by the Mayor after approval by City Council. Any other attempt to convey an interest in land would be null and void. Finally, Plaintiffs theorize that the "de facto" lease is a lease from the City's Department of Parks and Recreation ("Parks") to the Department of Public Works ("Public Works"). Parks and Public Works are both agencies of the City, and the City cannot lease CPGC to itself. Therefore, the City is entitled to summary judgment on this part of Plaintiffs' claim.

Second, Plaintiffs have failed to produce any evidence that CPGC will not be used for a park purpose after the Project is completed. To the contrary, the Request for Proposals ("RFP") for the Project reveals that the Project's scope is to rebuild and enhance the 18-hole golf course and

associated park amenities while adding to existing stormwater detention capacity. The Project will also improve the course by, among other things, reducing the length of time it presently takes for stormwater to drain from the course after a major storm event. The evidence demonstrates that incorporating flood protection features into CPGC is consistent with Denver's long-standing practice and is a recognized nationally as a best practice. Therefore, the proposed Project does not violate the requirement that City park land be used for park purposes, and the City is entitled to summary judgment on this and the remainder of Plaintiffs' claims.

## Undisputed Material Facts

1. The City and County of Denver is a home rule municipality and a municipal corporation of the State of Colorado. Colorado Const. Art. XX. *See* Defs. Answer to Amend. Compl. at ¶ 8, 4.25.17, filing ID A00585FADD771.

2. The City is governed by its Charter, which was adopted pursuant to the Colorado Constitution, Article XX. A true and correct copy of the Denver Charter provisions cited in this Motion are attached as **Exhibit A**.[2]

3. Allegra "Happy" Haynes is the Executive Director and Manager of the City's Department of Parks and Recreation, a Charter-created department of the City. *See* A. Haynes Affidavit, attached as **Exhibit B** at ¶2. Her duties and powers as the Parks Manager are enumerated in §2.4.4 of the Charter. *Id.* As Manager, her duties and powers include the management and control of the operation, care, repair and maintenance of all park and recreational structures and all land on which those facilities are located and operated. CPGC is within her management and control. *Id*.

---

[2] Relevant Charter provisions at-issue are: §§ 2.4.2; 2.4.4.; 2.4.5; 2.4.6; 3.2.6.

4. The Wastewater Management Division is part of the Department of Public Works, a Charter-created department within the City and County of Denver. This Division provides storm and sanitary wastewater services to property owners within Denver, through fees paid into the Wastewater Enterprise Fund. *See* D.R.M.C. Chapter 56, Divisions 3 and 4.

5. Parks' policy states expressly that locating natural or manmade drainage features within a designated park is consistent with that property's classification as a park. *See* 11.18.16 Parks Designation Policy, attached as **Exhibit C**.

6. Many of Denver's parks and golf courses detain stormwater, whether intentionally or inadvertently. For example, Ferril Lake in City Park is designed in part as a detention facility, and the ball fields in the northeast corner of City Park contain inadvertent or unplanned detention. *See* **Ex. B** at ¶6. Kennedy Golf Course and Overland Golf Courses both contain planned detention. *Id.*

7. In some parks, Parks and Public Works, including the Wastewater Management Division, work together to incorporate flood protection features into the park, either at the time the park is originally constructed or as a part of a redesign of an existing park. For example, the City installed a large detention area in Crestmoor Park; and other examples of detention in parks include Central Park and Great Lawn at Lowry. *See* **Ex. B** at ¶¶ 5-7; *see also*, List of City Parks with storm drainage, attached as **Exhibit D**.

8. Detaining stormwater within a park provides benefits to the park, including increased water for vegetation that reduces the need for supplemental irrigation, creation of habitat for wildlife, and aesthetic enhancement for park users. The practice of combining stormwater detention with park uses is hailed by the Environmental Protection Agency, the Trust for Public Land, and other experts in the field as a best practice. **Ex. B** at ¶ 8.

4

9. CPGC is a City-owned golf course with ancillary facilities located adjacent to City Park in Denver. It is bounded by Colorado Boulevard on the east, 23rd Avenue on the south, York Street on the west, and 26th Avenue on the north. In addition to an 18-hole golf course, CPGC includes a clubhouse with restaurant, office, locker rooms, and pro shop facilities, as well as facilities for the City's First Tee youth golf program. CPGC presently contains, among other water facilities, a large pond that contains water used for irrigation, and inadvertent, or unplanned, detention in the western third of the course, including where the clubhouse, First Tee facility and holes, and chipping practice range are located. *See* Map of CPGC, attached as **Exhibit E**.

10. The CPGC clubhouse is prone to flooding, which causes damage to the basement and often renders it unusable.  Water needs to be pumped from the clubhouse frequently. **Ex. B** at ¶ 18.

11. By virtue of CPGC's topography and conditions within the drainage basin, CPGC already detains stormwater. **Ex. B** at ¶ 11. Topographical images show that flooding within CPGC is a natural, historical condition. *See* topographical maps, attached as **Exhibit F**. Historically, a drainage channel or creek flowed from what is now the Montclair and Mayfair neighborhoods, through City Park and through CPGC into the now-Cole neighborhood and then further west and north to the South Platte River. *Id*.

12. Approximately half of CPGC is zoned as an OS-A district. OS-A is a zoning district applicable to park and similar land. OS-A is intended to protect and preserve public parks owned, operated, or leased by the City and managed by Parks for park purposes. *See* Denver Zoning Code ("DZC") § 9.3.2.1.A, (all excerpts of DZC cited herein are attached as **Exhibit G**[3]). A map showing the zoning of CPGC is attached as **Exhibit H**.

---

[3] DZC §§ 9.3.2.1.A, 9.3.4.1; 9.3.4.5.

13. The northern portion of CPGC is not designated as park land. *See* Map indicating CPGC deed conveyances and park designation boundaries, attached as **Exhibit I**. Therefore, §2.4.5 of the Charter does not apply to this portion of CPGC, though it is zoned OS-A.

14. On January 12, 2017, the City issued the RFP for this Project to pre-qualified bidders. *See* excerpts of RFP, attached as **Exhibit J**. The RFP specifies all of the requirements for the Project, including:

- The Project must be an 18-hole Parkland-style golf course (Sections 1.11, 18.1);
- Detained stormwater must drain within eight hours, including during a 100-yr flood (Section 12.2.3.5);
- An option to demolish and construct a new club house (Section 19, ITP);
- New facilities for the First Tee program (Section 18.5);
- New practice facilities, including chipping and putting areas and the option to increase the driving range to accommodate woods-length driving (Sections 1.11, 18.1 – 18.4.3);
- Stormwater drainage facilities that are integrated into and enhance the playability of the golf course (Sections 1.5, 12.0).

(*See* **Ex. J** at pp. ITP-1, 1-1 – 1-3, 18-1 –18-18, 12-5, 19-1, 12-1 – 12-12).

15. Even Plaintiffs agree that a golf course, including CPGC, serves a "park purpose":

- Plaintiff J.D. MacFarlane states:
    Q. Do you agree with me that a golf course serves a recreational purpose?
    A. *Yes, because it basically is part of City Park. It's an integral part of City Park, and it always was.*
    Q. I'm not talking specifically about City Park Golf Course. I'm just saying a golf course, in general, because it involves recreation, do you agree that that's a park purpose?
    A. *Yeah, I think it's probably true about anywhere that's got the same sort of thing if they have -- but there are no other Denver parks that have an attached golf course.*

- Plaintiff Christine O'Connor states:
    Q. Do you agree with me that a golf course, in general, has a park or recreational purpose?
    A. *A golf course, in general, may have a park purpose.*
    Q. Or recreational purpose?
    A. *Or recreational purpose, correct.*

- Plaintiff Sarah Edgell states:
    Q. Do you agree with me that a golf course serves -- just any golf course serves a recreational purpose?
    A. *Do I agree with you? Yes.*
    Q. Is it your understanding that if this project were to proceed, at its completion, it's going to be a golf course when it's said and done?
    A. *Do I believe it will still be a golf course?*

      Q. Yes.
      A. *It -- yes, it will still be a golf course.*

- Plaintiff Lamone Noles states:
  Q. Do you agree with the statement in general that a golf course serves as a park purpose?
  A. *Yes*

- Plaintiff Theresa Johnson states:
  Q. Do you agree with me that a golf course serves a park purpose?
  A. *A golf course itself, yes, does serve a park purpose.*

- Plaintiff Heather Strack McCutcheon states:
  Q. And do you agree that a golf course serves as a park purpose?
  A. *I do.*

- Plaintiff Vida Hughes states:
  Q. Do you agree with me that a golf course serves as a park purpose?
  A. *Yes, a golf course serves as a park purpose. I agree with you.*

*See* Deposition Transcripts of Plaintiffs, attached as group **Exhibit K**: **K1**- JD MacFarlane, pp. 55:9-56:3; **K2** - C. O'Connor, pp: 49:7-12; **K3** - S. Edgell pp: 41:22-42:8; **K4** - L. Noles, pp: 22:19-22; **K5** - T. Johnson, pp. 23:20-24; **K6** - H. McCutcheon, pp: 14:9-11; **K7** - V. Hughes, pp: 23:5-12).

## Argument

**I.    Legal standard.**

The Court must grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue to any material fact and that the moving party is entitled to judgment as a matter of law." C.R.C.P. 56 (c); *Civil Serv. Comm'n v. Pinder*, 812 P.2d 645, 649 (Colo. 1991). Once the City has met its burden of production, "the burden shifts to [the non-moving party]. . . to establish that there is a triable issue of fact." *See Pinder*, 812 P.2d at 649. The non-moving party may not rely on pleadings or argument alone and must produce evidence that demonstrating that an issue of fact exists. *See Smith v. Mehaffy*, 30 P.3d 727, 730 (Colo. App. 2000): *Bauer v. Southwest Denver Mental Health Ctr., Inc.*, 701 P.2d 114. 117 (Colo. App. 1985). If the nonmoving party is

7

unable to "muster sufficient evidence to make out a triable issue of fact on his claim, a trial could be useless and the moving party is entitled to summary judgment as a matter of law." *Continental Air Lines v. Keenan,* 731 P.2d 708, 712 (Colo. 1987).

The undisputed facts show that: (1) there is no lease or sale of the CPGC and (2) the City's contemplated Project to regrade and improve CPGC is consistent with the City's Charter and Zoning Code and will address a critical flooding concern while also enhancing the primary recreational functions of the CPGC. Since there are no material facts to be further adduced through trial, these two legal issues must be determined on summary judgment as a matter of law.

## II.     The City is not leasing CPGC.

The Denver Charter prohibits the sale or lease of property in designated parks without a vote of the people, except in limited circumstances. **Ex. A** at § 2.4.5. Plaintiffs have advanced three different theories of how the City is selling or leasing CPGC as part of the Project in violation of the Charter, none of which have any basis in law or fact. Originally, Plaintiffs alleged that the City was selling or leasing all or part of CPGC to CDOT. Lacking any evidence of such a sale or lease, Plaintiffs then claimed that the Project created a "de facto" lease to CDOT. *See* Plaintiff's Objection and Responses to Discovery, at ¶ 1, attached as **Exhibit L** at ¶ 1). Finally, Plaintiffs now claim alternatively that one City agency is leasing CPGC to another or, in some cases, they do not know who the parties to the alleged lease are. For example. JD MacFarlane "guesses" that the City is leasing CPGC to Public Works:

> Q.   So the City is -- based on the question, my understanding of the Complaint, and your responses to our discovery, the City is leasing the City Park Golf Course to Public Works; is that right?
> A.   *I guess it is, yeah.*
> Q.   And also the Wastewater Enterprise Fund?
> A.   *Right.*
> Q.   And the Wastewater Enterprise Fund is owned by the City?
> A.   *Right.*

8

    Q.    And Denver Public Works is also part of and owned by the City?
    A.    *Correct.*
    Q.    So the City is leasing the golf course to itself?
    A.    *Well, I suppose you could say so.*

Sarah Edgell does not know what was being alleged by Plaintiffs:
    Q.    If the City is leasing City Park Golf Course to Public Works and/or the Wastewater Enterprise Fund, essentially, you're saying the City is leasing the property to themselves? Is that what you're saying?
    A.    *I don't know.*

LaMone Noles is undecided regarding whether there is a lease at all:
    Q.    Do you agree with the allegation contained in the Complaint and this document that the City is selling or leasing the golf course to someone?
    A.    *I'm undecided on that one.*

**Ex. K1** at 124:4:125:1; **K3** at 45:4-47:3; **K4** at 24:5-12.

In any event, all three of Plaintiffs' theories fail as a matter of law. Plaintiffs can point to no sale or lease agreement conveying any property interest in the CPGC to CDOT because no such document exists. **Ex. K2** at 53:13-54:16; **K4** at 24:9-12; **K5** at 25:24-26:2. The City has not and will not convey any portion of the CPGC to CDOT. Thus, Plaintiffs' first theory fails.

Plaintiffs' second theory—that even absent a written agreement, the City has granted CDOT a "de facto" lease of CPGC—also fails as a matter of law. In addition to the Denver Charter's prohibition, any lease of CPGC would require approval by the City Council and a written agreement signed by the Mayor and other required signatories. **Ex. A** § 2.4.5.[4] Absent a document with these signatures, any putative "de facto lease" is void and of no effect. Similarly, under the statute of frauds, an oral agreement to lease a property interest for more than a year is void. Every contract for leasing for a longer period than one year or for the sale of any lands or any interest in lands is void unless the contract or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party by whom the lease or sale is to be made. C.R.S.§ 38-10-

---

[4] Denver's Charter requires signatures by five officials for the City to execute a contract – the Mayor, Manager of Finance, the Auditor, the City Attorney and the Clerk and Recorder. Denver Charter at §§ 2.2.4 (Mayor), 2.5.3(A)(iv) (Manager of Finance), 5.2.1(D) (Auditor), 6.1.3(C) (Department of Law), 8.1.2(C) (Clerk and Recorder).

9

108; *see also, Luttgen v. Fischer,* 107 P.3d 1152, 1155 (Colo. App. 2005) (a contract for property conveyance must satisfy the statute of frauds; to do so the contract must be in writing, signed by the grantor, identify the parties, describe the property and set forth the terms, conditions and consideration). Even if an unwritten and unapproved lease was legally permitted, Plaintiffs have produced no evidence that the City's construction of the Project constitutes a lease of CPGC to CDOT.

Finally, Plaintiffs' most recent theory that the City's Parks department is "de facto leasing" CPGC to the City's Public Works department also fails as a matter of law. The Colorado Constitution, Art. XX, provides that Denver "is declared to be a single body politic and corporate, by the name of the 'City and County of Denver'. By that name said corporation shall . . . hold all property, real and personal. . ." Colorado Constitution, Art. XX, Section 1. The individual agencies and departments of the City have no legal standing or capacity to contract apart from the corporate entity known as the City and County of Denver. The City and County of Denver, not any one City department, is the owner of the CPGC and it cannot lease the property to itself. Therefore, Plaintiffs' claim on this theory also must fail.

For all of the foregoing reasons, this Court should grant summary judgment to the City on Plaintiffs' claim that the City is leasing CPGC in contravention of the Denver Charter.

**III.    CPGC serves and will continue to serve a park purpose.**

Plaintiffs' argument boils down to the following: the reason the City wants to construct the Project is to support CDOT's I-70 project and, therefore, because its "purpose" is to serve I-70 and improve drainage, it must, of necessity, detract from the recreational use and enjoyment of CPGC. Therefore, they theorize, CPGC will not serve a park purpose after the Project is complete. While

10

asserting many conclusory arguments, Plaintiffs have failed to produce any evidence that CPGC will be harmed by the Project or that it will not serve a park purpose. In contrast, experience in Denver and common practice across the country demonstrate that stormwater management features can be incorporated into parks in ways that enrich them. No provision of the Denver Charter or Zoning Code prohibits Parks from collaborating with a sister department in pursuing a project of mutual benefit.

> A.  *The Charter and Zoning Code delegate to the Parks Manager the determination of whether a use constitutes a park purpose.*

The Denver Charter and Zoning Code vest the Parks Manager with the authority to determine whether a proposed use of a designated park serves a "park purpose." **Ex. A**; **Ex. G** at §§ 9.3.4.1, 9.3.4.5; *see also McLauthlin v. City and County of Denver*, 280 P.2d 1103, 1106 (Colo. 1955) (The "Denver Charter grants the Manager of Parks *broad discretion* in determining the uses to which a particular park area may be put."). Moreover, as a matter of statutory interpretation, Parks' interpretation of the Charter and DZC provisions it implements is entitled to deference. *See City of Commerce City v. Enclave West, Inc.*, 185 P.3d 174, 178 (Colo. 2008) (court may defer to the agency's construction of a code, ordinance, or statutory provisions that govern its actions).

There are numerous and varied appropriate uses of park property. As held by the Colorado Supreme Court, "[a] park, in essence, is an open area, open to the public for recreation and amusement." *McLauthlin,* 280 P.2d at 1103. In Denver, the Parks Designation Policy, adopted by Parks, articulates Parks' interpretation of what constitutes a park purpose. *See* **Ex. C**. Per that policy, park uses include, but are not limited to: playgrounds, playing fields, basketball, tennis courts, *golf courses,* public swimming pools, picnic tables and shelters, pavilions, public restrooms, or other amenities intended to promote public recreational and outdoor activities. *Id.*

The policy also makes clear that locating a "natural or even man-made stream, creek, irrigation or drainage ditch, lake, pond, reservoir, or flood control facility… in a Park *does not affect the property's classification as a Park*." *Id.* It is an undisputable that the Project will result in an 18-hole golf course upon completion, and even Plaintiffs agree that a golf course serves a park purpose. *See* **Ex. J; Ex. K1** at 55:9-56:3; **K2** at 49:7-12; **K3** at 41:22-42:8; **K4** at 22:19-22; **K5** at 23:20-24; **K6** at 14:9-11; **K7** at 23:8-12).

The Charter and DZC delegate to Ms. Haynes the authority by the Charter and the DZC to determine what uses satisfy the "park purpose" requirement contained in the DZC. **Ex. B** at ¶ 3. Ms. Haynes reviewed Parks' policies and procedures and considered the impact of the proposed Project on the CPGC. *Id.* at ¶ 10. Ms. Haynes considered Denver's current use of its parks, which includes both inadvertent and intentional detention without detracting from the public's use and enjoyment of the parks. *Id.* Ms. Haynes considered and participated in the development of the RFP, which requires by its terms that the Project will result in an 18-hole golf course with improved golf amenities. *Id.* at ¶¶ 13-16; *see also* **Ex. J**. Ms. Haynes also considered nationwide best practices and the multiple uses that parks can serve, including serving as "green infrastructure" and for detention purposes. **Ex. B** at ¶ 10. Based on her analysis, Ms. Haynes concluded that the Project is consistent with the "park purpose" of CPGC, and this determination is entitled to deference. *See Burns v. City Council of City & Cty. of Denver,* 759 P.2d 748, 749–50 (Colo. App. 1988); *Alpenhof, LLC v. City of Ouray*, 297 P.3d 1052, 1055 (Colo. App. 2013) (interpretations of the governmental entity charged with administering a city code deserves deference if they are consistent with the drafters' overall intent).

### B. The Denver Charter authorizes Ms. Haynes to manage CPGC.

Defendants have established there is no lease and the Project will serve a park purpose. There is no issue of material fact as to these to legal issues. Moreover, the Charter delegates the duties and powers as the Parks Manager. **Ex. A** at §2.4.4. As Manager, Ms. Haynes' duties and powers include the management and control of the operation, care, repair and maintenance of all park and recreational structures and all land on which those facilities are located and operated. This certainly includes her ability to manage CPGC. In exercising her authority, the Manager has determined that the Project can be accommodated in the park and maintain or enhance the park purposes. The Court should defer to the official who has been vested by the Charter with authority to manage, control and protect the parks.

### IV. This Court has no jurisdiction because claims unripe and speculative because final design plans have not been approved and will not be before trial on the merits.

Courts limit their exercise of judicial power through the doctrines of standing and ripeness. *Bd. of Dirs., Metro Wastewater Reclamation Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 105 P.3d 653, 656 (Colo. 2005). As the City argued at length in its Motion to Dismiss, given the speculative nature of the concept design plans, Plaintiffs have no cognizable claim with respect to this declaratory judgment action and lack standing. Plaintiffs also have no injury in fact and have alleged only a speculative injury and, thus, the request for injunctive relief is unripe. The City will not revisit those same arguments here, but urges this Court to reconsider the arguments contained therein now that a full factual picture can be presented. Moreover, if the Court is looking solely at the concept design plans previously presented in Plaintiff's Response to our Motion to Dismiss[5]

---

[5] *See* 8.18.2016 Plaintiffs Response to Motion to Dismiss with Exhibits, filing ID 811E8D7E1788A.

13

notably these plans all indicate that an 18-hole golf course will be built at the end of the construction period, which is undoubtedly a park purpose.

## Conclusion

This Project presents the opportunity to protect the public from potentially dangerous flooding while simultaneously improving a beloved golf course. While Plaintiffs have raised many fears and allegations about potential harms to the CPGC, they have produced no evidence to support their claims. Instead, the evidence demonstrates that this Project is consistent with the Denver Charter and Zoning Code, as well as longstanding Denver practice and best practices nationally of seeking synergistic opportunities to co-locate stormwater detention within public parks.

WHEREFORE, Defendants respectfully request this Court enter summary judgment in Denver's favor.

Respectfully submitted, May 22, 2017.

**KRISTIN M. BRONSON**,
**City Attorney**

*/s/ Reneé A. Carmody*
Reneé A. Carmody, Atty. No. 40202
Tracy A. Davis, Atty. No. 35058
Jessica Brody. Atty. No. 35234
*Attorney for the City and County of Denver*

## CERTIFICATE OF SERVICE

I certify that on this 22nd day of May, 2017, a true and correct copy of the foregoing **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** was filed and served electronically by the Colorado Courts E-filing system to the following:

| | |
|---|---|
| Aaron D. Goldhamer | M. Anthony Vaida |
| Keating Wagner Polidori Free, PC | M. Anthony Vaida, P.C. |
| 1290 Broadway, Suite 600 | 899 Logan Street, Suite 208 |
| Denver, CO 80203 | Denver, CO 80203 |
| Attorney for Plaintiffs | Attorney for Plaintiffs |

*/s/Erin Maw*
Erin Maw, Paralegal

*In accordance with C.R.C.P. 121 §1-26(7) a printed copy of this document with original signatures is being maintained by the filing party and will be made available for inspection by other parties or the Court upon request.*

15