**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action Nos. 17-cv-01661-WJM-MEH
               17-cv-01679-WJM-MEH

KYLE ZEPPELIN; BRAD EVANS; CHRISTINE O'CONNOR; KIMBERLY MORSE; JACQUELINE LANSING; JANET FEDER; SIERRA CLUB; ELYRIA AND SWANSEA NEIGHBORHOOD ASSOCIATION; CHAFEE PARK NEIGHBORHOOD ASSOCIATION; and COLORADO LATINO FORUM,

    Plaintiffs,

v.

FEDERAL HIGHWAY ADMINISTRATION, ELAINE CHAO, in her official capacity as Secretary of Transportation; and JOHN M. CARTER, in his official capacity as Division Administrator,

    Defendants,

v.

COLORADO DEPARTMENT OF TRANSPORTATION, and SHAILEN P. BHATT, in his official capacity as Executive Director of the Colorado Department of Transportation,

    Defendant-Intervenors.

---

**ZEPPELIN PLAINTIFFS' COMBINED RESPONSE IN OPPOSITION
TO THE MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION FILED BY DEFENDANT FEDERAL HIGHWAY ADMINISTRATION,
DKT. 45, AND DEFENDANT-INTERVENORS COLORADO DEPARTMENT OF
TRANSPORTATION AND SHAILEN P. BHATT, DKT. 47**

---

**I.     INTRODUCTION**

FHWA and CDOT moved to dismiss with prejudice the Zeppelin Plaintiffs' Fourth, Fifth, and Seventh Claims for Relief for lack of subject matter jurisdiction, Dkts. 45, 47. These claims assert that FHWA's approval of the Record of Decision ("ROD") for CDOT's Central 70 Project must be set aside because the scope of the Final Environmental Impact Statement ("FEIS") was too narrowly drawn. Specifically, FHWA/CDOT improperly segmented from Central 70 the project's elaborate off-site drainage system, which is currently being built by the City of Denver pursuant to a contract with CDOT. Although Plaintiffs allege several reasons why the Central 70 FEIS and ROD are inadequate under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 et seq., the challenged claims stem from FHWA/CDOT's improper segmentation of the Two Basins Drainage Project ("TBDP")[1] from this major federal action. First Amended Petition for Review of Agency Action, Dkt. 25, at ¶¶ 258-285 (failure of FHWA/CDOT to analyze connected action), ¶¶ 286-295 (failure of FHWA/CDOT to analyze similar action), ¶¶ 307-318 (failure of FHWA to comply with Section 4(f) of the Transportation Act).

FHWA's and CDOT's motions should be denied. First, this Court has subject matter jurisdiction over Plaintiffs' Fourth, Fifth, and Seventh Claims for Relief. These claims challenge the "final agency action" undertaken by FHWA when it approved the ROD for Central 70, which is a "major federal action" pursued by FHWA and CDOT as joint co-lead agencies. Second, Plaintiffs have standing to sue. Plaintiffs have cognizable interests in FHWA/CDOT complying

---

[1] Since contracting with CDOT to build the TBDP in order to provide Central 70 with its requisite 100-year flood protection, Denver has renamed the TBDP the Platte to Parkhill Stormwater Drainage Project ("P2PH"). Motion for Stay, Dkt. 32, at 12 (referencing TBDP Conceptual Planning Report, dated December 2016, Dkt. 32-15, at 6).

with NEPA by performing a reasonable, thorough, and transparent environmental analysis, in which the public is permitted to meaningfully participate. Plaintiffs' interests are harmed by FHWA/CDOT's choice to impermissibly segment Central 70's requisite drainage component from the rest of this project, thereby purposefully evading NEPA review for TBDP/P2PH. Plaintiffs' injuries are likely to be redressed by the relief sought. Both FHWA and CDOT have control over Central 70. TBDP/P2PH is a necessary component of Central 70, and CDOT is intimately involved in, pays for, and largely controls TBDP/P2PH. This Court *can* interrupt progress on TBDP/P2PH with an injunction against FHWA/CDOT, and Plaintiffs respectfully request the Court deny the Motions to Dismiss and allow their claims to proceed to the merits.[2]

## II.   FACTUAL BACKGROUND[3]

Central 70 is the largest infrastructure development project ever undertaken by CDOT. It encompasses the restriping and widening of a 10-mile stretch of I-70 west of Chambers Road, the demolition of the viaduct that currently runs between Colorado and Brighton Boulevards, and the excavation of a trench approximately 280 feet wide and up to 40 feet below ground to contain a newly constructed, lowered stretch of highway where the viaduct once stood. ROD, Dkt. 32-1, at CM/ECF 18 and 26-31. Central 70 is a collaborative endeavor between FHWA and CDOT. CDOT identifies itself as "the state lead agency responsible for…conducting the environmental reviews and public outreach necessary to comply with…NEPA." Motion to Intervene, Dkt. 16, at 2. FHWA participated in and approved these environmental reviews and

---

[2] Whether Plaintiffs' injuries are redressable is a separate question from whether Plaintiffs can demonstrate irreparable harm in the absence of a preliminary injunction.

[3] Both Plaintiffs' First Amended Petition for Review of Agency Action and Motion for Stay contain lengthy recitations of the history of Central 70, including the off-site drainage component known as TBDP/P2PH. See Dkt. 25 at ¶¶ 104-213; Dkt. 32 at 2-17. For the sake of efficiency, Plaintiffs do not repeat all those facts herein, but simply reference these filings as necessary.

made the final decision to "select[] the Preferred Alternative, Phase 1 (also known as the Central 70 Project) for the I-70 East Project." Dkt. 32-1 at CM/ECF 3.

The NEPA process for Central 70 dates back to August 19, 2003, when FHWA first published its notice of intent to prepare an EIS on this "major federal action." Dkt. 25 at ¶ 104 (citing 68 Fed. Reg. 49839 (2003)). Since then, FHWA/CDOT have issued several NEPA documents for Central 70, including the Draft Environmental Impact Statement ("DEIS"), dated October 28, 2008, the Supplemental Draft Environmental Impact Statement ("SDEIS"), dated August 4, 2014, and the Final Environmental Impact Statement ("FEIS"), dated December 18, 2015. The cost of Central 70 is estimated at $1.1 billion. Dkt. 32-1 at CM/ECF 43. The project is primarily funded by the State of Colorado, with contributions from the federal government and the City of Denver. Id.; Dkt. 45 at 5. Central 70 requires federal approval. FHWA has final approval authority over Central 70 and signed the ROD authorizing CDOT to commence construction on this project. Dkt. 32-1 at CM/ECF 3; Dkt. 45 at 5.

As approved by FHWA, Central 70 will proceed under the Partial Cover Lowered ("PCL") Preferred Alternative. The idea of sinking the highway below grade was first considered – and rejected – by FHWA/CDOT in 2006 because lowering the highway brings huge impacts to residential and business properties, takes years longer to complete than an on-grade alignment, and "requires an extensive drainage system of pipes, pumps, and water detention ponds that add more capital cost, operations and maintenance costs, and property impacts." Ex. 1 (Alternative Removal Factsheet) at 3 (Alternative A3);[4] Ex. 2 (I-70 East May 17 and 18, 2006 Meeting Agenda) at 2 (repeating reasons why FHWA/CDOT eliminated Alternative A3).[5]

---

[4] This document is available online at http://www.i-70east.com/meetingminutes/CorMtng5-

Despite its initial rejection, CDOT again became interested in exploring a lowered option for the highway in 2012. In 2014, when FHWA/CDOT introduced the PCL Alternative as the preferred alternative for I-70 East, they again acknowledged that the lowered design requires an elaborate off-site stormwater/drainage system to protect the highway from a 100-year flood. SDEIS, Dkt. 32-5, at CM/ECF 63-64. Importantly, there was no infrastructure in place in 2014 to provide 100-year flood protection to this portion of Denver, and the City of Denver was at that time only recommending protection for just a 5-year storm event, which is the Denver standard. Id.; 2014 Master Plan, Dkt. 32-8, at CM/ECF 2; Thomas Testimony, Dkt. 46-15, at 20:5-14 and 39:3-43:18. That Denver did not have in place the infrastructure to provide the 100-year flood protection demanded by the design of the PCL Alternative meant that CDOT would have to design and build its own off-site stormwater/drainage system to protect the highway.

The 2014 SDEIS described and analyzed CDOT's proposed off-site drainage system. Dkt. 32-5, at CM/ECF 64-66. The idea of building this system was quickly shelved, however, in favor of an open channel system designed and presented to CDOT by Denver. Intergovernmental Agreement ("IGA"), signed by CDOT on September 3, 2015, Dkt. 1-16, at CM/ECF 12-13; Dkt. 32, at 4-11 (describing the process by which Denver began studying the feasibility of providing 100-year storm protection in Northwest Denver "in light of the proposed CDOT I-70 Lowering Project"). The IGA memorializes CDOT's agreement with the City that Denver would – at the behest of and with funding from CDOT – design and build what was then called the TBDP, i.e.,

---

17_18-06/CorMtng_5-17_18-06_AltA1andAltA3.pdf (last visited October 14, 2017).
[5] This document is available online at http://www.i-70east.com/meetingminutes/CorMtng5-17_18-06/CorMtng_5-17_18-06_HandoutInfoPacket.pdf (last visited October 14, 2017).

the "CDOT/CCD I-70 PCL Combined Drainage System Proposed 100-Year Protection [in the] Montclair and Park Hill Basins." IGA, Dkts. 1-14 – 1-16.

Collaborating with Denver on the off-site drainage component allowed CDOT to obtain the necessary 100-year flood protection while curing a $90 million funding shortfall on the project. Dkt. 1-14 at CM/ECF 6, ¶ H (Denver will construct TBDP on a schedule designed to meet CDOT's deadlines); Ex. 3, CDOT Quarterly Update, dated June 17, 2015, at 2-3. See also Video of Denver City Council Infrastructure and Cultural Committee Meeting, June 3, 2015 (CDOT presents IGA to City Council for approval) ("6/3/15 Video") at 1:10:27-1:11:43 (presentation of Tony DeVito).[6] The IGA commits Denver to cover 60% of the cost of Central 70's necessary drainage component, and commits Denver to make cash, in-kind, and risk reduction contributions to Central 70 equal to $83 million. Ex. 3 at 2-3; Dkt. 1-14 at CM/ECF 5, ¶ F and CM/ECF 7-9, ¶ 4; 6/3/15 Video at 7:17-7:56 (presentation of Denver Chief Projects Officer Diane Barrett).

Denver did not agree to build the TBDP and otherwise support Central 70 without receiving what it perceived as a substantial benefit to the City. By entering into the IGA, Denver was able to leverage approximately $60 million in cash contributions from CDOT to finance the remainder of the cost of TBDP, which Denver subsequently expanded and rebranded as P2PH: a comprehensive (and very expensive) stormwater/drainage system that will not only protect I-70 in a 100-year storm event, but will also afford portions of Northwest Denver a level of flood protection that Denver could not and would not have offered without CDOT's money. Dkt. 32 at

---

[6] The entire Committee Meeting on the IGA is available online at https://www.youtube.com/watch?v=HWyiNGVl-1Q&t=4449s (last visited October 14, 2017). Plaintiffs will upon request provide this, and any other video referenced herein, on disk to the Court through conventional filing.

5

5 (quoting Montclair Creek Drainage Feasibility Evaluation); 6/3/15 Video at 25:56-26:23 and 1:07:57-1:10:26 (presentations of Denver Deputy Chief Financial Officer Gretchen Hollrah and Diane Barrett); Video of Denver City Council Weekly Legislative Meeting, July 6, 2015 (concerning the approval of the IGA, presentation of Diane Barrett) ("7/6/15 Video") at 4:19:57-4:20:19 ("Absent CDOT's cooperation and financial participation, the City's Two Basin Drainage Project would have provided only 5 year storm protection for the area and would likely have been delayed by many years for lack of available funds.")[7]; Ex. 4, City of Denver Finance Committee Presentation, dated August 24, 2016, at 7 (CDOT's $60.5 million combines with Denver's $31.3 million to leverage financing for the remainder of P2PH); Letter from CDOT to History Colorado, dated December 29, 2016, Dkt. 32-22, at 1 ("The four sub-projects [of P2PH] will be constructed in part with state funds provided by [CDOT]."); Video of Denver City Council Finance and Government Committee Meeting, October 3, 2017, (Denver requests approval of Park Hill Golf Course purchase with $10 million cash payment from CDOT for P2PH) ("10/3/17 Video") at 1:04:15-1:05:27 (Senior Assistant Denver City Attorney John McGrath confirms $60 million total contribution from CDOT to P2PH).[8]

There is no question the TBDP described in the IGA was meant to provide the requisite 100-year flood protection for Central 70. Dkt. 32 at 10-11 (quoting IGA). There is no question CDOT secured Denver's commitment to design and build the TBDP prior to issuing the FEIS. Id.  There is no question CDOT is relying on Denver to complete phase one of TBDP, the Early

---

[7] The entire Meeting on the approval of the IGA is available online at
http://denver.granicus.com/MediaPlayer.php?view_id=21&clip_id=8383
(last visited October 16, 2017).
[8] The entire Committee Meeting on the Park Hill Golf Course purchase is available online at
https://www.youtube.com/watch?v=wluGvQmd2_g&t=3958s (last visited October 14, 2017).

6

Action Drainage Project ("EADP"), prior to breaking ground on the highway. Id.; CDOT Reevaluation Form, Dkt. 46-7, at CM/ECF 6-8 (the off-site drainage component shown in the SDEIS (and FEIS and ROD) is becoming increasingly superfluous "[i]n light of recent progress by [Denver] with its drainage Improvement projects south of the Central 70 Project – the Platte to Park Hill Stormwater Systems program."). There is no question Central 70 cannot function as designed without the 100-year flood protection provided by the TBDP.

Still, FHWA/CDOT did not analyze the direct and indirect impacts of TBDP/P2PH in the FEIS and ROD. Instead, FHWA/CDOT expressly disclaimed that TBDP/P2PH is related to Central 70 and falsely stated that: "CDOT and FHWA have not been involved in the proposal, development, or implementation of the TBDP but are simply taking advantage of new opportunities for cooperation, cost savings, and benefits that the TBDP, *if it is constructed*, offers to I-70 East." Compare Ex. 1 to Motion to Dismiss, Dkt. 45-1, at CM/ECF 19 (emphasis added); Reply in Support of Motion for Stay, Dkt. 54, at 5 (quoting IGA). Plaintiffs' Fourth, Fifth, and Seventh Claims for Relief seek to remedy FHWA/CDOT's misrepresentation that Central 70 and TBDP/P2PH are two independent and unrelated projects by forcing these agencies to analyze the direct and indirect impacts of TBDP/P2PH, which is the requisite off-site drainage component CDOT has – since signing the IGA in 2015 – intended to utilize as 100-year flood protection for the lowered portion of the highway.

## III.   THE COURT HAS SUBJECT MATTER JURISDICTION

Plaintiffs brought suit challenging FHWA's approval of the Central 70 ROD because the environmental analysis performed by CDOT and FHWA is inadequate under NEPA. Neither FHWA nor CDOT have argued that Central 70 is not a "major federal action." Neither FHWA

nor CDOT have argued that FHWA's approval of the ROD is not a "final agency action." Instead, FHWA/CDOT argue that because P2PH, *standing on its own*, is not a major federal action that required federal approval, Plaintiffs' Fourth, Fifth, and Seventh Claims for Relief are not reviewable under the APA. FHWA and CDOT are wrong.

"Major federal actions" are "actions by the federal government…and nonfederal actions 'with effects that may be major and which are potentially subject to Federal control and responsibility.'" Ross v. FHA, 162 F.3d 1046, 1051 (10th Cir. 1998) (quoting Village of Los Ranchos De Albuquerque v. Barnhart, 906 F.2d 1477, 1480 (10th Cir. 1990)). "In effect, 'major federal action' means that the federal government has 'actual power' to control the project." Id. "The determination of whether federal and state projects are sufficiently intertwined to constitute a 'federal action' for NEPA purposes 'will generally require a careful analysis of all facts and circumstances surrounding the relationship.'" Laub v. United States DOI, 352 F.3d 1080, 1092 (9th Cir. 2003) (quoting Friends of the Earth, Inc. v. Coleman, 518 F.2d 323, 329 (9th Cir. 1975)). "There are no clear standards for defining the point at which federal participation transforms a state or local project into a major federal action. The matter is simply one of degree." Id. (quoting Almond Hill School v. United States Dep't of Agriculture, 768 F.2d 1030, 1039 (9th Cir. 1985)). Courts are clear, however, that agencies may not segment a portion of a "major federal action" from the primary project in order to avoid NEPA review. Ross, 162 F.3d at 1052.

Plaintiffs allege FHWA/CDOT did just what Ross precludes: improperly segmenting TBDP/P2PH from Central 70. Because Central 70 is a "major federal action," and Plaintiffs' claims challenge FHWA's "final agency action" in approving the ROD for Central 70, this Court has subject matter jurisdiction to hear those claims under the APA.

8

That FHWA never approved or controlled TBDP/P2PH is immaterial. FHWA is the co-lead agency on Central 70, has ultimate authority to approve Central 70, and is charged with ensuring that the environmental analyses performed on Central 70 comply with NEPA. Because TBDP/P2PH is a necessary and integral component of Central 70, this portion of the project should have been analyzed in the FEIS, and any inadequacy in the scope of the FEIS necessarily falls to FHWA, the federal agency ultimately charged with NEPA compliance on Central 70. Accordingly, FHWA is a proper party to all challenges to the Central 70 ROD.

Even if FHWA was not a proper party to these claims, which it is, Plaintiffs' claims are also asserted against CDOT, the joint co-lead agency on Central 70, which absolutely approved and asserts control over TBDP/P2PH. CDOT is a signatory to the IGA, the contract under which Denver agreed to design and build the off-site drainage system required by Central 70. Denver is CDOT's "contractor" with respect to the IGA. Dkt. 1-15 at CM/ECF 3, ¶ 28.D. CDOT agreed under the terms of the IGA to fund 40% of the TBDP and contracted for the right to review and comment on the design of TBDP/P2PH, as well as Denver's selection of contractors to build TBDP/P2PH. Dkt. 1-14 at CM/ECF 5-6, ¶¶ E, 1.G, and 2.A. Tony DeVito, CDOT's I-70 Project Manager, sits on the selection panel and is part of the request for proposal process for TBDP/P2PH, and CDOT and Denver have "combined forces" so that they stay "constantly in tune with one another" on Central 70 and its drainage component. 6/3/15 Video at 1:09:37-1:10:26 (presentation of Diane Barrett). Indeed, CDOT is entitled to weekly status meetings with Denver on the progress of TBDP/P2PH, and may charge Denver up to $5,000 per day if TBDP/P2PH is delayed and therefore impacts CDOT's ability to structure or pay for the Central 70 contract(s). Dkt. 1-14 at CM/ECF 6, ¶ 1.H and CM/ECF 1-12, ¶¶ 9 and 10.A-H.

9

That FHWA did not fund TBDP/P2PH is immaterial. Central 70 is a major federal action that requires federal approval and is being funded in part with federal dollars. Although CDOT specifically isolated the off-site drainage component from federal dollars in an effort to evade NEPA review, action agencies may not attempt to "defederalize" segments of a "major federal action" by withdrawing federal funding. Compare Dkt. 32 at 6 (quoting Montclair Creek Drainage Feasibility Evaluation at CCD007354) (CDOT believed it could evade NEPA analysis for TBDP by keeping federal dollars from this portion of the project); Ross, at 1052 (once the state-federal relationship is solidly established, withdrawing federal funds from one portion of a project will not work to "defederalize" the segment and cancel the agency's NEPA obligations). Even if FHWA could insulate itself from Plaintiffs' claims by not directly funding TBDP/P2PH, which it cannot, Plaintiffs' claims are also asserted against CDOT, the joint co-lead agency on Central 70, which is a major funder of all portions of the project.

As explained in Laub, 352 F.3d at 1092, there are no strict rules to apply when determining what constitutes a "major federal action," but here the analysis is straightforward. Everyone agrees Central 70 is a major federal action that required final agency action by FHWA. The question is not whether TBDP/P2PH is also, standing alone, a separate and independent "major federal action." The question is whether the off-site drainage component necessary for Central 70, but outsourced to Denver, can be segmented from Central 70 and thus escape NEPA review. The answer to this question is clearly "no."

When FHWA/CDOT issued the FEIS, CDOT had already signed the IGA and was therefore relying on Denver to build the TBDP to provide the 100-year flood protection I-70 requires. Because FHWA/CDOT knew Central 70 would be utilizing TBDP/P2PH to provide

10

this requisite flood protection, they had an obligation to analyze the direct and indirect impacts of TBDP/P2PH as part of the NEPA process. "[S]egmentation is defined as an attempt by an agency to 'divide artificially a major federal action into smaller components to escape application of NEPA to some of its segments.'"  Dkt. 45, at 12 (quoting Save Barton Creek Ass'n v. FHA, 950 F.2d 1129, 1140 (5th Cir. 1992)). It would be antithetical to NEPA to allow FHWA/CDOT to avoid analyzing this portion of the project when they knew Central 70 required 100-year flood protection and CDOT had contracted with and was relying on Denver to build TBDP/P2PH to provide that protection prior to CDOT breaking ground on the highway.

## IV.  PLAINTIFFS HAVE STANDING

In order to have standing, Plaintiffs must demonstrate that: 1) they suffered an "injury in fact"; 2) there is a causal connection between such injury and the conduct complained of; and 3) it is "likely" that the injury will be "redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992). Although FHWA/CDOT challenged the causation and redressability prongs of the Article III standing inquiry, Plaintiffs meet their burden.

Plaintiffs ask the Court to declare that FHWA/CDOT violated NEPA, to set aside the ROD, and to enjoin the Central 70 Project, which includes TBDP/P2PH, until FHWA and CDOT can demonstrate they have complied with NEPA and FHWA can demonstrate it has complied with Section 4(f). Dkt. 25 at 78-82 (Prayer for Relief). Contrary to FHWA/CDOT's arguments, a favorable ruling from this Court is likely to redress the harms to Plaintiffs' environmental, health, aesthetic, recreational, financial, and procedural interests caused by FHWA/CDOT's attempt to move forward on Central 70 without an adequate NEPA review.[9]

---

[9] All Plaintiffs have submitted standing declarations. See Declaration of Kyle Zeppelin, Dkt. 1-1;

Setting aside the ROD and remanding the NEPA analysis to the agencies for the purpose of including TBDP/P2PH is likely to redress Plaintiffs' injuries, which stem from the agencies' refusal to analyze this portion of the project. Although the outcome of this additional analysis is unknowable, Plaintiffs' harm will be redressed because they will have the opportunity to comment on TBDP/P2PH, and FHWA/CDOT will be forced to make an informed decision. See SUWA v. Office of Surface Mining Reclamation and Enforcement, 620 F.3d 1227, 1235 (10th Cir. 2010). Issuing an injunction against FHWA/CDOT until they can demonstrate compliance with NEPA and Section 4(f) is furthermore likely to redress Plaintiffs' injuries. The "limited purpose" of any forthcoming injunction would be to preserve the status quo while the agencies perform the requisite analysis. W. Org. of Res. Council v. Johanns (In re Geertson Seed Farms), 541 F.3d 938, 947 (9th Cir. 2008). Halting FHWA/CDOT's work on the project until compliance is demonstrated would avoid further impacts to human health and the environment in the interim, also likely alleviating Plaintiffs' harms. Dkt. 32 at 26.[10]

FHWA/CDOT argue against standing by incorrectly asserting that Denver is the only agency responsible for TBDP/P2PH. Dkt. 45 at 14. But as set forth above, in Plaintiffs' First Amended Petition for Review of Agency Action, Plaintiffs' Motion for Stay, and Plaintiffs' Reply in Support of their Motion for Stay, TBDP/P2PH is a collaborative effort between CDOT and Denver, which was triggered by CDOT's need to protect the lowered portion of the highway from flooding. Central 70 requires the protection provided by TBDP/P2PH, and CDOT is relying

---

Declaration of Brad Evans, Dkt. 1-2; Declaration of Christine O'Connor, Dkt. 1-6; Declaration of Kimberly Morse, Dkt. 1-12; Declaration of Jacqueline Lansing, Dkt. 1-17; Declaration of Janet Feder, Dkt. 25-1.

[10] Since briefing closed on Plaintiffs' Motion for Stay, Denver has marked 261 trees for removal from City Park Golf Course on November 1, 2017, and has announced it is poised to purchase 80 acres at the Park Hill Golf Course from the Clayton Family Trust with $10 million from CDOT.

on Denver to complete construction of this off-site drainage component prior to breaking ground on the highway trench. CDOT is funding a significant portion of TBDP/P2PH, has the right to review the TBDP/P2PH designs and contracts, sits on the contractor selection panel for TBDP/P2PH, is entitled to weekly status meetings with Denver on the progress of TBDP/P2PH, and has the contractual right to financially penalize Denver if Denver fails to complete certain components of TBDP/P2PH by deadlines set to comport with the construction schedule and contracts for Central 70. Importantly, CDOT also has the authority to relax and/or forgive the deadlines in the IGA "if circumstances arise that allow for a later completion date of either the EADP or the TBDP." Dkt. 1-14 at CM/ECF 6, ¶ J.

Contrary to FHWA/CDOT's arguments, Denver would not be free to complete TBDP/P2PH in the face of an injunction against CDOT. Dkt. 45 at 7 and 14 (relying on testimony and Declaration of Lesley Thomas). Ms. Thomas is a City engineer with neither direct influence over Denver's financial affairs nor the ability to unilaterally relocate tens of millions of budgeted funds to cover a funding shortfall if CDOT is enjoined from paying for TBDP/P2PH. Although she is a long-time advocate for TBDP/P2PH with the Denver City Council, it is the Council itself – not Ms. Thomas – that controls the purse for this and other major drainage projects in Denver. See Declaration of Rafael Espinoza, attached hereto as Ex. 5; Declaration of Deborah Ortega, attached hereto as Ex. 6; 6/3/15 Video at 1:09:40-1:10:26 (Dianne Barrett explaining that Ms. Thomas sits on the "technical" as opposed to the "financial" side of the TBDP/P2PH project). Ms. Thomas is not in a position to offer informed opinions on what the City would do if CDOT was precluded from taking any further action on TBDP/P2PH.

13

Notably, the Denver City Council voted on a measure to approve the IGA based on the representations of Lesley Thomas, Diane Barrett, Gretchen Hollrah, and Tony DeVito that CDOT would make large cash contributions to TBDP/P2PH – currently valued at $60 million – so that Denver could leverage these funds to finance the remainder of the project. Supra, at 5-6. The evidence is clear that CDOT's $60 million was intended to fund all four components of P2PH, and CDOT is slated to make significant payments in the immediate future. Dkt. 32-22, at 1; Ex. 4 at 7 ($60 million in CDOT funding applied to all four P2PH components); 10/3/17 Video at 1:04:15-1:05:27 (John McGrath confirms the $10 million necessary to purchase 80 acres at Park Hill Golf Course will be paid by CDOT pursuant to the IGA).

Neither Ms. Thomas nor CDOT explain how Denver would or could finance TBDP/P2PH without CDOT's total cash contribution. Importantly, there is zero evidence that Denver has an additional $60 million of cash on hand to directly make up for a shortfall in CDOT's funding should this Court enjoin such a financial contribution. Additionally, there is zero evidence that the Denver City Council would be willing to approve another bond measure or wastewater rate increase to shoulder the entire financial burden of TBDP/P2PH in CDOT's absence. See Ex. 5; Ex. 6; 6/3/15 Video at 26:00-26:23 (Dianne Barrett explaining that money from CDOT through IGA allows Denver to "afford this transaction" for TBDP/P2PH). An injunction against CDOT would likely redress Plaintiffs' injuries because it would stop CDOT from making any further cash contributions to fund TBDP/P2PH, Denver would not have the money to go it alone on TBDP/P2PH as that project is currently designed, and there are no approved plans to undertake TBDP/P2PH in some sort of reduced form. Ex. 5; Ex. 6.

Beyond this financial component, CDOT is heavily involved in the review and approval of TBDP/P2PH drainage designs and the selection of TBDP/P2PH contractors. Most importantly, all the deadlines imposed on Denver in the IGA were created to meet *CDOT's schedule* for constructing Central 70. CDOT alone has the express authority to cancel or extend these deadlines "if circumstances arise that allow for a later completion date of either the EADP or the TBDP." Supra at 13. The litigation statements of Ms. Thomas and FHWA/CDOT do not override the contractual terms of the IGA, which on their face demonstrate that Denver is not in a position to make "unfettered choices" on TBDP/P2PH. Dkt. 45 at 14. An injunction against CDOT would likely redress Plaintiffs' injuries because it would eliminate CDOT's "seat at the table" on TBDP/P2PH, thereby halting all CDOT review and selection of designs and contractors, and stop the clock on Central 70, which would in turn relieve the urgency on TBDP/P2PH. CDOT has the "sole discretion" to alter the terms of the IGA. Dkt. 1-14 at CM/ECF 6, ¶ J. Without CDOT's participation and/or an amended agreement allowing Denver to make all decisions on TBDP/P2PH with no input from CDOT, Denver would be unable to meaningfully proceed on TBDP/P2PH.

## V.  CONCLUSION

For all the foregoing reasons, the Zeppelin Plaintiffs respectfully request the Court DENY the Motions to Dismiss filed by Defendant FHWA and the CDOT Defendant-Intervenors and allow their Fourth, Fifth, and Seventh Claims for Relief to proceed to the merits.

Respectfully submitted this 16th day of October, 2017.

                KEATING WAGNER POLIDORI FREE, P.C.

By:   *s/ Melissa A. Hailey*
       Melissa A. Hailey, CO Reg. #42836

       *s/ Aaron D. Goldhamer*
       Aaron D. Goldhamer, CO Reg. #41016
       1290 Broadway, Suite 600
       Denver, CO 80203
       Tel: (303) 534-0401
       Fax: (303) 534-8333
       mah@keatingwagner.com
       agoldhamer@keatingwagner.com

           *~ and ~*

       James Jay Tutchton, CO Reg. #21138
       Tutchton Law Office
       6439 East Maplewood Avenue
       Centennial, CO 80111
       Tel: (720) 301-3843
       jtutchtontlo@gmail.com

       *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of October, 2017, I filed a true and accurate copy of the foregoing with the Clerk of Court via the CM/ECF system, which provided immediate electronic notice of the same to all counsel of record as follows:

Carter F. Thurman, Esq.
Mayte Santacruz, Esq.
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Carter.thurman@usdoj.gov
Mayte.santacruz@usdoj.gov

David A. Carson
U.S. Department of Justice-Denver-ENRS
Environment & Natural Resources Section
999 17th Street
South Terrace, Suite 370
Denver, CO 80212
David.a.carson@usdoj.gov

*Attorneys for Federal Defendants*

John E. Putnam, Esq.
Nicholas A. DiMascio, Esq.
Kaplan Kirsch & Rockwell, LLP
1675 Broadway, Suite 2300
Denver, CO 80202
jputnam@kaplankirsch.com
ndimascio@kaplankirsch.com

Brent E. Butzin, Esq.
Assistant Attorney General
1300 Broadway, Tenth Floor
Denver, Colorado 80203
Brent.butzin@coag.gov

*Attorneys for Defendant-Intervenors*

Robert E. Yuhnke, Esq.
Robert E. Yuhnke & Associates
4050 SE Hosner Terrace
Gresham, OR 97080
Bob.yuhnke@prodigy.net

Andrea S. Gelfuso, Esq.
Andrea Gelfuso, Attorney at Law
2402 South Holland Street
Lakewood, CO 80227
Agelfuso6@gmail.com

Gregory Nicholas Corbin
Milligan Rona Duran & King, LLC-Denver
1627 Vine Street
Denver, CO 80206
gnc@mrdklaw.com

*Attorneys for Sierra Club Plaintiffs*

                 *s/ Melissa A. Hailey*