**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action Nos.   17-cv-01661-MJW
                    17-cv-01679-MJW

KYLE ZEPPELIN; BRAD EVANS; CHRISTINE O'CONNOR; KIMBERLY MORSE; JACQUELINE LANSING; JANET FEDER

SIERRA CLUB; ELYRIA AND SWANSEA NEIGHBORHOOD ASSOCIATION; CHAFEE PARK NEIGHBORHOOD ASSOCIATION; AND COLORADO LATINO FORUM,

    Plaintiffs,

v.

FEDERAL HIGHWAY ADMINISTRATION, ELAINE CHAO, in her official capacity as Secretary of Transportation; and JOHN M. CARTER, in his official capacity as Division Administrator,

    Defendants,

    and

COLORADO DEPARTMENT OF TRANSPORTATION, and SHAILEN P. BHATT, in his official capacity as Executive Director of the Colorado Department of Transportation,

    Defendant-Intervenors.

---

**FEDERAL HIGHWAY ADMINISTRATION'S SUPPLEMENTAL BRIEF
REGARDING CDOT'S ROLE**

---

On October 30, 2017, the Court ordered the parties to submit supplemental briefing responding to the following two questions regarding the Colorado Department of Transportation's ("CDOT") role: "(1) Does CDOT, under the circumstances of this case, effectively stand in the shoes of the Federal Highway Administration ["FHWA"]? (2) Can the Court enjoin CDOT from sending non-federal money to the City and County of Denver?" (ECF No. 76.)  FHWA's response to both questions is no.

# INTRODUCTION

CDOT is not a surrogate, substitute, or agent for or of FHWA under the Federal-Aid Highway Program (the "FAHP" or "Program").  While CDOT and FHWA have cooperated and worked closely in the process of approving federal funding of CDOT's Central 70 project, they are two separate sovereign entities with independent objectives and responsibilities under the FAHP that are not subsumed by their collaborative relationship.  Under the statutory and regulatory scheme of Title 23 United States Code ("Title 23") and 23 Code of Federal Regulations, only FHWA, not CDOT, decides what projects are approved for federal funding and issues the required approvals for those projects, including the Record of Decision ("ROD") challenged by the Zeppelin Plaintiffs in this action.  As explained below, courts have made it clear that states receiving funds through the Program are not agents of the United States.  Thus, CDOT does not effectively stand in the shoes of FHWA in this case.[1]  Plaintiffs' suggestion that CDOT's cooperation with the City and County of Denver in the construction of P2PH somehow "federalizes" P2PH and grants this Court jurisdiction over their P2PH-related claims fails.

Both because CDOT does not stand in the shoes of FHWA in this case and because FHWA has never funded or controlled P2PH, the Court lacks subject matter jurisdiction over Plaintiffs' P2PH-related claims (Claims 4, 5, and 7).  Without jurisdiction over these claims, the Court has no legal basis for restraining non-federal activity, including CDOT's ability to provide non-federal funding to the City or County of Denver for construction of P2PH.

# ARGUMENT

**A.    CDOT Does Not, and Cannot, Stand in the Shoes of FHWA in this Case.**

CDOT and FHWA have distinct authorities and each stand in their own shoes when collaborating on a highway project utilizing financial assistance under the FAHP, like Central

---

[1] FHWA does have a program where states may be assigned its authorities, but Colorado is not one of these states.  *See* 23 U.S.C. § 327.

1

70. While they work closely together in pursuing shared and overlapping objectives for the interstate highway system, each have their own independent missions and prerogatives that are not subsumed by the other by virtue of their collaborative relationship. To understand why this is the case, it is necessary to explain the FAHP, how the highway projects are funded under the Program, and the roles and responsibilities of FHWA and the states in carrying out the projects.

> 1. <u>The Statutory Scheme of FAHP Preserves the Sovereign and Independent Roles of FHWA and CDOT in the Project Delivery Process.</u>

The FAHP is a federally-assisted state-led program that provides states with financial assistance for the construction, maintenance, and operation of transportation projects on the nation's 3.9 million-mile highway network, including the 160,955 mile National Highway System ("NHS"). *See* 23 U.S.C. § 101, et seq.[2] The purpose of the Program is to "encourage states to construct their own highways." *Mahler v. United States*, 306 F.2d 713, 716 (3d Cir. 1962). FHWA administers the Program, which reimburses states for a portion of the costs they incur on such activities from the funds apportioned by Congress to each state. *See* 23 U.S.C. § 104. FHWA's primary purpose is to provide oversight and "monitor the effective and efficient use of funds" on these activities. 23 U.S.C. § 106(g)(1)(A). Through its financial participation, FHWA seeks to foster nationwide uniformity, compatibility, and connectivity in state-led highway projects. FHWA does not itself design, build, own, or maintain the roads comprising the highway network or the NHS under the Program.

Under the Program, states retain their "sovereign rights . . . to determine which projects shall be federally funded" and the sole responsibility to construct and maintain them. 23 U.S.C. §§ 145(a), 114(a), 116; *see also Scottsdale Mall v. Indiana*, 549 F.2d 484, 488 (7th Cir. 1977) ("[T]he fact that federal funds are authorized by Congress through appropriation or . . . that those

---

[2] *See also generally* http://www.fhwa.dot.gov/federal-aidessentials/federalaid.cfm (last visited on November 2, 2017).

funds are made available for expenditure does not infringe on the right of a state to select a project to be financed solely out of its own funds."); *Hawthorn Envtl. Pres. Ass'n v. Coleman*, 417 F. Supp. 1091, 1099 (D. Ga. 1976), *aff'd* 551 F.2d 1055 (5th Cir. 1977) (noting that "states have a sovereign right to determine which highway projects shall be federally financed"). The states are the owner-operators of all the NHS roadways within their borders. *See Save Barton Creek Ass'n v. Fed. Highway Admin.*, 950 F.2d 1129, 1133 n.6 (5th Cir. 1992) ("The states own, construct, and maintain the highway which form the federal-aid highways within their borders."). States and sub-recipients, in association with regional planning organizations, are responsible for determining which projects shall be federally financed. Thus, the decision to undertake any highway project, such as new construction, rehabilitation, widening, or other improvements regardless whether or not federal programs funds are used, is the state's alone to make.

FHWA authorizes funding for a highway project only in response to a request from a state and can withhold funding if it believes the expenditure does not satisfy the criteria for federal participation specified in Title 23 and the agency's regulations. *See* 23 U.S.C. § 1.9(a); *see also* 23 U.S.C. § 116. States are not required to use FAHP funds even when a project is eligible for funding and may choose to forgo federal assistance if they wish. *See* 23 U.S.C. § 106; 23 C.F.R. § 630 (A-C).

The Central 70 project is taking place in the framework just described. The State of Colorado, through CDOT, is responsible for selecting, designing, constructing, and maintaining the project and for electing to pursue federal financial assistance in that effort. FHWA is responsible for ensuring that the federal funds sought by CDOT are used effectively, efficiently, and in compliance with Title 23 requirements enacted by Congress to foster a uniform and robust interstate highway system. There is no substitution of roles by way of this collaborative partnership. CDOT does not take on FHWA's duties to Congress and the American people to

ensure their tax dollars are wisely spent, and FHWA does not take on CDOT's duties to provide transportation services and solutions to the people of Colorado.

Numerous courts recognize that state and federal agencies retain their principal autonomy despite their collaborative partnership in FAHP projects. *See, e.g.*, *Eden Mem'l Park Ass'n v. United States*, 300 F.2d 432, 439 (9th Cir. 1962) ("[W]hile close cooperation between the United States and the individual states was contemplated [by the Federal-Aid Highway Act], the states or their agencies or officials were in no sense to become agents of the United States in projects authorized by that act."); *U.S. for Use of Miller v. Mattingly Bridge Co.*, 344 F. Supp. 459, 462 (W.D. Ky. 1972) (same); *D. R. Smalley & Sons, Inc. v. U.S.*, 372 F.2d 505, 508 (Cl. Ct. 1967) (finding that acts by the United States under the Federal-Aid Highway Act "do not in any way make the State of Ohio its agent as claimed by plaintiff"); *State of Tenn. ex rel. Leech v. Dole*, 567 F. Supp. 704, 718 (M.D. Tenn. 1983) ("For purposes of the Highway Act, it is well established that Tennessee is not an agent of FHWA or the Federal Government."), *rev'd on other grounds by* 749 F.2d 331 (6th Cir. 1984); *Custom Contemporary Homes, Inc. v. U.S.*, 5 Cl. Ct. 88, 91 ("Under the [Federal-Aid Highway] Act, the States retain all attributes of their sovereignty, and no agency relationship is created between the United States and the States."); *Detroit Int'l Bridge Co. v. Fed. Highway Admin.*, 666 F. Supp. 2d 740, 748 (E.D. Mich. 2009) (finding no facts or legal theory to support the claim that Michigan Department of Transportation was FHWA's agent); *Alamo Aircraft Ltd. v. City of San Antonio*, No. 5:15-CV-00784, 2016 WL 5720860, at *3 (W.D. Tex. Sept. 30, 2016) ("San Antonio is not an agent of FHWA.").

    2. <u>CDOT's Role in the NEPA Process Does Not Displace or Alter FHWA's Duty to Ensure It Complies with the Law in Authorizing Federal Assistance.</u>

If a state elects to use federal funds for its highway project, it must comply with Title 23's "elaborate and intricate scheme." *Save Barton Creek Ass'n*, 950 F.2d at 1133 n.6. One criteria to qualify for FAHP funding is compliance with NEPA and its regulations. *See id.*; *see*

4

*also* 23 C.F.R. 711.113.  A highway project cannot be eligible for federal funding unless and until NEPA is properly conducted.  *See id.*; *see also* 23 C.F.R. § 771.113.  To meet this requirement, the state, also known as the "applicant," "project sponsor," or "co-lead agency," typically prepares the required environmental studies for FHWA's review and eventual adoption.  23 C.F.R. §§ 711.107, 109.  However, even though the state performs most of the work necessary to comply with NEPA's mandates, FHWA is ultimately the entity solely responsible for ensuring that compliance with NEPA is achieved.[3]  *See id.*

CDOT and FHWA work together within FHWA's specialized statutory and regulatory framework to achieve compliance with NEPA, but CDOT never stands in FHWA's shoes.  FHWA oversees all the NEPA work done by CDOT and makes the final determination on whether NEPA's requirements have been met.  On Central 70, both agencies worked hand-in-hand to assemble the required documentation, including the Draft EIS and Final EIS, and performed the public outreach necessary to comply with NEPA.  (Final EIS 3-3 to 1-5, 10-1 to 1-36.)[4]  As explained above, this collaborative partnership by no means relieves FHWA from its responsibilities and liability under Title 23 in ensuring that CDOT's project complies with NEPA, and it is FHWA alone that has the authority to issue and approve the ROD authorizing federal funds for Central 70, which it did on February 10, 2017.  *See* 82 Fed. Reg. 10430 (2017).

This ROD is the agency action challenged by the Zeppelin Plaintiffs in their Amended Petition.  (Am. Pet. ¶ 2, ECF No. 25.)  Specifically, Claims 4, 5, and 7 allege that the ROD violates NEPA and Section 4(f) because FHWA improperly segmented P2PH from Central 70, and as relief for these claims, they request the Court to set aside the ROD and order FHWA and

---

[3] Unless the state has fully assumed FHWA's NEPA responsibilities and legal liability under 23 U.S.C. § 327 ("NEPA assignment"), which the State of Colorado has not.

[4] The Final EIS and ROD for Central 70 are publicly available on the official project website maintained by CDOT at http://www.i-70east.com.reports.html.

CDOT to issue a supplement to the Final EIS analyzing the environmental impacts of all four components of P2PH as a connected and similar action of Central 70.  (*Id.* at ¶¶ 258-295, 307-318 & Prayer for Relief.)  However, as explained in FHWA's Motion to Dismiss Plaintiffs' Claims 4, 5, and 7 and supporting Reply, without FHWA control over P2PH, the Court lacks jurisdiction to order FHWA to evaluate the environmental impacts of non-federal activity.  (ECF No. 45 at 10-12; ECF No. 64 at 1-4.)  The Court also lacks jurisdiction to order CDOT to issue a supplemental EIS because NEPA's reach is limited to agencies of the federal government.  *See Save Barton Creek Ass'n*, 950 F.2d at 1140; *see also Macht v. Skinner,* 916 F.2d 13, 18 (D.C. Cir. 1990) ("NEPA requires *federal agencies*—not states or private parties—to consider the environmental impacts of their proposed actions." (emphasis in original)), a*brogated on other grounds by Karst Envtl. Educ. And Prot., Inc. v. E.P.A.*, 475 F.3d 1291 (D.C. Cir. 2007).

      **B.**    **Without Subject Matter Jurisdiction over Plaintiffs' P2PH-Related Claims, the Court Cannot Enjoin CDOT from Sending Non-Federal Money to the City and County of Denver.**

The Court's judicial review of Plaintiffs' P2PH-related claims alleging NEPA and Section 4(f) violations rests solely on the APA's waiver of sovereign immunity under Section 5 U.S.C. § 704, which applies only to "authorit[ies] of the Government of the United States."  *Sw. Williamson County Cmty. Ass'n v. Slater*, 173 F.3d 1033, 103 (6th Cir. 1999).  That waiver must be strictly construed, and the Court here cannot enjoin FHWA or CDOT without Plaintiffs first establishing that FHWA took a "final agency action" (5 U.S.C. § 704) with respect to P2PH and that P2PH constitutes a "major Federal action" subject to NEPA, which by definition requires them to show that FHWA had "actual power to control" P2PH.  *Sierra Club v. Hodel*, 848 F.2d 1068, 1089 (10th Cir. 1988), *overruled on other grounds by Vill. of Los Ranchos de Albuquerque v. Marsh*, 956 F.2d 970 (10th Cir. 1992) (en banc).

As explained in FHWA's Motion to Dismiss and supporting Reply (ECF Nos. 45 and 64), the Court lacks subject matter jurisdiction over Plaintiffs' P2PH-related claims because

6

FHWA has taken no action, let alone final action, with respect to P2PH. The case law applicable to Plaintiffs' P2PH-related claims is well-settled: Section 4(f) applies only to federally-funded projects; NEPA applies only to actions subject to federal control; and the purpose of NEPA's connected-and-similar-action regulations is to prevent the federal government from segmenting its *own* actions. (ECF No. 64 at 1-2, 4.) The key facts in this case are undisputed: FHWA has never funded or controlled P2PH. And as explained in Section A above, CDOT is not an agent of FHWA and does not stand in the shoes of FHWA on this project. Thus, Plaintiffs' suggestion that CDOT's cooperation with the City and County of Denver in the P2PH project somehow "federalizes" P2PH and grants this Court jurisdiction over these claims is without merit.

In sum, the Court lacks subject matter jurisdiction over Plaintiffs' P2PH-related claims and must dismiss these claims as against FHWA. Without jurisdiction over these claims, the Court has no basis for restraining non-federal activity, which includes CDOT's ability to provide non-federal funding to the City and County of Denver for construction of P2PH, and must also dismiss the claims as against CDOT. *See Envtl. Rights Coal., Inc. v. Austin*, 780 F. Suppl. 584, 597 (S.D. Ind. 1991) ("Without . . . involvement on the part of the [federal agency,] this court has no authority to enjoin the county defendants and must dismiss this case for lack of jurisdiction."); *see also Alamo Aircraft Ltd.*, 2016 WL 5720860, *3 (dismissing the claims against the City of San Antonio for lack of subject matter jurisdiction under the APA).

## CONCLUSION

For the foregoing reasons, CDOT does not, and cannot, effectively stand in the shoes of FHWA in this case, and without subject matter jurisdiction over Plaintiffs' P2PH-related claims, the Court cannot enjoin CDOT from sending non-federal money to the City and County of Denver. The Court should grant FHWA's and CDOT's motions to dismiss Claims 4, 5, and 7 of Plaintiffs' Amended Petition and deny Plaintiffs' motion for preliminary injunction.

Respectfully submitted this 2nd day of November, 2017.

                JEFFREY H. WOOD
                Acting Assistant Attorney General
                Environment and Natural Resources Division

                */s/ Mayte Santacruz*
                Mayte Santacruz
                Carter F. Thurman
                United States Department of Justice
                Environment and Natural Resources Division
                Natural Resources Section
                601 D Street, NW
                Washington, D.C. 20004
                (202) 305-0465 (Santacruz)
                (202) 305-0444 (Thurman)
                mayte.santacruz@usdoj.gov
                carter.thurman@usdoj.gov

                *Attorneys for Federal Highway Administration*

Of Counsel:
Brent Allen
Federal Highway Administration
Office of the Chief Counsel
Lakewood, Colorado
(720) 963-3692
brent.allen@dot.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of November, 2017, I electronically filed Federal Highway Administration's Supplemental Brief Regarding CDOT's Role with the Clerk of the United States District Court for the District of Colorado using the CM/ECF System, which will send notification of such filing to the attorneys of record in these consolidated cases.

*/s/ Mayte Santacruz*
MAYTE SANTACRUZ