IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action Nos. 17-cv-01661-WJM-MEH
17-cv-01679-WJM-MEH

KYLE ZEPPELIN; BRAD EVANS; CHRISTINE O'CONNOR; KIMBERLY MORSE; JACQUELINE LANSING; JANET FEDER; SIERRA CLUB; ELYRIA AND SWANSEA NEIGHBORHOOD ASSOCIATION; CHAFEE PARK NEIGHBORHOOD ASSOCIATION; and COLORADO LATINO FORUM,

    Plaintiffs,

v.

FEDERAL HIGHWAY ADMINISTRATION, ELAINE CHAO, in her official capacity as Secretary of Transportation; and JOHN M. CARTER, in his official capacity as Division Administrator,

    Defendants,

v.

COLORADO DEPARTMENT OF TRANSPORTATION, and SHAILEN P. BHATT, in his official capacity as Executive Director of the Colorado Department of Transportation,

    Defendant-Intervenors.

---

**ZEPPELIN PLAINTIFFS' SUPPLEMENTAL BRIEF
IN RESPONSE TO ORDER, DKT. 76**

---

*Question 1: Does CDOT effectively stand in the shoes of FHWA?*

**Yes.**  As the joint co-lead agency with FHWA on Central 70, CDOT has voluntarily undertaken the role of preparing, in whole or in part, the environmental analyses for this major federal action, and is therefore subject to the requirements of NEPA.  Under the facts of this case, CDOT's NEPA duties are no greater or lesser than those of FHWA, which remains subject to the requirements of NEPA.  Ample precedent supports this conclusion.

"[C]ourts have frequently been concerned about the possibilities of local agencies avoiding the requirements of NEPA." Highland Co-op. v. City of Lansing, 492 F.Supp. 1372, 1377 (W.D. Mich. 1980). Thus, courts across the country have applied NEPA's requirements to nonfederal actors "engaged in a 'partnership' or 'joint venture' with a federal agency." Milwaukee Inner-City Congregations for Hope v. Gottlieb, 2013 WL 12234624 at *4 (W.D. Wis. January 29, 2013). See also Colo. Rail Passenger Ass'n v. Fed. Transit Admin., No. 09-cv-01135-REB-KMT, 2010 U.S. Dist. LEXIS 137754, at *7 n.4 (D. Colo. Dec. 15, 2010) (citing Arlington Coalition on Transportation v. Volpe, 458 F.2d 1323, 1329 (4th Cir. 1972), cert. denied, 409 U.S. 1000 (1972)) ("Although defendants point out that NEPA only imposes duties on federal agencies, that fact alone may not be sufficient to undermine a potential claim against them."). Plaintiffs direct the Court's attention to Milwaukee, 2013 WL 12234624 at *4, for a comprehensive survey of courts that have imposed NEPA duties on non-federal actors and enjoined them to prevent construction or implementation of a project that violates federal law. These include the First, Second, Fifth, Seventh, Ninth, and Tenth Circuit Courts of Appeal,[1] and the U.S. District Courts for the Districts of Oregon, Massachusetts, Maryland, the Middle District of Pennsylvania, and the Eastern District of New York.

Here, all parties agree Central 70 is a major federal action, which requires federal approval and is being funded, in part, with federal dollars. CDOT and FHWA are joint co-lead agencies on this Project and accordingly have identical NEPA duties.

---

[1] The Tenth Circuit case cited in Milwaukee is Ross v. FHA, 162 F.3d 1046 (10th Cir. 1998), where the Court affirmed the decision of the U.S. District Court for the District of Kansas, which permanently enjoined the Kansas Department of Transportation from completing a highway segment until it and FHWA could demonstrate compliance with NEPA and Section 4(f).

2

*Question 2: Can the Court enjoin CDOT from spending non-federal money?*

**Yes.** Because CDOT was required to comply with NEPA when conducting the environmental analyses for Central 70, CDOT is subject to equitable remedies for its NEPA violations. Preliminary injunctive relief is a standard NEPA remedy. Preliminary injunctions are routinely issued against non-federal actors for violating NEPA, and such injunctions often require these non-federal actors to stop spending non-federal dollars. This conclusion, too, enjoys substantial legal support.

State agencies that voluntarily assume NEPA duties consent to NEPA remedies. See Biderman v. Morton, 497 F.2d 1141, 1147 (2nd Cir. 1974). "Injunctive relief under NEPA has uniformly been viewed as a proper remedy." Dickman v. Santa Fe, 724 F.Supp. 1341, 1344 (D. N.M. 1989) (citing Realty Income Trust v. Eckerd, 564 F.2d 447 (D.C. Cir. 1977)). Thus, state actors subject to NEPA may be enjoined for non-compliance with the Act. See Friends of the Earth, Inc. v. Coleman, 518 F.2d 323, 329 (9th Cir. 1975) (non-federal entities may be enjoined if "federal and state projects are sufficiently interrelated to constitute a single 'federal action' for NEPA purposes"); Biderman, 497 F.2d at 1147 ("it is well settled that non-federal parties may be enjoined…where those non-federal entities have entered into a partnership or joint venture with the Federal Government"); Dickman v. Santa Fe, 724 F.Supp. 1341, 1343 (D. N.M. 1989) (preliminarily enjoining the City of Santa Fe, the sole defendant, from pursing a proposed road improvement project until it prepared a proper environmental assessment). See also Milwaukee, supra at *4 (listing NEPA cases where injunctions against state actors were issued).

In the words of the Second Circuit Court of Appeals:

> To be sure, it is well settled that non-federal parties may be enjoined, pending completion of an EIS, where those non-federal entities have entered into a partnership or joint

3

venture with the Federal Government, and are thus recipients of federal funding.  See, e.g., Ivanhoe Irrigation District v. McCracken, 357 U.S. 275 (1958), Proetta v. Dent, 484 F.2d 1146, 1148 (2nd Cir. 1973), Silva v. Romney, 473 F.2d 287, 289-90 (1st Cir. 1973); Arlington Coalition on Transportation v. Volpe, 458 F.2d 1323, 1329 (4th Cir.), cert. denied, 409 U.S. 1000 (1972); Named Members of San Antonio Conservation Society v. Texas Highway Dept., 446 F.2d 1013, 1027 (5th Cir. 1971), cert. denied, 406 U.S. 933 (1927).  But cf., Ely v. Velde, 451 F.2d 1130, 1139 (4th Cir. 1971).  The rationale behind this extension of federal power appears to be grounded in notions of consent.  Thus, the Fifth Circuit Stated:

> No one forced the State to seek federal funding, to accept federal participation, or to commence construction of a federal aid highway.  The State, by entering into this venture, voluntarily submitted itself to federal law.  It entered with its eyes open, having more than adequate warning of the controversial nature of the project and of the applicable law.  And while this marriage between the federal and state defendants seems to have been an unhappy one, it has produced an already huge concrete offspring whose existence it is impossible for us to ignore.

Individual Members of San Antonio Conservation Society v. Texas Highway Dept., supra, 446 F.2d at 1028 (footnote omitted).

Biderman, 497 F.2d at 1147.

Preliminary injunctions against state actors subject to NEPA often include restrictions on further state funding of the challenged action.  See City of South Pasadena v. Slater, 56 F.Supp.2d 1106, 1144-1148 (C.D. Cal. 1999) (preliminarily enjoining federal and state defendants from "expending federal or state funds to construct any portion of the 710 Freeway Project"); Highland Co-op., 492 F.Supp. at 1383 (preliminarily enjoining federal and state defendants "from acquiring the rights-of-way, awarding construction contracts, commencing construction, or in any other way proceeding with the Edgewood Project pending the preparation and issuance of an Environmental Impact Statement"); Hawthorne Environ. Preservation Ass'n v. Coleman, 417 F.Supp. 1091, 1095 (D. Ga. 1976) (preliminarily enjoining the Georgia Department of Transportation from awarding contracts or proceeding with any portion of the construction of PR-2177(4) – a 100% state-funded highway – absent preparation of an EIS); I-

4

291 Why? Ass'n v. Burns, 372 F.Supp. 223, 264 (D. Conn. 1974) (preliminarily enjoining federal and state defendants, "their officers, agents, servants, employees, and attorneys from any further acts or expenditures for the construction of I-291, until further order of the Court").

Here, the Zeppelin Plaintiffs seek a preliminary injunction against *all* of Central 70 pending this Court's resolution of the merits.  See generally Motion for Stay, Dkt. 32.  This Court's power to enjoin CDOT from taking any further action on Central 70 necessarily and properly encompasses the power to enjoin CDOT from taking any further action on P2PH.  The reason for this is simple: P2PH is a necessary and integral component of Central 70, which was illegally excluded from FHWA/CDOT's NEPA analysis.  See First Amended Petition for Review of Agency Action, Dkt. 25, at ¶¶ 258-285; Motion for Stay, Dkt. 32, at 4-16 and 21-24; Reply in Support of Motion for Stay, Dkt. 54, at 1-8; Response in Opposition to Motions to Dismiss, Dkt. 56, at 1-7; Supplemental Statement, Dkt. 58, at 3-9; Reply to Response to Supplemental Statement, Dkt. 62, at 4.  Thus, the Court can and should enjoin CDOT from further funding TBDP/P2PH.

The Court's power to enjoin CDOT from further funding TBDP/P2PH is not negated by FHWA/CDOT's claim that TBDP/P2PH involves no federal funding.  See FHWA's Motion to Dismiss, Dkt. 45, at 2; CDOT's Motion to Dismiss, Dkt. 47 (joining FHWA's arguments).  First, the purposeful withdrawal of federal funds from one portion of a project does not "defederalize" that segment and cancel the agencies' NEPA obligations.  See Ross, 162 F.3d at 1052.  See also Dkt. 32 at 6 (quoting Montclair Creek Drainage Feasibility Evaluation at CCD007354) (CDOT believed it could evade NEPA analysis for TBDP by keeping federal dollars from this portion of the project).  Second, the Zeppelin Plaintiffs have recently discovered a CDOT document

5

entitled, "I-70 East Project Sources and Flow of Funds," which is publicly available online from a CDOT website.  See https://www.codot.gov/programs/high-performance-transportation-enterprise-hpte/projects/i-70/central-70/sources-and-flow-of-funds.pdf (last visited November 1, 2017).  According to this document, the Colorado Bridge Enterprise ("CBE"), a government-owned business within CDOT, is funding $850 million of the cost of Central 70.  See id. at p. 2, § I.A. and pp. 3-4, § II.A.  Also according to this document, all payments made by CBE under the Project Agreement are from sources including, "moneys paid to CDOT by the U.S. Department of Transportation ('USDOT')."  Id. at p. 13, § b.  The IGA, on the other hand, states that the 40% of the TBDP will be paid for by CDOT, CBE, and the High Performance Transportation Enterprise ("HPTE"), which is another government-owned business within CDOT.  See Dkt. 14-1 at CM/ECF 1 and 5, ¶ E.  These documents, when read together, raise questions as to whether the State, through the CBE, has in fact given federal dollars to Denver for TBDP.

To the point that a state cannot evade NEPA by withdrawing federal funds, the Fifth Circuit's discussion in Named Individual Members is instructive:

> The State argues that it is "absolutely committed" to building the North Expressway regardless of what this Court decides about the validity of the Secretary's action, and that this Court has no power to require the State to comply with the law in building the Project because the State is determined to build the highway with its own funds, "if necessary."  In connection with this argument, the State has presented this Court with a document which was not part of the Record on appeal, but which deserves reproduction in this opinion.  The document is a Minute Order of the Texas Highway Department, passed on June 1, 1971, five days *after* this Court entered its stay order of May 27, 1971:
>
>> WHEREAS, there is presently pending on appeal in the United States Court of Appeals for the Fifth Circuit, Cause No. 30915 styled, Named Individual Members of the San Antonio Conservation Society v. Texas Highway Department, et al, and The Department of Transportation, et al, and there is some apparent doubt concerning whether a stay of highway construction should be

6

>effected, in part because of apparent doubt concerning the nature of the State's commitment to construct the highway involved; and, because such doubt should not exist;
>
>THEREFORE, IT IS HEREBY AFFIRMED that the commitment of the State of Texas made by this Commission to build said highway, *is absolute*. The highway will be built with 100% state money if necessary. While this Commission continues to believe that this highway is eligible for federal funding, such eligibility is neither determinative of whether or not the highway will be built, nor of the schedule of its construction.
>
>FURTHERMORE, the construction contracts authorized by this Commission in the Fall of 1970, under which construction is presently proceeding on the end segments of the highway, are in no way contingent upon federal funding. (Emphasis in original)

In addition to presenting us with the foregoing "Minute Order," the State argued before the Supreme Court in its petition for relief from our stay order, and repeated before this Court, the following:

>In all candor, it must be admitted that in the event the Secretary of Transportation or the Courts[] should rule that federal law prohibits federal participation in the "North Expressway" construction project, other eligible projects will be submitted to take up available federal funding.

We are not impressed with this argument. If we were to accept it, we would be giving approval to the circumvention of an Act of Congress. The North Expressway is now a federal project, and it has been a federal project since the Secretary of Transportation authorized federal participation in the project on August 13, 1970. As such, the North Expressway is subject to the laws of Congress, and the State as a partner in the construction of the project is bound by those laws. The supremacy of federal law has been recognized as a fundamental principle of our Government since the birth of the Republic. United States Constitution, Art. VI, cl. 2. The State may not subvert that principle by a mere change in bookkeeping or by shifting funds from one project to another.

Named Individual Members, at 1027 (emphasis in original).

The Court's power to enjoin CDOT from spending more money on TBDP/P2PH is also not negated by the fact that Denver is also funding the project. As initially conceived, TBDP was a collaboration between CDOT and Denver, sparked by CDOT's need for 100-year flood

7

protection.  Denver was interested in this partnership because it created an opportunity for Denver to leverage CDOT dollars to finance a flood control project that Denver could not otherwise afford.  Even though Denver is spending a substantial sum of money on TBDP/P2PH, the City's funding model has always included a large contribution from CDOT, which Denver represented would be used to help pay for all four components of TBDP/P2PH.  See City of Denver PowerPoint Presentation, dated August 30, 2016, Dkt. 62-4, at CM/ECF 7 (diagram of P2PH funding from 2016 – 2021).

There is no question that Lesley Thomas, the City Engineer, believes Denver should move forward with TBDP/P2PH no matter what happens with Central 70.  See Thomas Declaration, Dkt. 46-11.  But what Ms. Thomas believes Denver *should* do is an entirely different question from what Denver *can and will* do.  Funding large scale infrastructure projects like P2PH takes time, planning, and City Council approvals.  See Ortega Declaration, Dkt.56-6, at ¶¶ 6-7 (Denver City Council has not voted to complete P2PH without CDOT's contribution, nor has the Council appropriated funds to complete P2PH should CDOT be enjoined from contributing); Espinoza Declaration, Dkt. 56-5, at ¶¶ 4-5; (neither Denver nor the Wastewater Enterprise Fund have an additional $60 million cash on hand to make up for the shortfall if CDOT funds were enjoined, and there are significant challenges to City Council approving another bond measure or wastewater rate increase to shoulder the entire financial burden of P2PH).  Indeed, the express terms of the IGA *limit* Denver's funding options for the TBDP by requiring that Denver use only "funds appropriated by the Denver City Council for the purposes of this Agreement, encumbered for the purpose of this Agreement[,] and paid into the Treasury of the City and County of Denver."  Compare IGA, Dkt. 1-15, at CM/ECF 1, ¶ 16, Declaration

8

of Laura Perry, Dkt. 56-1, at ¶ 6 (stating the City has funding options for the TBDP that do not require City Council approval).

The IGA is an enforceable and current contract, and Denver is bound by its terms. Because the IGA requires Denver to design and build the TBDP on CDOT's timeline, with CDOT's dollars, and with CDOT approval, Denver has no concrete back-up plan for completing P2PH "as presently designed and on the present schedule" without CDOT's participation. Compare IGA, Dkt. 1-14; Thomas Declaration at ¶ 16. Even Ms. Thomas now concedes that City Council has not approved contracts for construction of the 39th Avenue Open Channel or the Park Hill Golf Course detention. Second Thomas Declaration, Dkt. 65-2, at ¶ 6. Indeed, Ms. Thomas has brought no contracts for these two components of TBDP to City Council for approval, and Denver has not even *purchased* the Park Hill Golf Course from the Clayton Family Trust. See Excerpted Video of October 3, 2017 Finance and Governance Committee Meeting (conventionally filed on October 24, 2017) (Denver's current plan is to purchase Park Hill Golf course with $10 million of CDOT's money). As will be further explored at the hearing, TBDP/P2PH is a cooperative project between CDOT and the City. Denver has no concrete plans to construct TBDP/P2PH without CDOT's money or participation. The statements of Ms. Thomas and Laura Perry regarding what Denver *would* do in the event of an injunction against CDOT are purely speculative.

Within the context of redressability, it is enough for Plaintiffs to show that an injunction from this court is *likely* to redress their harms. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992). See also Massachusetts v. EPA, 549 U.S. 497, 525 (2007) (it sufficient for the redressability inquiry to show that the requested remedy would "slow or reduce" the harm);

9

Larson v. Valente, 456 U.S. 228, 243, n. 15 (1982) ("a plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury.") (emphasis in original). By showing the Denver has no concrete plans to move forward with TBDP/P2PH without CDOT's money or participation, Plaintiffs have met that burden, and this Court may, in its sound discretion, issue the requested injunction against CDOT. See Lundgrin v. Claytor, 619 F.2d 61, 63 (10th Cir. 1980) ("Since the grant or denial of a preliminary injunction is within the sound discretion of the trial court, we may set aside the court's action only if it constituted an abuse of discretion.").

Respectfully submitted this 2nd day of November, 2017.

                                                  KEATING WAGNER POLIDORI FREE, P.C.

By:   *s/ Melissa A. Hailey*
       Melissa A. Hailey, CO Reg. #42836
       Aaron D. Goldhamer, CO Reg. #41016
       1290 Broadway, Suite 600
       Denver, CO 80203
       Tel: (303) 534-0401
       Fax: (303) 534-8333
       mah@keatingwagner.com
       agoldhamer@keatingwagner.com

*~ and ~*

James Jay Tutchton, CO Reg. #21138
Tutchton Law Office
6439 East Maplewood Avenue
Centennial, CO 80111
Tel: (720) 301-3843
jtutchtonlo@gmail.com

*Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE

       I hereby certify that on this 2nd day of November, 2017, I filed a true and accurate copy of the foregoing with the Clerk of Court via the CM/ECF system, which provided immediate electronic notice of the same to all counsel of record as follows:

Carter F. Thurman, Esq.
Mayte Santacruz, Esq.
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Carter.thurman@usdoj.gov
Mayte.santacruz@usdoj.gov

David A. Carson
U.S. Department of Justice-Denver-ENRS
Environment & Natural Resources Section
999 17th Street
South Terrace, Suite 370
Denver, CO 80212
David.a.carson@usdoj.gov

*Attorneys for Federal Defendants*

John E. Putnam, Esq.
Nicholas A. DiMascio, Esq.
Kaplan Kirsch & Rockwell, LLP
1675 Broadway, Suite 2300
Denver, CO 80202
jputnam@kaplankirsch.com
ndimascio@kaplankirsch.com

Brent E. Butzin, Esq.
Assistant Attorney General
1300 Broadway, Tenth Floor
Denver, Colorado 80203
Brent.butzin@coag.gov

*Attorneys for Defendant-Intervenors*

Robert E. Yuhnke, Esq.
Robert E. Yuhnke & Associates

2

4050 SE Hosner Terrace
Gresham, OR 97080
Bob.yuhnke@prodigy.net

Andrea S. Gelfuso, Esq.
Andrea Gelfuso, Attorney at Law
2402 South Holland Street
Lakewood, CO 80227
Agelfuso6@gmail.com

Gregory Nicholas Corbin
Milligan Rona Duran & King, LLC-Denver
1627 Vine Street
Denver, CO 80206
gnc@mrdklaw.com

*Attorneys for Sierra Club Plaintiffs*

                                            *s/ Melissa A. Hailey*

2