**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action Nos. 17-cv-01661-WJM-MEH
            17-cv-01679-WJM-MEH

KYLE ZEPPELIN; BRAD EVANS; CHRISTINE O'CONNOR; KIMBERLY MORSE; JACQUELINE LANSING; JANET FEDER; SIERRA CLUB; ELYRIA AND SWANSEA NEIGHBORHOOD ASSOCIATION; CHAFEE PARK NEIGHBORHOOD ASSOCIATION; and COLORADO LATINO FORUM,

      Plaintiffs,

v.

FEDERAL HIGHWAY ADMINISTRATION, ELAINE CHAO, in her official capacity as Secretary of Transportation; and JOHN M. CARTER, in his official capacity as Division Administrator,

      Defendants,

v.

COLORADO DEPARTMENT OF TRANSPORTATION, and SHAILEN P. BHATT, in his official capacity as Executive Director of the Colorado Department of Transportation,

      Defendant-Intervenors.

**ZEPPELIN PLAINTIFFS' MOTION TO RECONSIDER
DISMISSAL OF FOURTH, FIFTH, AND SEVENTH CLAIMS FOR RELIEF**

## I.     INTRODUCTION

In order to be legally adequate under NEPA, an EIS must examine the direct, indirect, and cumulative impacts of the "major federal action" at issue.  See 42 U.S.C. § 4332(2)(C); 40 C.F.R. Part 1502; 40 C.F.R. §§ 1508.11 and 1508.25(c).  Here, the challenged "major federal action" is Central 70, and NEPA requires that FHWA/CDOT examine *each aspect* of this project – including the requisite off-site drainage component known as P2PH – before proceeding to construction.  Despite this federal mandate, the FEIS and ROD issued by FHWA/CDOT do *not* examine the direct, indirect, or cumulative impacts of P2PH, but instead examine the impacts of an off-site drainage component CDOT never intended to build.  See ROD, Dkt. 32-2 at CM/ECF 18 and 20.  Unless and until the agencies supplement their NEPA analysis on Central 70 to include P2PH, they are proceeding with this project in violation of federal law.

The Zeppelin Plaintiffs filed this action in order to cure this unlawful conduct and force the requisite analysis and public comment on Central 70.  See Amended Petition for Review of Agency Action, Dkt. 25, at ¶¶ 258-285 (Fourth Claim for Relief: failure to analyze connected action), ¶¶ 286-295 (Fifth Claim for Relief: failure to analyze similar action); ¶¶ 296-306 (Sixth Claim for Relief: failure to analyze cumulative impacts); ¶¶ 307-318 (Seventh Claim for Relief: violation of Section 4(f)).  This notice and comment procedure is critical because P2PH – like other components of Central 70 – requires enormous excavation in the Vasquez Boulevard / I-70 Superfund site, and will additionally destroy the historic character of City Park Golf Course.  Irrespective of whether Denver intends to move forward with P2PH while this litigation proceeds, FHWA/CDOT should not be permitted to proceed with the remainder of Central 70

until they have complied with NEPA and Section 4(f) by disclosing the true scope, cost, and impact of this project and allowing the public to meaningfully participate regarding the same.

Accordingly, and pursuant to Fed. R. Civ. P. 59(e) and D.C.COLO.LCivR. 7.1, the Zeppelin Plaintiffs respectfully request the Court reconsider its dismissal of their Fourth, Fifth, and Seventh Claims for Relief.[1]  Plaintiffs have stated cognizable injuries, which are likely to be redressed by an Order forcing FHWA/CDOT to analyze the direct and indirect impacts of P2PH and/or mandating that FHWA comply with Section 4(f) before approving a new ROD.  These cognizable injuries are redressable under Article III of the U.S. Constitution *even without* an injunction barring CDOT from making any further financial contribution to P2PH.

Undersigned counsel has conferred with counsel for FHWA, CDOT, and the Sierra Club Plaintiffs.  FHWA and CDOT oppose the relief requested herein.  The Sierra Club Plaintiffs do not.  For these reasons set forth below, the Zeppelin Plaintiffs ask the Court to grant this Motion to Reconsider and amend its Order Regarding Subject Matter Jurisdiction, Dkt. 90, to allow Plaintiffs' Fourth, Fifth, and Seventh Claims to proceed on the merits.

## II.  PROCEDURAL BACKGROUND

FHWA/CDOT moved to dismiss Plaintiffs' claims for two reasons: 1) because P2PH, standing on its own, is not a "major federal action," the Court lacks subject matter jurisdiction; and 2) because an injunction against CDOT will not stop Denver's progress on P2PH, Plaintiffs'

---

[1] FHWA/CDOT did not move to dismiss Plaintiffs' Sixth Claim for Relief that the agencies failed to analyze the cumulative impacts from Central 70 and P2PH.  This claim remains pending on the merits and as a basis for granting Plaintiffs' Motion for Stay.  See Motion for Stay, Dkt. 32, at 19; Order Regarding Subject Matter Jurisdiction, Dkt. 90, at 5.

[2] Although Lesley Thomas and Laura Perry testified that Denver is poised to proceed with the purchase of Park Hill Golf Course, recent news articles reveal that Denver has "suspended" its

2

claims are not redressable, and thus Plaintiffs lack standing. See generally Dkts. 45 and 47. Plaintiffs responded that they are challenging FHWA/CDOT's analysis and approval of Central 70, which FHWA/CDOT concede is a "major federal action," and that their injuries – which are environmental, health, aesthetic, recreational, financial, and procedural in nature – can be redressed by an Order declaring the Central 70 analysis is inadequate and enjoining FHWA/CDOT from taking any further action on Central 70 (which includes P2PH) until each can demonstrate compliance with federal law. See generally Plaintiffs' Combined Response in Opposition to FHWA/CDOT's Motions to Dismiss, Dkt. 56.

When FHWA/CDOT filed their Motions to Dismiss, the Zeppelin Plaintiffs had already filed their Motion for Stay, Dkt. 32. Accordingly, the primary focus of FHWA/CDOT's motions and subsequent briefing was whether a preliminary injunction would redress the irreparable and immediate harm Plaintiffs are suffering as a result of the ongoing construction and financing of P2PH. Most notably, the Court's evidentiary hearing focused narrowly on CDOT's argument, made primarily through the Declaration of Denver City Engineer, Lesley Thomas, that Denver would move forward with P2PH during the pendency of this litigation even if the Court issued a preliminary injunction. See Dkt. 46-11 at ¶ 16. To this end, the Court ordered supplemental briefing on its power to enjoin CDOT from sending state dollars to Denver and held an evidentiary hearing limited to the issue of whether Denver could, in the absence of CDOT dollars and participation, move forward with P2PH. See Dkts. 55, 75, and 76.

On November 9, 2017, the Court issued a combined Order on Plaintiffs' Motion for Stay and FHWA/CDOT's Motions to Dismiss, Dkt. 90. The Court found that Denver has the financial resources to make up any shortfall created by a preliminary injunction and that Denver

3

does not need CDOT's approval of decisions on P2PH. The Court therefore denied Plaintiffs' Motion for Stay *and furthermore granted* FHWA/CDOT's Motions to Dismiss on the basis that a preliminary injunction against CDOT will not stop Denver from moving forward with P2PH.

The Court's Order granting FHWA/CDOT's Motions to Dismiss fails to acknowledge that forcing FHWA/CDOT to supplement their NEPA analysis on Central 70 is *by itself* likely to redress the injuries undergirding Plaintiffs' Fourth, Fifth, and Seventh Claims for Relief. See Dkt. 56 at 11-12 (there are *two* ways the Court can redress Plaintiffs' harms: 1) by forcing FHWA/CDOT to supplement their NEPA documents to include an analysis of the direct and indirect impacts of P2PH; and 2) by stopping the agencies from continuing to pursue P2PH (which is an integral part of Central 70) until such analysis is complete). Plaintiffs respectfully contend that the Court's dismissal of their claims overlooks the first form of relief and incorrectly assumes that a supplemental analysis on the direct and indirect impacts of P2PH has no benefit absent an injunction barring CDOT from sending more money to Denver.

## III. LEGAL STANDARD GOVERNING THIS MOTION

> [A] motion to reconsider filed within ten days after entry of judgment is considered a Fed. R. Civ. P. 59(e) motion. See Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir. 1991). Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice. See Brumark Corp. v. Samson Resources Corp., 57 F.3d 941, 948 (10th Cir. 1995). Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. Cf. Fed. R. App. P. 40(a)(2) (grounds for rehearing).

Servants of the Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000).

## IV. ARGUMENT

In response to FHWA and CDOT's Motions to Dismiss, the Zeppelin Plaintiffs asked the Court "to declare that FHWA/CDOT violated NEPA, to set aside the ROD, and to enjoin the

4

Central 70 Project, which includes TBDP/P2PH, until FHWA and CDOT can demonstrate that they have complied with NEPA and FHWA can demonstrate that it has complied with Section 4(f)." Dkt. 56 at 11 (citing Dkt. 25 at ¶¶ 78-82 (Prayer for Relief)).  Plaintiffs argued that:

> Setting aside the ROD and remanding the NEPA analysis to the agencies for the purpose of including TBDP/P2PH is likely to redress Plaintiffs' injuries, which stem from the agencies' refusal to analyze this portion of the project.  Although the outcome of this additional analysis is unknowable, Plaintiffs' harm will be redressed because they will have the opportunity to comment on TBDP/P2PH, and FHWA/CDOT will be forced to make an informed decision.  See SUWA v. Office of Surface Mining Reclamation and Enforcement, 620 F.3d 1227, 1235 (10th Cir. 2010).  Issuing an injunction against FHWA/CDOT until they can demonstrate compliance with NEPA and Section 4(f) is *furthermore* likely to redress Plaintiffs' injuries.  The "limited purpose" of any forthcoming injunction would be to preserve the status quo while the agencies perform the requisite analysis.  W. Org. of Res. Council v. Johanns (In re Geertson Seed Farms), 541 F.d 938, 947 (9th Cir. 2008).

Id. at 12 (emphasis added).

Thus, the relevant injuries may be redressed by two related, but distinct types of relief: 1) a remand of the NEPA/Section 4(f) analysis to FHWA/CDOT; and 2) an injunction against FHWA/CDOT from proceeding with P2PH until that supplemental analysis is complete.  The reason a supplemental analysis is likely to redress Plaintiffs' injuries is straight forward: requiring the agencies to analyze the true scope, cost, and impact of the PCL Alternative – and then circulate that analysis for public comment – might influence FHWA/CDOT's ultimate decision that sinking the highway 40 feet below ground in a contamination portion of Denver is indeed the preferred course of action.  See WildEarth Guardians v. U.S. Dept. of Agriculture, 795 F.3d 1148, 1156 (9th Cir. 2015) (quoting Salmon Spawning & Recovery All. v. Gutierrez, 545 F.3d 1220, 1226 (9th Cir. 2008) (the "relaxed redressability requirement for procedural claims" is satisfied when "the relief requested – that the agency follow the correct procedures – may influence the agency's ultimate decision").

5

But irrespective of what decision FHWA/CDOT finally make on Central 70, an analysis of P2PH is one the agencies *must* undertake.  NEPA requires that FHWA/CDOT disclose and analyze the off-site drainage component *they actually intend to use* to protect the highway from flooding.  NEPA furthermore requires that FHWA/CDOT disclose that selection of the PCL Alternative requires the elaborate off-site drainage system known as P2PH, and that this system adds millions of dollars to the Central 70 price tag, requires the excavation of significantly more hazardous soils than stated in the FEIS and ROD, and will destroy the historic character of City Park Golf Course.  P2PH and Central 70 are connected, similar, and/or cumulative actions.  See Dkt. 25 at ¶¶ 258-318.  Central 70 cannot function as designed without P2PH.  See Reply in Support of Motion for Stay, Dkt. 54, at 4, fn. 5.  NEPA requires that FHWA/CDOT deal honestly with the public on Central 70 by disclosing the true costs and impacts of the PCL Alternative and by providing the public a meaningful opportunity to comment on that choice.

The failure to let the public comment on an accurate and truthful EIS is not harmless error.  NEPA demands agency transparency in its decision-making through public involvement. See Baltimore Gas & Electric v. NRDC, 462 U.S. 87, 97 (1983); Kern v. BLM, 284 F.3d 1062, 1073 (9th Cir. 2002).  "By focusing both agency and public attention on the environmental effects of proposed actions, NEPA facilitates informed decision-making by agencies and allows the political process to check those decisions."  New Mexico v. BLM, 565 F.3d 683, 703 (10th Cir. 2009).  "An agency, when preparing an EA [or EIS], must provide the public with sufficient environmental information, considered in the totality of the circumstances, to permit the members of the public to weigh in with their views and thus inform the agency decision-making process."  Bering Strait Citizens for Responsible Resource Development v. U.S. Army Corps of

6

Engineers, 524 F.3d 938, 953 (9th Cir. 2008).  NEPA's procedural safeguards instruct that: 1) environmental information be made available to the public *before* decisions are made and *before* action is taken; and 2) direct that this information be of "high quality," i.e., it "must concentrate on the issues that are truly significant to the action in question."  40 C.F.R. § 1500.1(b).

By contracting with Denver to begin construction of P2PH *two years* before FHWA issued the ROD, CDOT robbed the public of the opportunity to comment on this portion of the project before construction began.  But P2PH is nowhere near completion, and even under the most generous estimate, will not be done until *at least* 2020.  See Dkt. 90 at 25 (summarizing Perry Testimony).  Indeed, the Court heard evidence at the hearing that construction has *not yet begun* at City Park Golf Course, Park Hill Golf Course, or along 39th Avenue.  Denver has yet to come forward with *any* proposed contracts for construction on 39th Avenue or in Park Hill Golf Course and has not yet even *purchased* Park Hill Golf Course from the Clayton Family Trust.[2]

In short, there is no evidence that P2PH will be complete before the agencies have the opportunity to supplement their NEPA analysis.  But even if Denver were to complete this portion of the project before a new analysis was released, Plaintiffs harms would still be redressed because FHWA/CDOT would have been forced to comply with federal law before breaking ground on the highway.  See Zeppelin Declaration, Dkt. 1-1, at ¶¶ 11-13, 15, 18, 22, and 24-25; Evans Declaration, Dkt. 1-2, at ¶¶ 10, 13, and 15; O'Connor Declaration, Dkt. 1-6, at

---

[2] Although Lesley Thomas and Laura Perry testified that Denver is poised to proceed with the purchase of Park Hill Golf Course, recent news articles reveal that Denver has "suspended" its attempt to purchase the golf course due to an "unresolved lease issue" with the course's operator. Exhibit 1, Denver Post Article, published November 18, 2017, available online at http://www.denverpost.com/2017/11/17/denver-suspends-purchase-park-hill-golf-course/ (last visited November 20, 2017).

7

¶¶ 15-16 and 20-22; Morse Declaration, Dkt. 1-12, at ¶¶ 6, 12-16, and 18; Lansing Declaration, Dkt. 1-17, at ¶¶ 11-12, 18-21, and 28; Feder Declaration, Dkt. 25-1, at ¶¶ 17-21 and 23 (each alleging procedural injuries caused by FHWA/CDOT's failure to analyze the direct and indirect impacts of P2PH through the Central 70 NEPA process, each explaining that these procedural injuries are directly tied to their environmental, aesthetic, recreational, health, and/or financial injuries, and each stating that forcing FHWA/CDOT to supplement the Central 70 analysis to reveal and circulate for public comment the true scope, cost, and impact of this project will redress their procedural harms).

Because the PCL Alternative is the only alternative requiring the type of elaborate flood protection P2PH provides, the agencies may decide, after considering informed public comment, that the impacts and price tag of the PCL Alternative make little sense when compared with other alternatives.  At the very least, Plaintiffs will be afforded the legally mandated opportunity to comment on the true scope and impacts of Central 70 in an attempt to influence the decision-makers.  Either way, the fact that the agencies would be forced to "follow the correct procedures" provides Plaintiffs some relief.  See WildEarth Guardians, supra, at 5.  See also Lujan v. Defenders of Wildlife, 504 U.S. 555, 572, n. 7 (1992) (where a plaintiff is "seeking to enforce a procedural requirement the disregard of which could impair a separate concrete interest," he or she can establish standing "without meeting all the normal standards for redressability and immediacy"); Cantrell v. City of Long Beach, 241 F.3d 674, 682 (9th Cir. 2001) ("to establish redressability plaintiffs asserting procedural standing need not demonstrate that the ultimate outcome following procedures will benefit them"); Salmon River Concerned Citizens v. Robertson, 32 F.3d 1346, 1355, n. 14 (9th Cir. 1993) (with procedural violations,

8

"[t]here is no requirement that a plaintiff prove that an injury to his or her concrete interest *will* occur") (emphasis in original).

On the other hand, dismissing Plaintiffs' claims because CDOT "jumpstarted" P2PH before issuing the FEIS and then made a series of rush payments to Denver to shrink the shortfall after Plaintiffs filed their Motion for Stay, results in manifest injustice. "The twin purposes of NEPA are to require agencies to consider environmentally significant aspects of a proposed action, and, in doing so, to inform the public that the agency's decision making process includes environmental concerns." WildEarth Guardians v. U.S. Forest Service, 828 F.Supp.2d 1223, 1236 (D. Colo. 2011). Here, there is overwhelming evidence that P2PH is an integral part of Central 70 and that CDOT intended to avoid NEPA compliance for this portion of the project by withholding federal funds. See, e.g., MATT Meeting Minutes, dated October 21, 2013, Dkt. 62.1, at CM/ECF 3 (noting discussion of "the potential for CDOT to separate the drainage work from the main PCL project"); Montclair Creek Drainage Feasibility Evaluation, dated June 30, 2014, Dkt. 1-2, at CM/ECF 25 ("NEPA requirements will activate if we use federal funding" for P2PH). As argued earlier in this case, this type of "defederalizing" is illegal under Tenth Circuit precedent and should not be rewarded. See Ross v. FHA, 162 F.3d 1046 (10th Cir. 1998).

The Zeppelin Plaintiffs have met their burden for establishing standing to sue on their Fourth, Fifth, and Seventh Claims for Relief. Contrary to the Court's Order dismissing these claims, whether a supplemental NEPA analysis might influence FHWA/CDOT's decision to move forward with the PCL Alternative has nothing to do with whether Denver can pay for P2PH on its own. To the contrary, forcing a supplemental analysis on the whole of Central 70 provides an independent avenue for redressing Plaintiffs' harms, which the Court overlooked.

9

Although Denver's ability to finance the remainder of P2PH without CDOT's contribution has kept this Court from issuing a preliminary injunction, the same does not mandate dismissal of Plaintiffs' claims.  These claims are meritorious and, if successful, will send FHWA/CDOT back to the drawing board on Central 70 to conduct an adequate and transparent analysis that complies with federal law.

**V.     CONCLUSION**

For all the foregoing reasons, the Zeppelin Plaintiffs respectfully request the Court RECONSIDER its dismissal of their Fourth, Fifth, and Seventh Claims for Relief.

Respectfully submitted this 20th day of November, 2017.

                KEATING WAGNER POLIDORI FREE, P.C.

By:     *s/ Melissa A. Hailey*
       Melissa A. Hailey, CO Reg. #42836
       Aaron D. Goldhamer, CO Reg. #41016
       1290 Broadway, Suite 600
       Denver, CO 80203
       Tel: (303) 534-0401
       Fax: (303) 534-8333
       mah@keatingwagner.com
       agoldhamer@keatingwagner.com

       *~ and ~*

       James Jay Tutchton, CO Reg. #21138
       Tutchton Law Office
       6439 East Maplewood Avenue
       Centennial, CO 80111
       Tel: (720) 301-3843
       jtutchtontlo@gmail.com

       *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 20th day of November, 2017, I filed a true and accurate copy of the foregoing with the Clerk of Court via the CM/ECF system, which provided immediate electronic notice of the same to all counsel of record as follows:

Carter F. Thurman, Esq.
Mayte Santacruz, Esq.
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Carter.thurman@usdoj.gov
Mayte.santacruz@usdoj.gov

David A. Carson
U.S. Department of Justice-Denver-ENRS
Environment & Natural Resources Section
999 17th Street
South Terrace, Suite 370
Denver, CO 80212
David.a.carson@usdoj.gov

*Attorneys for Federal Defendants*

John E. Putnam, Esq.
Nicholas A. DiMascio, Esq.
Kaplan Kirsch & Rockwell, LLP
1675 Broadway, Suite 2300
Denver, CO 80202
jputnam@kaplankirsch.com
ndimascio@kaplankirsch.com

Brent E. Butzin, Esq.
Assistant Attorney General
1300 Broadway, Tenth Floor
Denver, Colorado 80203
Brent.butzin@coag.gov

*Attorneys for Defendant-Intervenors*

Robert E. Yuhnke, Esq.
Robert E. Yuhnke & Associates

2

4050 SE Hosner Terrace
Gresham, OR 97080
Bob.yuhnke@prodigy.net

Andrea S. Gelfuso, Esq.
Andrea Gelfuso, Attorney at Law
2402 South Holland Street
Lakewood, CO 80227
Agelfuso6@gmail.com

Gregory Nicholas Corbin
Milligan Rona Duran & King, LLC-Denver
1627 Vine Street
Denver, CO 80206
gnc@mrdklaw.com

*Attorneys for Sierra Club Plaintiffs*

*s/ Melissa A. Hailey*

2