**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action Nos.   17-cv-01661-MJW
                    17-cv-01679-EB

KYLE ZEPPELIN; BRAD EVANS; CHRISTINE O'CONNOR; KIMBERLY MORSE; JACQUELINE LANSING; JANET FEDER

SIERRA CLUB; ELYRIA AND SWANSEA NEIGHBORHOOD ASSOCIATION; CHAFEE PARK NEIGHBORHOOD ASSOCIATION; AND COLORADO LATINO FORUM,

    Plaintiffs,

  v.

FEDERAL HIGHWAY ADMINISTRATION, ELAINE CHAO, in her official capacity as Secretary of Transportation; and JOHN M. CARTER, in his official capacity as Division Administrator,

    Defendants,

  and

COLORADO DEPARTMENT OF TRANSPORTATION, and SHAILEN P. BHATT, in his official capacity as Executive Director of the Colorado Department of Transportation,

    Defendant-Intervenors.

---

**FEDERAL HIGHWAY ADMINISTRATION'S OPPOSITION TO ZEPPELIN PLAINTIFFS' MOTION TO RECONSIDER DISMISSAL OF FOURTH, FIFTH, AND SEVENTH CLAIMS OF RELIEF**

---

Defendant Federal Highway Administration ("FHWA") hereby responds to the Motion to Reconsider Dismissal of Fourth, Fifth, and Seventh Claims for Relief filed by Kyle Zeppelin and other named plaintiffs ("Plaintiffs") in Case No. 17-cv-01661, ECF No. 91. Plaintiffs have failed to meet the heightened standard warranting this extraordinary relief. The Court correctly dismissed Plaintiffs' claims and its judgment should stand.

## INTRODUCTION

On November 9, 2017, after a day-long hearing and thorough consideration of the evidence, the Court properly dismissed Plaintiffs' Fourth, Fifth, and Seventh claims for relief. (ECF No. 90.) Plaintiffs now ask the Court to bestow the extraordinary remedy provided by Federal Rule of Civil Procedure 59(e) to undo the Court's judgment and revive those claims. In support, Plaintiffs do nothing more than resurrect the arguments they made against dismissing those claims and urge the Court to reexamine them. They do not identify any change in law, new evidence, or a "direct, obvious, and observable error" resulting in manifest injustice that justifies overturning the Court's judgment. The Court was correct in concluding that it lacked subject matter jurisdiction over Plaintiffs' claims challenging the City of Denver's flood-control project, Platte-to-Park Hill ("P2PH"), and its judgment should stand.

## LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 59(e) allows district courts to alter or amend a judgment in three limited circumstances: (1) to accommodate an intervening change in the controlling law, (2) to account for new evidence that was previously unavailable, or (3) to correct clear error or prevent manifest injustice. *See Hayes Family Tr. v. State Farm Fire & Cas. Co.*, 845 F.3d 997, 1004 (10th Cir. 2017). Rule 59(e) is an extraordinary remedy that should be used sparingly, and is appropriate only where "the court has misapprehended the facts, a party's position, or the controlling law." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 944 (10th Cir. 1995) (noting that a "motion for reconsideration is an extreme remedy to be granted in rare circumstances"). "It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of Paraclete*, 204 F.3d at 1012 (citation and quotation

1

omitted); *see also Hadley v. Hays Med. Ctr.*, No. 14-1055-KHV, 2017 WL 748129, *1 (Feb. 27, 2017) ("Rule 59(e) does not permit a losing party to rehash arguments previously addressed or to present new legal theories or facts that could have been raised earlier." (citing *Brown v. Presbyterian Healthcare Servs.*, 101 F.3d 1324, 1332 (10th Cir. 1996))). In other words, a motion for reconsideration is not a means "for a losing party's attorney to get a 'second bite at the apple.'" *Grynberg v. Ivanhoe Energy, Inc.*, No. 08-cv-2528, 2010 WL 2802649, at *1 (D. Colo. July 15, 2010), *aff'd*, 490 F. App'x 86 (10th Cir. 2012).

The Tenth Circuit defines "clear error" as "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1236 (10th Cir. 2001). Although the Tenth Circuit has not specifically defined "manifest injustice" in the Rule 59(e) context, other courts in the circuit have defined it as an indisputable "direct, obvious, and observable" error. *See, e.g.*, *Grynberg*, 2010 WL 2802649, at *3; *Hadley*, 2017 WL 748129, at *2; *Nichols v. Fed. Bureau of Prisons*, No. 09-cv-00558-CMA-CBS, 2010 WL 4932670, at *2 n.6 (D. Colo. Nov. 30, 2010); *CalMat Co. v. Oldcastle Precast, Inc.*, No. 16-26 KG/WPL, 2017 WL 3225473, at *2 (D.N.M. May 8, 2017). Importantly, the moving party must show "more than just clear and certain prejudice;" the movant must also demonstrate "a result that is fundamentally unfair in light of governing law." *Diaz v. King*, No. 14-1086 KG/SCY, 2016 WL 8924933, at *2 (D.N.M. Apr. 22, 2016).

Findings of manifest injustice are rare, likely due to the heavy burden of proof, but some examples include: dismissing a *pro se* prisoner's civil rights case based upon procedural errors outside of his control, *Ford v. Lovinger*, No. 10-cv-00158-BNB, 2010 WL 1564845 (D. Colo. Apr. 19, 2010), and *Lewis v. Suthers*, No. 09-cv-02521-ZLW, 2010 WL 537822 (D. Colo. Feb. 12, 2010); creating inconsistent results among similarly situated defendants until claims against

remaining defendants were determined, *Cincinnati Ins. Co. v. Wal–Mart Stores, Inc.*, No. 05-2074-CM, 2006 WL 2522513 (D. Kan. Aug. 25, 2006); granting summary judgment on issue of punitive damages when no underlying claim would support such award, *A.H. ex rel. Hohe v. Knowledge Learning Corp.*, No. 09–2517–DJW, 2011 WL 2731757 (D. Kan. July 13, 2011); and granting summary judgement as conceded when opposition brief was mistakenly delivered to incorrect court through no apparent fault of moving party, *Marbury Law Group, PLLC v. Carl*, 729 F. Supp. 2d 78 (D.D.C. 2010).  None of these examples are applicable here, but they do demonstrate that "manifest injustice" is not created by the judicious application of clear facts to settled law, which is what the Court did here when it dismissed Plaintiffs' claims.

## ARGUMENT

Plaintiffs' motion is nothing more than an attempt to get "a second bite at the apple." *Grynberg*, 2010 WL 2802649, at *1.  They simply rehash their case with greater emphasis on their procedural remedy (a supplemental EIS and opportunity to comment) than the substantive one they focused on in their motion to stay and opposition to the motion to dismiss (stopping the P2PH project).  They fail to demonstrate that any of the Rule 59(e) circumstances apply or that the Court's reasoning was faulty in any way.

### A. Plaintiffs Have Failed to Meet the Required Criteria to Justify Rule 59(e)'s Extraordinary Remedy.

The basis for Plaintiffs' reconsideration motion is somewhat unclear.  Plaintiffs do not contend that there has been a change in controlling law.  Nor do they introduce new evidence that was previously unavailable.  Rather, they seem to contend that dismissal of their claims will result in manifest injustice insofar as it will deprive them of the opportunity to comment on the P2PH project, if they ultimately prevail and the Court orders FHWA to supplement its NEPA analysis.  (ECF No. 91 at 7-8.)  But this argument merely states Plaintiffs' dissatisfaction with

3

the results of the Court's decision, which is insufficient to warrant this extraordinary relief.  *See Buzz Bee Toys, Inc. v. Swimways Corp.*, 20 F. Supp. 3d 483, 516-17 (D.N.J. 2014) ("Raising a mere disagreement with a court's prior decision, is insufficient" basis to grant motion to reconsider).  Plaintiffs' argument fails to demonstrate where the Court committed a "direct, obvious, and observable error," nor does it point to an error in the Court's decision that was "arbitrary, capricious, whimsical, or manifestly unreasonable," as a Rule 59(e) motion requires.

In contrast, the Court's opinion demonstrates that it correctly understood Plaintiffs' arguments on claims 4, 5 and 7 when it dismissed them.  As the Court explained, "[t]he Zeppelin Plaintiffs primarily argue that, in preparing the EIS and connected documents, Defendants intentionally and unlawfully excluded full consideration of a major stormwater project currently being pursued by the City and County of Denver ("Denver")."  (ECF No. 90 at 2.)  Based on this, the Court properly recognized that all relief and Article III standing on those claims "turns on the ability to prevent P2PH from being built."  (*Id.* at 3.)  As such, the Court correctly concluded that "the matter presently in question is the Zeppelin Plaintiffs' Article III standing to challenge Defendants' choice not to fully evaluate P2PH in the final EIS or ROD."  (*Id.* at 25.)

Plaintiffs' motion does not challenge the Court's understanding of their P2PH-related claims, nor its correct conclusion that its jurisdiction to hear those claims depends on the Court's ability to stop the P2PH project.  Instead, Plaintiffs merely revisit prior arguments for the Court to "reconsider" and state that "manifest injustice" will ensue if they do not prevail on them.  (ECF No. 91 at 10.)  The only discernable difference between the arguments advanced in Plaintiffs' Response in Opposition to the Motions to Dismiss (ECF No. 56), and their present motion is the harm they emphasize and the relief they seek for it.  Whereas in their Response they focused on injuries caused by P2PH and the mechanics of stopping it (*see, e.g.*, ECF No. 56

4

at 3 ("This Court *can* interrupt progress on TBDP/P2PH with an injunction against FHWA/CDOT, and Plaintiffs respectfully request the Court deny the Motions to Dismiss and allow their claims to proceed to the merits")), in their present motion they now pivot to the redress of their procedural injuries instead,[1] (*see, e.g.*, ECF No. 91 at 2-3 ("Irrespective of whether Denver intends to move forward with P2PH while this litigation proceeds, FHWA/CDOT should not be permitted to proceed with the remainder of Central 70 until they have complied with NEPA and Section 4(f) by disclosing the true scope, cost, and impact of this project and allowing the public to meaningfully participate regarding the same.")).

While Plaintiffs may have chosen to focus on the substantive injury in their previous briefs, they still pleaded—and the Court addressed—their desire for a supplemental analysis and the opportunity to comment on it and raised it in their opposition to the dismissal motions. (ECF No. 56 at 11-13; ECF No. 91 at 7-8.) It is evident from the opinion that the Court understood this and took it into consideration in reaching its decision that "Plaintiffs have not carried their burden to show by a preponderance of the evidence that the injuries asserted in their claims 4, 5, and 7 would be redressed by any order this Court has jurisdiction to issue." (ECF No. 90 at 38.)[2]

---

[1] It is worth noting that in the Tenth Circuit procedural injury alone is insufficient to establish standing under NEPA. *See Comm. to Save the Rio Hondo v. Lucero*, 102 F.3d 445, 447-48 (10th Cir. 1996). Plaintiffs must first show that an agency's failure to follow NEPA procedures creates an increased risk of actual, threatened, or imminent *environmental* harm, and then show that this increased risk injures their own concrete interests due to the proximity to or actual use of the site of the agency action. *See id.* at 449. Plaintiffs can no longer establish this linkage now that the Court has concluded that it lacks the ability to halt P2PH, which was the cause-in-fact of both the environmental harms and the concrete injuries involved in Plaintiffs' dismissed claims. This is especially true here where FHWA, like the Court, has no ability to control the actions of Denver with respect to P2PH or determine the outcome.

[2] *See, e.g.*, ECF No. 90 at 3 ("[T]he Zeppelin Plaintiffs believe that Defendants were required by NEPA to include full consideration of every aspect of P2PH in their EIS. . . . The Zeppelin Plaintiffs have sued under the Administrative Procedure Act, . . . which gives this Court power to vacate Defendants' decision and require them to redo the EIS before considering again whether

5

As the Tenth Circuit held, "[i]t is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of Paraclete*, 204 F.3d at 1012. Losing on an argument may indeed create undesirable results and prejudice to the defeated party, but it is not itself a manifest injustice of the type guarded against by Rule 59(e). Plaintiffs must show "more than just clear and certain prejudice" to obtain Rule 59(e) relief; they must show a result that is fundamentally unfair in light of governing law. *Diaz*, 2016 WL 8924933, at *2. Plaintiffs have failed to do so here. Their motion should be denied.

### B. The Court Correctly Concluded It Has No jurisdiction Over Plaintiffs' P2PH-Related Claims.

The Court correctly concluded that redressability of Plaintiffs' Fourth, Fifth, and Seventh claims turned on whether it could stop Denver from proceeding with P2PH with an injunction against FHWA or CDOT. (EFC No. 90 at 5; ECF No. 56 at 3.) This is true not only because it is central to the Court's jurisdiction under Article III, as the Court thoroughly explained (ECF No. 90 at 6-7), but also because it is essential to FHWA's ability to comply with a court order instructing it to evaluate P2PH as a connected action under NEPA. As the Tenth Circuit explained, "[T]he distinguishing feature of 'federal' involvement is the ability to influence or control the outcome in material respects. The EIS process is supposed to inform the decision-maker. This presupposes he has judgment to exercise." *Vill. of Los Ranchos de Albuquerque v. Barnhart*, 906 F.2d 1477, 1482 (10th Cir. 1990) (citation omitted)).

Accordingly, in order for FHWA to discharge its duties under NEPA in a meaningful way that produces substantive outcomes, it would need to be able to influence or control P2PH in

---

to pursue the plan to lower I-70 below grade."); at 25 ("[T]he matter presently in question is the Zeppelin Plaintiffs' Article III standing to challenge Defendants' choice not to fully evaluate P2PH in the final EIS or ROD.")

6

material respects. But the evidence shows, and the Court found, that Denver intends to go forward with the P2PH project as currently conceived regardless of what FHWA or CDOT are ordered to do. (ECF No. 90 at 33-38.) This would put FHWA in the awkward position of evaluating the impacts of and developing alternatives to a "connected action" that it has no ability to influence or stop. Such an ineffectual and academic endeavor is not what Congress had in mind when it passed NEPA. As the Supreme Court explained:

> [I]nherent in NEPA and its implementing regulations is a 'rule of reason,' which ensures that agencies determine whether and to what extent to prepare an EIS based on the usefulness of any new potential information to the decisionmaking process. Where the preparation of an EIS would serve 'no purpose' in light of NEPA's regulatory scheme as a whole, no rule of reason worthy of that title would require an agency to prepare an EIS.

*Dep't of Transp. v. Pub. Citizen,* 541 U.S. 752, 767 (2004) (citation omitted) (holding that "where an agency has no ability to prevent a certain effect due to its limited statutory authority over the relevant actions" the agency need not consider those effects in its analysis)); *see also* 40 C.F.R. 1500.1(c) (purpose of NPEA is to "foster excellent *action*") (emphasis added)).

FHWA would be unable effectuate any decision over P2PH even if it were ordered to analyze it as a part of Central 70. Thus, reinstating Plaintiffs' claims for the purpose of seeking hollow relief would violate both Article III and NEPA's rule reason. Accordingly, the Court's judgement on redressability is sound and should stand.

## CONCLUSION

For the foregoing reasons, the Court's well-reasoned and correct judgment should stand, and Plaintiffs' motion for reconsideration should be denied.

Respectfully submitted this 6th day of December, 2017.

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment and Natural Resources Division

/s/ Mayte Santacruz
Mayte Santacruz
Carter F. Thurman
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
601 D Street, NW
Washington, D.C. 20004
(202) 305-0465 (Santacruz)
(202) 305-0444 (Thurman)
mayte.santacruz@usdoj.gov
carter.thurman@usdoj.gov

*Attorneys for Federal Highway Administration*

Of Counsel:
Brent Allen
Federal Highway Administration
Office of the Chief Counsel
Lakewood, Colorado
(720) 963-3692
brent.allen@dot.gov

8

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of December, 2017, I electronically filed Federal Highway Administration's Opposition to Zeppelin Plaintiffs' Motion to Reconsider Dismissal of Fourth, Fifth, and Seventh Claims of Relief with the Clerk of the United States District Court for the District of Colorado using the CM/ECF System, which will send notification of such filing to the attorneys of record in these consolidated cases.

/s/ Mayte Santacruz
MAYTE SANTACRUZ