**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Actions No.     17-cv-01661-WJM-MEH
*Consolidated with*    17-cv-01679-WJM-MEH

KYLE ZEPPELIN; BRAD EVANS; CHRISTINE O'CONNOR; KIMBERLY MORSE; JACQUELINE LANSING; and JANET FEDER,

    *and*

SIERRA CLUB; ELYRIA AND SWANSEA NEIGHBORHOOD ASSOCIATION; CHAFEE PARK NEIGHBORHOOD ASSOCIATION; and COLORADO LATINO FORUM,

    Plaintiffs,

v.

FEDERAL HIGHWAY ADMINISTRATION, ELAINE CHAO, in her official capacity as Secretary of Transportation; and JOHN M. CATER, in his official capacity as Division Administrator,

    Defendants,

    *and*

COLORADO DEPARTMENT OF TRANSPORTATION, and
SHAILEN P. BHATT, in his official capacity as Executive Director of the Colorado Department of Transportation,

    Defendant-Intervenors.

**DEFENDANT-INTERVENORS' RESPONSE IN OPPOSITION TO
ZEPPELIN PLAINTIFFS' MOTION FOR RECONSIDERATION**

| | |
|---|---|
| BRENT E. BUTZIN | JOHN E. PUTNAM |
| Assistant Attorney General | NICHOLAS A. DIMASCIO |
| 1300 Broadway, 10th Floor | KAPLAN KIRSCH & ROCKWELL LLP |
| Denver, CO 80203 | 1675 Broadway, Suite 2300 |
| (720) 508-6638 | Denver, CO 80202 |
| brent.butzin@coag.gov | (303) 825-7000 |
| | jputnam@kaplankirsch.com |
| | ndimascio@kaplankirsch.com |

## INTRODUCTION

After a full-day evidentiary hearing concerning the Zeppelin Plaintiffs' standing, this Court held that they had not "carried their burden to show by a preponderance of the evidence that the injuries asserted in their Claims 4, 5, and 7 would be redressed by any order this Court has jurisdiction to issue." (ECF 90 at 38.) The Zeppelin Plaintiffs identify no clear error in that ruling. Nor could they, as the evidence showed that Denver will complete its stormwater project regardless of the Central 70 Project and with or without any further CDOT funding.

Unable to change the essential facts, the Zeppelin Plaintiffs now assert that the facts do not matter. Under their new theory, an order forcing FHWA and CDOT to supplement their NEPA analysis would be sufficient redress "*by itself*" to afford the Zeppelin Plaintiffs standing. (ECF 91 at 5.) Not only did the Zeppelin Plaintiffs previously fail to raise any such theory, their new theory is wrong as a matter of law. A party alleging a NEPA violation need not show that further environmental review certainly *will* redress a concrete injury-in-fact (because an agency retains the discretion to make the same decision after following the appropriate procedures), but the party does have to show that further review *could* redress such a concrete injury.

The Zeppelin Plaintiffs bore a heavy burden in that regard because they focused on the actions of a third party—Denver—whose project is not subject to NEPA and does not require FHWA authorization. To meet their burden, the Zeppelin Plaintiffs asked the Court to hold an evidentiary hearing and tried to prove that Denver could not or would not move forward with its project absent Central 70 or CDOT funding. Having failed in that endeavor, they now want the Court to believe that the hearing was unnecessary. The Court should reject that belated and

erroneous assertion because a procedural injury, standing alone, cannot vest the Zeppelin Plaintiffs with standing. The motion for reconsideration therefore should be denied.

## STANDARD OF REVIEW

The Zeppelin Plaintiffs move for reconsideration under Fed. R. Civ. P. 59(e). (ECF 91 at 3.) "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Rule 59(e) is not a vehicle to "revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.* (citing *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991); *see also All West Pet Supply Co. v. Hill's Pet Prods. Div.*, 847 F. Supp. 858, 860 (D. Kan. 1994). Nor can a party use such a motion to expand an argument to encompass new issues. *Steele v. Young*, 11 F.3d 1518, 1520 n.1 (10th Cir. 1993); *see also Headwaters Res. v. Ill. Union Ins.*, 770 F.3d 885, 900 (10th Cir. 2014).

Regardless of the procedural rule invoked, "to succeed in a motion to reconsider, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *JTS Choice Enters. v. E.I. Dupont De Nemours & Co.*, No. 11-cv-03143-WJM, 2014 U.S. Dist. LEXIS 99360, at *4 (D. Colo. July 22, 2014) (quoting *Nat'l Bus. Brokers v. Jim Williamson Prods.*, 115 F. Supp. 2d 1250, 1256 (D. Colo. 2000)). "[A] motion to reconsider should be denied unless it clearly demonstrates manifest error of law or fact or presents newly discovered evidence." *Id.* The Tenth Circuit will not reverse the denial of such a motion unless the district court makes a "clear error of judgment or exceed[s] the bounds of permissible choice in the circumstances." *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997).

## ARGUMENT

**I.      The Court correctly rejected the Zeppelin Plaintiffs' two theories of redressability.**

The Zeppelin Plaintiffs identify no clear error in the Court's finding that Denver will complete its project regardless of Central 70. Instead, they suggest that the Court wasted its time holding an evidentiary hearing and issuing a 39-page ruling on that issue because they had identified different relief that "*by itself*" was sufficient to redress their injuries. (ECF 91 at 5.) Specifically, they posit that "forcing FHWA/CDOT to supplement their NEPA documents to include an analysis of the direct and indirect impacts" of Denver's stormwater project would, standing alone, constitute sufficient relief to satisfy the Article III standing requirement. (*Id.*)

The Zeppelin Plaintiffs' opposition to the dismissal motions did briefly argue that CDOT had deprived them of an opportunity to comment on Denver's project, and that an order remanding the NEPA analysis would redress that procedural harm. (*See* ECF 56 at 13.) But they correctly (*see infra* Part II) did not pitch that procedural-harm argument as independently sufficient to vest them with standing. Rather, they requested an "injunction against FHWA/CDOT" during any such remand and argued that "Denver would not be free to complete [its stormwater project] in the face of an injunction against CDOT." (*Id.* at 13-16 & n.10).[1]

The Zeppelin Plaintiffs previously advanced two theories concerning the Court's ability to stop Denver's project. First, they argued that the Court's order would "stop CDOT from making any further cash contributions to fund [Denver's stormwater project], and Denver would

---

[1] The reconsideration motion similarly explains that they sought (1) to force FHWA and CDOT to "supplement their NEPA documents," and (2) an injunction to stop progress on Denver's stormwater project "*until such analysis is complete*." (ECF 91 at 5 (emphasis added).) Thus, even the motion shows that the two forms of relief were intertwined, not independent.

3

not have the money to go it alone." (*Id.* at 15.) Second, they asserted that the Court's order would preclude CDOT from exercising its rights under the Intergovernmental Agreement and thereby eliminate CDOT's "seat at the table." (*Id.* at 16.) Those theories prompted the Court to hold the full-day evidentiary hearing that the Zeppelin Plaintiffs now suggest was unnecessary.

But the Zeppelin Plaintiffs themselves *asked* the Court to hold an evidentiary hearing on Denver's ability to proceed with its project; they never suggested they would have standing even if they could not stop Denver's project. (*See* ECF 58, 62 (responding to court's inquiry regarding usefulness of an evidentiary hearing).) Subsequently, the Court properly rejected the two theories of redressability that the Zeppelin Plaintiffs did raise. (ECF 90 at 26-38.) First, the Court found that, although CDOT has a seat at the table, "it does not show up for every meal," and "nothing requires Denver to wait for CDOT's approval before proceeding with any portion of [its stormwater project]." (*Id.* at 27-28.) Second, the Court found that Denver could and would proceed with its project regardless of Central 70 or further CDOT funding. (*Id.* at 33-38.)

Having urged the Court down that path, the Zeppelin Plaintiffs cannot disavow the process simply because they dislike the results. The Zeppelin Plaintiffs failed to show that further environmental review by FHWA and CDOT, or public comment to those agencies concerning Denver's project, stands any chance of changing Denver's plans and thereby redressing the alleged concrete injuries the Zeppelin Plaintiffs identified. The Court therefore correctly held that the Zeppelin Plaintiffs lack Article III standing to assert their NEPA and Section 4(f) claims concerning Denver's project.

**II.     The Zeppelin Plaintiffs' new theory of redressability is wrong as a matter of law.**

Under the Zeppelin Plaintiffs' new theory, forcing FHWA and CDOT to "comply with federal law" and "follow the correct procedures" would provide sufficient redress because the Zeppelin Plaintiffs would then have an "opportunity to comment" on Denver's project. (ECF 91 at 6-9.)  That is incorrect.  "[A]n asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." *Allen v. Wright*, 468 U.S. 737, 754 (1984); *see also Hollingsworth v. Perry*, 133 S. Ct. 2652, 2662 (2013); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573-76 (1992).  Nor does a plaintiff gain standing merely by asserting that "they have been denied the ability to file comments on some [agency] actions and will continue to be so denied." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). "[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Id.*

Forcing FHWA and CDOT to supplement their NEPA analysis and take public comment on Denver's project therefore would not independently satisfy the redressability prong of the Article III standing inquiry.  "[T]he redressibility requirement is not toothless in procedural injury cases." *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1226-27 (9th Cir. 2008).  In such cases, a plaintiff must show that "compliance with the procedural requirements *could* have better protected its concrete interests." *New Mexico v. DOI*, 854 F.3d 1207, 1215 (10th Cir. 2017) (quoting *WildEarth Guardians v. EPA*, 759 F.3d 1196, 1205 (10th Cir. 2014)). A plaintiff consequently lacks standing when its alleged concrete injuries will persist despite any further environmental review that a court might order. *See Salmon Spawning*, 545 F.3d at 1226-

5

27 (plaintiffs lacked standing because "if we rule against the groups' claim of procedural injury, they will continue to suffer injury; and, if we rule in their favor, they will still suffer injury").

Courts also have held that "[n]othing in the procedural-injury jurisprudence relaxes [the] rule" that there is no redressability, and thus no standing, where "any prospective benefits depend on an independent actor who retains broad and legitimate discretion the courts cannot presume either to control or to predict." *Coal. for a Sustainable Delta v. FEMA*, 711 F. Supp. 2d 1152, 1167 (E.D. Cal. 2010) (quoting *Glanton v. AdvancePCS*, 465 F.3d 1123, 1125 (9th Cir. 2006)). A plaintiff therefore lacks standing when it fails to show that additional process will affect the "independent choices of … [a] third party." *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1160-61 (D.C. Cir. 2005); *see also NRDC v. Fed. Hous. Fin. Agency*, 815 F. Supp. 2d 630, 640-41 (S.D.N.Y. 2011) (same); *Goat Ranchers v. Williams*, No. 08-97-ST, 2009 U.S. Dist. LEXIS 26472, at *6-7 (D. Or. Mar. 30, 2009) (same). For the reasons explained above, the Court correctly held that the Zeppelin Plaintiffs failed to make that showing here.

The Zeppelin Plaintiffs spend much of their motion rehashing their merits arguments, which are not before the Court. (ECF 91 at 1, 6-7, 9.) CDOT nevertheless strongly disagrees with the motion's skewed presentation of the facts. There is nothing improper about Denver deciding to build its stormwater project without federal funds. Nor can Denver "defederaliz[e]" a project that has never involved federal funds or approvals in the first place. (*Id.* at 10.) Denver's project is quintessentially local action, not federal action.

The Zeppelin Plaintiffs also continue to speculate that CDOT does not "*actually intend to use*" an off-site drainage system to protect I-70. (*Id.* at 7.) Agency decisions, however, are "entitled to presumption of administrative regularity" and will not be disturbed absent a "strong

6

showing of improper behavior." *Citizens for Alts. v. U.S. DOE*, 485 F.3d 1091, 1097 (10th Cir. 2007); *see also Nat'l Archives & Records. Admin. v. Favish*, 541 U.S. 157, 174-75 (2004) ("Allegations of government misconduct are easy to allege and hard to disprove, so courts must insist on a meaningful evidentiary showing."). The reevaluation form that FHWA already has issued shows the effect of Denver's project on Central 70's off-site drainage system: one pipe was eliminated, thereby *reducing* Central 70's potential to disturb hazardous materials. (ECF 46 at 14-15; ECF 46-7 at 6-7, 12.) The relatively minor change to Central 70's off-site drainage system demonstrates that CDOT does intend to build that system despite Denver's project.

With regard to Denver's project, the Court correctly found by a preponderance of the evidence that Denver will build its project with or without Central 70 or CDOT funding. (ECF 90 at 33-38.) Yet the Zeppelin Plaintiffs continue to focus on Denver's activities. They assert that public comment is "critical" because Denver's project "requires enormous excavation in the Vasquez Boulevard / I-70 Superfund site, and will additionally destroy the historic character of City Park Golf Course." (ECF 91 at 2.) They contend "there is no evidence that P2PH will be complete before the agencies have the opportunity to supplement their NEPA analysis." (*Id.* at 8.) And they request an injunction of "the Central 70 Project, *which includes TBDP/P2PH*." (*Id.* at 5-6 (emphasis added).)

The Zeppelin Plaintiffs also cite an article stating that Denver has "suspended" purchasing Park Hill Golf Course. (ECF 91 at 8 n.2.) They neglect to mention, however, that the article also states that Denver "isn't abandoning the plan in its entirety" and "still will pursue rights to use a portion of the course as a stormwater detention area." (ECF 91.01 at 2.) Denver fully intends to fulfill the commitments it made to its citizens and bondholders regardless of

7

Central 70.  The Zeppelin Plaintiffs' continued effort to suggest otherwise undermines their new contention that Denver's activities are irrelevant to the Article III standing inquiry.

Thus, although the Zeppelin Plaintiffs have revised their legal theory, their overriding goal to stop Denver's project remains the same.  They cannot achieve that goal because no order this Court has jurisdiction to issue, and nothing FHWA or CDOT could do on remand, would reverse Denver's progress on the Globeville Landing Outfall, stop Denver's work at City Park Golf Course and Park Hill Golf Course, or halt Denver's plans for 39th Avenue.  The Zeppelin Plaintiffs tried to prove they could prevent those injuries, and this Court correctly found that they failed.  The Court therefore should deny the motion for reconsideration.

Respectfully submitted,

| | |
|---|---|
| BRENT E. BUTZIN<br>Assistant Attorney General<br>1300 Broadway, 10th Floor<br>Denver, CO  80203<br>(720) 508-6638<br>Brent.Butzin@coag.gov | JOHN E. PUTNAM<br>NICHOLAS A. DIMASCIO<br>KAPLAN KIRSCH & ROCKWELL LLP<br>1675 Broadway, Suite 2300<br>Denver, CO  80202<br>(303) 825-7000<br>jputnam@kaplankirsch.com<br>ndimascio@kaplankirsch.com |

*Attorneys for Defendant-Intervenors*

DEC. 6, 2017                                               *s/  Nicholas A. DiMascio*
                                                           NICHOLAS A. DIMASCIO

8

# CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2017, I electronically filed the foregoing document and all of its attachments with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Melissa A. Hailey
Aaron D. Goldhamer
Keating Wagner Polidori Free, P.C.
1290 Broadway, Suite 600
Denver, CO 80203
(303) 534-0401
(303) 534-8333
mah@keatingwagner.com
agoldhamer@keatingwagner.com

James Jay Tutchton
Tuchton Law Office
6439 East Maplewood Avenue
Centennial, CO 80111
(720) 301-3843
jtutchtontlo@gmail.com

Robert E. Yuhnke
4050 Se Hosner Terrace
Gresham, OR 97080
(303) 499-0425
bob.yuhnke@prodigy.net

Andrea S. Gelfuso
Andrea Gelfuso, Attorney at Law
2402 South Holland Street
Lakewood, CO 80227
(303) 955-1910
agelfuso6@gmail.com

Carter F. Thurman
Mayte Santacruz
U.S. Department of Justice
Env't & Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
(202) 305-0465 (phone)
(202) 305-0506 (fax)
carter.thurman@usdoj.gov
mayte.santacruz@usdoj.gov

David A. Carson
United States Department of Justice
Env'l Natural Resources Division
Environmental Defense Section
Denver Place Building
999 18th Street
South Terrace, Suite 370
Denver, CO 80202
(303) 844-1349
david.a.carson@usdoj.gov

Gregory Nicholas Corbin
Milligan Rona Duran & King, LLC
1627 Vine Street
Denver, CO 80206
(720) 414-2000
gnc@mrdklaw.com


s/ *Nicholas A. DiMascio*
Nicholas A. DiMascio