**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action Nos.    17-cv-01661-WJM-MEH
                     17-cv-01679-WJM-MEH

KYLE ZEPPELIN; BRAD EVANS; CHRISTINE O'CONNOR; KIMBERLY MORSE; JACQUELINE LANSING; JANET FEDER

SIERRA CLUB; ELYRIA AND SWANSEA NEIGHBORHOOD ASSOCIATION; CHAFEE PARK NEIGHBORHOOD ASSOCIATION; AND COLORADO LATINO FORUM,

      Plaintiffs,

v.

FEDERAL HIGHWAY ADMINISTRATION, ELAINE CHAO, in her official capacity as Secretary of Transportation; and JOHN M. CARTER, in his official capacity as Division Administrator,

      Defendants,

   and

COLORADO DEPARTMENT OF TRANSPORTATION, and SHAILEN P. BHATT, in his official capacity as Executive Director of the Colorado Department of Transportation,

      Defendant-Intervenors.

---

**FEDERAL HIGHWAY ADMINISTRATION'S SUPPLEMENTAL BRIEF
REGARDING THE ZEPPELIN PLAINTIFFS' MOTION TO RECONSIDER**

---

      Federal Highway Administration ("FWHA") hereby responds to the Court's December 13, 2017 Order requesting supplemental briefing in connection with the Zeppelin Plaintiffs' Motion to Reconsider Dismissal of Claims 4, 5, and 7.  (ECF No. 97.)  The Court denied Plaintiffs' motion as to Claim 7, and asked the parties to answer the following questions as to Claims 4 and 5: (1) whether FHWA and CDOT ("Agencies") improperly excluded P2PH from their deliberations[1] under the connected and/or similar-action doctrines; and (2) whether the Court has jurisdiction to order the Agencies to issue a new environmental impact statement

---

[1] For the purposes of this brief, FHWA interprets "deliberations" to mean the analysis of the direct and indirect effects of Central 70 contained in the Final EIS.

1

("EIS")/Record of Decision ("ROD") that rectifies this error, even though they cannot now exercise material control or influence over P2PH.[2]  FHWA's response to both questions is no.

## INTRODUCTION

The Agencies did not improperly exclude P2PH from their NEPA analysis under the connected or similar-action doctrines because P2PH and Central 70 are not connected or similar actions for purposes of NEPA.  While the doctrines could, in theory, include non-federal action like P2PH under certain circumstances, such is not the case here.  P2PH is a purely local project that has never been approved, funded, or controlled by FHWA, and is therefore not part of the major federal action challenged here.  Even under the premises assumed for purposes of this brief, the Court still lacks jurisdiction over Claims 4 and 5 because, without power to materially control or influence P2PH now, ordering the Agencies to provide additional NEPA process would serve no purpose.  As the Court already found, Denver intends to move forward with P2PH with or without Central 70, and nothing the Agencies could do on remand would reverse Denver's progress on P2PH or change that project going forward.  Because reinstating Plaintiffs' claims for the purpose of seeking only procedural relief would violate Article III and NEPA's "rule of reason," the Court's dismissal of Claims 4 and 5 should stand.

## ARGUMENT

### A.     The Agencies Did Not Improperly Exclude P2PH from Their NEPA Analysis Under the Connected or Similar-Action Doctrines.

The Tenth Circuit has made it clear that "the distinguishing feature of 'federal' involvement is the ability to influence or control the outcome in material respects."  *Vill. of Los*

---

[2] The Court asked the parties to assume the following premises in answering the questions: (1) The connected and/or similar action doctrines could, in theory, require consideration of non-federal action such as P2PH; (2) At the time the Agencies were preparing the Final EIS and ROD, the Agencies had actual power to control or materially influence P2PH; but (3) P2PH is now beyond their power to control or influence.  (ECF No. 97 at 3.)

*Ranchos de Albuquerque v. Barnhart*, 906 F.2d 1477, 1482 (10th Cir. 1992).  Thus, under the Court's first premise, connected and similar-action doctrines could, in theory, require consideration of non-federal action such as P2PH, but *only if* the federal agency has "actual power to control [or materially influence] the nonfederal activity."  *Id.* (quotation and citation omitted); *see also Ross v. Fed. Highway Admin.*, 162 F.3d 1046, 1051 (10th Cir. 1998) (same); *Sierra Club v. Hodel*, 848 F.2d 1068, 1089 (10th Cir. 1988) ("The touchstone of major federal action . . . is an agency's authority to influence significant nonfederal activity."), *overruled on other grounds by Vill. of Los Ranchos de Albuquerque v. Marsh*, 956 F.2d 970 (10th Cir. 1992).

Here, FHWA has never exercised control or materially influenced P2PH, and unlike the project in *Ross*, FHWA has never approved or appropriated any funding for P2PH.  (ECF No. 45 at 9-12; ECF No. 64 at 3-4).  Whether CDOT (a nonfederal entity) funded a portion of P2PH and coordinated with Denver in the construction of P2PH is irrelevant because CDOT is not an agent of FHWA or the Federal government, which is the only entity subject to NEPA and the anchor for federal jurisdiction under the APA.  (ECF No. 79 at 1-6.)  What matters is whether FHWA controlled or materially influenced P2PH.  *See Vill. of Los Ranchos de Albuquerque*, 906 F.2d at 1482.  Because the answer to that question is no, the Agencies did not improperly exclude P2PH from their NEPA analysis under the connected and similar-action doctrines.

Even under the Court's second premise (i.e., that FHWA "had actual power to control or materially influence P2PH" at the time the Agencies were preparing the Final EIS and ROD), the Agencies were not required to analyze P2PH as a connected action because P2PH and Central 70 can function independently of each other even if one of them was not built.[3]  *See Utahns for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1183 (10th Cir. 2002) ("[P]rojects that

---

[3] The purpose of Central 70 is to address safety, access, mobility, and congestion issues on the highway system, whereas the express purpose of P2PH is to alleviate flooding risk in Denver's northern neighborhoods.  (ROD 132; ECF No. 46 at 9-17.)

3

have independent utility are not connected actions.") (internal quotations and citation omitted). In its November 9, 2017 Order, this Court found that the Denver City Council had taken concrete steps "in furtherance of P2PH, as early as October 2015," well before the Final EIS and ROD were issued, evidencing that Denver saw utility in P2PH and would proceed with P2PH without certainty or assurance that Central 70 would be selected or built. (ECF 90 at 33-34.) The Tenth Circuit has held that, under these circumstances, the actions are not "connected" for purposes of NEPA. *See Utahns for Better Transp.*, 305 F.3d at 1183.

### B. A Finding that the Agencies Improperly Excluded P2PH from the Central 70 EIS Analysis Would Exceed the Scope of the CEQ Regulations and Violate NEPA's "Rule of Reason."

The Council on Environmental Quality ("CEQ") created the connected and similar-action regulations "to prevent the [federal] government from segmenting its *own federal actions* into separate projects and thereby fail[ing] to address true scope and impact of the activities that should be under consideration." *Sierra Club v. U.S. Army Corps of Eng'rs*, 803 F.3d 31, 49 (D.C. Cir. 2015) (emphasis added); *see also Del. Riverkeeper Network v. FERC*, 753 F.3d 1304, 1313 (D.C. Cir. 2014) (noting that the connected and similar-action doctrines prevent "agencies from dividing one project into multiple individual actions each of which individually has an insignificant environmental impact, but which collectively have a substantial impact.").

With this purpose in mind, the regulations require agencies to analyze connected actions in the same EIS, and analyze similar actions in the same EIS when that is the best way to assess adequately their combined impacts. *See* 40 C.F.R. § 1508.25(a)(1), (3). As the Tenth Circuit has recognized, "[o]ne of the primary reasons for requiring an agency to evaluate 'connected actions' in a single EIS is to prevent agencies from minimizing the potential environmental consequences of a proposed action (and thus short-circuiting NEPA review) by segmenting or isolating an individual action that, by itself, may not have a significant environmental impact." *Citizens'*

4

*Comm. to Save Our Canyons v. U.S. Forest Service*, 297 F.3d 1012, 1028 (10th Cir. 2002). The Supreme Court has explained that "[o]nly through comprehensive consideration of pending proposals can the agency evaluate different courses of action" under NEPA, including reasonable alternatives and adequate mitigation measures. *Kleppe v. Sierra Club*, 427 U.S. 390, 410 (1976).

In other words, requiring federal agencies to analyze connected actions in the same EIS ensures that agencies include all "pieces of an *agency-action* jigsaw puzzle" in one holistic analysis. *Sierra Club*, 803 F.3d at 50 (emphasis added). This analysis, however, does not "encompass *private* activit[ies]" or add "*private* pieces to the puzzle" that are outside the scope of the federal agencies' power to control. *Id.* at 49-50 (emphasis added); *see also Ross*, 162 F.3d at 1051. Here, Plaintiffs do not contend that P2PH is itself a federal action or that FHWA has control over it. Rather, Plaintiffs argue that P2PH is an "integral part of Central 70" and on that basis "connected" for purposes of NEPA. (ECF No. 91 at 9.) Besides being incorrect as a matter of law (as explained in Section A above), it makes no practical difference what P2PH is to Central 70 if FHWA has no material control or influence over it now. To illustrate the point, if the Court were to order the Agencies to supplement the EIS to analyze P2PH as a connected or similar action, it would put the Agencies in the strange position of evaluating the effects of and alternatives to a project that would not change or benefit from those analyses. As this Court already found, P2PH will move forward regardless of what the Agencies are ordered to do (ECF No. 90 at 33-38), and nothing the Agencies could do on remand would reverse Denver's progress on P2PH or change that project. Thus, if remanded, the Agencies would be required to analyze the effects of a project they do not control and develop alternatives or mitigation they cannot implement, at significant expenditure of time and taxpayer resources. This is not what the CEQ's segmentation regulations, nor NEPA itself, was created to address, and a court order directing such a course of action would exceed the scope of those laws.

5

For the same reason, remanding and ordering the Agencies to evaluate the impacts of and develop alternatives and mitigation for P2PH, which is now outside of the Agencies' power to control or influence, would serve no purpose under NEPA.  *See* 40 C.F.R. § 1500.1(c) ("NEPA's purpose is not to generate paperwork—even excellent paperwork—but to foster excellent *action*.") (emphasis added)); § 1502.1 ("The primary purpose of an [EIS] is to serve as an action-forcing device to insure that the policies and goals defined in the Act are infused into the ongoing programs and actions of the Federal Government.").  As the Supreme Court explained:

> [I]nherent in NEPA and its implementing regulations is a "rule of reason," which ensures that agencies determine whether and to what extent to prepare an EIS based on the usefulness of any new potential information to the decisionmaking process. *Where the preparation of an EIS would serve 'no purpose' in light of NEPA's regulatory scheme as a whole, no rule of reason worthy of that title would require an agency to prepare an EIS.*

*Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 767 (2004) (emphasis added; citation omitted).

Because the Agencies lack power to act on whatever information might be contained in a supplemental EIS, requiring them to prepare one now would violate NEPA's "rule of reason" and be a futile exercise.  *See id.* at 768.  The law, however, "does not require the doing of a futile act."  *Ohio v. Roberts*, 448 U.S. 56, 74 (1980), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36 (2004).  Courts have refused to remand where, as here, it would be futile.  *See, e.g.*, *Nat'l Parks Conservation Ass'n v. United States*, 177 F. Supp. 3d 1, 35 n.10 (D.D.C. 2016) ("Absent the ability to compel additional action by the Forest Service, the court's ordering of a remand would be futile."); *Conservation Law Foundation v. Pritzker*, 37 F.Supp.3d 254, 272 (D.D.C. 2014) ("When an agency commits a legal error, a court 'normally remand[s] . . . to the agency . . . except 'where 'remand would be futile.'") (quotation omitted)); *East 63rd Street Ass'n v. Coleman*, 414 F. Supp. 1318, 1327-28 (S.D.N.Y. 1976) (refusing to remand where it "seems overwhelmingly probable that redrafting the EIS in this respect at this time would be a futile literary exercise").  So should this Court.

6

### C. Ordering the Agencies to Develop a New EIS/ROD that Analyzes P2PH as a Connected or Similar Action Would Exceed the Court's Jurisdiction Because Plaintiffs Lack Standing to Seek Such Hollow, Procedural Relief.

In its November 9, 2017 Order, this Court correctly noted that Plaintiffs have the burden of establishing that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" (ECF No. 90 at 7, 38 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Plaintiffs contend that setting aside FHWA's ROD and forcing the Agencies to supplement the Final EIS to analyze the environmental impacts of P2PH as a connected and similar action "by itself" will redress their injuries because they will have an "opportunity to comment" on the true scope and impacts of theses alleged connected and similar actions. (ECF No. 91 at 4, 6-9; ECF No. 56 at 12.) However, without power to control or materially influence P2PH, the Agencies will be unable to effectively engage in the connected and similar-action analysis necessary to address the true scope and impact and evaluate the different courses of action, including reasonable alternatives and adequate mitigation measures.[4] *See* 40 C.F.R. § 1508.25(a); *see also Citizens' Comm. to Save Our Canyons*, 297 F.3d at 1028. Thus, Plaintiffs will only be left with the prospect of vindicating their alleged procedural injury—i.e., the "opportunity to comment." The Tenth Circuit, however, has made it clear that

---

[4] Without power to act on whatever information might be contained in the supplemental EIS, the Agencies can, at most, assess the environmental impacts of P2PH through a cumulative impact analysis. *See Dep't of Transp.*, 541 U.S. at 769-70. This is because, unlike the connected and similar-action doctrines, which presuppose that the federal government has the ability to materially control or influence the outcome in P2PH, the cumulative-impacts regulation requires agencies to consider the cumulative significant impacts of actions "*regardless of what agency (Federal or non-Federal) or person* undertakes such other actions." 40 C.F.R. § 1508.7, § 1508.25(a) (emphasis added). But, as explained in CDOT's Supplemental Brief, the Agencies already performed such analysis. Indeed, Plaintiffs' Claim 6, which is currently pending before the Court, challenges the Agencies' alleged failure to analyze the cumulative impacts of Central 70 in the context of P2PH. (ECF No. 25 ¶¶ 296-306.) Claim 6 therefore is the best way now to assess whether the Agencies adequately analyzed the cumulative impacts of P2PH in the Final EIS, and would provide, if successful, the only meaningful relief available to Plaintiffs.

procedural injury by itself is insufficient to establish standing under NEPA.  *See Comm. to Save the Rio Hondo v. Lucero*, 102 F.3d 445 (10th Cir. 1996).

In order to have standing based on procedural injury, Plaintiffs must establish that (1) the Agencies' failure to follow NEPA procedures creates an "increased risk of actual, threatened, or imminent environmental harm;" and (2) that this increased risk injures their own concrete interests due to the proximity to or actual use of the site of the agency action.  *Id.* at 449. Plaintiffs are unable to maintain this linkage now after the Court determined that it lacks the ability to halt P2PH, which was the cause-in-fact of the alleged environmental harms and Plaintiffs' injuries.  It is not the Agencies' failure to follow NEPA procedure that created or will remedy Plaintiffs' alleged "increased risk of actual, threatened, or imminent environmental harm" since no amount of additional procedure will necessarily alter the course of P2PH at this point.  In other words, Plaintiffs cannot sufficiently allege an injury-in-fact stemming from the ROD because the source of their injuries is not the ROD, but P2PH, which is beyond FHWA's control.  Thus, Plaintiffs have no standing to challenge it or the procedure that was followed to create it.  *See e.g.*, *S. Utah Wilderness All. v. U.S. Dep't of Interior*, No. 2:13-CV-01060-EJF, 2015 WL 4389580, at *6 (D. Utah July 17, 2015) ("[B]ecause [plaintiff] failed to establish injury-in-fact from the ROD, it cannot establish standing for the claims related to the ROD.").

## CONCLUSION

The Court was correct in concluding that Plaintiffs' Claims 4 and 5 are not redressable. Reinstating Plaintiffs' Claims 4 and 5 for the purpose of seeking hollow relief would violate Article III and NEPA's "rule of reason."  This is particularly true here given that the Court already dismissed these claims, and Plaintiffs have failed to meet the heightened standard under Federal Rule of Civil Procedure 59(e) that justifies overturning the Court's judgment.  The Court's judgment should stand, and Plaintiffs' motion should be denied in its entirety.

Respectfully submitted this 5th day of January, 2018.

                                         JEFFREY H. WOOD
                                         Acting Assistant Attorney General
                                         Environment and Natural Resources Division

                                         */s/ Mayte Santacruz*
                                         Mayte Santacruz
                                         Carter F. Thurman
                                         United States Department of Justice
                                         Environment and Natural Resources Division
                                         Natural Resources Section
                                         601 D Street, NW
                                         Washington, D.C. 20004
                                         (202) 305-0465 (Santacruz)
                                         (202) 305-0444 (Thurman)
                                         mayte.santacruz@usdoj.gov
                                         carter.thurman@usdoj.gov

                                         *Attorneys for Federal Highway Administration*

<u>Of Counsel:</u>
Brent Allen
Federal Highway Administration
Office of the Chief Counsel
Lakewood, Colorado
(720) 963-3692
brent.allen@dot.gov

9

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of January, 2018, I electronically filed Federal Highway Administration's Supplemental Brief Regarding Zeppelin Plaintiffs' Motion to Reconsider with the Clerk of the United States District Court for the District of Colorado using the CM/ECF System, which will send notification of such filing to the attorneys of record in these consolidated cases.

*/s/ Mayte Santacruz*
MAYTE SANTACRUZ