**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Actions No.    17-cv-01661-WJM-MEH
*Consolidated with*    17-cv-01679-WJM-MEH

KYLE ZEPPELIN; BRAD EVANS; CHRISTINE O'CONNOR; KIMBERLY MORSE; JACQUELINE LANSING; and JANET FEDER,

    *and*

SIERRA CLUB; ELYRIA AND SWANSEA NEIGHBORHOOD ASSOCIATION; CHAFEE PARK NEIGHBORHOOD ASSOCIATION; and COLORADO LATINO FORUM,

    Plaintiffs,

v.

FEDERAL HIGHWAY ADMINISTRATION, ELAINE CHAO, in her official capacity as Secretary of Transportation; and JOHN M. CATER, in his official capacity as Division Administrator,

    Defendants,

    *and*

COLORADO DEPARTMENT OF TRANSPORTATION, and MICHAEL P. LEWIS,[1] in his official capacity as Executive Director of the Colorado Department of Transportation,

    Defendant-Intervenors.

---

**DEFENDANT-INTERVENORS' RESPONSE TO SUPPLEMENTAL BRIEFING ORDER CONCERNING ZEPPELIN PLAINTIFFS' MOTION TO RECONSIDER**

---

BRENT E. BUTZIN
Assistant Attorney General
1300 Broadway, 10th Floor
Denver, CO  80203
(720) 508-6638
brent.butzin@coag.gov

JOHN E. PUTNAM
NICHOLAS A. DIMASCIO
KAPLAN KIRSCH & ROCKWELL LLP
1675 Broadway, Suite 2300
Denver, CO  80202
(303) 825-7000
jputnam@kaplankirsch.com
ndimascio@kaplankirsch.com

---

[1] Under Fed. R. Civ. P. 25(d), Michael P. Lewis is automatically substituted for Shailen P. Bhatt.

The Court has asked whether the Zeppelin Plaintiffs' connected- and similar-actions claims (Claims 4 and 5) have any independent value from their cumulative-impacts claim (Claim 6). The Court also has asked whether it may order the Agencies to analyze Denver's project as a connected or similar action, assuming that the Agencies lack control over that project.

As explained below, Claims 4 and 5 are fundamentally different from Claim 6. Claims 4 and 5 allege that Denver's project is a connected or similar *action*. 40 C.F.R. § 1508.25(a)(1), (a)(3). Those claims essentially assert that Denver's project is part of the "major Federal action" requiring NEPA review—Central 70. *Id.* § 1502.4(a); 42 U.S.C. § 4332(C). Although the Zeppelin Plaintiffs hoped to use those claims to stop or alter Denver's project, the Court cannot order any such relief because neither the Court nor the Agencies have any power to change Denver's plans. The Court therefore properly dismissed Claims 4 and 5 for lack of jurisdiction.

Claim 6, on the other hand, alleges that the Agencies failed to analyze cumulative *impacts*. 40 C.F.R. § 1508.25(c)(3); *id.* § 1508.7. That claim does not assert that Denver's project is part of Central 70 and, consequently, does not presuppose any federal control over Denver's activities. Rather, the cumulative-impacts claim asserts only that the Agencies must analyze the incremental impact of Central 70 in the context of Denver's project. *See Dep't of Transp. v. Public Citizen*, 541 U.S. 752, 769-70 (2004). The Agencies properly conducted just such an analysis, and Claim 6 remains pending. The Court should deny the Zeppelin Plaintiffs' motion to reconsider the order dismissing Claims 4 and 5 and proceed to adjudicate Claim 6.

I.   **The Zeppelin Plaintiffs' cumulative-impacts claim is not coextensive with their connected- and similar-actions claims.**

Claims 4 and 5 allege that Central 70 and Denver's project are connected or similar "actions," whereas Claim 6 alleges that the Agencies failed to analyze the cumulative "impacts"

of Central 70 given the existence of Denver's project. (ECF 25 ¶¶ 263, 289, 298, 302-03.) Claims 4 and 5 therefore concern the scope of the *major federal action* at issue, whereas Claim 6 concerns a type of *impact* to be analyzed. The NEPA regulations expressly distinguish between types of actions and types of impacts. *See* 40 C.F.R. § 1508.25(a) (listing three types of actions: connected, cumulative, and similar); *id.* § 1508.25(c) (listing three types of impacts: direct, indirect, and cumulative). That distinction has important substantive ramifications.

A connected, cumulative,[2] or similar action is part of the "major Federal action" for which an EIS must be prepared. *See* 42 U.S.C. § 4332(C); 40 C.F.R. § 1502.4(a) (requiring agencies to use § 1508.25(a) to identify the "proposal(s)" that constitute the "Major Federal actions" for inclusion in an EIS); *id.* § 1508.23 (defining "proposal" to mean a "goal" for which an agency subject to NEPA is "actively preparing to make a decision."). Because those types of actions are part of the "major Federal action" at issue, a federal agency must have "actual power to control" a non-federal activity before it may be deemed such an *action* under § 1508.25(a). *See Los Ranchos de Albuquerque v. Barnhart*, 906 F.2d 1477, 1482 (10th Cir. 1990) (quoting *Sierra Club v. Hodel*, 848 F.2d 1068 (10th Cir. 1988)); 40 C.F.R. § 1508.18 (defining "major Federal action" to include actions "potentially subject to Federal control and responsibility"). If a federal agency cannot consider alternatives to, impose mitigation on, or otherwise control an activity, the federal agency simply has no practical way to treat the activity as its own (*i.e.*, part

---

[2] The petition does not assert a cumulative-*actions* claim under § 1508.25(a); it asserts a cumulative-*impacts* claim under §§ 1508.25(c)(3) and 1508.7. (ECF 25 ¶ 298 (paraphrasing § 1508.7); *id.* ¶¶ 302-03 (alleging failure to analyze "cumulative impacts").) But even if the petition had asserted a cumulative-actions claim, it would suffer from the same defect explained above.

of the "major Federal action") for purposes of NEPA review.  *See Kleppe v. Sierra Club*, 427 U.S. 390, 401 (1976) (for "practical reasons," federal agency cannot produce EIS if there is no federal "proposal" and thus no way to examine alternatives); *Pub. Citizen*, 541 U.S. at 766-70 (scope of major Federal action excludes activities beyond federal agency's control).

In contrast, an analysis of cumulative *impacts* does not similarly presuppose federal control.  *See id.* at 769-70.  The regulations define "cumulative impact" to mean the "impact on the environment which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions *regardless of what agency (Federal or non-Federal) or person* undertakes such other actions."  40 C.F.R. § 1508.7 (emphasis added).  Thus, unlike § 1805.25(a), the cumulative-impacts regulation (§ 1805.25(c)(3)) does not require a federal agency to treat third-party activities as its own.  *See Sierra Club v. U.S. Army Corps of Eng'rs*, 803 F.3d 31, 50 (D.C. Cir. 2015) (distinguishing connected "actions" from cumulative "impacts"); *Or. Nat. Res. Council v. Marsh*, 832 F.2d 1489, 1497-98 (9th Cir. 1987) (distinguishing cumulative "actions" from cumulative "impacts").  The cumulative-impacts regulation merely requires a federal agency to analyze the impacts of its own action in the context of other activities in the project area.

*Department of Transportation v. Public Citizen*, 541 U.S. 752 (2004), illustrates that distinction.  There, the Supreme Court considered whether an agency promulgating safety rules for Mexican motor carriers had to include as part of the "major Federal action" for NEPA review the President's lifting of a moratorium on Mexican trucks entering the United States.  *Id.* at 763-64, 770.  Because the agency "lack[ed] the power" to deny Mexican trucks entry, the Court held that the President's lifting of the moratorium fell outside the "major Federal action" at issue.  *Id.*

3

at 768, 770.  The Court further explained that the "cumulative impact" regulation did not require the agency to "treat the lifting of the moratorium itself, or consequences from the lifting of the moratorium, as an effect of its promulgation" of the safety rules.  *Id.* at 770.  That regulation merely required the agency to "consider the 'incremental impact' of the safety rules themselves in the context of the President's lifting of the moratorium and other relevant circumstances," and the agency had fulfilled that duty.  *Id.* at 769 (quoting 40 C.F.R. § 1508.7).

Similarly here, Claims 4 and 5 alleged that Denver's project is a connected or similar "action" and therefore is part of the major federal action requiring preparation of an EIS.  (ECF ¶¶ 263, 289.)  Those claims essentially sought to force the Agencies to make Denver's project part of Central 70.  The Zeppelin Plaintiffs accused the Agencies of withdrawing "federal funding from a segment of a 'major federal action.'"  (ECF 25 ¶ 262.)  They wanted the Agencies to "include the estimated $300 million total cost of P2PH in the $1.1 billion cost estimate for the Central 70 Project."  (*Id.* ¶ 281.)  And they demanded that the Agencies consider "alternatives to the current plan for construction of P2PH."  (*Id.* ¶ 280.)  But, like the President's lifting of the moratorium in *Public Citizen*, Denver's project cannot be part of the major federal action here because the Agencies have no actual power to control Denver's activities.  541 U.S. at 766-70; *see also Los Ranchos*, 906 F.2d at 1482.  The Court correctly found that Denver will move forward with its project regardless of Central 70.  (ECF 90 at 25-38; *see also* http://dpo.st/2qazcDw (Denver City Council recently approved the contracts for 39th Avenue and Park Hill Golf Course).)

The Zeppelin Plaintiffs alleged a different theory in their cumulative-impacts claim.  They explained that "cumulative impacts" are the "incremental impacts of the action when added

4

to other past, present, and reasonably foreseeable future actions, regardless of what agency or person undertakes them." (ECF 25 ¶ 298 (paraphrasing 40 C.F.R. § 1508.7).) And they asserted that the Agencies had entirely failed to "analyze in the FEIS the cumulative impacts from the Central 70 Project and P2PH." (ECF 25 ¶ 303.) Contrary to that assertion, the FEIS does analyze the cumulative impacts of Central 70 and Denver's project. (*See* ECF 46 at 23-24.)

Thus, in answer to this Court's question, Claim 6 is not "broad enough to encompass any separate analysis that the Court might engage in both as to Claims 4 (connected action) and 5 (similar action)." (ECF 97 at 2.) To treat those claims as interchangeable would misconstrue the petition and improperly nullify the distinction between "actions" and "impacts" under § 1508.25(a) and (c). *See Time Warner Entmt v. Everest Midwest Licensee*, 381 F.3d 1039, 1050 (10th Cir. 2004). Unlike the connected- and similar-actions claims, Claim 6 does not seek to stop or modify Denver's project by forcing the Agencies to adopt that project as part of the major federal action at issue. Claim 6 instead seeks to stop or modify Central 70 because the Agencies allegedly did not analyze the "cumulative impacts" of that project in light of Denver's project. (ECF 25 ¶¶ 298, 302-03.) Given that fundamental difference, CDOT properly did not move to dismiss Claim 6 for lack of jurisdiction, even though Claim 6 fails on the merits.

## II. Due to the Agencies' lack of control over Denver's project, the Court cannot order any relief on Claims 4 or 5.

In its second question, the Court asks the parties to assume for purposes of this brief that the Agencies previously had control over Denver's project, but that control has since evaporated. Even under those assumptions, the Court still would lack jurisdiction over Claims 4 and 5. Given the Agencies' present lack of control over Denver's project, they could not incorporate that project into Central 70 for purposes of conducting a new NEPA analysis on remand. For

5

example, they could not require Denver to consider, much less implement, alternatives to its project, as the Zeppelin Plaintiffs have demanded. (ECF 25 ¶ 280.) Nor could they tell Denver how to detain stormwater, address hazardous materials, contain dust, or implement any other measures to mitigate the Zeppelin Plaintiffs' alleged injuries from Denver's project.

To be sure, the Agencies could consider adjustments to Central 70 given that Denver's project is occurring, but as explained above, that is a cumulative-impacts analysis. *Public Citizen*, 541 U.S. at 769-70. The Court already has such an analysis before it (*see* ECF 46 at 23-24), as well as a written reevaluation showing precisely how the Agencies modified the off-site drainage system for Central 70 once Denver's project became certain (*see* ECF 95 at 7-8). Thus, even assuming the Court were to remand to the Agencies because they previously erred by not treating Denver's project as a connected or similar action, the parties could only end up right back where they are now. Given the Agencies' present lack of control over Denver's project, they simply could not treat Denver's project as a connected or similar action on remand.

The Zeppelin Plaintiffs lack standing to assert Claims 4 and 5 because remanding to the Agencies cannot and will not provide any relief—concrete or procedural—on those claims given Denver's commitment to complete its project. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992). NEPA's "rule of reason" does not mandate analyses that would serve "no purpose" in the decision-making process given the agency's "limited statutory authority over the relevant actions." *Pub. Citizen*, 541 U.S. at 767-70; *accord Hodel*, 848 F.2d at 1089 ("The EIS process is supposed to inform the decision-maker. This presupposes he has judgment to exercise."). The Court should deny the Zeppelin Plaintiffs' motion to reconsider and adjudicate the pending cumulative-impacts claim.

|  |  |
|---|---|
|  | Respectfully submitted, |
| BRENT E. BUTZIN<br>Assistant Attorney General<br>1300 Broadway, 10th Floor<br>Denver, CO  80203<br>(720) 508-6638<br>Brent.Butzin@coag.gov | JOHN E. PUTNAM<br>NICHOLAS A. DIMASCIO<br>KAPLAN KIRSCH & ROCKWELL LLP<br>1675 Broadway, Suite 2300<br>Denver, CO  80202<br>(303) 825-7000<br>jputnam@kaplankirsch.com<br>ndimascio@kaplankirsch.com |
|  | *Attorneys for Defendant-Intervenors* |
| JANUARY 5, 2018 |  *s/ Nicholas A. DiMascio*<br>NICHOLAS A. DIMASCIO |

7

**CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2018, I electronically filed the foregoing document and all of its attachments with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Melissa A. Hailey
Aaron D. Goldhamer
Keating Wagner Polidori Free, P.C.
1290 Broadway, Suite 600
Denver, CO 80203
(303) 534-0401
(303) 534-8333
mah@keatingwagner.com
agoldhamer@keatingwagner.com

James Jay Tutchton
Tuchton Law Office
6439 East Maplewood Avenue
Centennial, CO 80111
(720) 301-3843
jtutchtonlo@gmail.com

Robert E. Yuhnke
4050 Se Hosner Terrace
Gresham, OR  97080
(303) 499-0425
bob.yuhnke@prodigy.net

Andrea S. Gelfuso
Andrea Gelfuso, Attorney at Law
2402 South Holland Street
Lakewood, CO  80227
(303) 955-1910
agelfuso6@gmail.com

Carter F. Thurman
Mayte Santacruz
U.S. Department of Justice
Env't & Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
(202) 305-0465 (phone)
(202) 305-0506 (fax)
carter.thurman@usdoj.gov
mayte.santacruz@usdoj.gov

David A. Carson
U.S. Department of Justice
Env'l Natural Resources Division
Environmental Defense Section
Denver Place Building
999 18th Street
South Terrace, Suite 370
Denver, CO 80202
(303) 844-1349
david.a.carson@usdoj.gov

Gregory Nicholas Corbin
Milligan Rona Duran & King, LLC
1627 Vine Street
Denver, CO  80206
(720) 414-2000
gnc@mrdklaw.com


s/ *Nicholas A. DiMascio*
Nicholas A. DiMascio