**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action Nos.    17-cv-01661-MJW
                     17-cv-01679-MJW


SIERRA CLUB; ELYRIA AND SWANSEA NEIGHBORHOOD ASSOCIATION; CHAFEE PARK NEIGHBORHOOD ASSOCIATION; AND COLORADO LATINO FORUM,

        Plaintiffs,

    v.

FEDERAL HIGHWAY ADMINISTRATION, ELAINE CHAO, in her official capacity as Secretary of Transportation; and JOHN M. CARTER, in his official capacity as Division Administrator,

        Defendants,

    and

COLORADO DEPARTMENT OF TRANSPORTATION,

        Defendant-Intervenors.

---

**FEDERAL DEFENDANTS' RESPONSE TO PETITIONERS' MOTION
TO CONDUCT LIMITED DISCOVERY, COMPLETE THE RECORD, AND TAKE
JUDICIAL NOTICE**

---

Defendants Federal Highway Administration ("FHWA"), Elaine Chao, in her official capacity as FHWA Secretary of Transportation, and John M. Cater, in his official capacity as Division Administrator for FHWA's Colorado Division (collectively, "Federal Defendants"), hereby respond to Petitioners' Motion to Conduct Limited Discovery, Complete the Record, and Take Judicial Notice ("Motion").  Petitioners have failed to meet their heavy burden to establish that discovery should be permitted in this Administrative Procedure Act ("APA") case and that their proffered documents should be considered by this Court.  Their Motion should be denied.

# INTRODUCTION

Petitioners' request for discovery in this APA case squarely conflicts with Tenth Circuit precedent.  In *Olenhouse v. Commodity Credit Corp.*, the Tenth Circuit made it clear that review of agency action is based on the record before the agency at the time it made its decision, and that, except in extremely limited circumstances, the Court is not permitted to consider extra-record evidence or to order discovery.  42 F.3d 1560, 1579-80 (10th Cir. 1994).  To overcome the "presumption of administrative regularity" that attaches to FHWA's Administrative Record ("Record"), Petitioners must provide "clear evidence" that the Record is incomplete or make a "'strong showing' of improper behavior in development of the record."  *Citizens for Alts. to Radioactive Dumping v. U.S. Dep't of Energy*, 485 F.3d 1091, 1097 (10th Cir. 2007) (quoting *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993)).

Petitioners have not met that high burden here.  They argue that discovery is appropriate because, during the conferral process on the record motions, FHWA agreed to add a small number of documents that it had inadvertently omitted from its Record.  FHWA's cooperation in correcting a few minor errors in the Record weighs against—not in favor of—discovery.  As explained below, the Record now contains all documents and information that FHWA considered on the issues Petitioners identify in their Motion.  Petitioners have not provided "clear evidence" of agency bad faith or that specific documents are missing, as required.  *Id.*  Because the Record is complete, discovery is inappropriate and would waste this Court's and the parties' time and resources.

Petitioners' additional request to complete the Record with five "specifically-identified documents" also should be denied.  As the Tenth Circuit has held, "[t]he court assumes the agency properly designated the Administrative Record absent clear evidence to the contrary."  *Bar MK Ranches*, 994 F.2d at 740.  Petitioners have failed to overcome that presumption.

Specifically, Petitioners have not clearly shown when those five documents were presented to the agency, to whom they were presented, under what context they were presented, and whether they were directly or indirectly considered by the decision makers. *See Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1275 (D. Colo. 2010). In fact, FHWA considered none of those documents. Implicitly conceding the weakness of their argument, Petitioners alternatively contend that the Court should supplement the Record with those five documents, but they fail to identify any applicable exception that would permit their admission.

Finally, in a last attempt to circumvent the limited exceptions for adding documents to the Record, Petitioners ask the Court to take judicial notice of these five documents. Contrary to what Petitioners want this Court to believe, evidentiary Rule 201 of the Federal Rules of Evidence operates only to address the admissibility of public records, and was not designed to circumvent the standards applicable to this record-review case under the APA.

## BACKGROUND

On January 19, 2017, FHWA issued a Record of Decision ("ROD") for the Colorado Department of Transportation's ("CDOT") highway project in Denver that will improve public safety, access, and mobility and relieve traffic congestion on a ten-mile stretch of I-70 between I-25 and Chambers Road ("Central 70" or the "Project"). On July 10, 2017, Petitioners filed a 98-page complaint challenging the ROD. They asserted eighteen claims, including ten claims under the National Environmental Policy Act ("NEPA"), seven claims under the Clean Air Act ("CAA"), and one claim under § 109(h) of the Federal Highway Act ("FAHA").

On December 14, 2017, FHWA lodged the Record with the Court and produced copies of the hard drives containing the Record to the parties. ECF No. 98. The Record includes approximately 80,735 files, consisting of 183,318 bates-stamped pages in PDF format and 1

terabyte of native-format and data files.  ECF No. 98-1 ¶ 5.  As a courtesy, FHWA included in the Record a searchable index (an Excel spreadsheet) with hyperlinks to the individual materials stored on the hard drive.  FHWA's Record was certified by Chris Horn, FHWA's Senior Area Engineer in the Colorado Division Office, who declared that, to the best of his knowledge, the Record contains all the documents that FHWA "considered directly or indirectly in issuing the ROD, except for those records protected by attorney-client, attorney-work product, or deliberate process privileges in compliance with agency policy."  *Id.* ¶ 6.

On January 12, 2018, Petitioners informed FHWA of technical issues they were experiencing with the Record, including problems with the hyperlinks in the Record's index.  *See* Ex. 1; *see also* ECF No. 106.  FHWA's counsel immediately responded and agreed to confer with Petitioners to resolve the issues.  Ex. 1.  On January 16 and 17, 2018, FHWA, CDOT, and Petitioners discussed Petitioners' issues with the Record, and FHWA agreed to deliver new copies of the Record that would remedy the issues.  Ex. 2.  FHWA and CDOT's contractor worked diligently to address the issues identified by Petitioners, including fixing the hyperlinks to the approximately 17,000 pages of PDFs located on the hard drive already in Petitioners' possession.[1]  On January 26, 2018, FHWA produced a corrected Record to the parties, and notified the Court of this production.[2]  ECF No. 105.  FHWA and CDOT also agreed, at Petitioners' request, to extend the briefing schedule.  ECF Nos. 106 & 110.

In accordance with the new schedule, Petitioners conferred with FHWA regarding their motion to complete the Record, and FHWA promptly responded to each of Petitioners' requests.

---

[1] In order to minimize any disruption, FHWA provided Petitioners with a revised index that enabled them to review the Record while FHWA produced a corrected Record.  Ex. 2.

[2] To avoid burdening the Court and to avoid confusion, FHWA did not deliver copies of the corrected Record to the Court.  Instead, FHWA informed the Court that it will deliver final copies of the Record once the Court rules on the record motions.  ECF No. 105 at 2.

Ex. 3.  Petitioners followed up with two questions, and FHWA responded three business days later.  Ex. 4.  FHWA identified only seven documents that it had inadvertently omitted from the Record.  Ex. 5.  FHWA explained that these documents, which consist primarily of emails and attachments to emails, will be included in the final Record, and provided courtesy copies of these documents to Petitioners on March 1, 2018.  Ex. 5.

On March 9, 2018, Petitioners moved to compel discovery and completion or supplementation of the Record.  ECF No. 115.

<strong>STANDARD OF REVIEW</strong>

The Tenth Circuit has made it clear that "[r]eviews of agency action in the district courts [under the APA] must be processed *as appeals*."  *Olenhouse*, 42 F.3d at 1580.  Under Section 706 of the APA, the Court's role is solely to determine whether the challenged action is arbitrary or capricious based on a review of the agency's administrative record.  *See, e.g.*, *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam), *Vill. of Los Ranchos de Albuquerque v. Marsh*, 956 F.2d 970, 972 (10th Cir. 1992) (en banc).  The APA makes no provision for extra-record review.  *See* 5 U.S.C. §§ 701-706.  Thus, the "focal point for judicial review [of an agency decision] should be the administrative record already in existence, not some new record made initially in the reviewing court."  *Camp*, 411 U.S. at 142.

A complete administrative record consists of all documents and materials "directly or indirectly considered by the relevant agency decision makers."  *Salazar*, 711 F. Supp. 2d at 1275 (citation omitted).  An agency's "designation of the Administrative Record . . . is entitled to a presumption of administrative regularity.  The court assumes the agency properly designated the Administrative Record absent clear evidence to the contrary."  *Citizens for Alts.*, 485 F.3d at 1097 (quotation omitted).  This Court has identified two types of challenges to the sufficiency of

4

the record: (1) allegations that the record is incomplete because it lacks materials actually considered by the agency, and (2) allegations that the record should be supplemented with materials not considered by the agency, but which are necessary for the court to conduct a substantial inquiry. *Salazar*, 711 F. Supp. 2d at 1274.

As to the first type of challenge, "the clear evidence burden requires parties challenging the sufficiency of the record to allege specific facts that show documents were or were not considered by the agency decision makers." *WildEarth Guardians v. U.S. Forest Serv.*, 713 F. Supp. 2d 1243, 1254 (D. Colo. 2010) (citing *Bar MK Ranches*, 994 F.2d at 740). As to the second, this Court has recognized a limited number of narrow exceptions under which a petitioner can introduce extra-record evidence. *Id.* at 1278-79. Courts apply these exceptions only in "extremely limited" circumstances. *Strich v. United States*, No. 09-cv-01913-WJM-KLM, 2011 WL 3682757, at *3 (D. Colo. Aug. 23, 2011) (citations omitted).

## ARGUMENT

## I.   Petitioners Are Not Entitled to Discovery In This Record Review Case.

Discovery is "not appropriate for claims brought under the APA" unless a plaintiff makes a "significant showing that it will find material in the agency's possession indicative of bad faith or an incomplete record." *Citizens for Appropriate Rural Rds. v. Foxx*, 815 F.3d 1068, 1081-82 (7th Cir.) (citing *Air Transp. Ass'n of Am., Inc. v. Nat'l Mediation Bd.*, 663 F.3d 476, 487-88 (D.C. Cir. 2011)), *cert. denied*, 137 S. Ct. 310 (2016); *accord Citizens for Alts.*, 485 F.3d at 1097; *Bar MK Ranches*, 994 F.2d at 740. Consistent with this basic tenet of administrative law, the Tenth Circuit in *Olenhouse* specifically held that the process employed by the district court in reviewing that case, which included allowing discovery, was, "at its core, . . . inconsistent with

the standards for judicial review of agency action under the APA . . . and invites (even requires) the reviewing court to rely on evidence outside the administrative record." 42 F.3d at 1579-80.[3]

Notwithstanding this clear precedent, Petitioners demand discovery related to FHWA's conformity determination modeling. Mot. 6-7. Petitioners advance two arguments to support their discovery request. They both fail.

First, Petitioners argue that discovery is appropriate because they have "twice requested that missing documents be added to the Record" and "FHWA twice added documents to the record." *Id.* at 6. But that is not the standard for obtaining discovery in an APA case. Petitioners must make a "significant showing" that they will find material in FHWA's possession indicative of bad faith or an incomplete record. *Citizens for Appropriate Rural Rds.*, 815 F.3d at 1081-82. This Petitioners have not done. To the contrary, FHWA's cooperation and diligence during the conferral process, which is summarized above, shows that FHWA already has done everything that it can to address Petitioners' concerns and ensure a complete Record.

Petitioners' reliance on *Center for Biological Diversity v. BLM,* No. C-06-4884-SI, 2007 WL 3049869 (N.D. Cal. Oct. 18, 2007) and *Forest Guardians v. Kempthorne,* No. 06CV2560-L(LSP), 2008 WL 11337359 (S.D. Cal. Apr. 1, 2008) is misplaced. Mot. 6. The court in *Center for Biological Diversity* ordered BLM to conduct further inquiries because BLM failed to produce nearly 4,000 emails due to a hard-drive crash and because BLM produced an inadequate declaration explaining the mishap. 2007 WL 3049869, at *5-6. Similarly, the court in *Forest Guardians* allowed discovery following a strong showing of impropriety by a political appointee

---

[3] *See also Kane Cty. Utah v. Salazar*, 562 F.3d 1077, 1086 n.3 (10th Cir. 2009) ("*Olenhouse* prohibited . . . a district court's 'reliance on arguments, documents and other evidence outside the administrative record,' as well as, relatedly, the treatment of an APA-based claim 'as a separate and independent action, initiated by a complaint and subjected to discovery and a "pretrial" motions practice.'" (quoting *Olenhouse*, 42 F.3d at 1579)).

in conjunction with an agency's repeated failure to complete the administrative record. 2008 WL 11337359, at *5-6. Here, by contrast, Petitioners point only to FHWA's cooperation during the conferral process and its production of a small number of documents that it had inadvertently omitted from the Record. Those facts are a far cry from the significant showing required to obtain discovery.

Second, Petitioners argue that discovery is appropriate because "omission of information from the Record regarding the modeling process used to demonstrate conformity is extremely troubling." Mot. 6. Specifically, Petitioners demand discovery of six types of information related to FHWA's modeling of seven individual receptors. *Id.* at 3. But the Record already contains the very explanation and information that Petitioners say is missing. The ROD explains that FHWA initially assumed that all receptors were at ground level, but "consistent with EPA guidance," FHWA later refined its methodology to "account for the true release height of emissions at selected receptor locations, which produces more representative, albeit lower, concentration predictions than the prior, simplified at-grade assumption." AR00126; AR122902-06 (EPA guidance instructing modeler to include "source release height . . . (i.e., meters above the ground)" and make such parameters "as realistic as feasible"); *see also* modeling files "AERMOD Input & Output Files, located in Internal Records>Air Quality>Air Quality Modeling Files>ROD AQModeling>PM10>…" (indicating the precise elevations used).

The ROD's explanation shows that the decision maker was aware of and approved refining the release heights of the receptors to match the actual roadway elevations at those locations. AR00126. And, as FHWA's counsel specifically explained to Petitioners' counsel during the conferral process, FHWA provided to EPA the "AERMOD Input & Output Files" that contain the supplemental runs for the seven receptors in question. Ex. 4. EPA subsequently

confirmed that it agreed with FHWA's modeling methodology.  AR0029618-19.  The Record

also contains e-mail communications promptly transmitting those same modeling files to

Petitioners and their counsel upon request during the comment process.  *See, e.g.*, AR0053981-

0054002; AR0054275-54293.[4]

Thus, contrary to Petitioners' unfounded accusation, no one hid the supplemental

modeling runs from the decision maker, EPA, or the public.  Mot. 3.  The Record already

contains the agency's explanation of its methodology for the receptors in question, as well as all

documents pertaining to the six types of information Petitioners seek.  Petitioners have not

provided "clear evidence" or made a "significant showing" that discovery will lead to material in

FHWA's possession indicative of bad faith or an incomplete record.  *Citizens for Alts.*, 485 F.3d

at 1097; *Citizens for Appropriate Rural Rds.*, 815 F.3d at 1081-82.  They have failed to meet

their heavy burden, and their discovery request should be denied.

## II.    Petitioners Have Failed to Show that Five Documents Should be Included in the Record or that the Court Should Take Judicial Notice of those Documents.

### a.    *The Documents Petitioners Wish to Add to the Record Were Not Directly or Indirectly Considered By FHWA.*

The Court also should deny Petitioners' request to complete the Record with "[f]ive

[s]pecifically-[i]dentified [d]ocuments."  Mot. 7.  Petitioners ignore that FHWA's certification of

the Record receives a "presumption of administrative regularity," which may only be overcome

by "clear evidence" that the designation is improper.  *See Bar MK Ranches*, 994 F.2d at 740.

This Court has explained that the "clear evidence" standard places a heavy burden on Petitioners:

> To overcome the presumption of regularity and meet the burden of proving
> that the record designated by the agency is incomplete, Petitioners must
> clearly set forth in their motion: (1) when the documents were presented to

---

[4] The attachments to those e-mails can be accessed via the index to the Record at Tab 3, Line
3518—"Attachments to AQ Comment E-mails."

the agency; (2) to whom; (3) and under what context.  This showing is not, however, sufficient grounds for admitting the proffered documents into the Administrative Record.  Petitioners *must also establish* that these documents were directly or indirectly considered by the relevant agency decision makers.

*Salazar*, 711 F. Supp. 2d at 1275 (citations and footnote omitted; emphasis added).

Here, Petitioners argue that that these five specifically-identified documents should be added to the Record because they were in FHWA's possession when the decision was made and were considered directly or indirectly by FHWA.  Mot. 4.  However, as FHWA explained during the conferral process, those five documents were "not directly or indirectly considered by the agency in taking any final action regarding the Central 70," and therefore properly were not included in the Record.  Ex. 5.

Petitioners do not even attempt to provide evidence demonstrating that FHWA actually considered any of the documents in Petitioners' Exhibits 38-42.  For example, Petitioners do not (because they cannot) cite any comment bringing those five documents to FHWA's attention during the administrative process.  Instead, Petitioners make up their own standard, arguing that these documents should be included because they are "material to [their] claims," each "was available on the agencies' websites and before the agencies," are "relevant to the decision," and "should have informed" FHWA's decision.  Mot. 9, 13.  But as explained in *Salazar*, "Petitioners do not meet their burden of providing clear evidence that the agency has failed to properly designate the Administrative Record 'by asserting, speculatively, that documents were relevant or before the agency at the time it made its decision.'"  711 F. Supp. 2d at 1276 (quoting *WildEarth Guardians*, 713 F. Supp. 2d at 1253-55).

The Tenth Circuit test for inclusion of a document in the administrative record is *actual consideration* of the document during the administrative process.  *See id.*  Petitioners therefore must present clear evidence that the document was *both* in the agency's possession *and* actually

considered by the agency in the decision-making process. *Id*. ("The proper touchstone remains the decision makers' *actual consideration*, and a party moving to complete the record must show with clear evidence the context in which materials were considered by decision makers in the relevant decision making process."). Petitioners have not met this heavy burden. They merely assert that the Record is incomplete because the documents are on FHWA's website. But simply observing that a document is posted on FHWA's website, or could have been found elsewhere, does not establish that the document was in the possession of the decision maker for *this project* and that it was considered during the decision-making process for *this project*. Petitioners' premise that any of the millions of documents on FHWA's website would properly be part of the Record if they "should" have been considered is untenable, and would render the administrative-record limitation a nullity. Absent "clear evidence" of actual consideration, the Court must reject Petitioners' unsupported position.

Petitioners' request also fails because, contrary to Petitioners' assertion, the five documents are not relevant to FHWA's decision for Central 70. Two of the documents are intended for use in broad regional and/or metropolitan planning efforts, not project-level analysis like the FEIS for Central 70. *See* Pet'rs' Ex. 38 (framework for *corridor planning studies*, which are long-range planning exercises used to prioritize projects for a corridor, region, or sub-region); Ex. 40 (tool used to examine health impacts of transportation *systems*, and providing data at the *metropolitan area* scale). One of the documents is a dated internal informational report created by CDOT, not FHWA, theorizing approaches to identification of area-wide cumulative impacts of projects and urbanization at a regional scale, not a project-level methodology or binding policy guidance. *See* Ex. 41 at iii. And the remaining documents, contrary to Petitioners' assertion, are not "policies, guidelines, [or] procedures recommending"

certain considerations either.  One consists of responses to frequently asked questions, Pet'rs' Ex. 39, and the other is an article from the New England Journal of Medicine, Pet'rs' Ex. 42. None of these documents are relevant to the analysis that FHWA actually performed in connection with the Central 70, and are therefore not properly part of the record.

In short, Petitioners have not produced *any* evidence, let alone *clear* evidence, that FHWA considered these five documents during the decision-making process.  Therefore, Petitioners' request to "complete" the Record with Exhibits 38-42 should be denied.

> b.    *The Documents Petitioners Wish to Add to the Record Do Not Qualify for Any Extra-Record Evidence Exception.*

Petitioners also seek to "supplement" the Record with these same materials.  Petitioners argue that each document "could also be admitted under one of the extra-record exceptions discussed in detail in the Motion to Supplement the Record . . . [because they] demonstrate the 'agency ignored relevant factors it should have considered or considered factors left out of the formal record.'"  Mot. 14 (quoting *Water Supply & Storage Co. v. U.S. Dep't of Agric.*, 910 F. Supp. 2d 1261, 1267 (D. Colo. 2012)).  Petitioners provide no support or analysis for their supplementation claim, but rather cross-reference their Motion to Supplement the Admin. R. ECF No. 116.  *See id.*  This tactic is nothing more than an end run around the Court's fifteen-page limit, which this Court should reject by summarily denying this part of the Motion.

In any event, this Court has recognized a limited number of exceptions under which a court can admit extra-record evidence.  *Salazar*, 711 F. Supp. 2d at 1278-79.  These include circumstances in which the record is deficient because the agency ignored relevant factors it should have considered or considered factors left out of the formal record.  *Id.* (citing *Custer Cty. Action Ass'n v. Garvey*, 256 F.3d 1024, 1027 n.1 (10th Cir. 2001)).  Courts apply these exceptions narrowly.  *See Strich*, 2011 WL 3682757, at *3.  Documents proffered under this

exception must be "necessary" for the court to determine if the agency has considered all relevant factors. *Sierra Club v. U.S. Dep't of Energy*, 26 F. Supp. 2d 1268, 1270 (D. Colo.), *aff'd*, No. CIV.A. 97-B-529, 1998 WL 895927 (D. Colo. Oct. 22, 1998). Mere allegations that the Court should look beyond the administrative record are not enough; plaintiffs must make a showing that the record is inadequate. *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1437 (9th Cir. 1988) ("The [plaintiff] makes no showing that the district court *needed* to go outside the administrative record to determine whether the [agency] ignored information . . . ." (emphasis added)), *opinion amended*, 867 F.2d 1244 (9th Cir. 1989).

Here, none of Petitioners' proffered documents qualify for this exception. Petitioners claim that these documents demonstrate that FHWA ignored one relevant factor—the Project's "effect on human health." Mot. 14. Petitioners' assertion is incorrect. The Final Environmental Impact Statement ("FEIS") not only discusses the effect of the project on human health, it specifically addresses relevant air pollutants' health impacts and reviews recent studies concerning the health effects of highway emissions. AR 0000023406-23410, AR0000023459-23466; AR 0000018238-18248. Numerous other documents in the Record also detail how FHWA considered the effect of the project on human health. *See, e.g.*, AR 0000004786-4794 (indicating that Agencies conducted modeling of carbon monoxide and PM10 to ensure NAAQS conformity and prepared emissions inventories using EPA- and APCD-approved methodology); *See also* Def.-Intervenors' Resp. in Opp'n to Sierra Club's Mot. to Stay 11-24, ECF No. 96 (explaining and defending agencies' approach to human health). As such, FHWA did not ignore the Project's effect on human health. Instead, Petitioners' ignore the numerous documents describing how FHWA and CDOT considered the Project's effect on human health.

At bottom, Petitioners' simply disagree with FHWA's conclusions regarding possible health impacts, and Petitioners believe FHWA should have considered five additional documents on that topic. But Petitioners' disagreement with the "conclusions [the agency's] experts reached on these issues does not mean that the agency failed to consider them." *Vill. of Logan v. U.S. Dep't of Interior*, No. 12-CV-401 WJ/LFG, 2013 U.S. Dist. LEXIS 196716, at *8 (D.N.M. Apr. 26, 2013). Petitioners had ample opportunity to put additional "evidence before the agency and thereby enter it into the [Record] during the [administrative] process, and declined to do so." *Id.* (citing *N.M. Envtl. Improvement Div. v. Thomas*, 789 F.2d 825, 835-36 (10th Cir. 1986)). They should not be allowed to include it now *post hoc*. Petitioners' motion to "supplement" the Record with these five documents therefore should be denied.

      c.     *The Documents Petitioners Wish to Add to the Record Are Not Admissible Pursuant to Federal Rule of Evidence 201.*

In addition to failing under APA review, Petitioners' assertion that these five documents are admissible pursuant to Federal Rule of Evidence 201 is without merit. Mot. 14-15. Petitioners attempt to circumvent the administrative record exceptions by invoking the admissibility of records under Rule 201. But, as courts have recognized, these are two "independent requirements." *See, e.g.*, *Madison Servs., Inc. v. United States*, 92 Fed. Cl. 120, 130 n.6 (2010) (noting that qualifying for judicial notice *and* meeting the Administrative Record rule exceptions are "independent requirements").

Under the Federal Rules of Evidence, a court may take judicial notice of an adjudicative fact "not subject to reasonable dispute" in one of two circumstances: it "is (1) generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). However, because judicial notice circumvents the normal evidentiary process, courts are

cautioned in its application, "requiring that the matter be beyond reasonable controversy."  Fed. R. Evid. 201 advisory committee's note to 1972 Proposed Rules, Subdivision (b); *see also Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997) (en banc) (pointing out that "the taking of judicial notice of facts is . . . a highly limited process [because it] bypasses the safeguards which are involved with the usual process of proving facts by competent evidence in district court").

While judicial notice, as set forth in evidentiary Rule 201, operates to address the admissibility of public records, Rule 201 is not designed to circumvent the standards applicable to administrative record review cases, as Petitioners attempt to do here.  *See, e.g, Rybachek v. EPA*, 904 F.2d 1276, 1296 n.25 (9th Cir. 1990) (rejecting Plaintiffs' submission of extra-record materials offered under the auspices of "judicial notice," as the materials did not satisfy any of the exceptions to the rule limiting review of agency action to the record created at the time of the agency's decision); *Madison Servs., Inc.*, 92 Fed. Cl. at 130 n.6 (noting that while "congressional staff report may qualify for judicial notice . . . this does not exempt plaintiff from having to meet the independent requirements for supplementation of the administrative record"); *Great Basin Mine Watch v. Hankins*, 456 F.3d 955, 975-76 (9th Cir. 2006) (declining to take judicial notice of a state water permit application when plaintiffs failed to satisfy any of the exceptions to record-review rule); *see also Murakami v. United States*, 46 Fed. Cl. 731, 739 (2000) (recognizing that the "discretion to take judicial notice must be exercised sparingly lest [Fed. R. Evid.] 201 be wielded to create an exception that would envelop the established procedures for conducting arbitrary and capricious review").

Accordingly, because Petitioners cannot meet the independent requirement for completing or supplementing the Record with the five documents, their request that this Court take judicial notice of these documents should be denied.

**CONCLUSION**

For the foregoing reasons, the Court should deny Petitioners' Motion to Conduct Limited

Discovery, Complete the Record, and Take Judicial Notice.


Respectfully submitted this 19th day of March 2018.


JEFFREY H. WOOD
Acting Assistant Attorney General
Environment & Natural Resources Division

BY: */s/ Carter F. Thurman*
CARTER F. THURMAN (GA Bar No. 691275)
MAYTE SANTACRUZ (CA Bar No. 259820)
U.S. Department of Justice
Environment and Natural Resources Division
P.O. Box 7611
Washington, DC 20044-7611
(202) 305-0444 (Thurman)
(202) 305-0465 (Santacruz)
carter.thurman@usdoj.gov
mayte.santacruz@usdoj.gov


*/s/ David A. Carson*
DAVID A. CARSON
United States Department of Justice
Environment and Natural Resources Division
999 18th Street, Suite 370
Denver, Colorado 80202
(303) 844-1349
david.a.carson@usdoj.gov


***Attorneys for Federal Defendants***


Of Counsel:
Brent Allen (CO Bar No. 42922)
Federal Highway Administration
Office of the Chief Counsel
Western Legal Services Division
Lakewood, Colorado
(720) 963-3692
brent.allen@dot.gov

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that on 19th day of March 2018, the foregoing Federal Defendants'

Response to Petitioners' Motion to Conduct Limited Discovery, Complete the Record, and Take

Judicial Notice was electronically filed with the Clerk of Court using the CM/ECF system which

will send notification of such filing to the following:

Andrea S. Gelfuso
Andrea Gelfuso, Attorney at Law
2402 South Holland Street
Lakewood, CO  80227
303-955-1910
Agelfuso6@gmail.Com

Robert E. Yuhnke
Robert E. Yuhnke & Associates
4050 Se Hosner Terrace
Gresham, OR  97080
303-499-0425
Bob.Yuhnke@prodigy.Net

Gregory Nicholas Corbin
Milligan Rona Duran & King, LLC-Denver
1627 Vine Street
Denver , CO  80206
720-414-2000
Gnc@mrdklaw.com

BY: _/s/ Carter F. Thurman_
CARTER F. THURMAN