## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action Nos.    17-cv-01661-MJW
                          17-cv-01679-MJW

SIERRA CLUB; ELYRIA AND SWANSEA NEIGHBORHOOD ASSOCIATION; CHAFEE PARK NEIGHBORHOOD ASSOCIATION; AND COLORADO LATINO FORUM,

        Plaintiffs,

    v.

FEDERAL HIGHWAY ADMINISTRATION, ELAINE CHAO, in her official capacity as Secretary of Transportation; and JOHN M. CATER, in his official capacity as Division Administrator,

        Defendants,

    and

COLORADO DEPARTMENT OF TRANSPORTATION,

        Defendant-Intervenor.

---

### FEDERAL DEFENDANTS' RESPONSE IN OPPOSITION TO PETITIONERS' MOTION TO SUPPLEMENT THE RECORD

---

Defendants Federal Highway Administration ("FHWA"), Elaine Chao, in her official capacity as FHWA Secretary of Transportation, and John M. Cater, in his official capacity as Division Administrator for FHWA's Colorado Division (collectively, "Federal Defendants"), hereby respond to Petitioners' Motion to Supplement the Record, ECF No. 116 ("Motion"). Petitioners have failed to meet their burden to establish that the narrow exceptions permitting extra-record evidence are applicable, and their Motion should be denied.

## INTRODUCTION

Petitioners' request to supplement FHWA's Administrative Record ("Record") with hundreds of pages of extra-record materials should be denied.  More than a year after FHWA issued the Record of Decision ("ROD") for the Central 70 project ("Central 70" or "Project'),[1] Petitioners seek to supplement the Record with declarations and studies that they did not provide to FHWA during the NEPA process.  Petitioners cannot submit these materials for the first time in Court, thereby depriving FHWA's experts of the opportunity to review and address them within the administrative process.  Besides being barred from submitting these materials for the first time in Court instead of during the NEPA process, Petitioners also offer the "expert" declarations and supporting studies for a plainly impermissible purpose.  Even a cursory review of the proffered testimony demonstrates that it is not—despite Petitioners' allegation—evidence that FHWA failed to examine a relevant factor, or necessary to explain a highly complex matter.  Instead, Petitioners simply disagree with the conclusions and methodology used by FHWA's experts to analyze potential air-quality related health impacts.  The supplementation Petitioners seek constitutes the kind of conflicting expert opinion that the Tenth Circuit has specifically held inappropriate for supplementing an agency's administrative record, and should be denied.  *See Lee v. U.S. Air Force*, 354 F.3d 1229, 1242-44 (10th Cir. 2004).

## STANDARD OF REVIEW

Under Tenth Circuit precedent, "[r]eviews of agency action in the district courts must be processed *as appeals*."  *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994).  Consistent with that approach, a district court's "review of agency action is normally

---

[1] Federal Defendants' Response to Petitioners' Motion to Conduct Limited Discovery, Complete the Record, and Take Judicial Notice includes the relevant background concerning FHWA's issuance of the ROD approving the Central 70 and FHWA's Record.  ECF No. 123.

restricted to the administrative record." *Citizens for Alts. to Radioactive Dumping v. U.S. Dep't of Energy*, 485 F.3d 1091, 1096 (10th Cir. 2007) (citing *Lee*, 354 F.3d at 1242). This means that a court typically reviews only "the evidence and proceedings before the agency at the time it acted." *Am. Mining Cong. v. Thomas*, 772 F.2d 617, 626 (10th Cir. 1985). As the Supreme Court has held, "[t]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985) (quotations omitted).

While the Tenth Circuit has recognized certain exceptions, it has also stressed that "any exception to this general rule against the use of extra-record materials must be *extremely limited*." *Am. Mining Cong.*, 772 F.2d at 626-27 (emphasis added) (rejecting motions to supplement the administrative record); *see also Lee*, 354 F.3d at 1242 (quoting *Am. Mining Cong.*, 772 F.2d at 626). These "extremely limited" exceptions include situations in which (1) the agency action cannot be properly reviewed without the supplemental materials; (2) the record is deficient because the agency ignored relevant factors; (3) the agency considered factors that were left out of the record; (4) the case is so complex and the record so unclear that the court needs the materials to understand the issues; and (5) the supplemental materials post-date the agency action and demonstrate that the actions were right or wrong. *Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1278-79 (D. Colo. 2010) (citing *Custer Cty. Action Ass'n v. Garvey*, 256 F.3d 1024, 1027 n.1 (10th Cir. 2001)).

These exceptions are extremely limited because, as the Tenth Circuit explained in *Olenhouse*, the rule limiting judicial review to an agency's record protects the integrity of the administrative process and precludes a reviewing court from conducting a *de novo* trial and substituting its judgment for that of the agency. *See* 42 F.3d at 1580. Thus, "[s]upplementation

2

of the administrative record is not allowed unless the moving party demonstrates 'unusual circumstances justifying a departure' from the general presumption that review is limited to the record compiled by the agency." *Medina Cty. Envtl. Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010) (quoting *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008)).  Mere allegations that the Court should look beyond the record are not enough; the plaintiffs must make a showing that the record is inadequate. *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1437 (9th Cir. 1988), *opinion amended*, 867 F.2d 1244 (9th Cir. 1989).

The narrow exceptions to the record review rule are not intended to allow Petitioners in this case to avoid their obligation to bring their expert critiques before the agency as part of the administrative process.  Petitioners have an obligation to "'structure their participation so that it . . . alerts the agency to the [parties'] position and contentions,' in order to allow the agency to give the issue meaningful consideration." *Dep't of Transp. v. Pub. Citizen,* 541 U.S. 752, 764-65 (2004) (quoting *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council,* 435 U.S. 519, 553 (1978)).  One purpose of the NEPA process is to bring the public's expertise to the agency's attention so that the agency can improve its analysis and decisions, or can explain why it found the criticism invalid.  That purpose is not served if Petitioners fail to bring their expert critiques to the agency's attention, and instead inject them into post-decisional litigation under the guise of the exceptions to record review.  *See N.M. Envtl. Improvement Div. v. Thomas*, 789 F.2d 825, 835 (10th Cir. 1986) (holding that if a party wishes an agency to "study other information, it [has] a responsibility to place such information in the record" through its comments, rather than moving to supplement the record).

In fairness to agencies and to avoid gamesmanship, the Supreme Court has made clear that matters not brought before the agency may not be raised for the first time in a judicial

challenge.  *See Pub. Citizen*, 541 U.S. at 764-65; *see also Silverton Snowmobile Club v. U.S.
Forest Serv.*, 433 F.3d 772, 783-84 (10th Cir. 2006) (holding plaintiffs forfeited right to pursue
claims not brought to the agency's attention in public comment period); *'iLio'Ulaokalani Coal.
v. Rumsfeld*, 369 F. Supp. 2d 1246, 1253 (D. Haw. 2005) ("Without the benefit of such
comments, the Army did not have the opportunity to respond with an explanation or address
Plaintiffs' concerns at the proper point in the process.  Plaintiffs have therefore forfeited any
objection to the PEIS." (citing *Pub. Citizen*, 541 U.S. at 764).

Accordingly, in almost all circumstances, the Tenth Circuit has rejected efforts to
supplement records, emphasizing that these exceptions are only "possible" justifications that
must be narrowly construed and applied.  *See, e.g., Custer Cty.*, 256 F.3d at 1027 n.1 (stating that
"[t]he circumstances which warrant consideration of extra-record materials are 'extremely
limited,'" listing "possible" justifications, and concluding that "[t]he narrow conditions
warranting an exception to the general rule are not present in this case"); *Am. Mining Cong.*, 772
F.2d at 626, 627 (stating that "any exception to this general rule against the use of extra-record
materials must be extremely limited" and "deny[ing] all motions to supplement the record"
except for the federal agency's unopposed request to supplement with a letter and two
memoranda); *Lee*, 354 F.3d at 1242 (recognizing that "consideration of extra-record materials is
appropriate in 'extremely limited' circumstances," and affirming the district court's order to
strike extra-record evidence"); *Citizens for Alts.*, 485 F.3d at 1096 (denying motion to
supplement record with expert declaration); *N.M. Envtl. Improvement Div.*, 789 F.2d at 835
(refusing to consider plaintiffs extra-record materials because "the function of the court [is] to
review agency action based on the record before the agency unless exceptional circumstances
justify use of extra-record materials").

4

## ARGUMENT

Contrary to the long history of the Tenth Circuit carefully and cautiously viewing and limiting any possible exceptions to the Administrative Record rule, Petitioners would have this Court apply the exceptions broadly.  Petitioners argue that supplementation is appropriate "to establish that Defendants failed to examine evidence relevant to determining impacts on human health" and to "assist the Court's understanding of scientific data and technical analysis that explain Petitioners' claims that Defendants ignored relevant factors and did not examine relevant evidence." Mot. 2, 4.  But the declarations do not fall within these limited exceptions.

Although there is a recognized exception to the general rule against extra-record review when documents are necessary "for determining whether the agency considered all relevant factors," this exception is narrowly construed.  *Sierra Club v. U.S. Dep't of Energy*, 26 F. Supp. 2d 1268, 1270 (D. Colo.), *aff'd*, No. CIV.A. 97-B-529, 1998 WL 895927 (D. Colo. Oct. 22, 1998).  Documents proffered under this exception must be absolutely "necessary" for the court to meaningfully review the agency's decision.  *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005).  Petitioners must show that the Record is so devoid of information on a particular issue that judicial review would be "straitjacketed" without extra-record evidence.  *Nw. Envtl. Advocates v. Nat'l Marine Fisheries Serv.*, 460 F.3d 1125, 1145 (9th Cir. 2006).  This exception does not apply when the record already contains information on a given factor, and the plaintiff merely wishes to use extra-record evidence "as a basis for questioning the agency's scientific analyses or conclusions."  *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 993 (9th Cir. 2014) (citing *Asarco, Inc. v. EPA*, 616 F.2d 1153, 1160-61 (9th Cir. 1980)); *see also Hodel*, 840 F.2d at 1437; *Vill. of Logan v. U.S. Dep't of Interior*, No. 12-CV-401 WJ/LFG, 2013 U.S. Dist. LEXIS 196716, at *8 (D.N.M. Apr. 26, 2013).

Here, the Record shows that FHWA did not ignore the effect of Project emissions on public health. *See* Def.-Intervenors' Resp. in Opp'n to Sierra Club's Mot. to Stay 11-24, ECF No. 96 ("Def.-Intervenor's Resp.") (summarizing and defending FHWA's methodology). FHWA discussed the relevant air pollutants' health impacts and reviewed recent studies concerning the health effects of highway emissions. AR0000023406-23410, AR0000023459-23466; AR0000018238-18248. Under an EPA-approved protocol, FHWA conducted modeling of carbon monoxide and $PM_{10}$ to ensure NAAQS conformity, and prepared emissions inventories. AR000004786-4794. FHWA used emissions inventories to evaluate *all* criteria pollutants, as well as MSATs and road dust. AR0000023485-23511. FHWA also specifically discussed the Project's potential impacts on human-health conditions. AR0000018227-18248. FHWA reviewed studies concerning highway emissions and human health, including Denver's Health Impact Assessment for neighborhoods near I-70. AR0000018238-18248. The record therefore is far from devoid of analysis of the public-health impacts of the Project.

Nor are Petitioners' declarations necessary to explain technical terms or complex subject matter. When a declaration is proffered under the exception for explaining technical terms, it "must be examined to determine whether it truly assists the court in understanding technical or complex matters or merely attempts to argue the sufficiency of the record." *Alsea Valley Alliance v. Evans*, 143 F. Supp. 2d 1214, 1216 (D. Or. 2001). As explained below, a review of Petitioners' declarations shows that they purport to provide scientific and expert opinion, "not an explanation of technical or complex material contained in the record." *Id.* at 1217. Each of the declarations amounts to nothing more than an attack on FHWA's methodology and conclusions. The only topic these declarations purport to explain is a different approach or methodology that Petitioners allege the agencies should have considered. The problem with such testimony is that

6

"expert opinion regarding the sufficiency of the record takes on independent evidentiary value of its own and naturally falls outside the record because the expert opinion was not before the agency prior to its final determination." *Id.*

As set forth below, Petitioners' declarations are nothing more than impermissible conflicting expert opinions, and none of them fall within the "extremely limited" recognized exceptions to record review recognized by the Tenth Circuit. *Custer Cty.*, 256 F.3d at 1027 n.1.

## I.     Petitioners' Declarations Are Nothing More Than Conflicting Expert Opinion That Is Inappropriate for Supplementation.

Petitioners present for the first time several purported "expert" declarations that were not before FHWA at the time it made its decision to approve the ROD, and are therefore not part of FHWA's certified Record.  These declarations do nothing more than second-guess the design of the Project and attack the agency's air-quality analysis.  Petitioners would like the opinions of these declarants to supplant the expert opinions relied on by FHWA and CDOT.

The Tenth Circuit has made it clear that "agencies are entitled to rely on their own experts so long as their decisions are not arbitrary and capricious," and that a disagreement about the reliability of a method or the application of that method "is an insufficient basis for admitting extra-record evidence . . ." *Lee*, 354 F.3d at 1242-44 (quotation omitted).  In *Custer County*, the Tenth Circuit explained:

> As so often is the case in disputes concerning the potential environmental impacts of a project, Petitioners' claim boils down to a disagreement over scientific opinions and conclusions. While we appreciate Petitioners' concerns over noise impacts, and do not ignore the fact contradictory evidence and data may well exist, the mere presence of contradictory evidence does not invalidate the agencies' actions or decisions. We cannot displace the agencies' choice between two conflicting views, even if we would have made a different choice had the matter been before us de novo.

256 F.3d at 1036 (internal quotation marks, alteration, and citations omitted); *see also Colo. Envtl. Coal. v. Dombeck*, 185 F.3d 1162, 1176 (10th Cir. 1999) ("[T]he fact that Appellants cite

an expert who agrees with their position and alleges a lack of analysis is not dispositive.  It merely reflects the crux of their complaint—they disagree with the [agency's] decision."). Under Petitioners' broad interpretation, there would be nothing preventing a plaintiff from presenting whatever information it deems "relevant" in a backdoor effort to effectively obtain *de novo* review of a federal agency's decision, in direct contravention of *Olenhouse*.  Petitioners' invocation of the exceptions to supplement the Records with such information must be rejected.

Here, each of Petitioners' "expert" declarations amount to nothing more than an attack on FHWA's methodology and conclusions and therefore are precisely the "kind of conflicting expert opinion that the Tenth Circuit ruled inappropriate for supplementing the record . . . ."  *Vill. of Logan*, 2013 U.S. Dist. LEXIS 196716, at *8 (citing *Lee*, 354 F.3d at 1242).  For example, Petitioners say they are submitting Dr. Thurston's declaration to "establish that FHWA did not examine relevant evidence of significant harm to human health . . . "  Mot. 4.  But Dr. Thurston's declaration merely reviews various scientific studies and draws conclusions about impacts to human health from NAAQS-compliant air quality.  Mot. Ex. 28 at 12-16.  Petitioners wish to use Dr. Thurston's declaration to argue that FHWA had to perform additional quantitative analysis of such impacts, rather than relying on a Clean Air Act hot-spot analysis and a comparative analysis of emissions inventories.  *See* Sierra Club Pet'rs' Mot. for Stay of Agency Action Pending Review on the Merits 24-30, ECF No. 88; Def.-Intervenor's Resp. 11-17.[2]  This is precisely the type of conflicting expert opinion about the "reliability of [a] methodology and whether it has been applied accurately" that the Tenth Circuit ruled inappropriate for supplementing the record. *See Lee*, 354 F.3d at 1242-44.  Moreover, Petitioners submitted neither Dr. Thurston's analysis

---

[2] Additionally, the agencies reviewed recent studies concerning the health impacts of highway emissions and thoroughly responded to public comments.  AR0000018238-18246; AR0000023459-23466; AR0000024381-24383; AR000000136-138.

nor the studies he relies on to FHWA during the comment period.  If Petitioners wished FHWA and the Court to consider and respond to Dr. Thurston's analysis and the studies he cites in his declaration, they should have submitted that information during the comment process.  *Pub. Citizen,* 541 U.S. at 764-65; *N.M. Envtl. Improvement Div.*, 789 F.2d at 835-36.

The remaining declarations suffer the same flaws.  Petitioners submit two declarations by Dr. Gregory Rowangould—the $PM_{2.5}$ and $PM_{10}$ modeling declarations.  The Tenth Circuit recently upheld a district court's refusal to consider a declaration from Dr. Rowangould because it reflected a "disagreement between experts on the correct methodology to utilize."  *See Coal. of Concerned Citizens to Make Art Smart v. Fed. Transit Admin.*, 843 F.3d 886, 899 (10th Cir. 2016) (citation omitted).  The same holds true here.

Petitioners submit Dr. Rowangould's $PM_{2.5}$ modeling declaration to argue that FHWA's conclusion regarding $PM_{2.5}$ is wrong since a hot-spot analysis would show that future emissions from the project would potentially violate the NAAQS for $PM_{2.5}$.  Mot. 7-8, Ex. 33.  However, Petitioners' argument and declaration are irrelevant as the Clean Air Act does not require FHWA to do a hot-spot analysis for $PM_{2.5}$ for this particular project, and for that reason alone it did not do one.  *Sierra Club v. EPA*, 873 F.3d 946, 950 (D.C. Cir. 2017) (explaining that because Denver is located in an attainment area for $PM_{2.5}$, no $PM_{2.5}$ hot-spot analysis is required).  To the extent that Petitioners argue that NEPA required FHWA to perform such a hot-spot modeling analysis, they are incorrect.  *See WildEarth Guardians v. U.S. BLM*, 870 F.3d 1222, 1238 (10th Cir. 2017).  FHWA instead performed an inventory analysis to evaluate $PM_{2.5}$ emissions from the project under NEPA.  *See* AR0000023485-23511.  Petitioners' desire to attack FHWA's chosen methodology is not a proper ground for supplementing the record.

Dr. Rowangould's PM$_{10}$ modeling declaration similarly misses the mark. First, Petitioners assert that this declaration is needed to explain why the "agencies had applied one primary modeling procedure to determine the impact of Project emissions at over 3,200 receptor locations, but followed a different procedure to model the concentrations at the seven receptor locations where emissions would be highest." Mot. 12. But the Record already explains why FHWA refined its methodology for those seven receptors. FHWA initially assumed that all receptors were at ground level, but "consistent with EPA guidance," FHWA later refined its analysis to "account for the true release height of emissions at selected receptor locations, which produces more representative, albeit lower, concentration predictions than the prior, simplified at-grade assumption." AR000000126; *see also* AR0000122902-122906 (EPA guidance instructing modeler to include "source release height . . . (*i.e.*, meters above the ground)" and make such parameters "as realistic as feasible"). As such, Petitioners cannot show that the record lacks an explanation for FHWA's approach.

Second, Petitioners seem to argue that it would be more appropriate to assume that all receptor locations are at ground level, regardless of whether that assumption accurately reflects reality at the seven receptor locations at issue. Mot. 12-13. FHWA explained that its adjustments to receptor height more accurately reflect physical conditions at those seven receptors, and Dr. Rowangould's declaration is simply an attack on the FHWA's judgment on how to properly model those receptor locations. Thus, the declaration is nothing more than an expert opinion that conflicts with FHWA's chosen methodology and conclusion, which is inappropriate for supplementing the record. *See Lee*, 354 F.3d at 1242.[3]

---

[3] Petitioners accuse FHWA of having withheld information about the seven receptors during the comment process, but the record contains e-mail communications promptly transmitting the modeling files to Petitioners and their counsel upon request during the comment process. *See, e.g.,*

Petitioners also submit a declaration from Dr. Heller to explain the analytical principles and procedures that are implemented when a Health Impact Assessment ("HIA") is performed. Mot. Ex. 34 at 2. Petitioners use this declaration to explain an alternative methodology that Petitioners requested be done as part of the evaluation of alternatives and mitigation. Mot. 6. However, the agencies reviewed Petitioners' comments regarding HIAs during the comment process. AR0000018240-18242; AR0000024711-24720. The agencies explained that the additional study demanded by Petitioners would be "subject to very large uncertainties" and "would not assist the decision makers in evaluating the choice among reasonable alternatives" given the air-quality analysis. AR0000024711; *see also* AR000000136-138; AR0000024381. To the extent that Petitioners wish that FHWA would have considered Dr. Heller's explanation of the analytical principles and procedures that are implemented when an HIA is performed, Petitioners should have submitted his declaration during the NEPA process, not a year *after* FHWA issued its ROD approving the Project. *See Vill. of Logan*, 2013 U.S. Dist. LEXIS 196716, at *8 (citing *N.M. Envtl. Improvement Div.*, 789 F.2d at 835-36).

Similarly, Mr. Brink's declaration provides estimates of fugitive dust emissions from construction activities. Mot. Ex. 35.[4] However, as even Petitioners point out, FHWA considered fugitive dust emissions and Mr. Brink's declaration is nothing more than an attempt to attack the agency's methodology. Mot. 10 (referencing FHWA's consideration of fugitive dust); *see also* AR000000065-66 (discussing nineteen separate measures to ensure construction related fugitive

---

AR0000053981-54002; AR0000054275-54293. The attachments to those e-mails can be accessed via the index to the Record at Tab 3, Line 3518—"Attachments to AQ Comment E-mails."

[4] Mr. Brink is not qualified to provide an expert opinion on the effect of fugitive dust on NAAQS compliance. His degree is in "Forest Science with focus on Aquatic and Terrestrial Ecology, Soil Science, Hydrology & Biometerology, and Environmental Planning" and his position at EPA involved Clean Water Act enforcement. Mot. Ex. 35 ¶¶ 2-3.

dust will be minimized).  Thus, because FHWA considered fugitive dust emissions from the construction process, Petitioners' proffered declaration is nothing more than an expert declaration disagreeing with FHWA's analysis, and is therefore improper extra-record material that should not be included in the Record.  Moreover, Mr. Brink's manipulation of data in the NEPA documentation (Mot. Ex. 35) shows that Petitioners could have submitted a similar analysis for consideration during the comment process, but they chose not to.

In sum, Petitioners' "expert" declarations must be rejected because they do not provide this Court with factual context or necessary clarification, but instead directly attack the substance of FHWA's decision.  Attacking the merits of a federal agency's decision is not a proper basis for Petitioners to seek to supplement the Record with hundreds of pages of documents.

## II.     None of Petitioners' Articles Fall Within the "Extremely Limited" Exceptions to Record Review.

Petitioners' request to supplement the Record with nine articles allegedly related to assessing health impacts from the Project should be denied.  Mot. 5.  Petitioners make no attempt to satisfy any of the narrow exceptions to the record review rule.  Instead, Petitioners only argue that these documents should be included because they are "relevant."  *Id.*  But relevance is not the standard for adding materials to an agency's administrative record.  Petitioners must show that FHWA's Record is so devoid of information on a particular factor that the Court cannot meaningfully review FHWA's decision.  *See Nw. Envtl. Advocates*, 460 F.3d at 1145; *Hodel*, 840 F.2d at 1437.  As explained above, the Record shows that FHWA did review recent studies concerning the health impacts of highway emissions and thoroughly responded to public comments.  AR0000018238-18246; AR0000023459-23466; AR0000024381-24883; AR000000136-138.  Because Petitioners brought none of the nine articles to FHWA's attention

during the comment process, the Court should reject their belated attempt to introduce those studies now. *Vill. of Logan*, 2013 U.S. Dist. LEXIS 196716, at *8.

## III.   Petitioners' Meeting Notes Do Not Fall Within the "Extremely Limited" Exceptions to Record Review.

Petitioners also seek to "supplement" the Record with notes from a 2015 meeting between Petitioners and FHWA.  Mot. 14.  But Petitioners do not explain how meeting notes transcribed by Petitioners that were never provided to FHWA, and therefore were never considered by FHWA in making its decision, qualify for the exceptions for extra-record evidence.  Instead, Petitioners argue that these notes are evidence that FHWA "failed to consider a relevant factor by not giving meaningful consideration to Project impacts on public health." *Id.* Petitioners' argument not only falls short from meeting the required standard to qualify for the narrow exceptions, but it is factually wrong.  Contrary to Plaintiffs' assertion, the FEIS specifically addresses the Project impacts on public health and reviews recent studies concerning the health effects of highway emissions.  AR0000023406-23410, AR0000023459-23466; AR0000018238-18248.  Numerous other documents in the Record also detail how FHWA considered the effect of the Project on public health.  *See* AR000000018-26 (indicating that Agencies conducted modeling of carbon monoxide and $PM_{10}$ to ensure NAAQS conformity and prepared emissions inventories using EPA- and APCD-approved methodology).  Thus, FHWA did not ignore the projects effect on human health and Petitioners' motion should be denied.

## IV.   CDOT's Response Under the Colorado Open Records Request Does Not Fall Within the "Extremely Limited" Exceptions to Record Review.

Lastly, Petitioners seek to supplement the Record with CDOT's response to a Colorado Open Records Act request.  Mot. 15.  Again, Petitioners make no attempt to explain how this document qualifies for a narrow exception to the record review rule.  Petitioners only state that "this evidence is relevant to Petitioners' claim that FHWA failed to consider the impacts of

Project emissions on community health and failed to identify mitigation sufficient to avoid adverse health impacts." *Id.*  Petitioners selectively quote from CDOT's response to make it appear that FHWA did not consider impacts to human health.

CDOT's response to a state open records request has nothing to do with the impacts FHWA actually considered during the NEPA process.  The FEIS and ROD, together with the record documents that FHWA reviewed during the NEPA process, show what impacts FHWA considered.  As explained above, those documents show that FHWA did consider Project emissions on community health and did adopt mitigation measures.  The FEIS specifically addresses the impact of emissions on community health and discusses and identifies numerous mitigation measures.  AR0000023406-23410, AR0000023459-23466; AR0000018238-18248); *see* AR000000018-26 (indicating that Agencies conducted modeling of carbon monoxide and $PM_{10}$ to ensure NAAQS conformity and prepared emissions inventories using EPA- and APCD-approved methodology); *see, e.g.*, AR000000053-54, AR000000080-82 (discussing mitigation that was provided for housing, schools, fresh food, and pedestrian access).  Because CDOT's response to the record request does not show that FHWA overlooked a relevant factor, it does not qualify for admission into the Record.

## CONCLUSION

For the foregoing reasons, Federal Defendants respectfully request that the Court deny Petitioners' Motion to Supplement the Record.

Respectfully submitted this 19th day of March 2018.

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment & Natural Resources Division

BY:  */s/ Carter F. Thurman*
CARTER F. THURMAN (GA Bar No. 691275)
MAYTE SANTACRUZ (CA Bar No. 259820)
U.S. Department of Justice
Environment and Natural Resources Division
P.O. Box 7611
Washington, DC 20044-7611
(202) 305-0444 (Thurman)
(202) 305-0465 (Santacruz)
(202) 305-0506 (fax)
carter.thurman@usdoj.gov
mayte.santacruz@usdoj.gov


*/s/ David A. Carson*
DAVID A. CARSON
United States Department of Justice
Environment and Natural Resources
Division
South Terrace – Suite 370
999 18th Street
Denver, Colorado 80202
(303) 844-1349
david.a.carson@usdoj.gov

**Attorneys for Federal Defendants**


Of Counsel:
Brent Allen (CO Bar No. 42922)
Federal Highway Administration
Office of the Chief Counsel
Western Legal Services Division
Lakewood, Colorado
(720) 963-3692
brent.allen@dot.gov

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that on 19th day of March 2018, the foregoing Federal Defendants'

Response to Plaintiffs' Motion to Supplement the Record was electronically filed with the Clerk

of Court using the CM/ECF system which will send notification of such filing to the following:

Andrea S. Gelfuso
Andrea Gelfuso, Attorney at Law
2402 South Holland Street
Lakewood, CO  80227
303-955-1910
Agelfuso6@gmail.Com

Robert E. Yuhnke
Robert E. Yuhnke & Associates
4050 Se Hosner Terrace
Gresham, OR  97080
303-499-0425
Bob.Yuhnke@prodigy.Net

Gregory Nicholas Corbin
Milligan Rona Duran & King, LLC-Denver
1627 Vine Street
Denver , CO  80206
720-414-2000
Gnc@mrdklaw.com


BY:  _/s/ Carter F. Thurman_
CARTER F. THURMAN