# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-1661-WJM-MEH
*Consolidated with* 17-cv-1679-WJM-MEH

SIERRA CLUB; ELYRIA AND SWANSEA NEIGHBORHOOD ASSOCIATION; CHAFFEE PARK NEIGHBORHOOD ASSOCIATION; and COLORADO LATINO FORUM,

Plaintiffs,

v.

FEDERAL HIGHWAY ADMINISTRATION, ELAINE CHAO, in her official capacity as Secretary of Transportation; and JOHN CATER, in his official capacity as Division Administrator, Defendants,

v.

COLORADO DEPARTMENT OF TRANSPORTATION, and MICHAEL P. LEWIS, in his official capacity as Executive Director of the Colorado Department of Transportation,

Defendant-Intervenors.

---

## PETITIONERS' REPLY TO FEDERAL DEFENDANT'S RESPONSE TO MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD
### (Case No. 17-cv-1679-WJM-MEH)

---

ROBERT E. YUHNKE  (CO Bar No. 12686)
4050 SE Hosner Terrace
Gresham, OR 97080
(303) 499-0425
bob.yuhnke@prodigy.net

ANDREA S. GELFUSO  (CO Bar No. 19773)
2402 S. Holland Street
Lakewood Co 80227
(303) 955-1910
agelfuso6@gmail.com

GREGORY N. CORBIN  (CO Bar No. 48468)
Milligan Rona Duran & King LLC
1627 Vine St.
Denver, CO 80206
Tel. 720-414-2000
gnc@mrdklaw.com

COUNSEL FOR PETITIONERS

## INTRODUCTION

The primary concerns underlying Petitioners' claims under NEPA and the Federal-Aid Highway Act are that the impacts Project emissions will have on community health were not investigated or disclosed to affected residents and families with children in affected schools, and that these impacts were not evaluated by the decision maker along with the health benefits of alternatives or mitigation to avoid or eliminate adverse effects. The expert testimony, journal articles, notes of a meeting with the decision maker not reported by Defendants, and CDOT's response to a request for documents explaining that health impacts were not evaluated, show that this NEPA decision-making process did not inform the decision maker of impacts on the health of the affected community, and evidence that relevant to assessing the severity, significance and avoidance of health impacts was not examined. In addition, the modeling studies of impacts on community exposure from construction emissions and Project PM2.5 emissions show that FHWA failed to investigate, disclose and consider the impact that increased exposure to these pollutants will have on human health.

## ARGUMENT

The Tenth Circuit recently affirmed that "an agency's EIS is arbitrary and capricious if it fails to take a 'hard look' at the environmental effects of the alternatives before it." *WildEarth Guardians v. U.S. BLM*, 870 F.3d 1222, 1233 (10th Cir. 2017). This means the court "examines 'whether there is a reasonable, good faith, objective presentation of the topics NEPA requires an EIS to cover.'" *Id.*[1] Petitioners have moved to supplement the Administrative Record ("AR" or "Record") with nine exhibits that demonstrate FHWA failed to consider health impacts as a relevant factor because the Record omits any "objective presentation" of the impacts Project emissions will have on community health. These exhibits also establish that by failing to assess

---

[1] *Quoting Holy Cross Wilderness Fund v. Madigan,* 906 F.2d 1515, 1522 (10th Cir. 1992) and *Johnston v. Davis*, 698 F.2d 1088, 1091 (10th Cir. 1983).

1 – Petitioner's Reply to Federal Defendants' Response to Motion to Supplement the Record

the adverse impacts that Project air pollution will have on community health, Defendants failed to identify the mitigation relevant to the factors required by 23 U.S.C. §109(h) to weigh "the costs of eliminating or minimizing such adverse effects" together with "the need for fast, safe and efficient transportation" to determine if the Project is "in the best overall public interest."

### A.  Defendants Ignore the "Relevant Evidence" Exception.

FHWA acknowledges, at 2, the failure to consider a "relevant factor" exception for supplementing the AR, but omits the "relevant evidence" exception. This Court recognizes that an agency's failure to examine "relevant evidence" is also grounds for supplementing the AR.

> The agency must have examined the relevant data and articulated a rational connection between the facts found and the decision made, supported by substantial evidence in the record. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. I s. Co.*, 463 U.S. 29, 43 … (1983); *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1575–76 (10th Cir.1994). Where an agency fails to consider evidence relevant to the final decision, its rationale and justification may be undermined. By its very nature, evidence which the agency fails to consider is frequently not in the record. Accordingly, in order to allow for meaningful, in-depth, probing review, such extra-record evidence is often properly included in the Administrative Record.

*Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1279-80 (D. Co. 2010).

### B. Petitioners Raised Issues; Agency Has Obligation to Examine Relevant Evidence.

Defendants argue that Petitioners are precluded from supplementing the AR to establish that FHWA failed to consider relevant factors or relevant evidence because Petitioners failed to present these exhibits during the comment period. Defendants impermissibly attempt to apply the issue waiver rule to shift the burden to consider "relevant factors" and examine "relevant evidence" from the agency to the affected public. The waiver rule only bars adjudication of claims not raised before the agency. It does not shift an agency's duty under the APA or NEPA to the affected public.

"Parties challenging an agency's compliance with NEPA must ordinarily raise relevant objections during the public comment period." *Sierra Club, Inc. v. Bostick,* 787 F.3d 1043, 1048

(10th Cir. 2015). "These objections must specifically raise the issue presented. . . ; if the objections do not raise the issue, it is waived." *Id*. at 1051. "Persons challenging an agency's compliance with NEPA must 'structure their participation so that it ...alerts the agency to the [parties'] position and contentions,' in order to allow the agency to give the issue meaningful consideration." *Dep't of Transp. v. Pub. Citizen,* 541 U.S. 752, 764 (2004).

Petitioners more than met this burden in detailed written comments stating their positions and objecting to FHWA's failure to consider relevant factors that include the health effects linked to increased community exposures to highway and construction emissions.[2] In the FEIS, FHWA did not: (1) acknowledge that residents would experience adverse health effects from exposure to increased concentrations of PM and CO or from exposure to the full array of air pollutants emitted from highways, (2) perform any air quality analysis to determine if Project emissions would violate the NAAQS for $PM_{2.5,}$ and obviously failed to disclose that the NAAQS will likely be violated, (3) estimate the extent of increased exposure to $PM_{10}$ during construction activities to determine if their planned mitigation measures would be sufficient to avoid or eliminate adverse health impacts, or (4) consider the health benefits that could be achieved by alternatives or mitigation that reduce community exposure to the pollutants emitted from highways.

Defendants point to the FEIS section titled "Human Health Conditions," which acknowledges the baseline adverse health outcomes reported by Denver Environmental Health

---

[2] Petitioners' SDEIS comments objected to FHWA's failure to consider any health effects, as well as their failure to model Project $PM_{2.5}$ emissions and construction emissions to determine how much community exposures would increase, identify mitigation needed to avoid a violation, and determine the costs of mitigation for the "public interest" determination required by §109(h). AR 0015601-627. Petitioners also objected to FHWA's failure to consider alternatives and measures that could improve community health by reducing exposures responsible for the disparate incidence of cardiovascular disease and childhood asthma. AR 0026029. Petitioners' FEIS comments again stated their objection to the failure of the FEIS to consider impacts on community health, potential health benefits and the failure to model $PM_{2.5.}$ AR 026028-30, 026038, 026016, 026025-26. Petitioners' comments on the proposed conformity determination repeated their concern that $PM_{2.5}$ had not been modeled. AR 0006685.

3 – Petitioner's Reply to Federal Defendants' Response to Motion to Supplement the Record

but contains no discussion of the health hazards that will be caused by increased community exposure to carbon monoxide and PM10. Another section contains emission inventories showing that vehicle emissions of PM[3] and carbon monoxide[4] and road dust[5] will increase over the life of the Project, but nowhere does the FEIS address the consequences for human health of increased exposure to these pollutants. To the contrary, FHWA has consistently contended that it need not consider health consequences because these pollutants will comply with the respective NAAQS.[6]

The increased incidence of cardiovascular disease and childhood asthma caused by this Project are factors that must be considered under NEPA and §109(h). Given FHWA's failure to consider these relevant factors, Petitioners undertook to obtain the evidence needed to establish that the adverse health impacts of these various sources of exposure are significant impacts on the human environment and that an informed decision could not be made without examining the evidence that FHWA refused to consider. This motion seeks to supplement the AR with exhibits that demonstrate the factors and relevant data that FHWA unlawfully omitted, including: (1) the evidence provided by Dr. Thurston showing that residents will suffer significantly greater incidence of cardiovascular disease and childhood asthma from increased $PM_{2.5}$ exposure at levels allowed by the NAAQS, and from exposure to the complex mix of pollutants emitted from highways;[7] (2) the modeling analysis using EPA-approved models by Dr. Rowangould showing that Project emissions will likely violate the $PM_{2.5}$ NAAQS;[8] (3) the analysis of construction emissions by John Brink showing that during construction emissions of PM10 will exceed the

---

[3] FEIS, Attachment J, Table 23 (AR 023486).
[4] FEIS Attachment J, Table 24 (AR 023488).
[5] FEIS, Attachment J, Section 7.4.9 (AR 023511).
[6] *See* FEIS, Section 5.20 (AR 018227 *et seq.*).
[7] Petitioners' Exhibit 28, Declaration of Dr. George D. Thurston.
[8] Petitioners' Exhibit 33, Declaration of Dr. Gregory Rowangould and report "Modeling PM2.5 Emissions from Phase 1 of the I-70 Central Project."

4 – Petitioner's Reply to Federal Defendants' Response to Motion to Supplement the Record

levels in 2040 that were modeled by FHWA and barely attain the NAAQS;[9] (4) and health research showing the potential for improving community health if exposures are reduced.[10]

      Defendants try to avoid their responsibility to consider this evidence by redefining the waiver rule to relieve themselves of the obligation to examine the relevant evidence showing health effects and PM$_{2.5}$ exposures that they refused to acknowledge in the FEIS. None of the waiver cases require that once commenters state their position and make clear their objections to an agency's failure to consider factors or relevant data, commenters must also provide all of the "relevant evidence." To the contrary, the Supreme Court, beginning with *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971) and *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual*, 463 U.S. 29 (1983), has consistently declared "we insist that an agency 'examine the relevant data and articulate a satisfactory explanation for its action.'" *F.C.C. v Fox Television Stations*, 556 U.S. 502, 513 (2009). Moreover, "NEPA's regulatory requirements impose specific obligations on agencies faced with incomplete or unavailable information," which does not allow agencies to "argue that *Plaintiffs* have the burden to demonstrate that the information they claim is missing meets both the 'relevant' and 'essential' prongs of [40 C.F.R.] § 1502.22." *Native Village of Hope Point v. Salazar*, 730 F. Supp. 2d 1009, 1017-18 (D. Ak. 2010) (finding that agency's failure to obtain the relevant data was arbitrary and warranted remand) (emphasis in the original).

      Because the law requires FHWA to examine the relevant evidence and disclose the impacts of the Project on health, the burden to perform that assessment does not shift to the public—especially, as here, where low-income, mostly Spanish-speaking communities will be exposed to more pollution. The public are taxpayers who should be able to rely on federal agencies to perform the evaluation and make the disclosures required by Congress.

---

[9] Petitioners' Exhibit 35, Declaration of John Brink, at 8.
[10] Petitioners' Exhibit 31, Published Peer-Reviewed Evidence Relevant to Determining Adverse Impacts on Health from Increased Exposure, and Benefits to Community Health From Reduced Exposure to Highway Pollution.

*Harm to Health Not Considered; Relevant Evidence Not Examined.*

Dr. Thurston's Declaration analyzes $PM_{2.5}$ studies published since EPA's last review of the science—which was available to FHWA, but not examined—show that increasing exposures to $PM_{2.5}$ and $PM_{10}$ emitted from the Project during construction and from traffic will have significant adverse health effects at concentrations below the level of the NAAQS.[11]

*Potential Health Benefits Not Considered, Relevant Evidence Not Examined.*

The health effects studies in Exhibit 31 provide evidence that community health could be significantly improved if exposures to traffic pollution were reduced along the I-70 corridor. FHWA objects that these studies were not submitted during the comment period. But Petitioners' comments asked FHWA to assess the health benefits that could be achieved if the interstate or truck traffic were removed from I-70.[12] This evidence should have been considered and disclosed to the decision maker and the public to fulfill FHWA's duty under NEPA and the CEQ regulations to consider alternatives that "restore and enhance" the human environment.[13] The AR should be supplemented with these studies for the court to review FHWA's failure to consider the health benefits that could be achieved.

*Violation of $PM_{2.5}$ Standard Not Considered, Relevant Evidence Not Examined*

FHWA dismisses the Rowangould modeling (Exhibit 33) showing that Project emissions will violate the $PM_{2.5}$ NAAQS as merely a dispute between experts regarding the methodology used to for assessing the impacts of $PM_{2.5}$ emissions. FHWA does not dispute that it is required to determine "how alternatives … will or will not achieve the requirements of … other environmental laws and policies." 40 C.F.R. §1502.2(d). Under the Clean Air Act, the requirement for $PM_{2.5}$ is to ensure in any area designated attainment, such as Denver, that "[t]he

---

[11] Petitioners' Exhibit 28, Thurston Declaration.
[12] Sierra Club Comments on SDEIS, AR 015625-26; Sierra Club Comments on FEIS, 0026029-30.
[13] Doc. No. 1, Petition for Review, Part II, Third NEPA Claim; Doc. No. 88, Motion to Supplement, at 29-30.

6 – Petitioner's Reply to Federal Defendants' Response to Motion to Supplement the Record

maximum allowable concentration of any air pollutant … shall not exceed a concentration … equal to [any] national ambient air quality standard." 42 U.S.C. §7473(b)(4).

FHWA claims that its obligation to assess the impacts of $PM_{2.5}$ emitted from the Project is satisfied by preparing an "emissions inventory." The emissions inventory shows expected vehicle emissions will increase from 2025 through 2035, but does not include road dust and does not account for background air quality contributed by other sources. FHWA provides no explanation for how an emission inventory is used to determine whether Project emissions will violate the NAAQS.

Petitioners commented[14] that FHWA must use the models and procedures required by EPA for a "hot-spot analysis"[15] to determine whether Project $PM_{2.5}$ emissions will violate the NAAQS. EPA's Hot-spot Guidance, §2.4.3,[16] explains that the required elements for performing a "hot-spot analysis" are necessary if a comparison with the NAAQS is to be technically valid:

> . . . emissions modeling, air quality modeling, and representative background concentrations are all necessary as part of a quantitative PM hot-spot analysis in order to demonstrate conformity requirements. [A]n approach that would involve comparing only emissions between the build and no-build scenarios, without completing air quality modeling or considering representative background concentrations, would not be technically supported.

FHWA's emissions inventory approach simply compares current I-70 emissions with future Project emissions, an approach that does not include air quality modeling or consider background concentrations. EPA's Hot-spot Guidance rejects this approach as "not technically supported" for the purpose of comparing highway project emissions with the NAAQS.

---

[14] Sierra Club Comments on SDEIS, AR 015612, 015615, Sierra Club Comments on FEIS, AR 026016, 026025-26.
[15] "*Hot-spot analysis* is an estimation of likely future localized CO, PM10, and/or PM2 5 pollutant concentrations and a comparison of those concentrations to the national ambient air quality standards. Hot-spot analysis assesses impacts on a scale smaller than the entire nonattainment or maintenance area, including, for example, congested roadway intersections and highways or transit terminals, and uses an air quality dispersion model to determine the effects of emissions on air quality." 40 C.F.R. §93.101 "Definitions."
[16] "Transportation Conformity Guidance for Quantitative Hot-spot Analyses in PM2.5 and PM10 Nonattainment and Maintenance Areas" (EPA-420-B-15-084, November 2015). AR 105826.

7 – Petitioner's Reply to Federal Defendants' Response to Motion to Supplement the Record

FHWA asserts that Clean Air Act §7506(c) does not require a conformity determination for PM$_{2.5}$. While the CAA's statutory ban on federal funding does not apply if I-70 emissions violate the NAAQS, under NEPA, FHWA must nonetheless determine if the Project will violate the NAAQS for PM$_{2.5}$. *See Rocky Mountain Wild v. Vilsack,* 843 F. Supp. 2d 1188 (2012).

EPA's technical objections to the methodology used by FHWA make clear that an emission inventory does not demonstrate the impact Project emissions have on NAAQS compliance. Rowangould's modeling analysis was prepared to demonstrate that, by refusing to apply EPA's emissions and air quality models to determine if Project emissions would violate the NAAQS, FHWA failed to obtain the necessary information required to determine compliance with the NAAQS, failed to examine data relevant to understanding Project impacts on air quality, and precluded a determination of the mitigation needed to ensure NAAQS compliance.

The Court cannot effectively review whether the EIS used reliable scientific methods or informed the decision maker and the public of the likely impacts of Project emissions without considering the results obtained by applying EPA's approved modeling procedures and considering background air quality. FHWA and the Court must defer to EPA's technical judgment because EPA, not FHWA, developed the approved MOVES and AERMOD models for estimating the impacts of highway emissions on air quality. FHWA can claim no expertise. Accordingly, the Rowangould Declaration and modeling report are necessary to facilitate the Court's review of FHWA's failure to obtain the data relevant to making an informed decision.

### *NAAQS Violations, Health Impacts from Construction Emissions Not Considered*

FHWA opposes John Brink's analysis of construction emissions for the same reasons it opposes the PM$_{2.5}$ modeling analysis. Petitioners contend that the analysis discloses significant impacts that the decision maker did not consider, but which are relevant to an informed decision.

### *Data and Procedures Critical to Conformity Modeling Not Disclosed.*

The second Rowangould Declaration[17] is submitted so that the Court can understand how Petitioners were deprived of a meaningful opportunity to comment on the modeling analysis performed to demonstrate conformity under the Clean Air Act, and why a remand to FHWA for an opportunity to comment is appropriate. Rowangould explains that, even with his knowledge of the software, he could not understand the consequences of the "refined" modeling without running the model for all receptors, and that to do that he needed additional files not provided. FHWA does not dispute that the modeling files disclosed to the Sierra Club during the comment period on the conformity determination are extremely opaque computerized data files and software. FHWA does not contend that these materials are comprehensible by a lay person or the Court, without the assistance of an expert qualified to read the data and operate the software.

FHWA contends, at 10, that the Court should not supplement the AR because FHWA adequately explained in the Record how and why it "refined" the modeling for the seven receptors where modeled concentrations of $PM_{10}$ are the highest, and where violations of the NAAQS are most likely. Defendants fail to explain that the only place in the record where this explanation appears is in the ROD which was published *after* any opportunity for comment had closed and the final decision made. The government's response confirms that no comprehensible explanation had been provided in response to Petitioners' requests for an explanation during the comment period, and that Petitioners had not been afforded the opportunity for comment required by 40 C.F.R. §93.105(e). Therefore, Exhibit 32 must be included in the Record before the Court to allow for meaningful review of Petitioners' claim.

---

[17] Petitioners' Exhibit 32, Declaration of Dr. Gregory Rowangould, "Report of Investigation of Modeling Results for Receptor Locations Selected for Modeling Emissions of PM10 From the I-70 Central Project."

9 – Petitioner's Reply to Federal Defendants' Response to Motion to Supplement the Record

*Meeting Notes and CDOT Open Records Response*

The notes of the September 2015 meeting with FHWA and the CDOT responses to requests for documents, which acknowledge that health impacts were not assessed and that mitigation was not considered to mitigate health impacts, are communications with decision makers that reveal their complete disregard for health impacts. The meeting notes disclose that FHWA undertook no independent investigation of the post-2010 health effects literature because the only studies mentioned in the FEIS were those presented by the Sierra Club at the September 2015 meeting. CDOT reveals that after release of the FEIS, which had been written by CDOT under its cooperative agreement with FHWA, no analysis of health effects had been performed demonstrating that the decision maker had not made a truly informed decision.

## **CONCLUSION**

WHEREFORE, Petitioners' Motion to Supplement the AR should be granted.

Dated: March 21, 2018                               Respectfully submitted,

  /s/Robert E. Yuhnke
ROBERT E. YUHNKE  (CO Bar No. 12686)
4050 SE Hosner Terrace
Gresham, OR 97080
(303) 499-0425
bob.yuhnke@prodigy.net

  /s/Andrea S. Gelfuso
ANDREA S. GELFUSO  (CO Bar No. 19773)
2402 S. Holland Street
Lakewood Co 80227
(303) 955-1910
agelfuso6@gmail.com

  /s/Gregory N. Corbin
GREGORY N. CORBIN  (CO Bar No. 48468)
Milligan Rona Duran & King LLC
1627 Vine St.
Denver, CO 80206
Tel. 720-414-2000
gnc@mrdklaw.com

# CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of March, 2018, I filed a true and accurate copy of the foregoing with the Clerk of Court via the CM/ECF system, which provided immediate electronic notice of the same to all counsel of record, as indicated below.

/s/ Gregory N. Corbin

Gregory N. Corbin

Carter F. Thurman, Esq.
Mayte Santacruz, Esq.
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Carter.thurman@usdoj.gov
Mayte.santacruz@usdoj.gov

David A. Carson
U.S. Department of Justice-Denver-ENRS
999 17th Street
South Terrace, Suite 370
Denver, CO 80212
David.a.carson@usdoj.gov

*Attorneys for Federal Defendants*

Brent Allen
Federal Highway Administration
Office of the Chief Counsel
Western Legal Services Division
Lakewood, Colorado
Brent.allen@dot.gov

*Of Counsel for Federal Defendants*

John E. Putnam, Esq.
Nicholas A. DiMascio, Esq.
Kaplan Kirsch & Rockwell, LLP
1675 Broadway, Suite 2300
Denver, CO 80202
jputnam@kaplankirsch.com
ndimascio@kaplankirsch.com

Harry Scott Morrow
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO 80203
(720) 508-6000
harry.morrow@coag.gov

*Attorneys for Defendant-Intervenors*