**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-1661-WJM-MEH
*Consolidated with* 17-cv-1679-WJM-MEH

SIERRA CLUB; ELYRIA AND SWANSEA NEIGHBORHOOD ASSOCIATION; CHAFFEE PARK NEIGHBORHOOD ASSOCIATION; and COLORADO LATINO FORUM,

Plaintiffs,

v.

FEDERAL HIGHWAY ADMINISTRATION, ELAINE CHAO, in her official capacity as Secretary of Transportation; and JOHN CATER, in his official capacity as Division Administrator, Defendants,

v.

COLORADO DEPARTMENT OF TRANSPORTATION, and MICHAEL P. LEWIS, in his official capacity as Executive Director of the Colorado Department of Transportation,

Defendant-Intervenors.

---

PETITIONER'S REPLY TO FEDERAL DEFENDANT'S RESPONSE TO MOTION TO CONDUCT LIMITED DISCOVERY, COMPLETE THE RECORD, AND TAKE JUDICIAL NOTICE
(Case No. 17-cv-1679-WJM-MEH)

---

ROBERT E. YUHNKE  (CO Bar No. 12686)
4050 SE Hosner Terrace
Gresham, OR 97080
(303) 499-0425
bob.yuhnke@prodigy.net

ANDREA S. GELFUSO  (CO Bar No. 19773)
2402 S. Holland Street
Lakewood Co 80227
(303) 955-1910
agelfuso6@gmail.com

GREGORY N. CORBIN  (CO Bar No. 48468)
Milligan Rona Duran & King LLC
1627 Vine St.
Denver, CO 80206
Tel. 720-414-2000
gnc@mrdklaw.com

COUNSEL FOR PETITIONERS

# INTRODUCTION

Petitioners, in their opening motion (now Doc. No. 127)[1] asked this Court to approve (1) limited discovery by Petitioners regarding the modeling performed as part of the Agency's conformity decision; (2) inclusion in the Record of documents discovered thereby under the "motion to complete" standard; and (3) inclusion in the Record of five documents created by or in cooperation with FHWA or previously considered by FHWA and related to the adverse health effects to be created by the I-70 East Phase 1 (Central) Project ("Project"). (Doc. 127, Exhibits 38-42, referred to as the "Five Specifically-Identified Documents") Each document designated for inclusion in the Record supports Petitioner's claims that FHWA failed to inform itself and the public about how increased emissions from the Project will damage community health, that FHWA did not consider these effects, and that FHWA should have considered Project alternatives and mitigation measures to minimize the impacts or restore and enhance the human environment. Additionally, contrary to Defendants' position, the FHWA documents excluded from the AR show that the agency knew air quality levels below the National Ambient Air Quality Standards ("NAAQS") cause adverse human health effects, and that FHWA unreasonably failed to acknowledge that highway pollution in compliance with the NAAQS will cause premature death, disease and childhood asthma that must be considered and discussed as part of the NEPA process.

# ARGUMENT

The "presumption of regularity" accorded an agency's administrative record is not intended "to shield [the agency's] action from a thorough, probing, in depth review.'" *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 74 (10th Cir.1994) (*quoting Citizens to Preserve*

---

[1] On March 19, 2018 leave was granted to file a corrected motion. Doc. No. 122. Petitioners filed their corrected motions on March 20, 2018. *See* Doc. Nos. 127 and 128.

1 – Reply to Federal Defendants' Response to Petitioner's Motion to Complete the Record

*Overton Park v. Volpe*, 401 U.S. 402, 415 (1971)). "A complete and thorough administrative record is necessary so that the Court can decide whether the agency 'failed to consider an important aspect of the problem,' or failed to 'explain the evidence which is available,' which would render the decision arbitrary and capricious under the APA." *Colorado Wild, Inc. v. U.S. Forest Service*, 2007 WL 3256662, *2 (D. Colo. 2007) (quoting *Motor Vehicle Manufacturers Ass'n. v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43 (1983)). Here, the presumption has been rebutted by a record that has already been added to twice, with clear omissions regarding crucial decisions made as part of the air quality modeling process.

A. **The Record is Incomplete Because It is Does Not Explain FHWA's Reasoning for Changing Modeling Inputs; Limited Discovery will Provide Needed Information for the Court to Determine if FHWA was Arbitrary and Capricious Making a Conformity Determination .**

Defendants acknowledge that the Record, as lodged on December 14, 2017, did not include everything that FHWA considered in its Record of Decision ("ROD"). (Doc. No. 123 at 2). FHWA's Chris Horn certified the Record was complete. (Doc. No. 123 at 3). It was not. Defendants provided another Record on January 26, 2018. Again, this Record was not complete. Defendants have added additional documents as part of the conferral process on this motion. These missing documents rebut the presumption that the Record as lodged was complete.

As part of the conferral process, Petitioners notified Defendants of the issues related to the air quality modeling for the Clean Air Act conformity determination. (*See* Doc. 127, Ex. 43, at Section I). Petitioners requested documents related to the change in assumptions underlying the supplemental modeling runs for seven receptors because these documents would provide Petitioners with information necessary to understand and comment on FHWA's conformity determination, and for the Court to review Petitioners' claims. For this reason, discovery is a suitable resolution.

Discovery in APA cases is permitted. *Colo. Environmental Coalition v. Office of Legacy Management*, 2010 WL 231641, *1 (D. Colo. Jan. 14, 2010) (permitting discovery to identify "with more particularity the site-specific actions taken by Defendants regarding [mining] leases") (citations omitted). Discovery is not limited to instances of agency bad faith or improper behavior. Discovery is appropriate "where the absence of formal administrative findings makes such investigation necessary in order to determine the reasons for the agency's choice." *National Audubon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2nd Cir. 1997) (*citing Overton Park*, 401 U.S. 420).

Petitioners have provided "clear evidence" that the record is incomplete. The I-70 ROD does not include formal findings or explanations sufficient to determine FHWA's choice of modeling "refinement" made for the conformity determination. The Report by Dr. Rowangould, submitted with Petitioners' Motion to Supplement the Record, Exhibit 32, demonstrates that without these "refinements" the Project did not conform. During the public comment period on the draft conformity determination released with the FEIS, Petitioners requested information on the PM10 modeling process. However, Defendants provided only raw data that required interpretation by an air quality expert, who noted that: "One would have to perform an in-depth technical review in order to answer key critical questions about differences in the new analysis."[2]

In the ROD and in their response to this motion, Defendants assert they initially assumed that all receptors were at ground level. (Doc. No. 123 at p. 7). The Record does not contain a modeling run where all the receptors were run together using this assumption. Petitioners have requested discovery of all such modeling runs and whether they were disclosed to the decisionmaker. (Doc. No. 126 at 3). Additionally, Defendants state that FHWA "refined its methodology to account for the true release height of emissions *at selected receptor locations*, which produce more representative, albeit lower, concentration predictions than *the prior*,

---

[2] Sierra Club Partial Comments on Hot-spot Emissions Analysis and Proposed Conformity Determination, AR 006683.

3 – Reply to Federal Defendants' Response to Petitioner's Motion to Complete the Record

simplified at-grade assumption." (Doc. No. 123 at p.7) (citing AR 000126, AR 122902-06) (emphasis added) (internal quotations omitted). Only seven receptors were run using this new assumption. Petitioners seek discovery of basis for this decision because the Record does not explain how or why *these* seven receptors were selected from the 3,532 receptors to be run with the new assumption, exactly how the input to the model were "refined," and to what extent this information was provided to the decision maker.

Defendants have failed to explain, apart from a cursory reference to a single paragraph in the ROD (AR 000000126), why they re-ran a model to alter inputs for only seven of 3,532 receptors. While the science is complex, Petitioners seek discovery on a simple, but critical, question: Why would FHWA "refine its methodology" to account for the "true release height of emissions" at only seven receptors, located on only one side of a 12-mile section of highway that will itself decrease in elevation between 25 to 40 feet?  (AR at 000000025.) *See Citizens for Alts. To Radioactive Dumping v. U.S. Dep't of Energy*, 485 F.3d 1091, 1097 (10th Cir. 2007).

If, as Defendants allege (Doc. No. 123 at 7), the decision maker was "aware of and approved" refining the release heights of the seven receptors "to match the actual roadway elevations at those locations," why have Defendants provided no documents that explain how the decision maker concluded that those, and only those, seven receptors should be altered? By its own admission, FHWA changed course with regards to the inputs used to model these seven receptors. Without further discovery explaining this change, FHWA appears to have done so arbitrarily or to avoid negative results.

> **B. The Five Documents Available on FHWA or CDOT's Websites Demonstrate that FHWA Arbitrarily Ignored Adverse Human Health Effects Caused By Increased Emissions Resulting From the Project.**

"The rationale for limiting the record to those documents directly or indirectly considered by relevant agency decision makers is grounded in the need to afford adequate deference to agency expertise while ensuring meaningful judicial review of the full administrative record." *Ctr. for*

*Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1275 (D. Colo. 2010) (*citing Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993)). Here, the Five Specifically-Identified Documents are agency documents reflecting the application of agency expertise regarding health effects that was ignored in making this decision. These must be included to provide meaningful judicial review regarding agency failure to consider acknowledged significant health impacts.

As early as 2008, CDOT, in cooperation with FHWA, acknowledged that: "(1) Transportation Conformity determinations are of limited value in NEPA and cumulative effects assessments; (2) There is evidence of environmental degradation, as well as human health impacts, due to air pollution at levels below the National Ambient Air Quality Standards; and (3) NEPA environmental assessments are required to consider "any adverse environmental effects" of the proposed action (emphasis added), thus any anticipated adverse effects related to air pollution, direct and indirect, will be included in cumulative effects analyses.[3] Yet the I-70 ROD and FEIS fail to discuss the environmental degradation, as well as human health impacts, due to air pollution at levels below the NAAQS. Instead, as the Defendants discuss, FHWA "conducted modeling of carbon monoxide and PM10 to ensure NAAQS conformity and prepared emissions inventories using EPA- and APCD-approved methodology." (Doc. 123 at 12) (citing AR 004786-94). This misses the target. FHWA failed to consider the exacerbation of adverse health outcomes likely to occur as a result of increased exposures demonstrated by Project modeling .

### 1. *FHWA is not Permitted to Ignore Relevant Agency Documents Adverse to its Decision.*

The Five Specifically-Identified Documents demonstrate that FHWA recognized that highway pollution impacts to human health are significant triggering the duty under NEPA to analyze and consider these impacts when comparing alternatives, and considering mitigation. These documents provide a framework for assessing how human health is adversely affected by increases in highway pollution. Moreover, the documents reveal that FHWA is aware that

---

[3] Exhibit 41, p. 42 (emphasis in original)

5 – Reply to Federal Defendants' Response to Petitioner's Motion to Complete the Record

NAAQS compliance does not prevent real and harmful health effects. FHWA's documents, whether self-produced or produced in association with CDOT, discuss FHWA's keen awareness that highway projects adversely affect human health. Now, playing ostrich, Defendants ask the Court to permit the Agency to pick and choose which guidance it can voluntarily ignore with no discussion in the record. The Record must include "information that is both favorable and unfavorable. Agencies can not cherry pick information that supports a decision and fail to reveal information that contradicts it." *Forest Guardians v. Kempthorne*, 2008 WL 11337359, *3 (S.C. Ca. 2008) (*citing Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F. 2d 1534, 1548 (9th Cir. 1993).

Further, Defendants argue that the decision makers did not directly or indirectly consider the Five Specifically-Identified Documents. (Doc. No. 123 at 8). This cannot be true because they contain policies or guidance created by agency decision makers. The Five Specifically-Identified Documents are each available on the Department of Transportation's website or CDOT's website. *See* Doc. 127 at 8-12, n. 12, 16, 17, 18, 21, and 22. While these documents may not have passed before Defendant Cater's eyes for this project, they are documents containing relevant policies discussed, reviewed, and adopted by FHWA. However, at least one document, Exhibit 41, passed directly or indirectly before Defendant Cater's eyes as part of an environmental assessment for C470.[4]

These documents are adopted policies or guidance documents, or research papers on which FHWA policies and guidance documents are based. *Id.* By adopting them, FHWA has adopted a policy that requires a division considering a highway project to consider the adverse health effects caused by increased emissions caused from the proposed project. Given that FHWA recognizes this policy, during the NEPA process and in the Record, FHWA must first

---

[4] The environmental assessment signed on behalf of Director Cater is available at https://www.codot.gov/projects/c470/revised-environmental-assessment.html

acknowledge the adverse health effects of increased emissions, and either apply the policy or explain to the public why the agency has chosen not to consider adverse human health effects caused by increased emissions from the project.

Additionally, the Five Specifically-Identified Documents are relevant to Petitioners' claims, as discussed in the opening motion. (Doc. 127 at 8-13). While the Five Specifically-Identified Documents may be used for larger projects such as corridor planning studies or metropolitan area scale data, (Doc. No. 123 at 10), they describe the broader policy that highway projects will have a significant impact on human health when emissions increase.

> 2. **The Five Specifically-Identified Documents Demonstrate that FHWA Failed to Consider a Relevant Factor—Adverse Human Health Effects From Increased Emissions—Before Issuing the ROD.**

Even if the Five Specifically-Identified Documents created in cooperation with FHWA or in FHWA's own files are determined not to have been considered by the Agency, Defendants agree they may be admitted under one of the extra-record evidence exceptions. *See* Doc. No. 123 at 11 ("[T]his Court has recognized a limited number of exceptions under which a court can admit extra-record evidence. . . . These include circumstances in which the record is deficient because the agency ignored relevant factors…." (internal citations omitted) *Citing Ctr. For Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1278-79 (D. Colo. 2010), *Custer City Action Ass'n v. Garvey*, 256 F.3d 1024, 1027 n.1 (10th Cir. 2001).

In some circumstances, extra-record evidence "may illuminate whether an 'EIS has neglected to mention a serious environmental consequence, failed adequately to discuss some reasonable alternative, or otherwise swept stubborn problems or serious criticism ... under the rug.'" *Lee v. U.S. Air Force*, 354 F.3d 1229, 1242 (10th Cir.2004) (*quoting Or. Natural Res. Council. v.. Lowe,* 109 F.3d 521, 526-27 (9th Cir. 1997). Petitioner's Motion to Supplement (Doc. No. 128) and Reply (filed herewith) discuss the exceptions to the prohibition of extra-record materials under which these five documents fall. Namely, these five documents contain evidence

of and explain factors relevant to the agency decision that Defendants did not consider before issuing the ROD. (*See* Doc. No. 128 at 1-2). The Five Specifically-Identified Documents demonstrate that adverse human health effects occur below the NAAQS and are, therefore, a relevant factor. FHWA's failure here is arbitrary and capricious.

Petitioners' claims under NEPA[5] and the Federal-Aid Highway Act ("F-AHA")[6] arise, in part, from evidence in the FEIS Air Quality Technical Report, FEIS Attachment J[7], showing that due to the Project, exposure to fugitive dust will increase 43% by 2035[8] and tailpipe emissions of $PM_{10}$ will increase 10% between 2015 and 2035.[9] These increases in air pollution as a result of the Project are exactly the kinds of increases that are likely to cause adverse human health effects. The Five Specifically-Identified Documents, which demonstrate FHWA's knowledge that adverse human health effects occur below the NAAQS, support Petitioners' claim that adverse human health effects will occur at the projected levels and FHWA should have considered these effects before issuing the ROD.

Further, Defendants acknowledge in section 5.20 of the FEIS[10] that air pollution impacts community health, but failed to evaluate and report any health impacts that would result from increased community exposure to particulate matter and failed to evaluate any alternatives or mitigation to reduce pollutant exposures and improve community health. Just because the NAAQS for $PM_{10}$ and carbon monoxide will be maintained, the presumption that increased exposures to traffic pollution will cause no significant human health impacts does not follow. By relying on this unsupported presumption of no significant health impacts, Defendants contend they have no obligation to assess health impacts and "no specific mitigation measures are

---

[5] Petition For Review, Part II (Doc. No. 1).
[6] Petition For Review, Part III (Doc. No. 1).
[7] FEIS, Attachment J (AR 023395 *et seq.*)
[8] FEIS, Attachment J, Section 7.4.9 (AR 023511).
[9] FEIS, Attachment J, Table 23 (AR 023486).
[10] FEIS, Section 5.20 (AR 018227 *et seq.*).

necessary for the project to proceed."[11] The Five Specifically-Identified Documents, however, demonstrate that Defendants do not agree with this presumption and that these impacts are relevant factors to be considered and discussed in the NEPA context.

### 3. The Court Can Also Take Judicial Notice of The Five Specifically-Identified Documents.

Defendants do not object to taking judicial notice of the Five Specifically-Identified Documents because there is a reasonable dispute about their accuracy or whether that accuracy can be "readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Defendants would be hard-pressed to do so – these are *their* documents. Four of the documents were authored by or on behalf of FHWA and the fifth is a study that FHWA recommends in its Transportation and Health Tool (Ex. 40). These are not obscure documents. Rather, they evidence FHWA's interpretation of what the agency considers are part of its statutory obligations under NEPA.

Individually and together, these documents demonstrate that FHWA should have considered the adverse health effects that will likely be caused by the predicted increases in emissions, including increases in particulate matter that will still comply with the NAAQS. Instead, Defendants contend that judicial notice in APA cases requires Petitioners to meet the independent requirements for completing or supplementing the record. (If Petitioners can meet these independent requirements, why would the Court need to consider judicial notice?) Even under this standard, Petitioners have met this burden, as discussed in their opening motions and replies. *See* Section 2, *infra*; Doc. No. 128 at pp. 1-3; Doc. No. 127 at p. 14.

Defendants' contention oversteps. If accepted, agencies could prepare and provide policies, guidance documents and publications for internal use and for the public that they can choose to ignore without explanation. This is skewing the record by cherry-picking supportive documentation, possibly at its worst. *See Forest Guardians v. Kempthorne*, 2008 WL 11337359,

---

[11] FEIS, Section 5.20 (AR 018230).

*3 (S.D. Ca. 2008). An agency's own policies, publications, resources and guidance documents inform its decision-making processes and view of its statutory obligations. Courts should take judicial notice of these documents to guide their understanding of agency actions and what agencies view as their obligations.

"The doctrine of judicial notice is broadly construed in the 10th Circuit." *In re Telluride Income Growth LP*, 364 B.R. 407, 414 (B.A.P. 10th Cir. 2007). Furthermore, the 10th Circuit allows Courts to take judicial notice in APA cases, without the qualification Defendants propose. *See e.g., New Mexico ex rel. Richardson v. BLM*, 565 F.3d 683, 703 n.22 (10th Cir. 2009) (taking judicial notice of facts contained in documents found on agency websites); *Cruz-Funez v. Gonzales*, 406 F.3d 1187 n.2 (10th Cir. 2005) (taking judicial notice of a document on a related agency's website); *Pueblo of Sandia v. United States,* 50 F.3d 856, 861 n.6 (10th Cir. 1995) (taking judicial notice on appeal of a state historic preservation officer's letters not in the record before the trial court). A court can take judicial notice of facts not reasonably in dispute, without including those facts/documents in the administrative record. *E.g., Or. Nat. Desert Ass'n v. BLM,* 531 F.3d 1114, 1133 n.14 (9th Cir. 2008) (taking notice of a BLM handbook and other BLM case filings because they are public documents, despite not being in the record).

For these reasons, the Court may take judicial notice of the facts contained in the Five Specifically-Identified documents, which demonstrate that, contrary to its actions here, FHWA has issued policys that recognize that increases in particulate matter emissions, even at levels that meet the NAAQS, evidence adverse health effects and are significant impacts that require Divisions of FHWA to address these issues in NEPA analyses.

## CONCLUSION

For the reasons set forth above, Petitioners respectfully request that the Court grant the Motion to Conduct Limited Discovery, Complete the Record, and Take Judicial Notice (Doc. No. 127).

Dated: March 21, 2018                    Respectfully submitted,

  /s/Robert E. Yuhnke
ROBERT E. YUHNKE  (CO Bar No. 12686)
4050 SE Hosner Terrace
Gresham, OR 97080
(303) 499-0425
bob.yuhnke@prodigy.net

  /s/Andrea S. Gelfuso
ANDREA S. GELFUSO  (CO Bar No. 19773)
2402 S. Holland Street
Lakewood Co 80227
(303) 955-1910
agelfuso6@gmail.com

  /s/Gregory N. Corbin

GREGORY N. CORBIN  (CO Bar No. 48468)
Milligan Rona Duran & King LLC
1627 Vine St.
Denver, CO 80206
Tel. 720-414-2000
gnc@mrdklaw.com

**CERTIFICATE OF SERVICE**

        I hereby certify that on this 21st day of March, 2018, I filed a true and accurate copy of the foregoing with the Clerk of Court via the CM/ECF system, which provided immediate electronic notice of the same to all counsel of record, as indicated below.

                                                         /s/ Gregory N. Corbin
                                                          Gregory N. Corbin

| | |
|---|---|
| Carter F. Thurman, Esq.<br>Mayte Santacruz, Esq.<br>U.S. Department of Justice<br>Environment and Natural Resources Division<br>Natural Resources Section<br>P.O. Box 7611<br>Washington, DC 20044-7611<br>Carter.thurman@usdoj.gov<br>Mayte.santacruz@usdoj.gov<br><br>David A. Carson<br>U.S. Department of Justice-Denver-ENRS<br>999 17th Street<br>South Terrace, Suite 370<br>Denver, CO 80212<br>David.a.carson@usdoj.gov<br><br>*Attorneys for Federal Defendants*<br><br>Brent Allen<br>Federal Highway Administration<br>Office of the Chief Counsel<br>Western Legal Services Division<br>Lakewood, Colorado<br>Brent.allen@dot.gov<br><br>*Of Counsel for Federal Defendants* | John E. Putnam, Esq.<br>Nicholas A. DiMascio, Esq.<br>Kaplan Kirsch & Rockwell, LLP<br>1675 Broadway, Suite 2300<br>Denver, CO 80202<br>jputnam@kaplankirsch.com<br>ndimascio@kaplankirsch.com<br><br>Harry Scott Morrow<br>Colorado Attorney General's Office<br>Ralph L. Carr Colorado Judicial Center<br>1300 Broadway<br>Denver, CO  80203<br>(720) 508-6000<br>harry.morrow@coag.gov<br><br>*Attorneys for Defendant-Intervenors* |