IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01661-WJM-MEH
              17-cv-01679-WJM-MEH

SIERRA CLUB,
ELYRIA AND SWANSEA NEIGHBORHOOD ASSOCIATION,
CHAFEE PARK NEIGHBORHOOD ASSOCIATION, and
COLORADO LATINO FORUM,

       Plaintiffs,

v.

FEDERAL HIGHWAY ADMINISTRATION,
ELAINE CHAO, and
JOHN M. CARTER,

       Defendants.

v.

COLORADO DEPARTMENT OF TRANSPORTATION, and
SHAILEN P. BHATT,

       Defendants-Intervenors.

---

## ORDER ON THE SCOPE OF THE ADMINISTRATIVE RECORD

---

**Michael E. Hegarty, United States Magistrate Judge**.

This case in an Administrative Procedure Act ("APA") review of Defendant Federal

Highway Administration's[1] ("FHWA") approval of an expansion project for a portion of Interstate

70 ("I-70"). Plaintiffs Sierra Club, Elyria and Swansea Neighborhood Association, Chafee Park

Neighborhood Association, and Colorado Latino Forum move to supplement the administrative

---

[1] Because Elaine Chao and John Carter are named in their official capacity as FHWA's
Secretary and Division Administrator respectively, I refer to the federal defendants collectively as
FHWA.

record with eight exhibits. In a separate motion, Plaintiffs seek to conduct discovery and complete the administrative record.

I first hold that Plaintiffs have not overcome the presumption against extra-record evidence for the eight documents underlying their motion to supplement. Therefore, I deny Plaintiffs' Corrected Motion to Supplement the Administrative Record.

Next, I permit Plaintiffs to conduct limited discovery into FHWA's modeling of $PM_{10}$ emissions. However, I decline to complete or supplement the record with the five documents Plaintiffs attach to their motion. Accordingly, I grant in part and deny in part Plaintiffs' Corrected Motion to Conduct Limited Discovery, Complete the Record, and Take Judicial Notice.

## BACKGROUND

This case arises out of FHWA's January 19, 2017 Record of Decision ("ROD"), which approved a highway expansion plan for I-70. Am. Petition ¶ 1, ECF No. 25. The plan has become known as the "PCL Alternative." This project will reconstruct a ten mile stretch of I-70 between Interstate 25 and Chambers Road in Denver, Colorado. (AR 1–251); Am. Petition ¶ 8. Plaintiffs contend FHWA's approval failed to comply with the National Environmental Policy Act ("NEPA") and the Transportation Act. Am. Petition ¶¶ 2, 214–318. According to Plaintiffs, FHWA did not adequately analyze the effect the PCL Alternative will have on human health, especially with regard to individuals residing close to the affected area. *Id.* ¶ 12.

On January 26, 2018, FHWA lodged the corrected administrative record. *See* ECF No. 105. Then, on March 9, 2018, Plaintiffs filed the present Motion to Supplement the Administrative Record, ECF No. 128. Plaintiffs seek to add to the record eight documents that were undisputedly not before FHWA when it approved the PCL Alternative. *Id.* Five of these documents are expert

reports allegedly demonstrating that FHWA failed to consider the project's impact on human health. *See* Decl. of Dr. George Thurston ("Thurston Decl."), ECF No. 128-1; First Decl. of Dr. Gregory Rowangould ("First Rowangould Decl."), ECF No. 128-3; Second Decl. of Dr. Gregory Rowangould ("Second Rowangould Decl."), ECF No. 128-4; Decl. of Jonathan Heller ("Heller Decl."), ECF No. 128-5; Decl. of John Brink ("Brink Decl."), ECF No. 128-6. Additionally, Plaintiffs submit a document summarizing nine scholarly articles related to the health impacts of highway emissions. ECF No. 128-2. Finally, Plaintiffs seek to supplement the record with notes from a meeting they had with FHWA administrators, Decl. of Albert Melcher ("Melcher Decl."), ECF No. 128-7, and CDOT's response to a Colorado Open Records Act ("CORA") request. ECF No. 128-8. FHWA contends these documents do not satisfy any of the narrow exceptions to the rule that review must be based on the record before the agency. Resp. to Mot. to Supplement, ECF No. 124.[2] Plaintiffs filed a reply brief on March 21, 2018. Reply in Supp. of Mot. to Supplement, ECF No. 132.

Also on March 9, 2018, Plaintiffs filed the present Motion to Take Discovery and Complete the Administrative Record, ECF No. 127.[3] First, Plaintiffs seek to serve limited discovery regarding the modeling process FHWA used for emissions of $PM_{10}$. Mot. to Complete 6, ECF No. 127. Second, Plaintiffs move to complete or supplement the administrative record with five documents located on FHWA's website. *Id.* at 7–14. Alternatively, Plaintiffs ask me to take judicial notice of

---

[2] Defendant-intervenor Colorado Department of Transportation ("CDOT") joined in FHWA's responses to both of Plaintiffs' motions. ECF Nos. 125–26.

[3] Although Plaintiffs filed the operative version of both motions currently before me on March 20, 2018, ECF Nos. 127–28, I accepted the motions as filed on March 9, 2018. *See* ECF No. 131.

these documents. *Id.* at 14–15. FHWA filed a response on March 19, 2018. Resp. to Mot. to Complete, ECF No. 115. FHWA contends Plaintiffs have not made a significant showing that the record is incomplete with regard to FHWA's $PM_{10}$ modeling decisions. *Id.* at 5–8. Further, FHWA asserts it did not directly or indirectly consider the five documents Plaintiffs seek to add to the record, and Plaintiffs have not met one of the limited exceptions for supplementing the record. *Id.* at 8–13. Plaintiffs subsequently filed a reply brief. Reply in Supp. of Mot. to Complete, ECF No. 133. On March 28, 2018, I held oral argument regarding both motions. *See* ECF No. 134.

## ANALYSIS

There are two types of additions to the administrative record: "(1) materials which were actually considered by the agency, yet omitted from the administrative record ('completing the record'); and (2) materials which were not considered by the agency, but which are necessary for the court to conduct a substantial inquiry ('supplementing the record')." *Ctr. for Native Ecosystems v. Salazar*, 711 F Supp. 2d 1267, 1274 (D. Colo. 2010). Plaintiffs' motion to conduct discovery and complete the record falls primarily under the first category, while Plaintiffs' motion to supplement the record concerns the second.

I first analyze whether to supplement the record with Plaintiffs' eight exhibits. Then, I discuss whether Plaintiffs are entitled to limited discovery and whether the record should be completed or supplemented with the five documents attached to Plaintiffs' motion.

## I. Motion to Supplement the Administrative Record

After addressing the applicable standard for supplementing the administrative record, I individually analyze each of the documents underlying Plaintiffs' motion. I decline to supplement

the record with these documents.[4]

Generally "the agency's action must be reviewed on the basis articulated by the agency and on the evidence and proceedings before the agency at the time it acted." *See Am. Mining Congress v. Thomas*, 772 F.2d 617, 626 (10th Cir. 1985); *Medina Cty. Envtl. Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010) ("[T]he general presumption [is] that review is limited to the record compiled by the agency."). This is because district courts act as reviewing bodies, instead of independent decision makers, when deciding the merits of APA appeals. *Am. Mining Congress*, 772 F.2d at 626. "[A]ny exception to this general rule against the use of extra-record materials must be extremely limited." *Id.*; *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984) ("To review more than the information before the Secretary at the time she made her decision risks our requiring administrators to be prescient or allowing them to take advantage of post hoc

---

[4] In addition to the arguments specific to each exhibit, FHWA asserts that Plaintiffs have waived the opportunity to place all of the exhibits in the record, because Plaintiffs failed to provide them to FHWA. Resp. to Mot. to Supplement 8–9, ECF No. 124. Plaintiffs assert they have not waived their ability to supplement the record, because it is FHWA's responsibility to add to the record all relevant evidence. Reply in Supp. of Mot. to Supplement 3–4, ECF No. 132. The extent to which Plaintiffs may waive their ability to supplement the record with specific pieces of evidence is not clear. Courts, including the Tenth Circuit, have held that it is improper to "review information that [the plaintiff] failed to include in the administrative record or present before the [agency]." *N.M. Envtl. Imp. Div. v. Thomas*, 789 F.2d 825, 835–36 (10th Cir. 1986); *Village of Logan v. U.S. Dep't of the Interior*, No. 12-CV-401 WJ/LFG, 2013 WL 12149188, at *3 (D.N.M. Apr. 26, 2013) (refusing to supplement the administrative record, because the "[p]laintiff had the opportunity to put this evidence before the agency and thereby enter it into the AR during the scoping process, and declined to do so"); *Little Traverse Lake Prop. Owners Ass'n v. Nat. Park Serv.*, 883 F.3d 644, 658 (6th Cir. 2018) (denying a motion to supplement the record, in part because "Plaintiffs had an opportunity to raise objections and submit additional evidence during the 2009 public comment period," but failed to do so). However, in these cases, the plaintiffs entirely failed to raise the subject matter of the extra-record evidence with the agency. Furthermore, denying supplementation of the record on this basis alone would essentially eliminate the recognized exceptions to the extra-record evidence rule. Although this presents an interesting issue, I need not resolve it at this stage, because I find that Plaintiffs fail to establish an exception for any of the exhibits underlying their motion.

rationalizations.").

In *American Mining Congress*, the Tenth Circuit noted the following five exceptions to the general rule against extra-record evidence: (1) when the agency action is not adequately explained and cannot be reviewed properly without considering the cited materials; (2) when the record is deficient, because the agency ignored relevant factors it should have considered; (3) when the agency considered factors that it left out of the formal record; (4) when the case is so complex and the record so unclear that the reviewing court needs more evidence to enable it to understand the issues; and (5) when the evidence coming into existence after the agency acted demonstrates that the actions were right or wrong. 772 F.2d at 626. Additionally, courts have recognized an exception specific to NEPA cases when extra-record evidence "may illuminate whether an [environmental impact statement ("EIS")] has neglected to mention a serious environmental consequence, failed adequately to discuss some reasonable alternative, or otherwise swept stubborn problems or serious criticism . . . under the rug." *Citizens for Alts. to Radioactive Dumping v. U.S. Dep't of Energy*, 485 F.3d 1091, 1096 (10th Cir. 2007) (quoting *Lee v. U.S. Air Force*, 354 F.3d 1229, 1242 (10th Cir. 2004)).

However, courts should construe these exceptions narrowly. *Am. Mining Congress*, 772 F.2d at 626. Evidence indicating a "disagreement regarding the reliability of the methodology [the agency used] and whether it has been applied accurately in this [environmental impact statement]. . . is an insufficient basis for admitting extra-record evidence . . . ." *Lee*, 354 F.3d at 1243–44; *Rags Over the Ark. River, Inc. v. Bureau of Land Mgmt.*, No. 12-cv-00265-JLK, 2014 WL 12741064, at *1 (D. Colo. Mar. 28, 2014) ("[E]vidence showing that a plaintiff's expert disagrees with an agency expert is not a basis to admit extra-record review."). Thus, when analyzing whether to supplement

the record with an expert opinion, the issue is whether the testimony "illuminates gaps in the decision-making process . . . or is simply a conflicting expert opinion on the topic." *Rags Over the Ark. River, Inc.*, 2014 WL 12741064, at *2. "Extra-record evidence which is actually a competing expert opinion . . . may not be admitted under the guise of the NEPA exception." *Colo. Wild v. Vilsack*, 713 F. Supp. 2d 1235, 1241 (D. Colo. 2010) (citing *Lee*, 354 F.3d at 1242). Additionally, the presumption against extra-record evidence is especially strong when the proposed documents were created for litigation. *See Gulf Coast Rod Reel & Gun Club v. U.S. Army Corps of Eng'rs*, No. 3:13-CV-126, 2015 WL 1883522, at *6 (S.D. Tex. Apr. 20, 2015) ("Courts have long refused to consider reports created at the litigation stage when reviewing agency action.").

> A.    Declaration of Dr. George Thurston, ECF No. 128-1

Dr. Thurston's affidavit takes issue with FHWA's conclusion that an individual pollutant's compliance with National Ambient Air Quality Standards ("NAAQS") ensures protection against the public health effects of exposure to that pollutant. Thurston Decl. 5, ECF No. 128-1; Mot. to Supplement 5–6, ECF No. 128. According to Dr. Thurston, compliance with NAAQS does not guarantee that the PCL Alternative will not significantly affect human health. Thurston Decl. 5. Dr. Thurston's report details a variety of professional articles and opines that residents living near the modified section of I-70 will have a greater likelihood of suffering a variety of health problems. *Id.* Plaintiffs contend this report demonstrates FHWA's failure to consider a relevant factor or relevant evidence. Mot. to Supplement 5–6.

Plaintiffs have not met their burden of establishing one of the limited exceptions for supplementing the record. First, I disagree with Plaintiffs' contention that the declaration demonstrates FHWA did not consider a relevant factor—the PCL Alterative's effect on human

health.  FHWA did not fail to analyze the project's effect on human health; FHWA just came to a different conclusion based on a different methodology—compliance with NAAQS.  Therefore, Dr. Thurston's report merely disagrees with the reliability of FHWA's methodology.  This is an insufficient basis on which to supplement the administrative record.  *See, e.g.*, *Colo. Wild*, 713 F. Supp. 2d at 1241 ("Extra-record evidence which is actually a competing expert opinion . . . may not be admitted . . . .").  In *Lee*, the plaintiffs submitted two expert affidavits to support their argument that the Air Force "used a flawed methodology in performing its analysis of noise impacts resulting from the proposed action."  354 F.3d at 1236.  The Tenth Circuit agreed with the district court's decision to strike the expert affidavits from the record.  *Id.* at 1243–44.  According to the court, the affidavits "indicate that there is disagreement regarding the reliability of the methodology and whether it has been applied accurately in this EIS. This only demonstrates that experts disagree, which, as discussed above, is an insufficient basis for admitting extra-record evidence."  *Id.* Similarly, Dr. Thurston's report merely indicates that Plaintiffs disagree with the methodology FHWA used to determine the PCL Alternative's impact on human health; it does not demonstrate that FHWA entirely failed to consider human health.

Second, Plaintiffs argue that I should include the report in the administrative record, because it contains relevant evidence.  However, the relevance of the report alone is an insufficient basis on which to supplement the administrative record.  Indeed, allowing supplementation of the record with any relevant expert reports and professional articles would be directly contrary to the Tenth Circuit's admonition that "any exception to this general rule against the use of extra-record materials must be extremely limited."  *Am. Mining Congress*, 772 F.2d at 626.  Plaintiffs primarily rely on *Center for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267 (D. Colo. 2010) to support their contention

that courts may supplement the record with relevant evidence. Reply in Supp. of Mot. to Supplement 3, ECF No. 132. However, *Center for Native Ecosystems* did not declare a general relevance exception to the rule against consideration of extra-record evidence. The evidence in that case was biological assessments and opinions created by the agency, and it concerned the impact of various projects on the species underlying that lawsuit. *Ctr. for Native Ecosystems*, 711 F. Supp. 2d at 1276. In contrast, the articles Dr. Thurston cites are not specifically related to the PCL Alternative, and FHWA did not write them. *See* Thurston Decl. Therefore, Plaintiffs cannot satisfy their burden simply by arguing that the report contains relevant evidence, and I decline to supplement the administrative record with Dr. Thurston's report.

B.     Published Peer Review Articles, ECF No. 128-2

Plaintiffs next seek to supplement the record with a summary of nine articles related to assessing health impacts from highway emissions. ECF No. 128-2. I deny Plaintiffs' request to include these articles in the record. Contrary to Plaintiffs' contention, the articles do not demonstrate that FHWA failed to consider health effects. Indeed, the articles are not even related to the PCL Alternative. That the articles contain information regarding the health effects of exposure to highway emissions is an insufficient basis on which to supplement the administrative record. *See Swan View Coalition v. Weber*, 52 F. Supp. 3d 1133, 1159 (D. Mont. 2014) (denying supplementation of the record with two peer-reviewed articles, because the agency did not rely on them in making its decision, and they did not show that the agency failed to consider relevant factors). Indeed, this would eliminate the presumption against extra-record evidence by allowing admission of any relevant scientific study.

Furthermore, up to three of these articles were published after FHWA issued the ROD in

January 2017. ECF No. 128-2 (listing three articles published in 2017). Including these articles in the record would result in an impermissible post hoc analysis of FHWA's decision. *See Walter O. Boswell Mem'l Hosp.*, 749 F.2d at 792; *see also Friends of the Earth v. Hall*, 693 F. Supp. 904, 935 n.19 (W.D. Wash. 1988) ("Here again, the Corps attempts to improperly supplement the administrative record with *post hoc* scientific studies . . . ."); *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 942 (9th Cir. 2006) (stating that parties may not use "post-decision information as a new rationalization either for sustaining or attacking the Agency's decision"). Because the articles do not demonstrate FHWA entirely failed to consider a relevant factor, I decline to include them in the administrative record.[5]

C.    First Declaration of Dr. Gregory Rowangould, ECF No. 128-3

Dr. Rowangould's first declaration disputes the accuracy of the hot spot analysis FHWA performed to calculate expected emissions of $PM_{10}$. First Rowangould Decl., ECF No. 128-3. According to Dr. Rowangould, FHWA performed one modeling procedure to determine emissions at over 3,200 receptor locations, but followed a different procedure for the seven receptor locations where emissions will be highest. *Id.* at 16–25. Plaintiffs assert this declaration is necessary to help the District Court understand FHWA's modeling and to demonstrate that FHWA improperly determined the PCL Alternative's compliance with NAAQS for $PM_{10}$. Mot. to Supplement 11–15.

I deny Plaintiffs' request to supplement the record with Dr. Rowangould's first declaration.

---

[5] Although it would be improper to supplement the record with these articles, Plaintiffs may still be able to cite to them in their briefs. In *American Mining Congress*, the Tenth Circuit refused to supplement the record with documents and reports not in the record. 772 F.2d at 626–27. However, the court also declined to strike the references from the briefs. *Id.* According to the court, "[t]he references to such extra-record items . . . are substantially akin to the practice of citation to scientific treatises in ordinary civil cases." *Id.* at 627. Because the only issue before me is whether to supplement the record with these documents, I need not definitively determine this issue.

Plaintiffs rely on the first, second, and fourth exceptions from *American Mining Congress*. Regarding the first and fourth exceptions—that the record does not adequately explain FHWA's actions and that the declaration will help the District Court understand the hot spot analysis FHWA performed—the record contains significant information regarding FHWA's hot spot analysis for $PM_{10}$. (AR 23429–47). Furthermore, the record explains, albeit briefly, why FHWA chose to separately model emissions at seven receptor locations. (AR 126 ("The current assessment incorporated refined methodologies, consistent with EPA guidance, to account for the true release height of emissions at selected receptor locations, which produces more representative, albeit lower, concentration predictions than the prior, simplified at-grade assumption.")).[6]

As for the second exception, Plaintiffs argue that Dr. Rowangould's declaration demonstrates FHWA improperly modeled emissions, which shows FHWA failed to consider a relevant factor. Mot. to Supplement 14. However, when used for this purpose the declaration constitutes a mere disagreement with FHWA's chosen methodology. FHWA modeled $PM_{10}$ emissions based on the height of each receptor location, while Dr. Rowangould models all receptors at the same height. Rowangould Decl. 16–17. It would be improper to supplement the administrative record with Dr. Rowangould's declaration to demonstrate the flawed nature of FHWA's modeling methodology. *See, e.g.*, *Colo. Wild*, 713 F. Supp. 2d at 1241 ("Extra-record evidence which is actually a competing expert opinion . . . may not be admitted . . . .").

---

[6] As I more fully explain in Section II(A) below, Plaintiffs are entitled to limited discovery regarding the details of FHWA's decision to separately model the seven receptor locations. This discovery will further obviate any need to help the District Court understand the analysis FHWA performed.

<u>D.</u>    <u>Second Declaration of Dr. Gregory Rowangould, ECF No. 128-4</u>

Dr. Rowangould's second declaration claims that if FHWA modeled emissions of $PM_{2.5}$ in the same manner as it used for $PM_{10}$ (hotspot analysis), it would have found that emissions of $PM_{2.5}$ are likely to exceed NAAQS.  Second Rowangould Decl. ¶¶ 13–17, ECF No. 128-4.  According to Plaintiffs, this declaration helps demonstrate that FHWA failed to consider a factor—compliance with NAAQS for $PM_{2.5}$.  Mot. to Supplement 8–10.

I disagree.  Dr. Rowangould's report does not prove that FHWA failed to consider $PM_{2.5}$ emissions or compliance with NAAQS.  Instead, Dr. Rowangould's declaration disputes the methodology FHWA used to determine emissions of $PM_{2.5}$.  FHWA calculated emissions inventories—an accounting of the amount of pollutants discharged into the atmosphere—by inputting traffic data, meteorological data, vehicle fleet data, and fuel and control specifications into the EPA MOVES model.  (AR 23448).  Dr. Rowangould's conclusion that the emissions estimates would have been higher if FHWA performed a hot spot analysis demonstrates a mere disagreement as to the appropriate method for analyzing and calculating $PM_{2.5}$ emissions.  As I stated with respect to Dr. Thurston's declaration, Plaintiffs may not supplement the record with documents disputing the reliability of FHWA's methodology.  *See Lee*, 354 F.3d at 1243–44 (stating that evidence indicating a "disagreement regarding the reliability of the methodology [the agency used] and whether it has been applied accurately in this EIS . . . is an insufficient basis for admitting extra-record evidence . . . ."); *San Luis & Delta-Mendota Water Auth.*, No. 09-CV-407 OWW DLB, 2009 WL 5084082, at *4 (E.D. Cal. Dec. 16, 2009) (denying a motion to supplement, because "[t]hese documents either synthesize existing data in different ways or utilize different models to evaluate existing data. They do not raise entirely new 'factors' for consideration and therefore cannot be

considered under the 'relevant factors' exception.").

Additionally, Plaintiffs invoke the exception for documents that help the District Court understand complex issues. Mot. to Supplement 10. According to Plaintiffs, "Dr. Rowangould's report provides the Court a detailed explanation of highly technical matters related to EPA's procedures for assessing the impact of highway emissions on air quality." *Id.* However, the record contains substantial technical information on the relationship between highway emissions and air quality. (AR 122–30). Indeed, the Air Quality Technical Report contains over two hundred pages of material discussing the impact the PCL Alternative will have on air quality. (AR 23395–630). Therefore, I deny Plaintiffs' request to supplement the record with Dr. Rowangould's second declaration.

E.      Declaration of Dr. Jonathan Heller, ECF No. 128-5

Plaintiffs next seek to supplement the record with Dr. Heller's expert report, which discusses health impact assessments ("HIAs") and the role they play in understanding how projects affect the health of communities. Mot. to Supplement 7–8; Heller Decl. ¶ 1, ECF No. 128-5. Plaintiffs contend I should supplement the record with this report, because it provides with the District Court with knowledge of the HIA framework and the factors relevant to assessing health. Mot. to Supplement 7–8. This is important, according to Plaintiffs, because FHWA refused to conduct an HIA during the comment process. *Id.* at 7; (AR 121)

I deny Plaintiffs' request to include Dr. Heller's opinion in the administrative record. Dr. Heller's report primarily provides two forms of information regarding HIAs: (1) background on the usefulness of HIAs and the HIA process and (2) Dr. Heller's opinion that an HIA is feasible and would be beneficial for the PCL Alternative. Heller Decl. 11–18. First, the background information

13

on HIAs does not demonstrate FHWA's failure to consider a relevant factor, and it is not necessary for the District Court to understand the issues. The record contains some background information on HIAs. (AR 121–23, 24711). Furthermore, expert testimony is not necessary for the District Court to understand why HIAs are beneficial.

Plaintiffs have also not demonstrated the applicability of an exception with regard to Dr. Heller's opinion that an HIA on the PCL Alternative is appropriate and feasible. At oral argument, Plaintiffs repeatedly stated that an HIA is a different methodology than FHWA used for assessing health impacts. As the Tenth Circuit has explicitly held, affidavits "indicat[ing] that there is disagreement regarding the reliability of the [agency's] methodology and whether it has been applied accurately in this EIS . . . only demonstrate[] that experts disagree, which . . . is an insufficient basis for admitting extra-record evidence." *Lee*, 354 F.3d at 1236. Accordingly, I decline to supplement the record with the Dr. Heller's declaration.

### F.    Declaration of John Brink, ECF No. 128-6

Mr. Brink's declaration uses EPA guidance to analyze the impact fugitive dust emissions will have on community exposure to $PM_{10}$ during construction of the PCL Alternative. Brink Decl. 5–12, ECF No. 128-6. According to Mr. Brink, fugitive dust emissions will exceed that predicted by FHWA in its $PM_{10}$ air quality modeling analysis. *Id.* Based on Mr. Brink's calculations, the PCL Alternative will violate NAAQS. Mot. to Supplement 10–11. Plaintiffs claim this declaration is relevant to establishing that FHWA failed to consider community health. Mot. to Supplement 11.

I deny Plaintiffs' request to supplement the record with Mr. Brink's declaration. Contrary to Plaintiffs' contention, FHWA did not fail to consider the impact fugitive dust emissions will have on community health. FHWA estimated fugitive dust emissions and discussed methods for reducing

these emissions. (AR 23511, 23515–16). That Mr. Brink and Plaintiffs disagree with FHWA's estimate does not provide a valid basis for supplementing the administrative record. *See, e.g.*, *Colo. Wild*, 713 F. Supp. 2d at 1241 ("Extra-record evidence which is actually a competing expert opinion . . . may not be admitted . . . .").

G.      Declaration of Albert Melcher, ECF No. 128-7

Albert Melcher's declaration authenticates and incorporates notes from a meeting between Plaintiffs and FHWA. Melcher Decl., ECF No. 128-7. The notes detail issues Plaintiffs raised with FHWA officials regarding the health effects of the PCL Alternative. *Id.* Plaintiffs contend the notes demonstrate FHWA's failure to consider human health. Mot. to Supplement 15.

I disagree.[7] As I have previously stated, the record estimates emissions from the PCL Alternative and discusses the potential health impacts of these pollutants. (AR 18227–48). Plaintiffs do not identify in their motion any more specific relevant factor discussed in the meeting notes that FHWA did not consider. In their reply brief, Plaintiffs contend the notes disclose that "FHWA undertook no independent investigation of the post-2010 health effects literature because the only studies mentioned in the [Final EIS] were those presented by the Sierra Club at the 2015 meeting." Reply in Supp. of Mot. to Supplement 11. However, even assuming "post-2010 health effects literature" is a "relevant factor," the notes do not reveal that FHWA failed to analyze post-2010 studies. To the contrary, Plaintiffs' admission that FHWA discussed the studies they presented

---

[7] Furthermore, Plaintiffs do not argue, and I do not find, that FHWA actually considered the notes. Although FHWA potentially considered the topics discussed in the notes, Plaintiffs do not contend they provided the notes to FHWA. Accordingly, Plaintiffs have not met their burden of demonstrating that the notes are part of the complete administrative record. *See Ctr. for Native Ecosystems*, 711 F. Supp. 2d at 1275 (stating that to complete the administrative record, the plaintiffs must show "that the[] documents were directly or indirectly considered by the relevant agency decision makers.").

demonstrates that FHWA actually considered health effects literature. *See id.* Plaintiffs may still argue that the depth of FHWA's discussion and analysis of the post-2010 health effects literature was arbitrary and capricious. Accordingly, I decline to supplement the administrative record with Mr. Melcher's declaration and meeting notes.

H. Response to Plaintiffs' CORA Request, ECF No. 128-8

Lastly, Plaintiffs seek to supplement the record with CDOT's response to their CORA request. Mot. to Supplement 16. Relevant here, the request asked for: (1) information related to any investigation of the expected concentrations of $PM_{2.5}$, (2) original scientific investigation into the potential air quality and public health benefits of alternatives to the chosen project, and (3) reviews of scientific literature CDOT and FHWA conducted specific to addressing the causal connections between exposure to $PM_{2.5}$ and adverse health outcomes for residents of north Denver neighborhoods. ECF No. 128-8. CDOT responded that (1) other than an emissions inventory, no other investigation into the expected concentrations of $PM_{2.5}$ was completed; (2) over ninety alternatives were considered, but none of them were evaluated or assessed for air quality or health impacts; and (3) no investigation or literature review was conducted specific to the north Denver neighborhoods. *Id.* Plaintiffs contend this information should be included in the record, because it demonstrates FHWA's failure to consider the impact the PCL Alternative will have on community health. Mot. to Supplement 16.

I decline to supplement the record with this document. CDOT's response to the first request does not reveal that FHWA failed to consider a factor. CDOT's statement that FHWA conducted an emissions inventory for $PM_{2.5}$ demonstrates only that FHWA considered $PM_{2.5}$ emissions in a manner different than Plaintiffs would have liked. To the extent the second and third requests

demonstrate FHWA's failure to consider relevant factors, FHWA's admissions are already reflected in the record. If FHWA did not evaluate the air quality and health impacts of the ninety alternatives, the record will demonstrate FHWA's failure to do so. Similarly, if FHWA did not review literature specific to north Denver neighborhoods, the record will reflect that. Indeed, FHWA is required to include in the record any literature it reviewed while formulating the EIS and ROD. Because FHWA's responses include nothing other than FHWA's admission that it did not perform certain analyses, supplementing the record with the CORA responses would improperly add redundant material to the record. *See generally Animal Def. Council v. Hodel*, 840 F.2d 1432, 1437 (9th Cir. 1988) (refusing to supplement the administrative record, because it contained "adequate information" regarding the agency's decision); *see also SLPR, LLC v. U.S. Army Corps of Eng'rs*, No. 06-CV-1327 MMA (POR), 2011 WL 1648732, at *9 (S.D. Cal. May 2, 2011) ("[T]here is no need to supplement the administrative record with the duplicative information."). As such, CDOT's bare assertion that it did not conduct any additional investigation is not appropriate for inclusion in the record.

## II.     Motion to Conduct Discovery and Complete the Administrative Record

I first find that limited discovery related to FHWA's decision to separately model seven receptor locations while estimating $PM_{10}$ emissions is appropriate. Then, I conclude Plaintiffs have not met their burden of demonstrating I should complete or supplement the record with the five documents described in their motion.

### A.     Limited Discovery is Appropriate.

Plaintiffs seeks to conduct discovery related to FHWA's $PM_{10}$ emissions modeling, because the record does not explain why FHWA performed separate modeling runs for the seven receptors

with maximum expected $PM_{10}$ concentration. Mot. to Complete 5–8, ECF No. 127. According to Plaintiffs, discovery may reveal how and why these seven receptors were selected, how the variables in the model were refined, and to what extent this information was provided to the decision maker. Reply in Supp. of Mot. to Complete 5, ECF No. 133. FHWA contends the record already explains its rationale for performing different modeling runs—the seven receptor locations are not at ground level. Resp. to Mot. to Complete 6–9, ECF No. 123. According to FHWA, modeling emissions based on receptor height is consistent with EPA guidance. *Id.*

"When a showing is made that the record may not be complete, limited discovery is appropriate to resolve that question." *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993). A complete administrative record "contains 'all documents and materials directly or indirectly considered by the agency.'" *Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1275 (D. Colo. 2010) (quoting *Bar MK Ranches*, 994 F.2d at 739). Whether or not to permit discovery is left to the trial court's discretion. *See CF&I Steel Corp. v. Econ. Dev. Admin.*, 624 F.2d 136, 141 (10th Cir. 1980) (finding that the trial court did not abuse its discretion in permitting discovery).

I conclude Plaintiffs are entitled to limited discovery. Critically, the only statement in the record regarding FHWA's decision to separately model the seven receptor locations is:

> The analysis in the Final EIS relied on assumptions intended to simplify the assessment, which led to conservatively high predictions of ambient $PM_{10}$ concentrations in the vicinity of the project corridor. One such assumption made in the previous assessment was to assume that all highway links are located at ground-level when, in reality, this is not the case because portions of the highway are elevated or below ground depending on the alternative. The current assessment incorporated refined methodologies, consistent with EPA guidance, to account for the true release height of emissions at selected receptor locations, which produces more representative, albeit lower, concentration predictions than the prior, simplified at-grade assumption.

18

(AR 126).[8] As Plaintiffs contend, discovery may reveal who made the decision to adjust the model, what specific guidance and studies that person found most important, how exactly the model was refined, and the extent to which this information was provided to the decision maker. If this information is not privileged, it will be appropriate for inclusion in the administrative record, as it will demonstrate evidence FHWA considered and actions FHWA took in formulating the ROD. *See Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 285 (D.C. Cir. 1981) ("When the record is inadequate, a court may 'obtain from the agency, either through affidavits or testimony, such additional explanations of the reasons for the agency decision as may prove necessary.'" (quoting *Camps v. Pitts*, 411 U.S. 138, 142–43 (1973))); *Bar MK Ranches*, 994 F.2d at 739 (stating that "documents and materials directly or indirectly considered by the agency" are appropriate for inclusion in the administrative record).

Therefore, I will permit Plaintiffs to serve five interrogatories on FHWA and/or CDOT related only to FHWA's decision to separately model the seven receptor locations. Although Plaintiffs seek to serve document requests, counsel for FHWA and CDOT represented at oral argument that they have no documents related to the modeling decision. If FHWA has since discovered non-privileged documents discussing or explaining the basis for its decision, it must provide those documents to Plaintiffs.

### B. Completing or Supplementing the Record With Plaintiffs' Five Documents Is Not Proper.

Plaintiffs next seek to complete the record with five documents located on FHWA's website.

---

[8] FHWA cites to AR 122902–06 as EPA guidance instructing modelers to include source release height. Resp. to Mot. to Complete 7. However, this section of the administrative record does not include any statement by EPA regarding modeling or source release height.

Mot. to Complete 7–14. These documents are: (1) the Health in Transportation Planning Framework, which is an FHWA position paper containing guidance on integrating health determinants when reviewing transportation projects, ECF No. 127-2; (2) a list of frequently asked questions in which the U.S. Department of Transportation ("DOT") explains how transportation affects public health, ECF No. 127-3; (3) a DOT web page print-out explaining the impact transportation can have on public health, ECF No. 127-4; (4) the Cumulative Effects Analysis, which is a document prepared by CDOT analyzing how cumulative impacts on the environment can be identified and studied in the context of transportation projects, ECF No. 127-5; and (5) the Fine Particulate Air Pollution and Life Expectancy Study, which concludes that a reduction in exposure to fine-particulate air pollution contributes to improvement in life expectancy, ECF No. 127-6. Plaintiffs contend the record should include these documents, because they were before FHWA at the time of its decision, and FHWA directly or indirectly considered them. Mot. to Complete 7–14. Alternatively, Plaintiffs assert that I should supplement the record with these documents, because they demonstrate FHWA failed to consider human health when approving the PCL Alternative. *Id.* at 14. Lastly, Plaintiffs ask me to take judicial notice of the documents. *Id.* at 15–16.

1.      Completing the Record

When analyzing whether the administrative record is complete, a presumption exists in favor of the agency. *Bar MK Ranches*, 994 F.2d at 740 ("The court assumes the agency properly designated the Administrative Record absent clear evidence to the contrary."). To overcome this presumption, Plaintiffs "must clearly set forth in their motion: (1) when the documents were presented to the agency; (2) to whom; (3) and under what context." *Ctr. for Native Ecosystems*, 711 F. Supp. 2d at 1275. Additionally, Plaintiffs must establish "that the[] documents were directly or

indirectly considered by the relevant agency decision makers." *Id.*

I find Plaintiffs have not met their burden of demonstrating the five documents were presented to FHWA and considered by FHWA while formulating the ROD.[9]  Plaintiffs do not attempt to explain when the five documents were presented to FHWA.  Instead, the relevant section of Plaintiffs' brief consists entirely of the legal standard for completing the record.  Mot. to Complete 13–14.  To the extent Plaintiffs argue FHWA considered the documents by creating them and posting them on its website, this is insufficient to demonstrate the agency decision makers directly or indirectly considered the documents.  *See Ctr. for Native Ecosystems*, 711 F. Supp. 2d at 1277–78 (denying the plaintiffs' request to complete the record, notwithstanding that the agency created the documents and analyzed a summary of the documents); *see also Nat. Min. Ass'n v. Jackson*, 856 F. Supp. 2d 150, 157 (D.D.C. 2012) ("It is not enough for the plaintiffs to assert that 'the EPA knew about these' documents, rather, the plaintiffs 'must offer non-speculative grounds for their belief that the [agency] actually considered [the documents in question].'" (internal citations omitted) (quoting *Marcum v. Salazar*, 751 F. Supp. 2d 74, 81 (D.D.C. 2010))).  Furthermore, Plaintiffs acknowledge in their reply brief that FHWA ignored these documents.  Reply in Supp. of Mot. to Complete 6–7, ECF No. 133.  Therefore, these documents are not part of the complete administrative record.  Whether I should supplement the record with these documents is a different issue.

---

[9] Plaintiffs spend a significant portion of their brief explaining the relevance of the five documents.  Mot. to Complete 9–13.  As I more fully explain with regard to Dr. Thurston's expert report, a document's relevance does not qualify it for inclusion in the record.  Indeed, regardless of its relevance, the document must have been actually presented to the agency and directly or indirectly considered by the agency decision maker.  *See, e.g.*, *Ctr. for Native Ecosystems*, 711 F. Supp. 2d at 1275.

## 2. Supplementing the Record

I also deny Plaintiffs' request to supplement the record. First, Plaintiffs argue I should include the Corridor Planning Framework in the record, because it is posted on FHWA's website and it provides a framework for incorporating consideration of health impacts into transportation project planning. Mot. to Complete 9–10. Thus, according to Plaintiffs, this document demonstrates that the health impact of a project is a relevant factor that FHWA should have considered. *Id.* However, the record already contains significant evidence demonstrating that FHWA considers health impacts relevant and that FHWA actually analyzed the health impacts of the PCL Alternative. (AR 121–23, 18227–48, 23406–10). Furthermore, because Plaintiffs do not specifically state how FHWA failed to follow the guidance in the framework, this document does not show that FHWA failed to consider a relevant factor.

For similar reasons, I deny Plaintiffs' request to supplement the record with the answers to frequently asked questions. Plaintiffs contend this document is relevant, because it explains how transportation affects public health and that DOT considers health to be a relevant factor. Mot. to Complete 10–11. However, Plaintiffs fail to tie those aspects of the document to an exception to the rule against extra-record review, and I find that this document does not satisfy an exception. First, the District Court does not need the frequently asked questions to understand that FHWA considers health effects from air pollution relevant to its project evaluations, because the record contains this information. For example, the answer to question 7 explains that FHWA generally conducts a detailed assessment of health effects, such as safety, air and water quality, and noise. ECF No. 39, at 4–5. The record contains FHWA's assessment of these categories as they relate to the PCL Alternative. (AR 10209–372). Second, the document's discussion of how transportation affects

public health does not prove that FHWA failed to consider a relevant factor while drafting the ROD in this case.

Plaintiffs next seek to supplement the record with a screen shot of DOT's website. Mot. to Complete 11–12; ECF No. 127-4. The web page explains DOT's transportation health tool and lists resources suggesting that transportation is a leading source of air pollutants. *Id.* Again, to the extent Plaintiffs seek to use this document solely to demonstrate that the health effects of transportation are important to FHWA, the record already contains this information. Additionally, Plaintiffs make no attempt to explain how this document reveals a relevant factor that FHWA failed to consider when drafting the EIS and ROD. Therefore, Plaintiffs have not articulated a basis on which I may supplement the record with this document.

Plaintiffs next seek to add to the record the Areawide Coordinated Cumulative Effects Analysis, which is a report prepared by CDOT that discusses how agencies can identify and study cumulative impacts on the environment from transportation projects. Mot. to Complete 12–13; ECF No. 127-5. According to Plaintiffs, the study acknowledges that human health may be significantly affected at emission levels below NAAQS. *Id.* at 12. However, this study does not demonstrate FHWA failed to consider a relevant factor. Instead, it shows a mere disagreement with FHWA's methodology for analyzing effects on human health. As I discuss in more detail with regard to Plaintiffs' motion to supplement, documents demonstrating disagreements with an agency's methodology are not entitled to inclusion in the record. *See, e.g.*, *Lee v. U.S. Air Force*, 354 F.3d 1229, 1243–44 (10th Cir. 2004) ("[D]isagreement regarding the reliability of the methodology [the agency used] and whether it has been applied accurately in this EIS . . . is an insufficient basis for admitting extra-record evidence . . . .").

Lastly, Plaintiffs seeks to supplement the record with an article titled, Fine Particulate Air Pollution and Life Expectancy in the United States.  Mot. to Complete 13; ECF No. 127-6. According to Plaintiffs, "this document is relevant because it provides the Court with the details of the effects of air pollution on respiratory health and shows that respiratory health and its relationship with decreases in particulate matter should have been considered during the decisionmaking process." Mot. to Complete 13.  However, a document's relevance does not qualify it for inclusion in the record.  *See generally Am. Mining Congress v. Thomas*, 772 F.2d 617, 626 (10th Cir. 1985) ("[A]ny exception to this general rule against the use of extra-record materials must be extremely limited.").  Furthermore, the record indicates FHWA reviewed the effects of air pollution on respiratory health.  (AR 18248, 23408–09).  Therefore, the document does not indicate that FHWA failed to consider respiratory health.

In sum, I find that Plaintiffs have not met their burden of establishing one of the narrow exceptions for extra-record review of the five documents they identify in their motion to complete.[10]

## CONCLUSION

I first find Plaintiffs have not met their burden of establishing any of the narrow exceptions that would entitle them to supplement the record.  Importantly, none of the documents Plaintiffs submit demonstrate that FHWA failed to consider a relevant factor.  Accordingly, Plaintiffs' Corrected Motion to Supplement the Administrative Record [filed March 20, 2018; ECF No. 128]

---

[10] Alternatively, Plaintiffs ask that I take judicial notice of the five documents. Mot. to Complete 14–15.  As I stated at the motion hearing, I decline to do so.  The purpose of the present motions is to define the scope of the administrative record.  By deciding that these documents are not appropriate for inclusion in the record, I have decided the issue presently before me.  Whether to take judicial notice of the documents and permit citation to them in the merits briefing is an issue better left to the judicial officer who decides the merits of this appeal.

is **denied**.

Next, I find Plaintiffs are entitled to five interrogatories regarding FHWA's decision to separately model seven receptor locations while estimating PM$_{10}$ emissions. However, I decline to complete or supplement the record with the five documents Plaintiffs identify. Accordingly, Plaintiffs' Corrected Motion to Conduct Discovery, Complete the Record, and Take Judicial Notice [filed March 20, 2018; ECF No. 127] is **granted in part and denied in part**. Because I order limited discovery in this case, I impose the following deadlines:

Deadline to serve written discovery:          April 13, 2018
Deadline to respond to written discovery:     April 27, 2018
Deadline for Plaintiffs' opening brief:       May 25, 2018
Deadline for Defendants' response brief:      July 23, 2018
Deadline for Plaintiffs' reply brief:         August 24, 2018

Entered and dated at Denver, Colorado, this 6th day of April, 2018.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge