**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-1661-WJM-MEH
*Consolidated with* 17-cv-1679-WJM-MEH

SIERRA CLUB; ELYRIA AND SWANSEA NEIGHBORHOOD ASSOCIATION; CHAFFEE PARK NEIGHBORHOOD ASSOCIATION; and COLORADO LATINO FORUM,

Plaintiffs,

v.

FEDERAL HIGHWAY ADMINISTRATION, ELAINE CHAO, in her official capacity as Secretary of Transportation; and JOHN M. CATER, in his official capacity as Division Administrator, Defendants,

v.

COLORADO DEPARTMENT OF TRANSPORTATION, and MICHAEL LEWIS, in his official capacity as Executive Director of the Colorado Department of Transportation,

Defendant-Intervenors.

**PETITIONERS' OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER ON THE SCOPE OF THE ADMINISTRATIVE RECORD, DENYING THE MOTION TO COMPLETE THE ADMINISTRATIVE RECORD**
(Case No. 17-cv-1679-WJM-MEH)

| | |
|---|---|
| ROBERT E. YUHNKE  (CO Bar No. 12686)<br>4050 SE Hosner Terrace<br>Gresham, OR 97080<br>(303) 499-0425<br>bob.yuhnke@prodigy.net | GREGORY N. CORBIN  (CO Bar No. 48468)<br>Milligan Rona Duran & King LLC<br>1627 Vine St.<br>Denver, CO 80206<br>Tel. 720-414-2000<br>gnc@mrdklaw.com |
| ANDREA S. GELFUSO  (CO Bar No. 19773)<br>2402 S. Holland Street<br>Lakewood Co 80227<br>(303) 955-1910<br>agelfuso6@gmail.com | COUNSEL FOR PETITIONERS |

The Sierra Club, Elyria and Swansea Neighborhood Association, Chaffee Park Neighborhood Association, and Colorado Latino Forum (collectively "Petitioners") object to the Magistrate Judge's Order on the Scope of the Administrative Record to the extent it denies their Motion to Conduct Limited Discovery, Complete the Record, and Take Judicial Notice ("Motion to Complete") (ECF No. 127). *Order on the Scope of the Administrative Record* (Apr. 6, 2018) (ECF No. 136) ("Order").[1] Petitioners requested five documents in Defendants' files[2] be added to the Administrative Record ("AR") of that set forth guidance and policy statements related to the impact on health from pollution when highway projects increase emissions. The Order errs by holding that these were not before the Agency, despite being Agency documents prepared for use with highway and transportation projects to help federal, state, and local agencies evaluate significant health impacts. The AR, as is, excludes discussion of these serious health issues beyond a terse note that meeting the National Ambient Air Quality Standards ("NAAQS") is a sufficient discussion of this relevant factor.

## STANDARD OF REVIEW

These objections are filed pursuant to Fed. R. Civ. P. 72(a) and 28 U.S.C. §636(b)(1)(A), under which the standard of review is whether the Order is clearly erroneous or contrary to law.

## ARGUMENT

Petitioners object that the Order failed to provide the relief required under the law on three grounds. First, Petitioners object to the Order's exclusion from the AR of all five U.S. DOT/FHWA policy guidance documents and recommended study—all posted on the agencies' websites—that Petitioners moved to include in the AR. All five documents were "before" the

---

[1] The Order addresses Petitioners' separate motions to complete and supplement the record. These objections address the Motion to Complete. Petitioners incorporate their filings (ECF Nos. 127 & 133) by reference.
[2] These documents are in the files of one or more of the following agencies: the U.S. Department of Transportation ("U.S.DOT"), the Federal Highway Administration ("FHWA") (an agency of U.S.DOT), and the Colorado Department of Transportation ("CDOT"), FHWA's longtime state partner in the I-70 Central Project ("Project").

1 – Petitioners' Objections – Motion to Complete

defendant agencies[3] when they issued the Record of Decision ("ROD") approving the Project. All five documents define and identify the evidence relevant to examine health impacts as emissions increase as a "relevant factor." All five documents include information known to Defendants that the Court should review to determine whether Defendants unlawfully failed to consider this relevant factor. Second, the Order wrongfully denied Petitioners' alternative request to supplement the AR with these materials.[4]

### A. Denial of the Motion to Complete is Clearly Erroneous or Contrary to Law.

The Order rejects Petitioners' effort to complete the AR in just over one page. A court reviewing a matter under the Administrative Procedure Act ("APA") must determine whether the administrative record contains "all documents and materials directly or indirectly considered by the agency." *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993). Although a court must presume that an agency properly designated the record, petitioners may overcome the presumption. *Colorado Environmental Coalition v. Office of Legacy Management*, 2017 WL 897838, *1 (D. Colo. Mar. 7, 2017) (citing *Ctr. For Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1274 (D. Colo. 2010)).

#### 1. The Order does not allow the Court to review the "whole record."

The APA requires that "the court shall review the whole record." 5 U.S.C. §706. The Supreme Court has interpreted the "whole record" to include "the full administrative record that was before the Secretary at the time he made his decision." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971).[5] Effective judicial review of an agency action critically depends on ensuring that "the full administrative record" is available to the Court. Generally, a

---

[3] Defendants, as collectively referred to herein, are the FHWA, U.S. DOT Secretary, FHWA Administrator for the Colorado Division, and Defendant-Intervenor CDOT.
[4] The Magistrate Judge declined to address Petitioners' further request in the alternative to take judicial notice of these materials: "Whether to take judicial notice of the documents and permit citation to them in the merits briefing is an issue better left to the judicial officer who decides the merits of this appeal." ECF No. 136 at 24 n.10. Petitioners do not object to this portion of the Order and defer addressing this issue until it is timely.
[5] Abrogated on other grounds in *Califano v. Sanders*, 430 U.S. 99 (1977).

reviewing Court has "wide latitude in correcting omissions from the agency record under review." *Consumers Union v. Federal Power Commission*, 510 F.2d 656, 661 (D.C. Cir. 1974). A court may order the record completed when documents at issue: (1) were known to the agency at the time it made its decision; (2) "are directly related to the decision"; and (3) "are adverse to the agency's position." *Public Citizen v. Heckler*, 653 F. Supp. 1229, 1237 (D.D.C. 1987).

The "full administrative record" required by *Overton Park* includes *both* all documents expressly considered by an agency and documents before the agency at the time it acted, even if it did not expressly base its decision on those documents. The "whole record"

> "is not necessarily those documents that the *agency* has compiled and submitted as 'the' administrative record…. The 'whole' administrative record …consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position."

*Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (quoting *Exxon Corp. v. Dep't of Energy*, 91 F.R.D. 26, 32 (N.D. Tex. 1981) (emphasis in original). "An agency may not submit an administrative record to the court which contains only documents favoring the agency's decision and omits documents present in the agency's file which bear upon matters before the court." *National Wildlife Fed'n v. Burford*, 677 F. Supp. 1445, 1457 (D. Mont. 1985).

### a. All five documents were known to the agency when it made its decision.

Four of the documents[6] were created by high level planning and policy offices within the Office of the DOT Secretary, including the Under Secretary for Policy who "directs transportation policy development,"[7] or the Office of the FHWA Administrator, including

---

[6] The four documents are: (1) "Health in Transportation Corridor Planning Framework" (FHWA, published on or before March 18, 2016) (Ex. 38), available at https://www.fhwa.dot.gov/planning/health_in_transportation/planning_framework/the_framework/fhwahep16014.pdf ; (2) "Frequently Asked Questions" (Ex. 39), available at https://www.fhwa.dot.gov/planning/health_in_transportation/faq/faq.pdf; (3) "Transportation Health Tool" ("THT", first published on October 26, 2015) (Ex. 40), available at https://www.transportation.gov/transportation-health-tool, and (4) Fine Particulate Air Pollution and Life Expectancy in the United States" New England Journal of Medicine. N. Engl. J. Med. 2009; 360:376-386 (Ex. 42), available at http://www.nejm.org/doi/full/10.1056/NEJMsa0805646.

[7] See https://www.transportation.gov/policy.

3 – Petitioners' Objections – Motion to Complete

FHWA's Office of Planning, Environment and Realty, and Office of Policy and Governmental Affairs. Considerable work was done under the Administrator's supervision by the Health in Transportation Working Group, whose website states:

> USDOT is committed to promoting better consideration of health outcomes in transportation. Our work is focused on the following objectives: Promote safety, Improve air quality, Respect the natural environment through Context Sensitive Solutions, Improve social equity by improving access to jobs, health care and other community services, Create additional opportunities for the positive effects of walking, biking, public transportation, and ride- and vehicle-sharing, Conduct research on transportation's role in improving quality of life.[8]

The fifth[9] was prepared by the University of Colorado's Center for Geotechnical Engineering Science, CDOT's DTD Applied Research and Innovation Branch, and FHWA.

### b. All five documents are "directly related to the decision."

Each document discusses the adverse health impacts caused by increases in highway emissions—as opposed to the proposition that adverse health impacts only occur at levels above the NAAQS. Agencies should consider and review this information in highway project decisions.

- U.S. DOT's "Health in Transportation Corridor Planning Framework" ("Health Framework") directs decision makers "to understand how incorporating health will impact the transportation priorities and investments" and:

    > aims to support transportation agency efforts to incorporate health into corridor planning studies. Transportation practitioners at the State, regional, and local levels who conduct or participate in corridor studies are the intended audience for the Framework…. Health issues, goals, and priorities are very context specific, and the Framework does not provide answers or outcomes. It identifies things to consider, as well as data, tools, and resources that may be helpful.[10]

- U.S. DOT's "Frequently Asked Questions"[11] is a document in "Q and A" format that discusses how U.S. DOT and FHWA "address health through transportation planning and

---

[8] https://www.fhwa.dot.gov/planning/health_in_transportation/
[9] See https://www.codot.gov/programs/research/pdfs/2008/accea.pdf/
[10] ECF No. 127, Ex. 38 at 2.
[11] ECF No. 127, Ex. 39.

4 – Petitioners' Objections – Motion to Complete

decisionmaking," and demonstrates that at the Department level U.S. DOT considers health impacts to be a relevant factor in its decisionmaking process.[12]

- U.S. DOT's Transportation and Health Tool ("THT") "provides information and resources to help agencies better understand the links between transportation and health and to identify strategies to improve public health through transportation planning and policy."[13]

- "Fine Particulate Air Pollution and Life Expectancy in the United States" was originally published in 2009 as a Special Article by the New England Journal of Medicine. N. Engl. J. Med. 2009; 360:376-386.[14] FHWA included it on its THT website as a recommended resource to support FHWA's assertion that:

   > Motor vehicles are a leading source of air pollutants that affect human health. Vehicle emissions contribute to the formation of ground level ozone (smog), which can trigger health problems such as aggravated asthma, reduced lung capacity, and increased susceptibility to respiratory illnesses, including pneumonia and bronchitis. Motor vehicles, particularly those used for freight, are also a major source of fine particulate matter.
   >
   > Many scientific studies have linked breathing particulate matter to significant health problems, including asthma, chronic bronchitis, and heart attacks. Diesel particulate matter is of particular concern because long-term exposure is likely to cause lung cancer. Levels of traffic-related air pollution are higher near major roadways that have high traffic volume.[15]

- FHWA and CDOT cosponsored the 2008 *Areawide Coordinated Cumulative Effects Analysis - Part I* ("ACCEA")[16] to:

   > facilitate the NEPA process by making information about cumulative effects analysis, environmental assessments, and environmental impact statements more readily available to those who are responsible for identifying and mitigating adverse environmental effects. The products of this project will be used to provide (1) general guidance and options for ACCEA transportation-related analysis in Colorado; and (2) a review of opportunities for a coordinated approach in the Denver region.

---

[12] *Id.* at 1.
[13] https://www.transportation.gov/transportation-health-tool
[14] http://www.nejm.org/doi/full/10.1056/NEJMsa0805646
[15] ECF No. 127, Ex. 40 at 1.
[16] ECF. No. 127, Ex. 41 at 4.

5 – Petitioners' Objections – Motion to Complete

In addition, the ACCEA makes critical admissions showing Defendants know that pointing to compliance with two NAAQS is no longer a scientifically valid way to address human health:

> (1) Transportation Conformity determinations are of limited value in NEPA and cumulative effects assessments;
> (2) There is evidence of environmental degradation, as well as human health impacts, due to air pollution at levels below the National Ambient Air Quality Standards; and
> (3) NEPA environmental assessments are required to consider "any adverse environmental effects" of the proposed action (emphasis added), thus any anticipated adverse effects related to air pollution, direct and indirect, will be included in cumulative effects analyses.[17]

### c. All five documents "are adverse to the agency's position."

The five documents point to a serious disconnect within the agencies; the documents are adverse to Defendants' position in this case, and show agency management believes this is relevant information for them to consider.

A thorough discussion of adverse health impacts caused by increased emissions is contrary to FHWA's decision to move forward with the Project. In the ROD, Defendants admit that the Project will bring a 10% increase in tailpipe emissions of PM10 between 2015 and 2035.[18] The conformity determination's PM10 air quality modeling analysis shows Project emissions will add at least 41 μg/m3 of PM10, from 113 μg/m3 to 154 μg/m3.[19] Furthermore, by 2025, carbon monoxide emissions will increase 14%.[20] As discussed above and in the Motion to Complete (ECF No. 127 at 9-13), the five documents provide valuable guidance to agency decision-makers about the significance of increased emissions in the context of human health and highway projects. The closest the AR comes to discussing these adverse health impacts is to state that the Project is in conformity with the NAAQS.[21] These documents take the opposite

---

[17] ACCEA, ECF No. 127, Ex. 41 at 42.
[18] FEIS, Attachment J, Table 23 (AR 023486).
[19] ROD, Attachment C7, Table 2 (AR 004791).
[20] FEIS Attachment J, Table 24 (AR 023488).
[21] AR 0000004786-4794.

6 – Petitioners' Objections – Motion to Complete

position. *See e.g.* ECF No. 127, Ex. 41 at p. 42 ("Transportation Conformity determinations are of limited value in NEPA and cumulative effects assessments.").

### 2. Petitioners met the standards to complete the AR.

The Order is clearly erroneous or contrary to law when it finds that Petitioners have not met the standards to complete the AR. The Order erroneously narrows what comprises the AR, ignoring that the "full administrative record" required by *Overton Park* includes **all** documents expressly considered by an agency, **and** documents before the agency at the time it acted even if it did not expressly base its decision on those documents. The "whole record"

> is not necessarily those documents that the *agency* has compiled and submitted as 'the' administrative record…. The 'whole' administrative record …consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position.

*Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (quoting *Exxon Corp. v. Dep't of Energy*, 91 F.R.D. 26, 32-33 (N.D. Tex. 1981) (emphasis in original). "An agency may not submit an administrative record to the court which…omits documents present in the agency's file which bear upon matters before the court." *National Wildlife Fed'n v. Burford*, 677 F. Supp. 1445, 1457 (D. Mont. 1985).

The Order asserts incorrectly that Petitioners failed to set forth clearly "(1) when the documents were presented to the agency; (2) to whom; (3) and under what context." Order at 20, quoting *Ctr. for Native Ecosystems*, 711 F. Supp.2d at 1275. First, "it is axiomatic that documents created by an agency itself or otherwise located in its files were before it." *County of San Miguel v. Kempthorne,* 587 F. Supp. 2d 64, 76 (D.D.C. 2008) (internal citations omitted). Second, the documents were or should have been known to agency managers and subordinates because neither the documents nor the DOT/FHWA offices that generated them are obscure; they are the Headquarters Offices with delegated responsibility for policy and guidance and a field agency's refusal to address them or decision to ignore them is neither an excuse nor a

7 – Petitioners' Objections – Motion to Complete

justification to exclude them from the AR.[22] Third, the context under which these documents were presented to the agency is that U.S. DOT/FHWA/CDOT created them as guidance for transportation planning professionals, including agency professionals working on highway projects. These are not the "two to four statistics on a project" that concerned the Court in *Ctr. for Native Ecosystems*, 711 F. Supp. 2d at 1277-8. They are the agency's developed principles regarding how health effects that will result directly result from a highway expansion project. Further, it would be backwards to require citizens to present agencies with an agency's own documents, particularly when the agency presented them to the public as templates.

      The Order also takes an exceedingly restrictive view of these requirements. *Overton Park* involved a challenge to the approval of an interstate highway project for which the Bureau of Public Roads (predecessor to the FHWA), acting under the statutory authority granted to the Secretary, determined to award grant funds pursuant to the Federal-Aid Highway Act (F-AHA). The Court remanded for review of the AR "that was before the Secretary." The Supreme Court did not limit the AR to materials reviewed by the subordinate official.

      The I-70 Project was also authorized under the F-AHA, under the same statutory authorities exercised by the Secretary in *Overton Park*, which require States to "submit to the Secretary for approval such plans, specifications and estimates for each proposed project as the Secretary may require." 23 U.S.C. §106(a)(1). When the ROD was signed on January 19, 2017, F-AHA authorized U.S. DOT Secretary Foxx, not FHWA, to "enter into a formal project agreement with the State transportation department recipient formalizing the conditions of the project approval." *Id.*, §106(a)(2). The AR must include "the full administrative record that was before the Secretary at the time he made his decision," *Overton Park*, 401 U.S. at 420, which

---

[22] Petitioners note that Defendants have not presented affidavits from Division Administer Cater in which they affirm that they have no knowledge of any of these documents.

includes policy guidance issued by the Secretary and Administrator and their delegatees, as well as specific Project documents signed by FHWA's Colorado Division Director.

Pursuant to U.S. DOT's delegations of authority, the Secretary's authorities are delegated to various offices, including the Office of the Under Secretary for Policy (49 C.F.R. §§1.24 and 1.25) and the FHWA (49 C.F.R. §§1.84 & 1.85). U.S. DOT regulations require that:

> In exercising powers and performing duties delegated by this part or redelegated pursuant thereto, officials of the Department of Transportation are governed by applicable laws, Executive Orders and regulations and by policies, objectives, plans, standards, procedures, and limitations as may be issued from time to time by or on behalf of the Secretary, or, with respect to matters under their jurisdictions, by or on behalf of the Deputy Secretary, the Under Secretary, the General Counsel, an Assistant Secretary, the Inspector General, or an Administrator. This includes, wherever specified, the requirement for advance notice to, prior coordination with, or prior approval by an authority other than that of the official proposing to act.

49 C.F.R. §1.3 (Eff. Aug. 16, 2012).[23] Among other things, the Office of the Under Secretary for Policy provides "leadership in the Department's development of policies and programs to protect and enhance the safety, adequacy, and efficiency of the transportation system and services, "and ensures "uniform departmental implementation" of NEPA. 49 C.F.R. §§1.84 & 1.85(b).

Within the FHWA, a "redelegation of authority does not relieve the redelegating official of overall responsibility for control over policy, review of operations, standardization of procedures and methods, and in the final analysis, performance stemming from exercise of the delegated authority." FHWA Order M110.1A (July 7, 2006), Pt. 1, Ch. 1 at 4 (Controls).

> In exercising the authorities delegated or redelegated herein, Associate Administrators, Chief Counsel, Chief Financial Officer, Program Manager of the ITS/JPO, Directors of Field Services, Resource Center Director, Division Administrators, Federal Lands Highway Division Engineers, and their respective delegates shall be governed by all applicable laws, executive orders, and regulations and by policies, objectives, plans, standards, procedures, and limitations as may be issued from time to time by or on behalf of the Secretary or the Administrator.

---

[23] DOT's delegations were updated effective April 5, 2016. 77 Fed. Reg. 160 at 49964 (Aug. 17, 2012).

9 – Petitioners' Objections – Motion to Complete

*Id.* at 6. (Exercise of Authority).

### 3. The Order allows Defendants to skew the Administrative Record.

The Order's abrupt dismissal of Petitioners' efforts to complete the AR allows Defendants to skew the record in a manner that is clearly erroneous or contrary to law. The Order fails to acknowledge that an AR must include information that is unfavorable to the agency's position. "The administrative record must include not only the documents and materials the agency ultimately credits when reaching its decision, but also those that the agency considered and rejected in reaching its final conclusion." *Cherokee v. Jewell,* 2013 WL 5329787 (D. Okla. Sept. 20, 2013) (citing *Thompson*, 885 F.2d at 555 (9th Cir.1989); *Wildearth Guardians v. U.S. Forest Serv.,* 713 F. Supp. 2d 1243, 1256 (D. Co. 2010); and *Wilderness Soc'y v. Wisely*, 524 F. Supp. 2d 1285, 1295 (D. Co. 2007) (holding documents that were "considered" are "not simply those that the agency relied upon in reaching its decision")).

Courts have rejected attempts by agencies to limit review only to that record compiled and submitted by the agency, to the exclusion of other documents that were clearly "before the Secretary at the time he made his decision." *Overton Park,* 401 U.S. at 420.

> If a court is to review an agency's action fairly, it should have before it neither more nor less information than did the agency when it made its decision. . . . To review less than the full administrative record might allow a party to withhold evidence unfavorable to its case, and so the APA requires review of "the whole record."

*Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984). In *Kent County Delaware Levy Court v. U.S. EPA*, 963 F.2d 391 (D.C. Cir. 1992), the court supplemented the AR with documents in agency files based on "petitioners … prima facie showing that the agency excluded from the record evidence adverse to its position...."

This Court recognizes that intentional omission, or bad faith, was not required to add omitted materials. "*Kent County* applies where 'the agency deliberately or negligently excluded

documents that may have been adverse to its decision.'" *Center for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1281 (D. Co. 2010). This Court concluded that:

> if … an agency could exclude documents and materials from the administrative record by intentionally deciding not to review them, [it] could significantly skew the record in its favor. This is inconsistent with the meaningful judicial review required by *Overton Park*.

*Id.* The Court ordered the record supplemented "with … documents which **should have been** considered by the Respondents in reaching the challenged decision…." *Id.* (emphasis added).

Furthermore, the agency cannot exclude information "on the grounds that it did not 'rely' on the excluded information in its final decision." *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 197 (D.D.C. 2005). And this Court has specifically held that the administrative record includes documents beyond those that "literally pass[ed] before the eyes of the final agency decisionmaker[s]." *Ctr. for Native Ecosystems*, 711 F. Supp. 2d at 1275–76. Courts have also rejected efforts by agencies to foreclose judicial scrutiny by excluding directives and policy documents relevant to the agency decision from ARs.

> It strains the Court's imagination to assume that the administrative decision-makers reached their conclusions without reference to a variety of internal memoranda, guidelines, directives, and manuals . . . . DOE may not unilaterally determine what shall constitute the administrative record and thereby limit the scope of this Court's inquiry.

*Tenneco Oil Co. v. U.S. Dep't of Energy*, 475 F. Supp. 299, 317 (D. Del. 1979).

*Ctr. For Ecosystems*, on which the Order relies extensively, explains that the "rationale for limiting the record to those documents directly or indirectly considered by relevant agency decisionmakers is grounded in the need to afford adequate deference to agency expertise while ensuring meaningful judicial review of the full administrative record." 711 F. Supp. 2d at 1275. In this case, the Order sanctions Defendants' efforts to ignore their own agencies' expertise.

### 4. The Order omits information regarding Health Impact Assessments.

The excluded documents[24] call for use of Health Impact Assessments ("HIAs") as an important tool to integrate health into transportation decisionmaking. For example, the FAQs discuss the use of an HIA in trasportation:

> Health Impact Assessment (HIA) is a tool some have used to assess the health effects – both positive and negative – of proposed policies, plans, programs, and projects in a variety of contexts. In the transportation context, it has been used to evaluate certain programs, plans, and proposed projects. Although HIA is not required, it can inform transportation planning and decision-making when transportation officials and stakeholders agree to use it. HIA can be most effective when it is used in the transportation planning process. When a jurisdiction decides to complete an HIA during the project development process, it is most likely to influence the project if it is conducted early – during the scoping or development of purpose and need phases.[25]

Defendants' refusal to undertake data collection needed to perform an HIA (by that or any other name, *e.g.,* Health Impact Assessment ("HEA")) was arbitrary and capricious. *See* ECF No. 1. As explained in these excluded documents, this effort is necessary to identify the Project's impacts on human health, evaluate the potential benefits of mitigation, and disclose these issues to the public and decisionmakers. The AR shows Defendants refused the public's requests for an HIA (or similar) beginning as early as 2004[26] and continuing into the FEIS.[27]

**B.     Failure to Permit Supplementation was Clearly Erroneous or Contrary to Law.**

The Order rejected supplementing the AR because the Magistrate Judge determined it already contains "significant evidence" that Defendants considered the Project's health impacts. Order at 22. To the contrary, the AR documents referenced in the Order demonstrate that Defendants failed to analyze health impacts. Supplementation is necessary to provide the Court with sufficient information regarding the relevant factors omitted. As shown below, the Order pointed specific portions of the AR to determine that the record already contains "significant"

---

[24] ECF No. 127, Ex. 38 and 39
[25] ECF No. 127, Ex. 39 at 4. For a further discussion of DOT's approval of HIAs, see https://www.transportation.gov/mission/health/cleaner-air
[26] *e.g.,* AR 72650
[27] *e.g.,* AR 121

evidence that Defendants considered health impacts. An examination of these AR references shows little evidence that Defendants did so and that the Order's rationale is clearly erroneous.

The Order denies Petitioners' requests to supplement the AR with the Corridor Planning Framework because: "the record already contains significant evidence demonstrating that FHWA considers health impacts relevant and that FHWA actually analyzed the health impacts of the PCL alternative." *Id.* The Order cites AR 121-23 as "significant evidence," but its only responses to comments, where FHWA states "much of the public concern for health relates to the air quality surrounding the highway, [a] health study (health impact assessment or health risk assessment) is not required by NEPA or the CAA and, therefore, it has not been performed for this project."

Similarly, the Order cites AR 18,227-48 as FHWA's consideration of health effects. Here, the few pages dedicated to review of the Project's air quality impacts do not discuss the effects of increased emissions. FHWA simply concludes "there are no projected impacts from the project related to NAAQS."[28] This misses the point. Further, while FHWA states it reviewed six health studies submitted with public comments, "The listing of these studies does not…include any conclusions regarding the accuracy or applicability of these studies."[29] A discussion of additional health studies states that it is not "a comprehensive assessment of the current health status in the study area." Instead, the studies were "provided only to establish that many studies of this area have been done over the past 15 to 35 years."[30] Finally, the Order's citation to AR 23,406-10 does not reveal an analysis of the health impacts of the PCL alternative; this section of the FEIS Air Quality Technical Report is a simply general discussion of the health impacts of the NAAQS pollutants and the MSAT components of mobile source emissions.

The Order's AR references do not support its determination that the AR contains "significant evidence demonstrating that Defendants consider health impacts relevant" or that

---

[28] AR at 18,231.
[29] AR at 18,238.
[30] AR at 18,240.

Defendants "actually analyzed" the Project's health impacts. Therefore, the AR does not support a conclusion that Defendants considered a relevant factor -- the health impacts of the Project on the low-income communities affected by the Project.

The Order justifies the denial of Petitioners' request to supplement the AR with the Frequently Asked Questions because the AR contains FHWA's "detailed" assessment of the health effects as they relate to the PCL Alternative, "such as safety, air and water quality, and noise." Order at 22. But, the Order references AR 10209-372—the 2014 Supplemental DEIS. As demonstrated in the Petition, the SDEIS analysis used was significantly different from the FEIS analysis used in the Air Quality Conformity Determination; a review of the SDEIS is not dispositive of whether Defendants in the FEIS and ROD considered a relevant factor or made a detailed assessment of the Project's health effects.

The THT is a decision-making tool developed by the U.S. DOT in conjunction with the Centers for Disease Control, providing transportation professionals, including agency highway planners, access to data to analyze the health impacts of transportation facilities. As demonstrated above, the Order relied upon AR citations to conclude that the AR already contains "significant" evidence that Defendants considered health impacts. Use of this tool would provide the very health impacts data that the FEIS and ROD lacks, and should be included in the AR.

The Order rejects the article "Fine Particulate Air Pollution and Life Expectancy in the United States," because "the record indicates FHWA reviewed the effects of air pollution on respiratory health." *Id.* at 24. However, the only AR references in the Order are to a single page from the Health Impacts section of the FEIS discussing three studies (AR 18248), two pages from the FEIS Air Quality Technical Report that consist of a chart of the NAAQS standards with no discussion of respiratory effects (AR 23408-09), and a single page that describes the health effects of MSATs in vehicle exhaust. These references do not provide the detailed assessment of

14 – Petitioners' Objections – Motion to Complete

the effects of *increasing* air pollution on respiratory health provided on Defendants' own website and critical to this Court's review of the impacts of this Project.

Finally, the Order denied supplementation of the AR with the ACCEA as simply a disagreement over methodology. ECF No. 136 at 23. But this is not the case. The real issue may be one of scientific integrity.

> Agencies shall insure the professional integrity, including scientific integrity, of the discussions and analyses in environmental impact statements. They shall identify any methodologies used and shall make explicit reference by footnote to the scientific and other sources relied upon for conclusions in the statement.

40 C.F.R. §1502.24. *See also Environmental Defense v. U.S. Army Corps of Engineers*, 515 F. Supp. 2d 69 (D.D.C. 2007) (finding agency manipulated the model it used for mitigation to fit its cost-benefit analysis); *New Mexico ex rel. Richardson v. BLM*, 565 F.3d 683 (10th Cir. 2009) (finding BLM claim that there will be no harm to aquifer in absence of evidence to be arbitrary and capricious); *High Country Conservation Advocates v. United States Forest Service*, 52 F. Supp. 3d 1174 (D. Colo. 2014) (finding agency's technical information misleading). Petitioners moved to include the ACCEA because it goes to the heart of Defendants' argument that all they have to do to consider human health impacts is to show compliance with the NAAQS. Their own resources dispute this. In ACCEA, Defendants admit that "[a]ir quality assessments conducted for the purposes of NEPA are broad in scope, going well beyond the question of whether transportation projects may result in future violations of criteria pollutant standards."[31]

## CONCLUSION

For these reasons, Petitioners' object to the Magistrate Judge's Order (ECF No. 136) and request that Petitioners' Motion to Conduct Limited Discovery, Complete the Record, and Take Judicial Notice (ECF No. 136) be granted.

---

[31] ECF No. 127, Ex. 41 at 42.

15 – Petitioners' Objections – Motion to Complete

Dated: April 20, 2018                             Respectfully submitted,

   /s/Gregory N. Corbin
ROBERT E. YUHNKE  (CO Bar No. 12686)
4050 SE Hosner Terrace
Gresham, OR 97080
(303) 499-0425
bob.yuhnke@prodigy.net

ANDREA S. GELFUSO  (CO Bar No. 19773)
2402 S. Holland Street
Lakewood Co 80227
(303) 955-1910
agelfuso6@gmail.com

GREGORY N. CORBIN  (CO Bar No. 48468)
Milligan Rona Duran & King LLC
1627 Vine St.
Denver, CO 80206
Tel. 720-414-2000
gnc@mrdklaw.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 20th day of April, 2018, I filed a true and accurate copy of the foregoing with the Clerk of Court via the CM/ECF system, which provided immediate electronic notice of the same to all counsel of record, as indicated below.

                                         /s/ Gregory N. Corbin
                                         Gregory N. Corbin

| | |
|---|---|
| Carter F. Thurman, Esq.<br>Mayte Santacruz, Esq.<br>U.S. Department of Justice<br>Environment and Natural Resources Division<br>Natural Resources Section<br>P.O. Box 7611<br>Washington, DC 20044-7611<br>Carter.thurman@usdoj.gov<br>Mayte.santacruz@usdoj.gov<br><br>David A. Carson<br>U.S. Department of Justice-Denver-ENRS<br>999 17th Street<br>South Terrace, Suite 370<br>Denver, CO 80212<br>David.a.carson@usdoj.gov<br><br>*Attorneys for Federal Defendants*<br><br>Brent Allen<br>Federal Highway Administration<br>Office of the Chief Counsel<br>Western Legal Services Division<br>Lakewood, Colorado<br>Brent.allen@dot.gov<br><br>*Of Counsel for Federal Defendants* | John E. Putnam, Esq.<br>Nicholas A. DiMascio, Esq.<br>Kaplan Kirsch & Rockwell, LLP<br>1675 Broadway, Suite 2300<br>Denver, CO 80202<br>jputnam@kaplankirsch.com<br>ndimascio@kaplankirsch.com<br><br>Harry Scott Morrow<br>Colorado Attorney General's Office<br>Ralph L. Carr Colorado Judicial Center<br>1300 Broadway<br>Denver, CO  80203<br>(720) 508-6000<br>harry.morrow@coag.gov<br><br>*Attorneys for Defendant-Intervenors* |

17 – Petitioners' Objections – Motion to Complete