# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Actions No.        17-cv-01661-WJM-MEH
*Consolidated with*      17-cv-01679-WJM-MEH

SIERRA CLUB; ELYRIA AND SWANSEA NEIGHBORHOOD ASSOCIATION; CHAFEE PARK NEIGHBORHOOD ASSOCIATION; and COLORADO LATINO FORUM,

    Plaintiffs,

v.

FEDERAL HIGHWAY ADMINISTRATION, ELAINE CHAO, in her official capacity as Secretary of Transportation; and JOHN M. CATER, in his official capacity as Division Administrator,

    Defendants,

     *and*

COLORADO DEPARTMENT OF TRANSPORTATION,

    Defendant-Intervenor.

## CDOT'S OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF THEIR STAY MOTION

Plaintiffs (collectively, "Sierra Club") do not acknowledge, let alone meet, their high burden to obtain reconsideration of this Court's denial of their stay motion. Sierra Club has not identified any previously unavailable information or manifest error of law or fact in the Court's decision. Sierra Club merely reargues the science concerning health risks from $PM_{2.5}$ emissions, which is not a valid reason to move for reconsideration. Moreover, Sierra Club's argument presumes that this Court, the Federal Highway Administration ("FHWA"), or the Colorado Department of Transportation ("CDOT") is the arbiter of what ambient concentration of $PM_{2.5}$ is "safe." Sierra Club presumes wrong.

Under the Clean Air Act ("CAA"), the Environmental Protection Agency ("EPA") is responsible for setting the National Ambient Air Quality Standards ("NAAQS") with "an adequate margin of safety … to protect the public health." 42 U.S.C. § 7409(b)(1). This Court did not err by holding—like every other court that has addressed the issue—that agencies may rely on the NAAQS to assess the potential health impacts of a project. (ECF No. 135 ("Stay Order") at 14-15.) Nor does Sierra Club's motion propose any "administratively predictable and judicially manageable standard for determining when NEPA requires" any further quantitative analysis of possible health effects. (Stay Order at 17.) In the final analysis, FHWA and CDOT utilized a different methodology for evaluating the Central 70 Project's $PM_{2.5}$ emissions than Sierra Club prefers, but that is not a NEPA violation.

FHWA is concurrently filing a separate brief opposing Sierra Club's motion to reconsider its Federal Aid Highway Act claim. CDOT joins in FHWA's arguments. For all the reasons stated in this brief and FHWA's brief, this Court should deny Sierra Club's motion to reconsider.

## PROCEDURAL HISTORY

In its stay motion, Sierra Club argued that NEPA required the agencies to use "modeling tools" to "quantify" the potential health impacts of NAAQS-compliant air quality. (ECF No. 88 at 29-32.) For several independent reasons, this Court held that Sierra Club was unlikely to succeed on that claim. First, the Court explained that the case law is "nearly unanimous" that federal agencies may rely on the NAAQS to gauge the potential health impacts of a project's air emissions because EPA sets the NAAQS with an "adequate margin of safety … to protect the public health." (Stay Order at 14.) To the extent that Sierra Club believes the NAAQS do not

2

protect human health with an adequate margin of safety, the Court found that argument to be an "implicit challenge to the NAAQS itself," which must be filed in the D.C. Circuit. (*Id.* at 17.)

Second, the Court held that Sierra Club had failed to "propose an administratively predictable and judicially manageable standard for determining when NEPA requires" an agency to inquire into health effects beyond the NAAQS. (*Id.* at 17.) Even if there were such a standard, the Court correctly observed that an agency's decision to use modeling or some other approach to evaluate a project's air emissions under NEPA is "basically a methodological question." (*Id.*) Here, because the agencies showed that air emissions would be substantially the same under the no-action and action alternatives, the Court agreed that the NEPA process "would not be materially enhanced by deeper analysis" of possible health effects from NAAQS-compliant air quality. (*Id.* at 19.)

Third, the Court held that "[e]ven assuming that all of the above-mentioned problems with such an analysis could be resolved," the administrative record did not support Sierra Club's demand for a further health analysis in this case. (*Id.* at 17.) In particular, the Court found that the Denver Department of Environmental Health study on which Sierra Club relied was not an "empirically rigorous document" and did not control for other factors that may be contributing to poor health outcomes in communities surrounding I-70. (*Id.* at 18.) The study therefore was insufficient to "trigger a health assessment of below-NAAQS pollution effects." (*Id.* at 17.)

## STANDARD OF REVIEW

Sierra Club fails to recite, much less demonstrate compliance with, the standard for a motion to reconsider under Fed. R. Civ. P. 54(b). Although a district court retains the power to reconsider or modify its interlocutory orders, a motion to reconsider "is not a vehicle for a losing

3

party to revisit issues already addressed." *Skyline Potato Co. v. Rogers Bros. Farms, Inc.*, No. 10-cv-02353-WJM, 2011 U.S. Dist. LEXIS 137672, at *2-3 (D. Colo. Nov. 30, 2011) (quoting *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). "In this circuit, grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id.* "A motion to reconsider should be denied unless it clearly demonstrates manifest error of law or fact or presents newly discovered evidence." *Id.* (quoting *National Business Brokers, Ltd. v. Jim Williamson Products, Inc.*, 115 F. Supp. 2d 1250, 1256 (D. Colo. 2000)).

Sierra Club also does not acknowledge that it is asking this Court to reconsider its decision not to *enjoin* the Central 70 Project. Likelihood of success on the merits was only one factor that Sierra Club had to show to obtain such an injunction. Thus, even if Sierra Club could meet the standard to obtain reconsideration on that factor (and for the reasons explained below, it cannot), Sierra Club still would have to meet the other factors: irreparable harm, balance of the equities, and the public interest. Meeting those factors here would be particularly difficult, since Sierra Club's motion for reconsideration focuses exclusively on a single pollutant—$PM_{2.5}$—for which Denver has attained the NAAQS.[1] *See Sierra Club v. EPA*, 873 F.3d 946, 950 (D.C. Cir. 2017). Sierra Club has not demonstrated a clear entitlement to preliminary injunctive relief, and its motion for reconsideration should be denied.

---

[1] Sierra Club's motion does not raise and therefore has waived any arguments concerning other air pollutants, such as $PM_{10}$ or Mobile Source Air Toxics.

4

**ARGUMENT**

**I.      No new evidence or circumstances warrant the Court's reconsideration of its order.**

Sierra Club suggests that this Court should reconsider its decision because the "Project Agreement required by 23 U.S.C. § 106 has now been executed by Defendants and Colorado DOT …[,] [which] allows contracts to be executed and construction to begin."  (ECF No. 144 ("Motion") at 2.)  Execution of the project agreement, however, should come as no surprise to Sierra Club or this Court.  During briefing on the stay motion, Sierra Club argued that FHWA and CDOT would soon execute the project agreement (ECF No. 88 at 25), and CDOT explained that it would execute that agreement with FHWA "in early 2018" (ECF No. 96 at 19).

Consistent with that representation, FHWA and CDOT executed the project agreement on February 1, 2018.  (ECF No. 143-1.)  The next day, counsel for CDOT notified counsel for Sierra Club that the project agreement had been executed, and counsel for FHWA sent counsel for Sierra Club a copy of the project agreement on February 8, 2018.  (*See* Ex. 1.)  Sierra Club nevertheless chose not to notify the Court of the project agreement over the subsequent months.  This Court did not deny the stay motion until April 3, 2018.  (ECF No. 135.)

Execution of the project agreement therefore is not "new evidence previously unavailable."  *Servants of the Paraclete*, 204 F.3d at 1012.  Sierra Club was aware of and argued about the project agreement during briefing on its stay motion.  Execution of the project agreement also changes none of the facts that were before the Court during briefing on the stay motion.  Even before execution of the project agreement, CDOT explained that it had executed a contract with the developer for the Central 70 Project and that it expected construction to begin

5

in summer 2018. (ECF No. 96 at 19.) Those facts remain true today. Nothing about execution of the project agreement warrants reconsideration by this Court.

**II.     The Court committed no manifest error of law in denying Sierra Club's motion.**

Sierra Club's motion attacks the facts underlying the agencies' so-called "presumption of no significant impact on health" without addressing the Court's or the agencies' actual analysis. (Motion at 3-13.) It is not until page 13 that Sierra Club even attempts to distinguish the authority this Court cited in support of its decision, and Sierra Club spends just two paragraphs on that unpersuasive effort. Sierra Club argues that, under *American Trucking Associations, Inc. v. EPA*, 283 F.3d 355 (D.C. Cir. 2002), EPA actually need not set the NAAQS at a "safe" level. Sierra Club previously raised the same flawed argument during briefing on the stay motion. (ECF No. 100 at 24.)

In *American Trucking*, the Supreme Court confirmed EPA's duty to set the NAAQS at a level "requisite—that is, not lower or higher than is necessary—to protect the public health with an adequate margin of safety." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 475-76 (2001). Applying that standard on remand, the D.C. Circuit rejected the argument that EPA had "failed to determine 'safe levels' for fine particulate matter" when setting the NAAQS. 283 F.3d at 368. Although EPA acknowledged that it could not rule out "the possibility of [health] effects at lower annual concentrations," it found the evidence of such effects to be "highly uncertain." *Id.* at 367. The D.C. Circuit upheld EPA's decision, explaining that it need not "identify perfectly safe levels of pollutants" below which "risks to public health are negligible" before setting the NAAQS. *Id.* at 369-70. Rather, EPA must exercise its judgment "notwithstanding that

6

uncertainty" and "err on the side of caution by setting primary NAAQS that 'allow[] an adequate margin of safety[.]'" *Id.* (quoting 42 U.S.C. § 7409(b)(1)).

Thus, far from contradicting this Court's decision (Stay Order at 14-15), *American Trucking* actually supports the case law holding that it is proper for an agency to "defer to the EPA on the factual question of what level of airborne [pollution] is safe." *Barnes v. FAA*, 865 F.3d 1266, 1273 (9th Cir. 2017). Moreover, EPA must build into the NAAQS a margin adequate to "address uncertainties associated with inconclusive scientific and technical information [and] to provide a reasonable degree of protection against hazards that research has not yet identified," including with respect to "children and other at-risk populations." *Id.* (quoting 73 Fed. Reg. 66964, 66965-66 (Nov. 12, 2008)). As Sierra Club elsewhere admits, the CAA requires EPA—not FHWA or CDOT—to exercise its judgment regarding those highly scientific factual questions. (*See* ECF No. 146 at 11.) ("Congress has entrusted those judgments under the Clean Air Act to EPA, [and] FHWA must defer to EPA's conclusions.")

Nothing in NEPA requires agencies to second-guess EPA's judgment. Sierra Club's position would make NEPA more demanding than the specific statute that Congress passed to address the health risks of air pollution—the CAA. Nor does Sierra Club identify any manageable standard or method for an agency to second-guess EPA's judgment in the context of a project-level decision. No such standard or method exists because, in reality, Sierra Club's argument is a "challenge to the NAAQS itself" and therefore would require a full NAAQS-like rulemaking to address. (Stay Order at 17.)

Here, the agencies did not simply presume, as Sierra Club asserts, that "exposures below the NAAQS have no health impact." (Motion at 13.) Under NEPA, the agencies studied

7

emissions inventories of numerous air pollutants and concluded in every instance that the difference between the no-action and action alternatives would be negligible.  Therefore, even if further quantitative analysis of health risks from NAAQS-compliant air quality were feasible, such analysis would not have "materially enhanced" the decision-making process for the Central 70 Project.  (Stay Order at 19.)  Sierra Club may dislike the agencies' methodological choice or the conclusion it produced, but NEPA vests agencies with such discretion, and the agencies' reasoning was not arbitrary or capricious.  (*Id.* at 17 (citing *Hillsdale Envtl. Loss Prevention, Inc. v. U.S. Army Corps of Eng'rs*, 702 F.3d 1156, 1177-78 (10th Cir. 2012).)

### III.  Sierra Club has identified no manifest error of fact in the Court's order.

This Court should deny Sierra Club's motion for all the reasons already mentioned.  The Court need not resolve Sierra Club's scientific disagreements to conclude that no new information or manifest error justifies reconsideration of the stay motion.  All the science that Sierra Club discusses in its motion to reconsider was available and addressed by the parties during briefing on the stay motion.  But even if the Court were to entertain Sierra Club's effort to reargue the three categories of scientific evidence presented in its motion, Sierra Club has not shown that the Court committed any manifest error of fact.

First, Sierra Club tries to piece the Denver Department of Environmental Health's study together with EPA data to imply that exposure to $PM_{2.5}$ *may* be contributing to cardiovascular disease and childhood asthma in neighborhoods surrounding I-70. (Motion at 4-9.)  But Sierra Club admits that $PM_{2.5}$ emissions from I-70 are just one "potential cause" among many for disparate health outcomes in those neighborhoods (*id.*), which is just what this Court said in its order (Stay Order at 18).  Sierra Club then uses other data to *attack* the Denver study (*id.* at 7),

8

which only proves that the Court did not manifestly err in finding the study's value to be too limited to necessitate further quantitative analysis.

Second, Sierra Club argues that "evidence of harm below the level of the NAAQS was not weighed, or not given significant weight in EPA's standard setting" for $PM_{2.5}$. (Motion at 10.) When setting the $PM_{2.5}$ NAAQS, EPA emphasized large uncertainties and thin data regarding health effects at lower ambient concentrations of $PM_{2.5}$. 78 Fed. Reg. 3086, 3162-64 (Jan. 15, 2013). Thus, although Sierra Club disclaims any intent to challenge EPA's actions here, Sierra Club's argument actually is an "implicit challenge to the NAAQS itself," which cannot be brought under NEPA. (Stay Order at 17.) Sierra Club also contends that, because EPA acknowledged that "adverse health effects occur below the level of the NAAQS," the agencies here cannot "presum[e] that exposures allowed by the NAAQS are risk free." (Motion at 10-11.) As explained above, the agencies made no such "risk free" presumption, but were instead entitled to rely on EPA's judgment about what ambient concentration of $PM_{2.5}$ is "requisite—that is, not lower or higher than … necessary—to protect the public health with an adequate margin of safety." *Am. Trucking*, 283 F.3d at 368-70 (quoting *Whitman*, 531 U.S. at 475-76).

Third, Sierra Club asserts that FHWA has a "duty to investigate more recent evidence not available to EPA" when it last set the $PM_{2.5}$ NAAQS, but the cases Sierra Club cites do not stand for that proposition. (Motion at 11.) Sierra Club cites cases concerning an agency's duty to supplement *its own* environmental impact statement upon receipt of significant new information. *See, e.g.*, *Stop H-3 Ass'n v. Dole*, 740 F.2d 1442, 1463 (9th Cir. 1984). In any event, Sierra Club admits that FHWA did consider the new studies, but Sierra Club faults FHWA for not analyzing

9

how "carbon particles … in vehicle exhaust" might affect the incidence of cardiovascular mortality when "exposures will increase." (Motion at 12 (citing FEIS § 5.20-22).) Again, because the air-quality analysis showed that the no-action and action alternatives would produce substantially the same air emissions, FHWA could reasonably conclude that further study into those kinds of hypothetical health effects would not "materially enhance[]" the decision-making process. (Stay Order at 19.) Moreover, the inventories actually showed that vehicle emissions of $PM_{2.5}$ would decrease—not increase—by 2035 due to cleaner vehicle-emissions standards, so the factual predicate for Sierra Club's argument is flawed. (AR0000023486.)

In sum, Sierra Club has not shown that this Court committed any manifest error of fact in denying the stay motion, and Sierra Club's apparent desire to reargue the science does not warrant this Court's reconsideration.

## CONCLUSION

This Court correctly held that Sierra Club was unlikely to succeed on the merits of its argument that NEPA required the agencies to perform further quantitative analysis of the possible health effects of ambient concentrations of $PM_{2.5}$ permitted by the NAAQS. Sierra Club's motion for reconsideration fails to meaningfully engage the Court's and the agencies' actual analysis, does not meet the high bar for reconsideration, and does not demonstrate a clear entitlement to preliminary injunctive relief. This Court therefore should deny Sierra Club's motion.

|  | Respectfully submitted, |
|---|---|
| HARRY SCOTT MORROW<br>Colorado Attorney General's Office<br>Ralph L. Carr Colorado Judicial Center<br>1300 Broadway<br>Denver, CO  80203<br>(720) 508-6000<br>harry.morrow@coag.gov | JOHN E. PUTNAM<br>NICHOLAS A. DIMASCIO<br>KAPLAN KIRSCH & ROCKWELL LLP<br>Special Assistant Attorneys General<br>1675 Broadway, Suite 2300<br>Denver, CO  80202<br>(303) 825-7000<br>jputnam@kaplankirsch.com<br>ndimascio@kaplankirsch.com |
| MAY 16, 2018 | *s/ Nicholas A. DiMascio*<br>NICHOLAS A. DIMASCIO |

# CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2018, I electronically filed the foregoing document and all of its attachments with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

Robert E. Yuhnke
4050 Se Hosner Terrace
Gresham, OR  97080
(303) 499-0425
bob.yuhnke@prodigy.net

Andrea S. Gelfuso
Andrea Gelfuso, Attorney at Law
2402 South Holland Street
Lakewood, CO  80227
(303) 955-1910
agelfuso6@gmail.com

Gregory Nicholas Corbin
Milligan Rona Duran & King, LLC
1627 Vine Street
Denver, CO  80206
(720) 414-2000
gnc@mrdklaw.com

Carter F. Thurman
Mayte Santacruz
U.S. Department of Justice
Env't & Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
(202) 305-0465 (phone)
(202) 305-0506 (fax)
carter.thurman@usdoj.gov
mayte.santacruz@usdoj.gov

David A. Carson
United States Department of Justice
Env't & Natural Resources Division
Environmental Defense Section
Denver Place Building
999 18th Street
South Terrace, Suite 370
Denver, CO 80202
(303) 844-1349
david.a.carson@usdoj.gov

s/ *Nicholas A. DiMascio*
Nicholas A. DiMascio