# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action Nos.    17-cv-01661-MJW-MEH
                       17-cv-01679-MJW-MEH

SIERRA CLUB; ELYRIA AND SWANSEA NEIGHBORHOOD ASSOCIATION; CHAFEE PARK NEIGHBORHOOD ASSOCIATION; AND COLORADO LATINO FORUM,

        Plaintiffs,

    v.

ELAINE CHAO, in her official capacity as Secretary of Transportation; FEDERAL HIGHWAY ADMINISTRATION; and JOHN M. CATER, in his official capacity as Division Administrator, Federal Highway Administration, Colorado Division,

        Defendants,

    and

COLORADO DEPARTMENT OF TRANSPORTATION,

        Defendant-Intervenor.

---

## FEDERAL DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER ON THE SCOPE OF THE ADMINISTRATIVE RECORD

---

Federal Defendants Federal Highway Administration ("FHWA"), Elaine Chao, in her official capacity as Secretary of Transportation, and John M. Cater, in his official capacity as FHWA's Division Administrator, Colorado Division (collectively, "FHWA"), hereby respond to Plaintiffs' Objections to the Magistrate Judge's Order on the Scope of the Administrative Record, ECF No. 146 ("Objections").  Plaintiffs Sierra Club, Elyria and Swansea Neighborhood Association, Chaffee Park Neighborhood Association, and Colorado Latino Forum ("Plaintiffs") have failed to meet their heavy burden of establishing that the Order of Magistrate Judge Michael E. Hegarty, dated April 6, 2018 ("Order") is clearly erroneous or contrary to law.  Their objections should be overruled, and Judge Hegarty's Order affirmed.

## INTRODUCTION

Judge Hegarty's 25-page Order denying Plaintiffs' requests to complete or supplement the record in this Administrative Procedure Act ("APA") case is thorough and sound. After carefully analyzing the arguments presented in the parties' briefs and at oral argument, Judge Hegarty applied the correct legal standards for motions to complete and supplement an agency's administrative record, and properly concluded that Plaintiffs had failed to overcome the presumption of administrative regularity that attaches to FHWA's Administrative Record ("Record") and were therefore not entitled to add materials to it. *See* Order at 2, 20 (citing *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993) ("The court assumes the agency properly designated the Administrative Record absent clear evidence to the contrary."))

In denying Plaintiffs' request to *complete* the Record with the five documents posted on FWHA's website, Judge Hegarty found that Plaintiffs had failed to satisfy the applicable two-prong test for completing the Record. Plaintiffs' briefing on this issue confirms that they did not provide any evidence, let alone the required "clear evidence," to prove that these documents were presented to FHWA during the decision-making process, and that they were directly or indirectly considered by FHWA. *Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1275 (D. Colo. 2010). Similarly, Plaintiffs' briefs and oral argument confirm that, although Plaintiffs discussed at length how these five documents are purportedly relevant to their claims, they provided no support or analysis demonstrating how FHWA failed to consider the project's effect on human health, a requirement to *supplement* the Record with these materials.

With regards to Plaintiffs' request to *supplement* the Record with the eight documents, including five "expert" declarations, Judge Hegarty found that Plaintiffs did not meet their burden of establishing that any of the narrow exceptions for supplementing the Record apply to these documents. Order at 4-17, 24. Plaintiffs objected only to the exclusion of three "expert"

declarations.  ECF No. 146 at 1.  Each objection fails because Plaintiffs have failed to articulate any basis for establishing that Judge Hegarty's Order was clearly erroneous or contrary to law. Accordingly, Judge Hegarty's Order denying Plaintiffs' request to supplement the Record with these *post hoc* declarations that were not presented to FHWA during the decision-making process, and were created for the purpose of this litigation, should be affirmed.

## BACKGROUND

On January 19, 2017, FHWA issued a Record of Decision ("ROD") for the Colorado Department of Transportation's ("CDOT") highway project in Denver that will improve public safety, access, and mobility, and relieve traffic congestion on a ten-mile stretch of I-70 between I-25 and Chambers Road ("Central 70" or the "Project").  Plaintiffs challenged the ROD, alleging that FHWA failed to comply with the National Environmental Policy Act ("NEPA"), Clean Air Act ("CAA"), and Section 109(h) of the Federal Highway Act ("FAHA").  Among other things, Plaintiffs alleged that FHWA did not adequately analyze the effect that Central 70 will have on human health, especially with regard to individuals who reside near the Project.

On January 26, 2018, FHWA produced a corrected Record to the parties, and notified the Court of this production.  ECF No. 105.  On March 9, 2018, Plaintiffs moved to complete or supplement the Record with "five specifically-identified documents" posted on FHWA's website (ECF No. 127), and to supplement the Record with eight documents, including five "expert" declarations (ECF No. 128).  On March 28, 2018, Judge Hegarty held a three and a half hour hearing on the record motions.  *See* ECF No. 134; *see also* Hearing Transcript, attached hereto as Exhibit 1 ("Hearing Transcript").  On April 6, 2018, Judge Hegarty issued a 25-page Order,

comprehensively addressing and rejecting all of Plaintiffs' requests to complete or supplement the Record.[1]  ECF No. 136.  Plaintiffs filed objections to Judge Hegarty's Order.  ECF No. 146.

**APPLICABLE LEGAL STANDARDS**

**A.      Rule 72(a) Objections to a Magistrate Judge's Non-Dispositive Rulings.**

When reviewing objections to a magistrate judge's non-dispositive rulings, the Court must adopt the rulings unless it finds that the rulings are "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *Ariza v. U.S. West Commc'ns, Inc.*, 167 F.R.D. 131, 133 (D. Colo. 1996).  The clearly erroneous standard "requires that the reviewing court affirm unless it on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (internal quotation marks omitted).  Under the contrary to law standard, the Court will set aside a magistrate judge's order only if it applied the wrong legal standard or applied the appropriate legal standard incorrectly.  *See Sunflower Condo. Ass'n, Inc. v. Owners Ins. Co.*, Case No. 16-cv-2946-WJM-NYW, 2018 WL 1755784, *1 (D. Colo. Apr. 12, 2018).

**B.      Sufficiency of Administrative Record in APA Cases.**

Under Tenth Circuit precedent, "[r]eviews of agency action in the district courts [under the APA] must be processed *as appeals*."  *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994) (emphasis in original).  Consistent with that approach, a district court's "review of agency action is normally restricted to the administrative record."  *Citizens for Alts. to Radioactive Dumping v. U.S. Dep't of Energy*, 485 F.3d 1091, 1096 (10th Cir. 2007) (citing *Lee v. U.S. Air Force*, 354 F.3d 1229, 1242 (10th Cir. 2004)).  This means that a court typically

---

[1] Judge Hegarty granted Plaintiffs' request to propound a limited number of interrogatories on FHWA regarding modeling at seven receptor locations. *See* ECF No. 136 at 19.  On April 27, 2018, FHWA served responses to Plaintiffs' interrogatories, attached hereto as Exhibit 2.

reviews only "the evidence and proceedings before the agency at the time it acted." *Am. Mining Cong. v. Thomas*, 772 F.2d 617, 626 (10th Cir. 1985). Accordingly, "[t]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985) (quotation and citation omitted).

This Court has identified two types of challenges to an agency's administrative record: (1) the record lacks materials that the agency actually considered at the time it made the decision ("completing the record"), and (2) the record lacks materials that, although the agency did not consider, the court should add to the record because they are necessary for a substantial inquiry ("supplementing the record"). *See Ctr. for Native Ecosystems*, 711 F. Supp. 2d at 1274.

To prevail in a "completing the record" challenge, the parties challenging the sufficiency of the record must satisfy a two-part test. First, they "must clearly set in their motion: (1) when the documents were presented to the agency; (2) to whom; (3) and under what context." *Id.* at 1275. Second, they "must also establish that that these documents were directly or indirectly considered by the relevant agency decision makers." *See id.* (citing *Bar MK*, 994 F.2d at 739).

As to the second type of challenge ("supplementing the record"), the Tenth Circuit has recognized certain exceptions under which a party can "supplement" the record with extra-record evidence, but it has stressed that "any exception to this general rule against the use of extra-record materials must be *extremely limited*." *Am. Mining Cong.*, 772 F.2d at 626-27 (emphasis added; *see also Lee*, 354 F.3d at 1242. These "extremely limited" exceptions include the following five situations: (1) the court cannot properly review the agency action without the supplemental materials; (2) the record is deficient because the agency ignored relevant factors; (3) the agency considered factors that were left out of the record; (4) the case is so complex and the record so unclear that the court needs the materials to understand the issues; and (5) the

supplemental materials post-date the agency action and demonstrate that the actions were right or wrong.  *See Ctr. for Native Ecosystems*, 711 F. Supp. 2d at 1278-79 (citing *Custer Cty. Action Ass'n v. Garvey*, 256 F.3d 1024, 1027 n.1 (10th Cir. 2001), but noting some inconsistency between Tenth Circuit decisions over the exceptions).

These limited exceptions are not intended to allow plaintiffs in APA cases to avoid their obligation to bring their expert critiques before the agency as part of the administrative process. Plaintiffs have an obligation to "'structure their participation so that it . . . alerts the agency to the [parties'] position and contentions,' in order to allow the agency to give the issue meaningful consideration." *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 764-65 (2004) (citation omitted). One purpose of the NEPA process is to bring the public's expertise to the agency's attention so that the agency can improve its analysis and decisions, or can explain why it found the criticism invalid.  That purpose is not served if parties seeking to supplement the record fail to bring their expert critiques to the agency's attention, and instead inject them into post-decisional litigation under the guise of the exceptions to record review.  *See N.M. Envtl. Improvement Div. v. Thomas*, 789 F.2d 825, 835 (10th Cir. 1986).

In fairness to agencies and to avoid gamesmanship, the Supreme Court has made clear that matters not brought before the agency may not be raised for the first time in a judicial challenge.  *See Pub. Citizen*, 541 U.S. at 764-65; *see also Silverton Snowmobile Club v. U.S. Forest Serv.*, 433 F.3d 772, 783-84 (10th Cir. 2006) (holding plaintiffs forfeited right to pursue claims not brought to the agency's attention in public comment period).  Accordingly, in almost all circumstances, the Tenth Circuit has rejected efforts to supplement records, emphasizing that these exceptions are only possible justifications that must be narrowly construed and applied.[2]

---

[2] *See, e.g.*, *Custer Cty.*, 256 F.3d at 1027 n.1 (stating that "[t]he circumstances which warrant consideration of extra-record materials are 'extremely limited,'" and concluding that "[t]he

**ARGUMENT**

Plaintiffs object to Judge Hegarty's Order on two grounds.  First, Plaintiffs object to Judge Hegarty's refusal to *complete* or *supplement* the Record with "five USDOT/FHWA policy guidance documents" posted on FHWA's or CDOT's websites.  ECF No. 146 at 1, 11.  Second, Plaintiffs object to Judge Hegarty's refusal to *supplement* the record with three declarations and reports that challenge the agencies' air quality analysis.  *See id.* at 1.  Each objection fails.

**I.      Judge Hegarty Correctly Found that Plaintiffs Failed to Show that the Five Documents Posted on the Agencies' Websites Should be Included in the Record.**

Plaintiffs moved to *complete* the Record with five documents[3] posted on FHWA's or CDOT's websites, arguing that these documents were before FHWA at the time it made its decision to approve the Project, and that FHWA directly or indirectly considered them.  ECF No. 127 at 7-14.  In the alternative, Plaintiffs asked the Court to *supplement* the Record with these

---

narrow conditions warranting an exception to the general rule are not present in this case"); *Am. Mining Cong.*, 772 F.2d at 626-27 (stating that any exception "must be extremely limited" and "deny[ing] all motions to supplement the record" except for the federal agency's unopposed request to supplement with a letter and two memoranda); *Lee*, 354 F.3d at 1242 (recognizing that "consideration of extra-record materials is appropriate in 'extremely limited' circumstances," and affirming the district court's order to strike extra-record evidence"); *Citizens for Alts.*, 485 F.3d at 1096 (denying motion to supplement record with expert declaration); *N.M. Envtl. Improvement Div.*, 789 F.2d at 835 (refusing to consider plaintiffs extra-record materials because "the function of the court [is] to review agency action based on the record before the agency unless exceptional circumstances justify use of extra-record materials").

[3] The five documents are: (1) the Health in Transportation Planning Framework, a position paper containing guidance on integrating health determinants when reviewing transportation projects, ECF No. 127-2; (2) a list of frequently asked questions in which the U.S. Department of Transportation ("DOT") explains how transportation affects public health, ECF No. 127-3; (3) a DOT web page print-out explaining the impact transportation can have on public health, ECF No. 127-4; (4) a 2008 cumulative effects analysis prepared by faculty and graduate students at the University of Colorado Denver analyzing how cumulative impacts on the environment can be identified and studied in the context of transportation projects, ECF No. 127-5; and (5) a 2009 article on fine particulate air pollution and life, which concludes that a reduction in exposure to fine-particulate air pollution contributes to improvement in life expectancy, ECF No. 127-6.

documents because they purportedly demonstrate FHWA's failure to consider human health when approving Central 70.[4]  *See id.* at 14.  Judge Hegarty correctly denied both requests.

**A.**   **Judge Hegarty Properly Rejected Plaintiffs' Request to *Complete* the Record with the Five Documents.**

As explained above, FHWA's Record is entitled to a presumption of regularity.  To rebut this presumption and prove that FHWA's Record is incomplete, Plaintiffs must meet two separate requirements: **(i)** "clearly set forth in their motion: (1) when the documents were presented to [FHWA]; (2) to whom; (3) and under what context;" and **(ii)** "establish that these documents were directly or indirectly considered by the relevant [FHWA] decision makers." *Ctr. for Native Ecosystems*, 711 F. Supp. 2d at 1275.[5]  Judge Hegarty correctly found that Plaintiffs did not meet either requirement, and denied their request.  *See* Order at 21.

1.   Plaintiffs Failed to Set Forth "Clear Evidence" that the Five Documents Were Presented to FHWA During the Decision-Making Process for Central 70.

In denying Plaintiffs' request to complete the Record, Judge Hegarty concluded that Plaintiffs made no "attempt to explain when these five documents were presented to FHWA . . . while formulating the ROD." *See id*.  He is right.  Plaintiffs never made an effort to explain in their briefs, or at the hearing, how these documents were presented to FHWA (i.e., when, to whom, or under what context).  Plaintiffs, for example, did not (because they cannot) cite any comment bringing those five documents to FHWA's attention during the NEPA process for this

---

[4] Plaintiffs also asked the Court to take judicial notice of the documents.  Judge Hegarty declined to consider this request, explaining that this "is an issue better left to the judicial officer who decides the merits of this appeal."  Order at 24 n.10.  Plaintiffs do not object to this portion of Judge Hegarty's Order.  Accordingly, we do not address it here, but reserve the right to address it at a time the Court deems appropriate.

[5] Plaintiffs cited and applied the incorrect standard in their brief.  *See* ECF No. 127 at 7 ("A court may order the record completed when the documents at issue: (1) were known to the agency at the time it made its decision; (2) "are directly related to the decision"; and (3) "are adverse to the agency's position."  *Pub. Citizen v. Heckler*, 653 F. Supp. 1229, 1237 (D.D.C. 1987)).

Project.  Instead, as Judge Hegarty correctly noted, Plaintiffs' brief on this issue "consists entirely of the legal standard for completing the record."  Order at 21.  They made no attempt to show how they satisfy it.  *See* ECF No. 127 at 13-14.  Plaintiffs ignored this requirement in their reply brief and at the hearing.  *See* ECF No. 133 at 4-9; Hearing Transcript at 107:13-110-24.

Plaintiffs claim that Judge Hegarty's ruling on this issue is clearly erroneous or contrary to law because "these documents were considered" by FHWA.  ECF No. 146 at 12.  This argument is faulty because Plaintiffs appear to conflate the two requirements for rebutting the presumption that FWHA's Record is complete.  Before determining whether the agency "considered" the documents, Plaintiffs must first demonstrate that these documents were presented to FHWA (i.e., when, to whom, and the context) during its review of this Project.  *See Ctr. for Native Ecosystems*, 711 F. Supp. 2d at 1275.  This Plaintiffs did not do.

To the extent Plaintiffs argue that they met this requirement because the documents are "publicly-posted documents" on the agencies' websites and were purportedly created by "USDOT/FHWA or CDOT as guidance" (ECF No. 146 at 12-13), this argument also fails.  Besides being factually incorrect,[6] Plaintiffs' argument is legally insufficient.  As the Court held in *Salazar*, Plaintiffs cannot meet this requirement "by asserting, speculatively, that documents were relevant or before the agency at the time it made its decision."  713 F. Supp. 2d at 1243*; see also Ctr. for Native Ecosystems*, 711 F. Supp. 2d at 1277-78 (denying the plaintiffs' request to complete the record, notwithstanding the fact that the agency created the documents and analyzed a summary of the documents).

---

[6] Contrary to Plaintiffs' assertions, none of the documents represent FHWA's policies, regulations, or guidance.  In fact, at least two of the documents expressly include a disclaimer that they were *not* the official position of the agencies.  *See* ECF Nos. 127-2 & 127-5.  And two of the documents were not created by FHWA: one is a research paper prepared by faculty and graduate students at the University of Colorado Denver (ECF No. 127-5), and the other is an article from the New England Journal of Medicine (ECF No. 127-6).

     2.   <u>Plaintiffs Failed to Establish that FHWA Considered the Five Documents Directly or Indirectly in its Decision-Making Process</u>.

Similarly, Judge Hegarty correctly found that Plaintiffs did not meet their burden of demonstrating that FHWA considered the five documents in the decision-making process for the Project. *See* Order at 20. Plaintiffs' sole argument on this point was that FWHA considered these documents "because they contain policies or guidance created by agency decision makers" and are available on the agencies' websites. ECF No. 127 at 13; ECF No. 133 at 6. Relying on established legal precedent, Judge Hegarty properly rejected Plaintiffs' argument. Order at 21.

Plaintiffs raise three primary objections to Judge Hegarty's ruling on this issue. First, Plaintiffs argue that the documents were considered by FHWA because they were "before the agency." ECF No. 146 at 12. This assertion fails. Plaintiffs never explained *how* these documents were "before" the relevant FHWA decision makers who approved *this* Project. Instead, they continue to argue that these documents were considered by FHWA because FHWA purportedly "created" them, they "were or should have been known" to FHWA, and are posted on the agencies' websites. *Id.* at 11-12. But, as Judge Hegarty correctly found, simply observing that a document was created by FHWA or posted on the agency's website does not establish that FHWA considered them directly or indirectly here. Order at 21; *see also Nat' Mining Ass'n v. Jackson*, 856 F. Supp. 2d 150, 157 (D.D.C. 2012) ("It is not enough for the plaintiffs to assert that the EPA knew about these documents, rather, the plaintiffs must offer non-speculative grounds for their belief that the agency actually considered the documents.'").

Second, Plaintiffs argue that Judge Hegarty's ruling is clearly erroneous because "it takes an overly narrow view of identifying the project decision makers and their responsibilities." ECF No. 146 at 13. Specifically, Plaintiffs claim that Judge Hegarty "err[ed] by requiring that decisionmakers see all documents." *Id.* at 15. Plaintiffs are wrong. Judge Hegarty did not make

such a finding.  *See* Order at 21.  As noted above, Judge Hegarty found that Plaintiffs did not explain when the five documents were presented to FHWA or how FHWA considered them.  *See id*.  Judge Hegarty did not distinguish between FHWA decision makers or other staff members who worked on and/or approved the Project because there was no need to do so.  Plaintiffs provided no evidence, let alone the required "clear evidence," to establish that these five documents were presented to or considered by FHWA's Division Administrator when he approved the Project.  Thus, Plaintiffs' extensive discussion regarding the USDOT Secretary's and FHWA Administrator's authority to delegate to other offices and subordinates (ECF No. 146 at 13-15) is irrelevant, and should not be considered in determining whether Judge Hegarty's ruling is clearly erroneous or contrary to law.  To the extent Plaintiffs argue that Judge Hegarty should have considered this argument, Plaintiffs have waived the right to object on this ground because they did not present it to Judge Hegarty in their initial briefs.  *See Davis v. Fed. Bureau of Prisons*, Case No. 15-cv-0884-WJM, 2017 WL 4324968, *2 (D. Colo. Sept. 29, 2017) (rejecting the plaintiff's attempt to "sandbag" the Magistrate Judge by failing to point out facts and relevant claims that were not previously presented and argued).

Third, Plaintiffs argue that the Order "allows Defendants to skew the [Record]."  ECF No. 146 at 14-16.  Plaintiffs cite no authority to support their contention that "skew[ing] the record" is sufficient basis to include the documents in the Record.  Instead, Plaintiffs rely on cases suggesting that Plaintiffs are conflating the standards for *completing* and *supplementing* the record.  *See id.* at 15 (citing *Kent Cty. Del. Levy Court v. EPA*, 963 F.2d 391 (D.C. Cir. 1992) and *Ctr. for Native Ecosystems*, 711 F. Supp. 2d at 1280-81, to support *supplementation* claim).  As explained above, the standards are <u>not</u> the same.  *See Ctr. for Native Ecosystems*, 711 F. Supp. 2d at 1279.  Plaintiffs' allegation that FHWA "ignore[d]" these documents further highlights Plaintiffs' confusion with the applicable legal standards.  On one hand, Plaintiffs

argue that FHWA purportedly considered these documents, and on the other, they argue that FHWA ignored them. *See* ECF No. 146 (*compare* "these materials were 'directly or indirectly' 'before' all Project decision makers" (p. 14), *with* "the Order . . . sanctions Defendants' efforts to ignore their own agencies' considered guidance and policies" (p. 16)).  Judge Hegarty appropriately noted this contradiction in his Order.  *See* Order at 21; *see also* ECF No. 133 at 7.

In sum, Plaintiffs did not produce *any* evidence, let alone the required "clear evidence," that FHWA considered these five documents during the decision-making process for this Project. *Ctr. for Native Ecosystems*, 711 F. Supp. 2d at 1276 ("The proper touchstone remains the decision makers' *actual consideration*, and a party moving to complete the record must show with clear evidence the context in which materials were considered by decision makers *in the relevant decision making process*.") (emphasis added)).  Judge Hegarty's ruling therefore is not clearly erroneous or contrary to law.  Their objection should be overruled.

### B. Judge Hegarty Properly Rejected Plaintiffs' Alternative Request to *Supplement* the Record with the Five Documents.

Plaintiffs' objections to Judge Hegarty's ruling denying their request to "supplement" the Record with these documents should also be overruled.  In their brief, Plaintiffs argued that each document "could also be admitted under one of the extra-record exceptions discussed in detail in the Motion to Supplement the Record" because they are relevant to their claims and demonstrate that FHWA ignored one relevant factor—the Project's "effect on human health."  ECF No. 127 at 14.  But instead of providing support or analysis for their supplementation claim, they simply cross-referenced their separate Motion to Supplement the Administrative Record.  *See id.*

Judge Hegarty denied Plaintiffs' supplementation request because none of the documents demonstrate how FHWA failed to consider human health when approving the Project.  *See* Order at 21-24.  Other than discussing at length how these documents are purportedly relevant to their

claims,[7] Plaintiffs provided no support or analysis demonstrating how FHWA's analysis of human health conditions in the environmental documents failed to satisfy consideration of that factor. *See* ECF No. 127 at 9-14; *see also* Hearing Transcript at 107:13-110-24.

Plaintiffs' offer only brief objections to each of Judge Hegarty's findings on this issue. *See* ECF No. 146 at 16-18. Their sole basis for objecting is the Record references cited by Judge Hegarty, which according to Plaintiffs, show that his Order is clearly erroneous. Contrary to Plaintiffs' assertions, Judge Hegarty's references to the Record are correct. FHWA's Record not only shows that the agencies discussed the effect of the Project on human health, it specifically addresses relevant air pollutants' health impacts and reviews recent studies concerning the health effects of highway emissions. *See, e.g.*, AR 0000023406-23410, AR0000023459-23466, AR 0000018238-18248.[8] As such, Judge Hegarty correctly concluded that FHWA did not ignore the Project's effect on human health. *See* Order at 22-24.

At bottom, Plaintiffs simply disagree with FHWA's methods and conclusions regarding the Project's possible health impacts. But Plaintiffs' disagreement with the "conclusions [the agency's] experts reached on these issues does not mean that the agency failed to consider

---

[7] Contrary to Plaintiffs' assertions, none of the documents is relevant to the analysis that FHWA actually performed in connection with the Central 70 and were not considered for that reason. At least three of the documents are intended for use in broad regional and/or metropolitan planning efforts, not project-level analysis like the FEIS for Central 70. *See* ECF No. 127-2, (framework for *corridor planning studies*, which are long-range planning exercises used to prioritize projects for a corridor, region, or sub-region); ECF No. 127-4 (tool used to examine health impacts of transportation *systems*, and providing data at the *metropolitan area* scale); ECF No. 127-5 (the cumulative effects analysis prepared by faculty and graduate students at the University of Denver theorizes about approaches to identification of area-wide cumulative impacts of projects and urbanization at a regional scale, not a project-level methodology or binding policy guidance).

[8] *See also* AR 0000004786-4794 (indicating that Agencies conducted modeling of carbon monoxide and PM10 to ensure NAAQS conformity and prepared emissions inventories using EPA- and APCD-approved methodology); Def.-Intervenors' Resp. in Opp'n to Sierra Club's Mot. to Stay 11-24, ECF No. 96 (explaining and defending agencies' approach to human health).

them." *Vill. of Logan v. U.S. Dep't of Interior*, No. 12-CV-401, 2013 U.S. Dist. LEXIS 196716, at *8 (D.N.M. Apr. 26, 2013). Accordingly, Judge Hegarty properly found that documents demonstrating such disagreements are not entitled to inclusion in the Record. *See* Order at 23 (citing *Lee*, 354 F.3d at 1243-44 ("[D]isagreement regarding the reliability of the methodology [the agency used] and whether it has been applied accurately in this EIS . . . is an insufficient basis for admitting extra-record evidence . . . .")). Plaintiffs' objection should be overruled.

## II. Judge Hegarty Properly Rejected Plaintiffs' Request to Supplement the Record with Dr. Gregory Rowangould's Declarations and the Declaration of George D. Thurston.

Judge Hegarty denied Plaintiffs' request to *supplement* the record with eight documents challenging the agencies' air-quality analysis. ECF No. 136 at 1. Plaintiffs filed objections only to Judge Hegarty's refusal to supplement the Record with the following "expert" declarations: (1) Declaration of Dr. Gregory Rowangould on Modeling $PM_{2.5}$ emissions, ECF No. 128-4, Ex. 33 ("$PM_{2.5}$ Modeling Declaration"); (2) Declaration of Dr. Gregory Rowangould on Modeling $PM_{10}$ emissions, ECF No. 128-4, Ex. 33 ("$PM_{10}$ Modeling Declaration"); and (3) Declaration of George D. Thurston, ECF No. 128-1, Ex. 28 ("Thurston Declaration"). Each objection fails.

### A. Judge Hegarty Correctly Found that Plaintiffs' $PM_{2.5}$ Modeling Declaration Is Inappropriate for Supplementation.

Plaintiffs argue that Judge Hegarty's decision not to supplement the Record with the $PM_{2.5}$ modeling report was clearly erroneous and contrary to law. ECF No. 146 at 4-5. Specifically, Plaintiffs contend that Judge Hegarty's decision not to supplement the Record was based on a "misunderstanding of what the $PM_{2.5}$ Modeling Report shows, *i.e.*, Defendants failed to complete the steps that EPA deems necessary for a technically valid analysis." *Id.* at 4. But FHWA was not legally required to complete the steps that Plaintiffs demand because Denver is now an attainment area for the $PM_{2.5}$ NAAQS. Thus, Judge Hegarty correctly found that

Plaintiffs' PM$_{2.5}$ Declaration is merely an attack on the methodology that FHWA used to analyze the Project's PM$_{2.5}$ emissions under NEPA.  *See* Order at 12-13.

Here, FHWA completed the steps that EPA recommends for a technically valid analysis. Plaintiffs appear to argue that the CAA requires FHWA to evaluate whether the Project will cause a violation of the National Ambient Air Quality Standards ("NAAQS") for PM$_{2.5}$ regardless of whether the Denver area is in attainment for the pollutant or not by performing a hot-spot analysis to show the projected dispersion and concentration of PM$_{2.5}$ emissions near the freeway.  *See* ECF No. 146 at 4-5 (citing 42 U.S.C. 7473(a)(4)).  But the CAA does not require FHWA to do a hot-spot analysis for PM$_{2.5}$ for the Project because the Denver area is in attainment for this pollutant.  *See Sierra Club v. EPA*, 873 F.3d 946, 950 (D.C. Cir. 2017) (explaining that because Denver is located in an attainment area for PM$_{2.5}$, no PM$_{2.5}$ hot-spot analysis is required for this Project); *see also* 40 C.F.R. § 93.116(a).

Plaintiffs next seem to argue that NEPA required FHWA to perform such a hot-spot modeling analysis.[9]  *See* ECF No. 146 at 6-7.  In other words, although no such "hot-spot" analysis is required under the CAA itself, Plaintiffs claim that NEPA somehow requires it.  But this argument fails because NEPA does not require that FHWA perform a hot-spot analysis, or *any* particular analysis for that matter, to evaluate air quality impacts.  *See WildEarth Guardians v. BLM*, 870 F.3d 1222, 1238 (10th Cir. 2017) (stating that choosing not to adopt a particular modeling technique does not render an agency's decision arbitrary or capricious).  Claiming that NEPA requires a CAA analysis above and beyond what the CAA itself requires is illogical. Thus, there has been no clear error or contradiction of the law.

---

[9] Plaintiffs cite no provision of NEPA's regulations for this requirement.

At bottom, as Judge Hegarty concluded, Plaintiffs' argument is merely an attack on FHWA's chosen methodology to comply with NEPA, *i.e.*, the CAA hot-spot methodology that Plaintiffs desire versus FHWA's chosen methodology (emissions inventories).  As this Court correctly recognized in denying Plaintiffs' stay motion, the emissions-inventory analysis that FHWA performed showed that additional quantitative analysis of NAAQS-compliant air quality would not have "materially enhanced" the decision-making process for the Project because the "no-action alternative would lead to substantially the same effects as the other alternatives." ECF No. 135 at 19.  As such, Judge Hegarty correctly found that Plaintiffs' PM$_{2.5}$ Declaration inappropriately disputed the reliability of FHWA's methodology and thus was not appropriate for supplementing the Record.  *See* Order at 12-23 (citing *Lee*, 354 F.3d at 1243–44).

Plaintiffs also argue that "Judge Hegarty clearly did not understand that Dr. Rowangould's emissions modeling did not differ from FHWA's emissions modeling."  ECF No. 146 at 5.  This argument underscores the problem with Plaintiffs' submission: because Plaintiffs did not submit *any* version of Dr. Rowangould's modeling during the administrative process, no agency expert (whether at FHWA or EPA) has ever reviewed Dr. Rowangould's technique and assumptions or assessed the reliability of his conclusions.  Neither Plaintiffs nor this Court can displace the agencies' expertise on such technical matters.  *See Lee*, 354 F.3d at 1242-44. Supplementing the record with Dr. Rowangould's declaration would constitute the precise type of disagreement about the reliability or application of a method that is an insufficient basis to supplement the record.  *See id.*  Thus, Judge Hegarty's refusal to supplement the Record with this declaration is not clearly erroneous or contrary to law, and the objection should be overruled.

**B.**     **Judge Hegarty Correctly Found that Plaintiffs' PM$_{10}$ Modeling Declaration Is Inappropriate for Supplementation.**

Plaintiffs make no effort to satisfy the standard for rejecting Judge Hegarty's ruling regarding the PM$_{10}$ Declaration.  As explained above, the Court must affirm Judge Hegarty's rulings unless it is left with the definite and firm conviction that a mistake has been committed, *see Ocelot Oil Corp.*, 847 F.2d at 1464, or if Plaintiffs show that Judge Hegarty applied the wrong legal standard or applied the appropriate legal standard incorrectly, *see Sunflower Condo. Ass'n, Inc.*, 2018 WL 1755784, *1.  Plaintiffs have not made any attempt to show how Judge Hegarty's ruling was clearly erroneous or contrary to law.  They point to no instance where Judge Hegarty's ruling applied the wrong legal standard or applied the appropriate legal standard incorrectly.  In fact, Plaintiffs fail to refer this Court to Judge Hegarty's Order, much less a finding that is clearly erroneous or contrary to law.  For this reason alone, the Court should deny Plaintiffs' objection on this issue.

Having failed to articulate why they satisfy their burden of showing that this Court should not adopt Judge Hegarty's rulings, Plaintiffs simply state that the PM$_{10}$ Declaration is needed to understand how FHWA modeled project emissions for PM$_{10}$.[10]  ECF No. 146 at 8.  But as Judge Hegarty correctly concluded, "the record contains significant information regarding FHWA's hot spot analysis for PM10."  Order at 11.  Additionally, "the record explains, albeit briefly, why FHWA chose to separately model emissions at seven receptor locations."  *Id.*  Plaintiffs remaining reasons for supplementation—to demonstrate that FHWA improperly modeled emissions—"constitutes a mere disagreement with FHWA's chosen methodology."  *Id.* (citing

---

[10] While not articulated in their objections, Plaintiffs' PM$_{10}$ Declaration does far more than merely "explain what was found in otherwise incomprehensible data files."  ECF No. 146 at 8.  It also performs additional modeling runs in an attempt to show results from modeling runs using different receptor locations than were actually used.  This type of declaration inappropriately disputes the reliability of FHWA's methodology.  *See Lee*, 354 F.3d at 1243–44.

*Colo. Wild v. Vilsack*, 713 F. Supp. 2d 1235, 1241 (D. Colo. 2010) ("Extra-record evidence which is actually a competing expert opinion . . . may not be admitted . . . .")).  In sum, the Record already explains why FHWA refined its methodology for its emissions modeling at the seven receptor locations.

Lastly, Plaintiffs argue that Judge Hegarty's Order "contradicts itself by relying on Dr. Rowangould's investigation and Declaration to order limited discovery because the record may not be complete."  ECF No. 146 at 9.  First, the fact that Judge Hegarty may have relied on Plaintiffs' declaration to allow limited discovery on this issue is not a reason to reject Judge Hegarty's rulings.  Second, the Record already explains why FHWA refined its methodology for the seven receptors.  *See* AR000000126; *see also* AR0000122902-122906 (EPA guidance instructing modeler to include "source release height . . . (*i.e.*, meters above the ground)" and make such parameters "as realistic as feasible").  Finally, to the extent that the further explanation was warranted, Judge Hegarty permitted Plaintiffs to serve five interrogatories related to FHWA's decision to separately model the seven receptors.  *See* Order at 19.  FHWA has provided responses to those interrogatories.  *See* Ex. 2.  So while Judge Hegarty did not admit Plaintiffs' $PM_{10}$ Declaration to explain how FHWA modeled project emissions for $PM_{10}$ for the seven receptor locations, Plaintiffs got the official explanation they sought from FHWA.  As Judge Hegarty correctly stated in his Order, FHWA's interrogatory responses "obviate" any possible need for the $PM_{10}$ Declaration itself.  Order at 1 n.6.

### C.    Judge Hegarty Correctly Found that Dr. Thurston's Declaration Is Inappropriate for Supplementation.

Plaintiffs argue that Judge Hegarty incorrectly concluded that Dr. Thurston's Declaration was "a disagreement among the experts and dispute over FHWA's methodology."  ECF No. 146

at 10.  Additionally, they argue that Judge Hegarty's conclusion that supplementation cannot be based solely on a document's "relevance" is incorrect.  *Id.* at 10-11.  Each arguments fails.

First, Judge Hegarty correctly determined that Dr. Thurston's Declaration represents a mere disagreement with the reliability of FHWA's methodology.  *See* Order at 7-8.  As Plaintiffs point out, Dr. Thurston's Declaration draws conclusions about impacts to human health from NAAQS-compliant air quality.  ECF No. 146 at 10.  Plaintiffs wish to use this declaration to argue that FHWA had to perform additional quantitative analysis of such impacts, rather than relying on the agency with the appropriate expertise (i.e., EPA).  But as Judge Hegarty found, "FHWA did not fail to analyze the project's effect on human health; FHWA just came to a different conclusion based on a different methodology—compliance with NAAQS.  Therefore, Dr. Thurston's report merely disagrees with the reliability of FHWA's methodology."  Order at 8.  And courts have uniformly held that, within the NEPA process, agencies may rely on the NAAQS to gauge the potential health impacts of a project's emissions.  *See, e.g.*, *Barnes v. FAA*, 865 F.3d 1266, 1273 (9th Cir. 2017) (citing *WildEarth Guardians v. Jewell*, 738 F.3d 298, 311-12 (D.C. Cir. 2013)).  As such, FHWA may reasonably rely on the NAAQS when evaluating the potential health impacts of highway emissions from a particular project.  Thus, Judge Hegarty correctly found that Plaintiffs' mere disagreement with FHWA's methodology for analyzing the Project's emissions under NEPA and the conclusion that methodology produced is an insufficient reason to supplement the Record.  *See Lee*, 354 F.3d at 1243-44.

Second, Judge Hegarty correctly found that the "relevance" of the report alone is an insufficient basis for supplementing the Record.  Order at 8.  Plaintiffs argue that the Court erred because "FHWA failed to examine evidence relevant to determining whether pollutant exposures will impact community health."  ECF No. 146 at 11.  But as Judge Hegarty correctly concluded, "allowing supplementation of the record with any relevant expert reports and professional

articles would be directly contrary to the Tenth Circuit's admonition that 'any exception to this

general rule against the use of extra-record materials must be extremely limited.'"  Order at 8.

Judge Hegarty then distinguished the only case Plaintiffs cited for that proposition, and Plaintiffs

offer no explanation in their Objections as to why that conclusion is clear legal error.

## CONCLUSION

Judge Hegarty's Order denying Plaintiffs' requests to complete or supplement the Record

with five documents posted on FHWA's and CDOT's websites, and to supplement the Record

with the three "expert" declarations, is not clearly erroneous or contrary to law.  Plaintiffs'

Objections should be overruled, and Judge Hegarty's rulings affirmed.

Respectfully submitted this 16th day of May 2018.

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment & Natural Resources Division

*/s/ Mayte Santacruz*
Mayte Santacruz
Carter F. Thurman
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
601 D Street, NW
Washington, D.C. 20004
(202) 305-0465 (Santacruz)
(202) 305-0444 (Thurman)
mayte.santacruz@usdoj.gov
carter.thurman@usdoj.gov

David A. Carson
United States Department of Justice
Environment and Natural Resources Division
999 18th Street, Suite 370
Denver, Colorado 80202
(303) 844-1349
david.a.carson@usdoj.gov

*Attorneys for Federal Defendants*

<u>Of Counsel:</u>
Brent Allen
Federal Highway Administration
Lakewood, Colorado
(720) 963-3692
brent.allen@dot.gov

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that on 16th day of May 2018, the foregoing *Federal Defendants'*

*Response to Petitioners' Objections to the Magistrate Judge's Order on the Scope of the Record*

was electronically filed with the Clerk of Court using the CM/ECF system which will send

notification of such filing to the following:

Andrea S. Gelfuso
Andrea Gelfuso, Attorney at Law
2402 South Holland Street
Lakewood, CO  80227
303-955-1910
Agelfuso6@gmail.Com

Robert E. Yuhnke
Robert E. Yuhnke & Associates
4050 Se Hosner Terrace
Gresham, OR  97080
303-499-0425
Bob.Yuhnke@prodigy.Net

Gregory Nicholas Corbin
Milligan Rona Duran & King, LLC-Denver
1627 Vine Street
Denver , CO  80206
720-414-2000
Gnc@mrdklaw.com

/s/ *Mayte Santacruz*
MAYTE SANTACRUZ